SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
WILMER CUTLER PICKERING HALE
    AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1002
Facsimile: (628) 235-1001

NOAH S. GUINEY (SBN 324079)
noah.guiney@wilmerhale.com
WILMER CUTLER PICKERING HALE
    AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Defendants Plantronics, Inc.,
Joseph Burton, Charles Boynton and
Pamela Strayer*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PLANTRONICS, INC. SECURITIES LITIGATION | No. 4:19-cv-07481-JST<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:     February 3, 2022<br>Time:     2:00 p.m.<br>Place:    Courtroom 6, 2nd Floor<br>Judge:   The Honorable Jon S. Tigar |

REPLY MEM. IN SUPPORT OF
MOTION TO DISMISS SAC

NO. 4:19-cv-07481-JST

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   THE OPPOSITION CONCEDES THAT PLAINTIFFS DO NOT PLEAD
      ILLEGITIMATE CHANNEL STUFFING, AND DOES NOT CITE FACTS TO
      PLEAD FALSITY UNDER PLAINTIFFS' ALTERNATE THEORY ............................ 2

      A.   Plaintiffs Ignore That the PSLRA Requires Contemporaneous Facts
           Showing Both the Existence of a "New Sales Practice" and That It Had a
           Material Impact on the Company's Class Period Results ...................................... 2

      B.   Plaintiffs Do Not Adequately Allege a "New Sales Practice" of "Pushing
           Excess Inventory" to Distributors, Much Less That Such a Practice
           Rendered the Challenged Statements Misleading .................................................. 4

           1.   The Opposition Fails to Show That the FEs Plead Falsity ........................ 4

           2.   The ERM Allegations Remain Inadequate to Allege Falsity .................... 7

           3.   Plaintiffs' Continued Reliance on Post-Class Period Results and a
                Non-Existent "Admission" Confirms Their Inability to State a
                Claim ...................................................................................................... 8

      C.   The SAC Alleges No Misstatement Regarding Inventory Levels or
           Monitoring ........................................................................................................... 9

      D.   Plaintiffs Cannot Justify Their Effort to Base a Claim on Puffery ........................ 9

III.  THE OPPOSITION CONFIRMS THAT SCIENTER IS LACKING ............................ 10

      A.   Plaintiffs' Arguments Cannot Salvage the Deficient FE Allegations ................... 10

      B.   The Opposition Fails to Show that the ERM Allegations Plead Scienter ............. 12

      C.   Plaintiffs' Repeated Mischaracterization of Mr. Boynton's Post-Class
           Period Statements Is Further Confirmation that the SAC Fails to Plead
           Scienter ............................................................................................................... 13

      D.   Cursory References to Departures Do Not Support an Inference of Scienter ....... 14

      E.   The Opposition Has No Answer to the Facts Refuting Scienter .......................... 14

IV.   CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bodri v. GoPro, Inc.*,
　252 F. Supp. 3d 912 (N.D. Cal. 2017) ............................................................................... 10

*Brody v. Transitional Hosps. Corp.*,
　280 F.3d 997 (9th Cir. 2002) ........................................................................................... 2

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
　856 F.3d 605 (9th Cir. 2017) ........................................................................................... 2

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
　2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ......................................................... 3, 4, 9

*Costabile v. Natus Med. Inc.*,
　293 F. Supp. 3d 994 (N.D. Cal. 2018) ......................................................................... 6, 7

*Elec. Workers Pension Fund, Local 103, I.B.E.W. v. HP Inc.*,
　2021 WL 4199273 (N.D. Cal. Sept. 15, 2021) ............................................................. 11

*Fouad v. Isilon Sys., Inc.*,
　2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ........................................................... 14

*In re Align Tech., Inc. Sec. Litig.*,
　2021 WL 1176642 (N.D. Cal. Mar. 29, 2021) ............................................................... 9

*In re Alphabet, Inc. Sec. Litig.*,
　1 F. 4th 687 (9th Cir. 2021) ........................................................................................... 13

*In re Connetics Corp. Sec. Litig.*,
　2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) ............................................................... 4

*In re Diamond Foods, Inc. Sec. Litig.*,
　2012 WL 6000923 (N.D. Cal. Nov. 30, 2012) ............................................................... 15

*In re Facebook, Inc. Sec. Litig.*,
　405 F. Supp. 3d 809 (N.D. Cal. 2019) ........................................................................... 5

*In re Fastly, Inc. Sec. Litig.*,
　2021 WL 5494249 (N.D. Cal. Nov. 23, 2021) ............................................................... 12

*In re Pivotal Sec. Litig.*,
　2020 WL 4193384 (N.D. Cal. July 21, 2020) ............................................................... 6, 7

*In re Quality Sys., Inc. Sec. Litig.*,
　865 F.3d 1130 (9th Cir. 2017) ....................................................................................... 13

*In re UTStarcom, Inc. Sec. Litig.*,
 617 F. Supp. 2d 964 (N.D. Cal. 2009) .................................................................................. 14

*Inchen Huang v. Higgins*,
 443 F. Supp. 3d 1031 (N.D. Cal. 2020) ................................................................................ 5

*Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*,
 522 F. Supp. 3d 660 (N.D. Cal. 2021) ........................................................................... 11, 12

*La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*,
 2021 WL 4397946 (S.D. Ohio Sept. 27, 2021)................................................................... 14

*Lopes v. Fitbit, Inc.*,
 2020 WL 1465932 (N.D. Cal. Mar. 23, 2020), *aff'd*, 848 F. App'x 278
 (9th Cir. 2021)........................................................................................................... 9, 10, 13

*Luna v. Marvell Technology Group, Ltd.*,
 2016 WL 5930655 (N.D. Cal. Oct. 12, 2016)...................................................................... 4

*McGovney v. Aerohive Networks, Inc.*,
 2019 WL 8137143 (N.D. Cal. Aug. 7, 2019)...................................................................... 15

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
 540 F.3d 1049 (9th Cir. 2008)......................................................................................... 3, 4

*Mulderrig v. Amyris, Inc.*,
 492 F. Supp. 3d 999 (N.D. Cal. 2020) ............................................................................... 10

*Murphy v. Precision Castparts Corp.*,
 2017 WL 3084274 (D. Or. June 27, 2017) .......................................................................... 4

*Nguyen v. Endologix, Inc.*,
 962 F.3d 405 (9th Cir. 2020)................................................................................... 11, 12, 15

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
 2018 WL 3126393 (N.D. Cal. June 26, 2018) ................................................................ 6, 14

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
 774 F.3d 598 (9th Cir. 2014).............................................................................................. 10

*Paciga v. Invuity, Inc.*,
 2019 WL 3779694 (N.D. Cal. Aug. 12, 2019).................................................................... 12

*Police & Fire Ret. Sys. of the City of Detroit v. Crane*,
 87 F. Supp. 3d 1075 (N.D. Cal. 2015) ................................................................................. 4

*Sakkal v. Anaplan, Inc.*,
 2021 WL 3885987 (N.D. Cal. Aug. 31, 2021).................................................................... 14

*Sayce v. Forescout Techs., Inc.*,
 2021 WL 1146031 (N.D. Cal. Mar. 25, 2021)....................................................................... 13

*Sayce v. Forescout Techs., Inc.*,
 2021 WL 4594768 (N.D. Cal. Oct. 6, 2021)........................................................... 3, 4, 6, 11

*Scheller v. Nutanix, Inc.*,
 450 F. Supp. 3d 1024 (N.D. Cal. 2020) ................................................................. 2, 3, 4, 6

*SEC v. Todd*,
 642 F.3d 1207 (9th Cir. 2011)...................................................................................... 4

*Shenwick v. Twitter, Inc.*,
 282 F. Supp. 3d 1115 (N.D. Cal. 2017) ...................................................................... 12

*Smith v. NetApp, Inc.*,
 2021 WL 1233354 (N.D. Cal. Feb. 1, 2021) ....................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)............................................................................................ 14, 15

*Veal v. LendingClub Corp.*,
 423 F. Supp. 3d 785 (N.D. Cal. 2019) ........................................................................ 10

*Vitalone v. Logitech Int'l SA*,
 2012 WL 13041992 (N.D. Cal. July 13, 2012).................................................................. 8

*Waterford Twp. Police v. Mattel, Inc.*,
 321 F. Supp. 3d 1133 (C.D. Cal. 2018) ................................................................. 5, 7, 10

*Wochos v. Tesla, Inc.*,
 985 F.3d 1180 (9th Cir. 2021)..................................................................................... 10

*Yaron v. Intersect ENT, Inc.*,
 2020 WL 6750568 (N.D. Cal. June 19, 2020) ............................................... 2, 4, 9, 11, 13

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009).......................................................................... 5, 6, 10, 14

## I.    INTRODUCTION

Defendants' motion to dismiss ("Motion" or "Mot.")[1] challenged Plaintiffs to identify specific facts supporting their claim that Defendants engaged in a "widespread and notorious" scheme of channel stuffing during the Class Period.  Far from meeting that challenge, Plaintiffs' opposition brief ("Opposition" or "Opp.") confirms their inability to plead the requisite facts.

Indeed, Plaintiffs abandon their claim that Plantronics engaged in "illegitimate" channel stuffing (*see, e.g.*, Opp. at 1, 7-8, 16), and focus on an alternate theory: that the Company failed to disclose that its financial results during the Class Period were supposedly "achieved only by an undisclosed, new sales practice of stuffing distributors with excess inventory."  *Id*. at 7.  The Opposition, however, ignores the rigorous standards for pleading falsity under that theory, and cannot identify facts showing that: (1) any channel stuffing ever occurred; (2) when it occurred; (3) any quantification of its impact in particular quarters; or (4) how it rendered specific results or statements misleading.  Instead, Plaintiffs continue to rely on speculation, bare conclusions, former employees (FEs) who lack personal knowledge and whose accounts are not indicative of falsity, nebulous assertions that the Company's ERM team might have identified some "risk" (but *not* the existence) of channel stuffing at unstated times, a non-existent "admission," and hindsight.  It is therefore clear that Plaintiffs cannot allege falsity in accordance with the PSLRA.

For largely the same reasons, the Opposition confirms Plaintiffs' inability to plead a strong inference of scienter.  The Opposition does not cite contemporaneous facts to show Defendants' awareness of information contradicting the challenged statements – *i.e.*, that they knew there was channel stuffing during the Class Period *and* that reported results for specific quarters were "achieved only by" this supposed "new sales practice."  Nor does the Opposition have any meaningful response to the facts undermining an inference of scienter, including the absence of stock sales by Defendants, their role in promoting the ERM process, the SAC's allegations that Plantronics was fully transparent with its independent auditor (PwC), the Company's disclosures during the Class Period, and the inherent implausibility of Plaintiffs' theory.

In sum, the Opposition confirms that this case is based entirely on hindsight: Plaintiffs try

---

[1] Unless otherwise specified, all defined terms have the meanings indicated in the Motion.

REPLY MEM. IN SUPPORT OF
MOTION TO DISMISS SAC

- 1 -

NO. 4:19-cv-07481-JST

to reverse-engineer a claim based on nothing more than Plantronics' announcement in November 2019 that it would temporarily pause shipments to reduce unexpected inventory levels. Because it is evident that Plaintiffs cannot meet their pleading burden under the PSLRA, and they do not suggest there are additional facts they could plead, the SAC should be dismissed with prejudice.

II.     **THE OPPOSITION CONCEDES THAT PLAINTIFFS DO NOT PLEAD ILLEGITIMATE CHANNEL STUFFING, AND DOES NOT CITE FACTS TO PLEAD FALSITY UNDER PLAINTIFFS' ALTERNATE THEORY**

Having conceded that the SAC does not plead illegitimate channel stuffing (*see* Mot. at 10-14; *see also* Opp. at 1, 16), Plaintiffs' case hinges entirely on the theory that statements during the Class Period regarding Plantronics' financial results, and supposed "claims of inventory monitoring," were misleading for failure disclose a "new sales practice." *See* Opp. at 1, 7. As discussed below, the Opposition does not cite factual allegations to support that claim.

A.      **Plaintiffs Ignore That the PSLRA Requires Contemporaneous Facts Showing Both the Existence of a "New Sales Practice" and That It Had a Material Impact on the Company's Class Period Results**

Plaintiffs do not contend that Plantronics' reported revenues, earnings or other financial metrics were inaccurate. *See* Mot. at 16; *see also* SAC ¶ 36. Instead, they suggest investors were misled because those results were "achieved only by an undisclosed, new sales practice of stuffing distributors with excess inventory." Opp. at 7. The Opposition, however, never comes to grips with the stringent requirements for pleading a viable claim under that theory.

Plaintiffs do not dispute that a statement is not actionable because it is merely incomplete; rather, it must be so inconsistent with undisclosed facts as to present a materially misleading picture of the actual "state of affairs." *See* Mot. at 15 (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)). In this case, that requires Plaintiffs to identify facts establishing: (1) channel stuffing at specific times during the Class Period; (2) its magnitude in particular quarters; and (3) how it contradicted the challenged statements regarding Plantronics' results. *See, e.g.*, *Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1040 (N.D. Cal. 2020).[2]

---

[2] *See also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 618-19 (9th Cir. 2017) (facts must show that channel stuffing was the reason statements were false when made); *Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568, at *7-8 (N.D. Cal. June 19, 2020) (plaintiffs must plead facts establishing when channel stuffing occurred and why it contradicted specific statements).

Yet the Opposition cites no facts demonstrating that channel stuffing occurred, when it allegedly began, a single example, any quantification of its effect, or how it affected any results. Plaintiffs merely repeat the SAC's conclusory and speculative allegations that channel stuffing – involving unidentified customers, at unstated times, and in unknown amounts – had some unquantified effect on unspecified quarterly results during the Class Period.  In so doing, Plaintiffs disregard that the Ninth Circuit "has consistently held that the PSLRA's falsity requirement is not satisfied by conclusory allegations that a company's class period statements regarding its financial well-being are *per se* false based on the plaintiff's allegations of fraud generally."  *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070-71 (9th Cir. 2008) (dismissal affirmed where, as in this case, plaintiffs alleged that "virtually every statement made … during the Class Period related to the company's financial health or performance was, by definition, false").

*Scheller* is directly on point.  Plaintiffs in that case alleged a "pull-in" scheme in which "sales orders from future periods" were used "to meet projected sales for the current quarter," and that statements regarding the company's results were misleading for failure to disclose that practice.  450 F. Supp. 3d at 1039.  The Court held that plaintiffs' "fail[ure] to provide any specific details of the pull-in scheme" – including "what types of sales were pulled in," information regarding customers, or "the dollar amounts involved" – was fatal to their claim.  *Id*. at 1039-40.  Without such particularized facts, plaintiffs did not plead that failure to disclose the challenged sales practice was actionable "under the law of this circuit."  *Id*. at 1040.

Also instructive is *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195 (N.D. Cal. Dec. 17, 2019).  The complaint in that case alleged statements regarding results and revenue growth were misleading because they failed to disclose sales practices that allegedly drove customers to make unwanted purchases, generating "artificial" or "illusory" revenues that were not sustainable – essentially the same claim made here.  *Id.* at *5-6, 12.  The Court rejected the claim because (as here) the company "sold real products for real money," and plaintiffs failed to plead facts establishing that the purportedly improper sales practices rendered any statement materially misleading.  *Id*. at *12-13 (citation and quotation omitted).  *See also Sayce v. Forescout Techs., Inc.*, 2021 WL 4594768, at *6 (N.D. Cal. Oct. 6, 2021) ("vague

accusations about [the company's] practices" failed to plead channel stuffing).

The pleading burdens outlined in cases such as *Metzler*, *Scheller*, *City of Sunrise* and *Sayce* are actually confirmed by authorities Plaintiffs cite. *See* Opp. at 8-10. For example, in *Yaron*, the Court dismissed a claim where "plaintiff fail[ed] to allege facts to show that channel stuffing negatively impacted … sales or growth prospects during the Class Period, so as to make defendants' statements about those sales and prospects misleading." 2020 WL 6750568 at *9. In *SEC v. Todd*, 642 F.3d 1207 (9th Cir. 2011), statements regarding growth in a quarter were alleged to be misleading because the company did not disclose that revenues had been boosted by one-time contracts. The claim was supported by specific evidence establishing the customers in question, the dates, amounts and details of the transactions, and that the deals (totaling $119 million) were the reason the company met analysts' expectations for that quarter. *Id*. at 1220.[3]

The Opposition glosses over the relevant pleading standards because Plaintiffs cannot meet them. As discussed below, none of the allegations highlighted in the Opposition – *i.e.*, the averments attributed to FEs, those relating to the ERM project, post-Class Period results, and Mr. Boynton's *post hoc* statements – establish either the existence of a new channel-stuffing practice or that it had any effect on Plantronics' Class Period results.

### B. Plaintiffs Do Not Adequately Allege a "New Sales Practice" of "Pushing Excess Inventory" to Distributors, Much Less That Such a Practice Rendered the Challenged Statements Misleading

#### 1. The Opposition Fails to Show That the FEs Plead Falsity

Plaintiffs' primary argument is that FE2, FE7, FE8 and FE9 "corroborate" the adoption of a new practice to "over[sell] the channel" for the purpose of misstating demand for Plantronics'

---

[3] Other cases cited by Plaintiffs (Opp. at 9-10) likewise permitted claims to proceed only after finding that specific factual allegations established the existence of undisclosed sales practices *and* that they rendered particular statements misleading. *See Police & Fire Ret. Sys. of the City of Detroit v. Crane*, 87 F. Supp. 3d 1075, 1083-84 (N.D. Cal. 2015) (plaintiff alleged detailed facts showing a changed practice – convincing certain customers to prematurely terminate contracts in order to accelerate previously deferred revenue – as well as its impact on results in a particular quarter); *Luna v. Marvell Tech. Grp., Ltd.*, 2016 WL 5930655, at *10 (N.D. Cal. Oct. 12, 2016) (company conceded its financial statements were materially inaccurate and needed to be restated); *In re Connetics Corp. Sec. Litig.*, 2008 WL 3842938, at *10 (N.D. Cal. Aug. 14, 2008) (same); *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, at *8-9 (D. Or. June 27, 2017) (plaintiff adequately alleged a "pull-in" practice and that it contradicted particular statements regarding organic growth and the company's inventory policy, especially in light of a major customer's public statements directly calling into question the feasibility of future pull-in sales).

products.  Opp. at 9, 11.  However, the Opposition fails to demonstrate the "reliability and personal knowledge" of those sources or that their statements are "indicative" of falsity.  *See Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1045 (N.D. Cal. 2020) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009)).

The Court previously found that FE2's allegations were inadequate to satisfy the PSLRA (*see* Order at 12-13; *see also* Mot. at 20-21) – a point the Opposition tellingly makes no effort to address.  Plaintiffs also disregard that FE2 left Plantronics *before* the Class Period began (SAC ¶¶ 10, 52), and therefore lacks personal knowledge of any "new sales practice" *during* the Class Period that purportedly contradict the challenged statements.  *See Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1154 (C.D. Cal. 2018) ("FE1 left Mattel … before the Class Period.… Accordingly, FE1 could not have personal knowledge of the retail inventory levels at the time Defendants' allegedly false statements were made.").[4]

Plaintiffs cite only one allegation as to which FE2 arguably has personal knowledge: overhearing Mr. Burton make comments about replacing local distributors long before the Class Period began.  Opp. at 3, 9.  But that allegation is not "indicative" of a plan to misleadingly "oversell" the channel.  The Court already found that "[t]he only plausible view" of FE2's allegation is that Mr. Burton believed "new distributors could do a better job of moving product" (Order at 13), which is merely good business.  Unable to address this Court's holding, the Opposition ignores it.  In any event, statements allegedly made *in March 2017* do nothing to establish the state of affairs at Plantronics during a Class Period beginning *seventeen months later*.  *See, e.g.*, *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 837-38 (N.D. Cal. 2019) (plaintiffs must plead facts showing "contemporaneous falsity," and "what happened in 2015 is irrelevant, [when] the Class Period starts in February 2017").

The Opposition makes only brief reference to FE7, noting he/she was "National Channel Sales Manager for Canada" and worked with large channel partners.  Opp. at 11.  But Plaintiffs do not dispute that FE7's conclusory allegation of channel stuffing is based on "what we heard."

---

[4] *See also Zucco*, 552 F.3d at 996 (FEs were not "personally knowledgeable of the information alleged" where they "were not employed … during the time period in question").

Mot. at 12 (quoting SAC ¶ 58). In fact, the Opposition highlights the reliance on vague hearsay (Opp. at 11, citing SAC ¶ 97) and confirms FE7's lack of personal knowledge. *See Zucco*, 552 F.3d at 996. And the Opposition does not controvert that, despite FE7's job, he/she is unable to identify *any* instance of channel stuffing or quantify its purported impact. *See* Mot. at 11-12. Thus, FE7's allegations are not "indicative" of falsity. *See Sayce*, 2021 WL 4594768, at *6.

Equally unavailing is Plaintiffs' contention that FE8 and FE9 show "the … newly-enacted sales practices resulted in channel stuffing." Opp. at 9. Defendants have demonstrated that FE8 and FE9 rely entirely on hearsay and speculation, and neither claims to have personal knowledge of channel stuffing. *See* Mot. at 12-13. Plaintiffs' response that FE8 and FE9 have knowledge *of the ERM process* (Opp. at 11-12) is a red herring. Putting aside that the ERM process does nothing to plead falsity (*see* Sec. IIB.2, *infra*), the issue is whether FE8 and FE9 have *personal knowledge* of the *alleged facts* (the existence and impact of channel stuffing) on which *Plaintiffs base their claim*. *See Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at *8 (N.D. Cal. June 26, 2018). The Opposition does not contest that FE8 and FE9 rely on what they purportedly heard in interviews, without identifying the interviewees, specific information or details those unnamed persons provided, the positions held, or why the interviewees have the requisite personal knowledge. The absence of such facts "makes it impossible for the Court to determine if [FE8's and FE9's] statements are sufficiently 'reliable, plausible, or coherent'" to satisfy the PSLRA. *Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1010 (N.D. Cal. 2018).[5]

Nor are FE8's and FE9's assertions "indicative" of falsity. Neither cites a single example of channel stuffing, specifies when it allegedly occurred, quantifies the magnitude in any quarter, or indicates which statements were supposedly misleading. Instead, Plaintiffs rely on broad conclusions and conjecture: Plantronics' sales practices presented "problem[s]" and "risks" (Opp.

---

[5] Notably, the Opposition cites no case in which comparably nebulous hearsay allegations were found to be sufficient. The most Plaintiffs do is suggest, inaccurately and without analysis (Opp. at 12 n.8), that FE8's and FE9's allegations are more specific than those found to be deficient in *Scheller* and *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *13 (N.D. Cal. July 21, 2020). In reality, the FE allegations here are every bit as conclusory as in the cited cases. *See Scheller*, 450 F. Supp. 3d at 1040 (as in this case, FE did not provide, *inter alia*, "specific details of the pull-in scheme, such as what types of sales were pulled in … the types of customers, or the dollar amounts involved"); *Pivotal*, 2020 WL 4193384, at *13 (FE who repeated what he/she heard about response to a new product did not provide facts demonstrating knowledge or reliability).

at 11-12), "[e]veryone saw" channel stuffing and "[e]veryone knew about it" (*id*. at 12), and there was an "overall impression" that Plantronics "was borrowing revenue from future quarters" (SAC ¶ 117).  Those empty averments do not show that Plantronics' statements were false or that its results were "achieved only" as a result of a "new sales practice" of channel stuffing (Opp. at 7).  *See, e.g.*, *Costabile*, 293 F. Supp. 3d at 1010.

### 2.  The ERM Allegations Remain Inadequate to Allege Falsity

Plaintiffs' allegations regarding the ERM process are a study in misdirection.  The Opposition does not dispute that the SAC conflates "channel stuffing" with the common (and benign) phenomenon of "hockey sticking" (closing a larger portion of sales near the end of the quarter).  *See* Mot. at 13; *see also* SAC ¶¶ 112, 113.  Plaintiffs try to justify that conflation by suggesting unidentified Plantronics employees supposedly used the terms interchangeably (Opp. at 11), but that misses the point.  Regardless of whether unnamed persons may have allegedly confused the concepts, Plaintiffs must provide *specific facts* showing *actual channel stuffing*, as opposed to mere "hockey sticking."  *See Waterford Twp.*, 321 F. Supp. 3d at 1147-48.

Plaintiffs resort to such game-playing because the SAC does not allege the ERM team ever determined there was actual channel stuffing.  The most Plaintiffs can do is suggest that some "changed sales practice[]" – it is unclear whether this refers to channel stuffing or "hockey sticking" – was termed a "risk."  *See* Opp. at 4, 5, 9.[6]  Even assuming this oblique averment refers to channel stuffing, alleging the existence of a "risk" is completely different from showing that the "risk" materialized, or had a material impact on results, at the time of the challenged statements.  *See, e.g.*, *Smith v. NetApp, Inc.*, 2021 WL 1233354, at *6-7 (N.D. Cal. Feb. 1, 2021).

In fact, even though the ERM review was finalized after the Class Period (SAC ¶ 122), Plaintiffs do not allege the final report: (1) stated that channel stuffing ever occurred; (2) cited even one example; or (3) concluded it had any impact on reported results or rendered any statement misleading.  The absence of such allegations underscores the inability to plead falsity.

---

[6] The Opposition falsely asserts that the ERM identified channel stuffing as a practice that was "already happening," but the SAC alleges no such thing.  That averment is attributed to FE9 (SAC ¶ 59), who (as discussed above) lacks personal knowledge and provides no explanation or details to support his/her glib characterization.  *See Pivotal*, 2020 WL 4193384, at *13.

### 3. Plaintiffs' Continued Reliance on Post-Class Period Results and a Non-Existent "Admission" Confirms Their Inability to State a Claim

By unabashedly continuing to rely on a "decline[]" in Plantronics' results after the Class Period (Opp. at 12), the Opposition confirms that this case is an example of improper "speculation made in hindsight." *See* Mot. at 14 (citing cases). Highlighting the point, the Opposition does not purport to cite facts demonstrating that the later results were the product of undisclosed channel stuffing during the Class Period, arguing instead that "Defendants have no alternative explanation as to why … results continued to decline." Opp. at 12. Not only is that assertion inaccurate – the moving papers noted that Plantronics identified various challenges in fiscal 2020, including business "headwinds" and transition issues (*see* Mot. at 5-7) – Plaintiffs are attempting to turn the law on its head. It is not Defendants' obligation to disprove every wild claim or speculative theory Plaintiffs might concoct; rather, it is *Plaintiffs' affirmative duty* to "present facts showing statements were false when made," as opposed to "defendants learn[ing] of the falsity months later." *Vitalone v. Logitech Int'l SA*, 2012 WL 13041992, at *5 (N.D. Cal. July 13, 2012).

Likewise, Plaintiffs' assertion that "channel stuffing may come to light through observed performance reversals in future periods" (Opp. at 12) gets them nowhere. Idle conjecture as to what "may" be true in some instances is no substitute for pleading particularized facts *specific to this case* showing that *Plantronics' results* are indicative of channel stuffing. Mot. at 14; *see also Vitalone*, 2012 WL 13041992, at *5. Unable to satisfy that burden, Plaintiffs simply ignore it.

The Opposition also repeats the fiction that Mr. Boynton's November 20, 2019 statements were an "admission" that Plantronics "changed its sales practices at the beginning of the Class Period." Opp. at 13. Yet the SAC itself makes clear that Mr. Boynton made *no* reference to a "change[]" in "sales practices," let alone one instituted "at the beginning of the Class Period." He merely noted that sales had been fairly linear "back in the day" (a time that is not specified), and "sort of migrated" to a point where they had become more "backend loaded." SAC ¶ 234. His *actual* words – as opposed to Plaintiffs' attempt to rewrite them – reflect an after-the-fact observation of something that occurred over an unspecified period, with no suggestion that a "new sales practice" was the cause. The comments are not an "admission" because they do not

"contradict[] the substance of an earlier statement and essentially state[], 'I knew it all along.'" *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020), *aff'd*, 848 F. App'x 278 (9th Cir. 2021) (citation omitted).[7]  The Opposition offers no contrary authority and makes no effort to show that Mr. Boynton's comments meet the "I knew it all along" standard.

### C.    The SAC Alleges No Misstatement Regarding Inventory Levels or Monitoring

Similarly ineffectual is the throwaway assertion that Plantronics made false "claims of inventory monitoring."  Opp. at 7.  The only mention of "inventory monitoring" Plaintiffs cite is the statement (in the Company's 10-Qs and 10-K) that "[c]ustomer sales returns are estimated based on historical data, relevant current data, and the monitoring of inventory build-up in the distribution channel."  SAC ¶ 130 (emphasis omitted); *see also id.* ¶¶ 143, 153.[8]  But the SAC contains no facts showing that statement was inaccurate – *i.e.*, Plaintiffs do not dispute that estimated sales returns *were* based on, *inter alia*, "the monitoring of inventory."  *See* Mot. at 17.

The Opposition's only real response is to argue that Mr. Boynton later "admitted" that Plantronics had "limited to no visibility" into inventory levels.  Opp. at 14.  Not only was there no such "admission," Plaintiffs ignore that they *allege* the *opposite* in the SAC: that Plantronics had "crystal-clear visibility" into channel inventories and "closely monitored its channel partners' inventory."  SAC ¶¶ 222, 224 (emphasis omitted); *see also* Mot. at 17.  Needless to say, Plaintiffs cannot salvage the claim with arguments flatly contradicted by their own pleading.[9]

### D.    Plaintiffs Cannot Justify Their Effort to Base a Claim on Puffery

Apart from failing to show falsity, Plaintiffs are unable to dispute that many of the challenged statements are the types of comments routinely found to be puffery (Mot. at 18-19 & n.14), and they make no real effort to address the cases cited by Defendants.  *See id.*  Instead,

---

[7] *See also In re Align Tech., Inc. Sec. Litig.*, 2021 WL 1176642, at *7 (N.D. Cal. Mar. 29, 2021) (statement that company experienced "some slowdown" was not equivalent to saying "I knew it all along"); *Yaron*, 2020 WL 6750568, at *9 (post-class period statement that discounted orders "have been growing and moving us away from natural market demand" did not "suggest that channel stuffing had a negative impact during the Class Period") (citation omitted).

[8] The Opposition inexplicably refers to additional paragraphs (Opp. at 7, citing SAC ¶¶ 133, 137, 144, 149, 154, 157, 163, 164, 175, 177, 178) that say nothing about inventory monitoring.

[9] And even if visibility had been "limited," that would not have been inconsistent with anything said regarding inventory monitoring.  *See, e.g.*, *City of Sunrise*, 2019 WL 6877195, at *12.

REPLY MEM. IN SUPPORT OF
MOTION TO DISMISS SAC
NO. 4:19-cv-07481-JST

Plaintiffs posit that unspecified comments "assume[] an underlying fact" and "contain embedded facts or opinions." Opp. at 15. That contention is devoid of supporting analysis and reflects a misunderstanding of the law. Where, as here, claims are based on generalized statements incapable of objective verification – *e.g.*, "uniquely positioned," "a more integrated and seamless experience," "strong … growth," "solid results," "strength in execution," "top line momentum" (Mot. at 18-19) – allegations of inaccuracy are irrelevant. *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 925 (N.D. Cal. 2017); *see also Waterford Twp.*, 321 F. Supp. 3d at 1148-49. As a matter of law, such statements "are not actionable … because no reasonable investor would rely on" them. *Lopes*, 2020 WL 1465932, at *6. The Opposition provides no authority to the contrary.[10]

## III.   THE OPPOSITION CONFIRMS THAT SCIENTER IS LACKING

By abandoning any claim of illicit channel stuffing or "intrinsically improper transactions" (Opp. at 16), Plaintiffs concede that the SAC's primary theory of scienter is unavailing. *See* Mot. at 19-21. And despite claiming that Defendants acted with scienter by not disclosing "changed sales practices" (Opp. at 16), Plaintiffs cannot identify facts showing that Mr. Burton, Ms. Strayer or Mr. Boynton knew or believed that any undisclosed information contradicted the challenged statements. *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019).

### A.   Plaintiffs' Arguments Cannot Salvage the Deficient FE Allegations

Plaintiffs' argument begins by citing FE2's account of what Mr. Burton allegedly said in March 2017 (Opp. at 16-17), but they again ignore that the Court has already held the comments are not suggestive of impropriety. *See* Order at 13. By making no effort to address that holding, Plaintiffs concede that FE2's allegations are not "indicative of scienter." *Zucco*, 552 F.3d at 995.

Plaintiffs go on to argue that FE6 attended a meeting with Mr. Burton and Ms. Strayer in which "the new sales practice and its problematic impact were discussed." Opp. at 17 (citing SAC ¶¶ 99-101). The cited paragraphs of the SAC, however, say no such thing: there is *no*

___

[10] The cases cited by Plaintiffs (Opp. at 15) do not help them. In *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1014-15 (N.D. Cal. 2020), the statements referred to historical "revenue results" and thus made a representation of an objectively verifiable fact. The citation to *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021), is mystifying. While *Wochos* noted that opinions may be actionable if they misrepresent material facts (*id*. at 1188-89), that has no relevance to the puffery here, which is non-actionable *precisely* because it does *not* address objective or historical facts. *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014).

reference to a "new sales practice" or its "impact."  Rather, those paragraphs aver that unspecified "concerns were raised" regarding inventory levels, which – as this Court explained in addressing FE6's allegations previously – "neither identifies any specific alleged channel-stuffing transactions nor bears any connection to an alleged desire to artificially inflate sales."  Order at 14; *see also Elec. Workers Pension Fund, Local 103, I.B.E.W. v. HP Inc.*, 2021 WL 4199273, at *8 (N.D. Cal. Sept. 15, 2021) (FE "statements regarding inventory pushing and discounting were not themselves indicative of scienter").  Once more, Plaintiffs simply ignore this Court's ruling.

The claim that "FE7 explains how Loebbaka implemented Burton's sales practices by … driving up unsustainable amounts of channel inventory" (Opp. at 17, citing SAC ¶¶ 93-97) is another misrepresentation of the SAC.  The cited paragraphs *do not even mention* Mr. Burton, let alone implicate him in "sales practices."  Nor does FE7 provide facts to show "unsustainable" inventory levels; at most, FE7 avers that unspecified distributors saw inventories increase at unstated times (SAC ¶ 94), one of them supposedly complained (again, at an unstated time) about "too much product" (*id*. ¶ 96), and FE7 "heard" (from unknown sources) "suggestions" that Mr. Loebbaka might have "engag[ed] in channel stuffing" (*id*. ¶ 58).  Those nebulous averments are neither based on personal knowledge nor indicative of scienter.  *See Sayce*, 2021 WL 4594768, at *8-9.  In short, FE7's allegations may be "high on alarming adjectives … [b]ut they are short on the facts."  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 416 (9th Cir. 2020).  Plaintiffs also fail to show that FE7 (who alleges no interactions with Mr. Burton, Ms. Strayer or Mr. Boynton) can offer facts "indicat[ing] Individual Defendants' mental states."  *HP Inc.*, 2021 WL 4199273, at *8.

Similarly, the Opposition cannot dispute that FE8 and FE9: (1) had no dealings or communications with Mr. Burton, Ms. Strayer or Mr. Boynton; and (2) do not claim to have personal knowledge of what the Individual Defendants knew at any point in time.  *See* Mot. at 22.  Thus, FE8 and FE9 do nothing to show the Individual Defendants' awareness of channel stuffing or contemporaneous knowledge of other facts inconsistent with a challenged statement.  *See Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 675-76 (N.D. Cal. 2021); *see also Yaron*, 2020 WL 6750568, at *9 ("[n]one of the confidential witnesses knew the individual defendants, interacted with them, or communicated any information to them about bulk

pricing and its effect on demand," and therefore failed to plead scienter).[11]

**B.      The Opposition Fails to Show that the ERM Allegations Plead Scienter**

The Opposition devotes several pages to the ERM process (Opp. at 19-22) but identifies no facts demonstrating Defendants' knowledge of information contradicting any statement. Rather, Plaintiffs repeat vague allusions to unspecified ERM "updates" and "interim findings," and references to a "draft" report supposedly "circulated" to Mr. Burton and Mr. Boynton at an unstated time ("no later than Summer 2019"). Opp. at 20. The Opposition is thus unable to cite facts showing: (1) *what* specific information was purportedly communicated to each Individual Defendant in the alleged "updates" and "draft[s]"; (2) *when* specific information was actually communicated; and (3) *why* it contradicted particular statements. *See Iron Workers Local 580 Joint Funds*, 522 F. Supp. 3d at 674-75 (no scienter where "Plaintiffs do not adequately tie the specific contents of any of these data sources to particular statements so as to plausibly show that the Defendant who made each specified statement knowingly or recklessly spoke falsely").[12]

Indeed, the Opposition's characterization of the ERM allegations underscores their insufficiency. Plaintiffs repeatedly claim that channel stuffing was identified as a "risk," but assiduously avoid alleging that Mr. Burton, Mr. Boynton or anyone else was *ever* told it was actually occurring or that it rendered any statement misleading. The absence of such facts dooms any effort to plead scienter. *See In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *14 (N.D. Cal. Nov. 23, 2021) (alleged "knowledge of the risks faced by" the company is "insufficient to establish at any point that defendants had actual knowledge" those risks had materialized).[13]

_____

[11] Recognizing the deficiencies of the FE allegations, Plaintiffs offer a straw man: arguing that the SAC describes each FE's title, tenure, duties and reporting responsibilities. Opp. at 23. But the obligation to furnish such foundational information is independent of Plaintiffs' *further burden* to show personal knowledge and that each FE's allegations are indicative of scienter. *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1148-49 (N.D. Cal. 2017) (FE allegations were inadequate despite "sufficient" descriptions of each FE's background and role at the company).

[12] *See also Nguyen*, 962 F.3d at 416 ("[N]egative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient to meet the heightened pleading requirements of the PSLRA.") (citation omitted); *Paciga v. Invuity Inc.*, 2019 WL 3779694, at *6 (N.D. Cal. Aug. 12, 2019) (meetings and reports did not establish scienter where plaintiff failed to "identify specific negative information" contradicting challenged statements, or defendants' knowledge of such information).

[13] The Opposition's citation to *In re Alphabet, Inc. Sec. Litig.*, 1 F. 4th 687, 706 (9th Cir. 2021), further confirms the insufficiency of the SAC's allegations. In *Alphabet*, plaintiff alleged the

In a last-ditch attempt at obfuscation, Plaintiffs suggest erroneously that "Defendants ask the Court to infer they neither reviewed drafts of the ERM reports … nor were informed about them." Opp. at 24. Defendants make no such argument; rather, they that *Plaintiffs have not met their burden* to plead facts showing what specific information was conveyed to Defendants in the ERM process, when it was conveyed, how it was conveyed, or why it shows that Defendants knew any statement was false. Mot. at 22-23; *see also Yaron*, 2020 WL 6750568, at *9. The Opposition's inability to address Defendants' actual argument confirms the SAC's insufficiency.

**C.      Plaintiffs' Repeated Mischaracterization of Mr. Boynton's Post-Class Period Statements Is Further Confirmation that the SAC Fails to Plead Scienter**

The claim that Mr. Boynton "admitted" after the Class Period that he "knew" in March 2019 that the "predictability of Plantronics' future sales [] was non-existent" (Opp. at 17) is pure fiction, for the reasons discussed previously. *See* Sec. II.B.3, *supra*; *see also Lopes*, 2020 WL 1465932, at *11. Moreover, Plaintiffs' entire argument is a *non sequitur*. The Opposition stresses that this case is based on the theory that Plantronics failed to disclose that its results were "achieved only" by channel stuffing. Opp. at 7. But Plaintiffs cannot show that alleged awareness of a lack of "predictability of future sales" has anything to do with knowledge of channel stuffing – much less knowledge that such a practice was inconsistent with specific statements regarding Plantronics' results. *See Sayce v. Forescout Techs., Inc.*, 2021 WL 1146031, at *8 (N.D. Cal. Mar. 25, 2021) (no scienter where "admissions" that defendants had knowledge of the company's "pipeline" and "big deals" were not shown to contradict challenged statements). Nor would such an "admission" contradict statements that the Company monitored inventory (*see* Sec. II.C, *supra*) or establish any Defendant's knowledge of a contradiction. *See Norfolk Cnty. Ret. Sys.*, 2018 WL 3126393, at *9.[14]

_____

specific contents of an internal memorandum, when and how that precise information was conveyed to the individual defendant, and how it contradicted particular statements. *Id.* at 705-06. Those are precisely the types of facts absent from the SAC in this case. *See also In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145-46 (9th Cir. 2017) (allegations were sufficiently detailed to show contemporaneous knowledge of facts contradicting statements).

[14] Plaintiffs' citation to *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, 2021 WL 4397946 (S.D. Ohio Sept. 27, 2021), illustrates the SAC's deficiencies. Unlike the present case, plaintiffs in *Cardinal Health* were able to plead that defendants made representations touting a

### D. Cursory References to Departures Do Not Support an Inference of Scienter

The Opposition makes only a half-hearted attempt to argue that the departures of Mr. Burton and Mr. Loebbaka contribute to an inference of scienter (Opp. at 22), with no real effort to show that Plaintiffs have met their burden of "alleg[ing] sufficient information to differentiate between a suspicious change in personnel and a benign one." *Zucco*, 552 F.3d at 1002. In fact, the Opposition does little more than assert "[t]hese were not retirements or just ordinary termination patterns" (Opp. at 22), without citing facts to support that conclusion. Absent such facts, reliance on the departures "raises only speculation" and does not support a strong inference of scienter. *Sakkal v. Anaplan, Inc.*, 2021 WL 3885987, at *7 (N.D. Cal. Aug. 31, 2021).[15]

### E. The Opposition Has No Answer to the Facts Refuting Scienter

Finally, Plaintiffs' inability to offer any meaningful response to the facts undermining an inference of scienter (Mot. at 24-25) bolsters the conclusion that the SAC must be dismissed pursuant to *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).

*Absence of stock sales*. Plaintiffs argue that Class Period stock sales are not necessary to plead scienter (Opp. at 25 n.23), but do not dispute that the absence of such sales weighs against an inference of fraud. *See* Mot. at 24 (citing cases). That is especially true where, as here, *Plaintiffs themselves* claim Defendants made misstatements to "artificially inflate[]" Plantronics' stock price (SAC ¶ 237; *see also* Mot. at 24) – a point the Opposition does not even try to address.

*ERM process*. The Opposition does not contest that Mr. Boynton's alleged decision to "sponsor" the ERM process (SAC ¶ 120), Mr. Burton's instruction that all employees cooperate (*id.*), and fully sharing information with PwC (*id.* ¶ 121) all cut against scienter. Mot. at 24.

*PwC*. Plaintiffs argue that allegations regarding PwC's "sign-off" do not necessarily "negate" scienter (Opp. at 19), but that misses the point. Under *Tellabs*, the Court must consider

---

specific methodology for tracking inventory, while particular internal reports established knowledge of a "dark period" directly contradicting the representations. *Id.* at *16.

[15] By contrast, the cases cited by Plaintiffs (Opp. at 22) involved the types of specific facts absent from the SAC. *See In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 976 (N.D. Cal. 2009) (tying three defendants' departures to a restatement as well as SEC and internal investigations); *Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397, at *11 (W.D. Wash. Dec. 29, 2008) (facts showing that the Audit Committee concluded defendants participated directly in transactions necessitating a financial restatement, and defendants were fired by the Board of Directors).

inferences weighing against fraudulent intent, and Plaintiffs cannot dispute that the PwC allegations are "inconsistent with an inference of scienter." *See* Mot. at 24. Even the case that Plaintiffs cite (Opp. at 19) notes that "[a] clean audit opinion may possibly support the conclusion that defendants did not act with scienter," particularly if information is not "hidden from the auditor." *In re Diamond Foods, Inc. Sec. Litig.*, 2012 WL 6000923, at *8 (N.D. Cal. Nov. 30, 2012). In that regard, it is significant that the SAC does not contend *any* information was withheld from PwC (Mot. at 24) – another point Plaintiffs do not dispute.

*Class period disclosures*. Plaintiffs make no effort to controvert that Plantronics' Class Period disclosures "undermine[] an inference of a deliberate omission." Mot. at 24 (quoting *McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143, at *23 (N.D. Cal. Aug. 7, 2019)).

*Implausibility*. Plaintiffs have no real response to the implausibility of their theory that Defendants engineered a fifteen-month channel stuffing scheme (*see* Mot. at 25), particularly given the SAC's claim that the "scheme" was inherently "unsustainable." *See, e.g.*, SAC ¶¶ 237, 240; *see also Nguyen*, 962 F.3d at 415. The Opposition does little more than speculate about Defendants' potential motives (*see* Opp. at 25), but such speculation cannot transform Plaintiffs' implausible theory into a "cogent" and "compelling" one. *See Tellabs*, 551 U.S. at 323-24.

## IV.    CONCLUSION

The Opposition confirms Plaintiffs' inability to plead that any statement was false or made with scienter. Additionally, Plaintiffs do not suggest they could plead additional facts if given further leave to amend. The SAC should therefore be dismissed with prejudice.

Dated: December 13, 2021

WILMER CUTLER PICKERING HALE AND
DORR LLP

By:    */s/ Kevin P. Muck*
        Kevin P. Muck

*Attorneys for Defendants Plantronics, Inc., Joseph Burton, Charles Boynton and Pamela Strayer*