**HAGENS BERMAN SOBOL SHAPIRO LLP**
LUCAS E. GILMORE (250893)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com

*Counsel for Lead Plaintiff Ilya Trubnikov and*
*Co-Lead Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER**
 **& GROSSMANN LLP**
LAUREN A. ORMSBEE (*admitted pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile:(212) 554-1444
lauren@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension*
*Fund and Co-Lead Counsel for the Class*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE PLANTRONICS, INC. SECURITIES LITIGATION | No. 4:19-cv-07481-JST<br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY RELEVANT TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT** |

Pursuant to Local Rule 7-3(d), Lead Plaintiffs Ilya Trubnikova and Roofers' Pension Fund respectfully submit the attached recent decision of the United States Court of Appeals for the Second Circuit in *In re Hain Celestial Group, Inc. Sec. Litig.*, No. 20-1517, 2021 WL 5979098 (2d Cir. Dec. 17, 2021), which is relevant to the disposition of Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 97) (the "Motion"), but issued after the filing of Lead Plaintiffs' Opposition to the Motion, dated November 5, 2021 (ECF No. 103).

DATED: December 21, 2021

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Lucas E. Gilmore*
Reed R. Kathrein (139304)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (admitted *Pro Hac Vice*)
Karl P. Barth (admitted *Pro Hac Vice*)
Craig Speigel
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
karlb@hbsslaw.com

*Counsel for Lead Plaintiff Ilya Trubnikov
and Lead Counsel for the Class*

2
NOTICE OF SUPPLEMENTAL AUTHORITY
Case No.: 4:19-cv-07481-JST

DATED: December 21, 2021

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**

*/s/ Lauren A. Ormsbee*
Lauren A. Ormsbee (*admitted pro hac vice*)
Alexander T. Payne (*admitted pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile:(212) 554-1444
lauren@blbglaw.com
alex.payne@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension
Fund and Lead Counsel for the Class*

NOTICE OF SUPPLEMENTAL AUTHORITY
Case No.: 4:19-cv-07481-JST

**ATTESTATION PURSUANT TO LOCAL RULE 5-1(I)(3)**

I, Lucas E. Gilmore, am the ECF User whose identification and password are being used to file this document.  Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of the document has been obtained from each of the other signatories.

DATED:  December 21, 2021

　　　　　　　　　　　　　　　　 _/s/ Lucas E. Gilmore_
　　　　　　　　　　　　　　　　 LUCAS E. GILMORE

NOTICE OF SUPPLEMENTAL AUTHORITY
Case No.: 4:19-cv-07481-JST

**2021 WL 5979098**
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

IN RE: The HAIN CELESTIAL GROUP,
INC. SECURITIES LITIGATION
Salamon Gimpel, Rosewood Funeral
Home, Lead Plaintiffs-Movants-Appellants,
James Spadola, Rodney
Lynn, Consolidated Plaintiffs,
Bradley D. Flora, Individually and on behalf
of all others similarly situated, Plaintiff
v.
The Hain Celestial Group, Inc., Irwin D.
Simon, Pasquale Conte, John Carroll,
Stephen J. Smith, Defendants-Appellees.

Docket No. 20-1517
|
August Term, 2021
|
Argued: September 27, 2021
|
Decided: December 17, 2021

**Synopsis**
**Background:** Stockholders brought securities fraud action against corporation and four of its present or former officers, alleging that defendants had defrauded investors by making public statements attributing corporation's growing sales levels to strong consumer demand without disclosing the true facts that demand for its products was declining due to increased competition, and that corporation achieved its level of sales through "channel stuffing," which involved offering large and unsustainable incentives to customers to buy more product than needed before end of each financial quarter. The United States District Court for the Eastern District of New York, Arthur D. Spatt, J., 2020 WL 1676762, granted defendants' motion to dismiss for failure to state a claim. Stockholders appealed.

**Holdings:** The Court of Appeals, Leval, Circuit Judge, held that:

[1] success of stockholders' securities fraud claim based on misleading statements or omissions did not depend on

whether the alleged "channel stuffing" practices themselves were fraudulent or otherwise illegal, and

[2] in considering scienter element of securities fraud claim, District Court was required to consider the cumulative effect of the stockholders' circumstantial allegations of scienter together with the pleaded facts relating to motive and opportunity.

Vacated and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim.

West Headnotes (3)

**[1]** **Securities Regulation**

Conclusion that corporation's practice of "channel stuffing," which involved offering large and unsustainable incentives to customers to buy more product than needed before end of each financial quarter, did not constitute a fraudulent device, scheme, artifice, act, practice, or course of business, for purposes of securities fraud claim under subsections of rule requiring use of fraudulent or deceptive device, scheme, artifice, act, or practice, was not dispositive of stockholders' securities fraud claim under separate subsection of rule based on corporation's and officers' misleading statements and omissions regarding cause of corporation's alleged high sales volume; success of latter claim did not depend on whether channel stuffing practices themselves were fraudulent or illegal. 17 C.F.R. § 240.10b-5(b).

**[2]** **Securities Regulation**

Subsection of rule allowing securities fraud claim against corporation and its officers based on misleading statements or omissions does not require that conduct underlying a purportedly misleading statement or omission amount to a fraudulent scheme or practice. 17 C.F.R. § 240.10b-5(b).

**[3]    Securities Regulation** 🗝

In assessing sufficiency of stockholders' allegations of scienter, as element of securities fraud claim based on corporation's and its officers' misleading statements as to cause of corporation's high sales volume, district court was required to consider the cumulative effect of the stockholders' circumstantial allegations of scienter together with the pleaded facts relating to motive and opportunity, rather than considering those allegations separately. 17 C.F.R. § 240.10b-5(b).

Appeal from the United States District Court for the Eastern District of New York (Arthur Spatt, J).

**Attorneys and Law Firms**

David J. Goldsmith, New York, NY (Jonathan Gardner, Carol C. Villegas, Christine M. Fox, Labaton Sucharow LLP, New York, NY, on the brief), for Lead Plaintiffs-Movants-Appellants Rosewood Funeral Home and Co-Lead Counsel for the Class.

Robert V. Prongay, Los Angeles, CA (Jonathan M. Rotter, Leanne Heine Solish, Glancy Prongay & Murray LLP, Los Angeles, CA, on the brief), for Lead Plaintiffs-Movants-Appellants Salamon Gimpel and Co-Lead Counsel for the Class

John M. Hillebrecht, New York, NY (Marc A. Silverman, DLA Piper LLP, New York, NY, on the brief), for Defendants-Appellees.

Before: LEVAL, SACK, and PARK, Circuit Judges.

**Opinion**

LEVAL, Circuit Judge

Lead Plaintiffs, Salamon Gimpel and Rosewood Funeral Home ("Plaintiffs"), appeal from the dismissal with prejudice of their securities fraud claims brought against The Hain Celestial Group, Inc. ("Hain") and four of its present or former officers, Irwin Simon,[1] Pasquale Conte,[2] John Carroll,[3] and Stephen Smith[4] (the "Individual Defendants," collectively with Hain, the "Defendants"). Plaintiffs asserted

claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b–5. The Second Amended Complaint ("SAC" or the "Complaint"), which is the operative complaint for this appeal, alleged essentially that Defendants had defrauded investors by making public statements attributing Hain's growing sales levels to strong consumer demand without disclosing the true facts that demand for its products was declining due to increased competition, and that Hain achieved its level of sales through "channel stuffing," whereby valuable and unsustainable sales incentives—including price reductions and grants of an absolute right to return unsold merchandise—were given near the end of each quarter to Hain's largest distributors to induce them to buy more product than needed so that Hain would meet its quarterly sales targets and analysts' estimates. Plaintiffs also claimed that—separate from these purportedly misleading representations—Defendants' use of these practices constituted an unlawful scheme to defraud investors. Finally, the SAC included a control person liability claim against the Individual Defendants under Section 20(a) of the Exchange Act.

**\*2** Defendants moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claim, advancing various arguments, including failure to sufficiently allege scienter, actionable misstatements, and a fraudulent scheme or business practice. The late District Judge Arthur Spatt, in a characteristically conscientious and fastidious opinion, granted the motion in its entirety and dismissed the action with prejudice. Plaintiffs brought this appeal.

### BACKGROUND

Hain manufactures and sells health food products in the United States and several other countries. Plaintiffs are entities and individuals who acquired interests in publicly traded common stock in Hain during the period from November 5, 2013 through February 10, 2017 (the "Class Period"). We summarize below the allegations of the Complaint. For the purposes of this appeal, we are required to treat these factual allegations as true, drawing all reasonable inferences in favor of Plaintiffs to the extent that the inferences are plausibly supported by allegations of fact. We will therefore recite the substance of the allegations as if they represented true facts, with the understanding that these are

not findings of the court, as we have no way of knowing at this stage what are the true facts.

#### i. *The Alleged Scheme*

The Complaint alleges that, in the early 2010s, Hain experienced growing competition in the health food market, as other brands and chain retailers began offering their own selections of natural and organic foods. As a result of this increasing competition, demand for Hain's products weakened and Hain risked failing to meet its sales projections. In order to boost its quarterly sales figures and meet its projections, Hain resorted to what the Complaint describes as fraudulent and illegal "channel stuffing" (also referred to as "loading"), whereby valuable sales concessions were offered to Hain's largest customers as incentives to buy more product than needed before the end of each financial quarter, in order to enable Hain to meet its revenue targets and Wall Street's projections. Through this practice Hain achieved unsustainably inflated quarterly sales results. In 2016, when distributors refused to buy more product despite Hain's offered incentives, Hain's sales and stock price fell.

During the Class Period, Hain's largest customer—accounting for 12% of net sales—was United Natural Foods, Inc. ("UNFI"), a product distributor. The concessions to UNFI and other large distributors were extra-contractual and were not adequately documented or reflected in Hain's books and records. The concessions included: (1) cash incentives as high as $500,000 for a single distributor in a single quarter; (2) product discounts of up to 20%; (3) extended payment terms; and, most significantly, (4) an absolute right to return unsold product. "[M]ore than 15% of Hain's quarterly sales were made in the final month of each quarter from UNFI." Joint Appendix ("App'x") at 251:¶369 (emphasis removed).

The Individual Defendants orchestrated and concealed the channel stuffing scheme. Notwithstanding the Defendants' awareness of the scheme and its role in achieving Hain's sales results, the Defendants made repeated public statements attributing Hain's growth in sales numbers to "strong consistent consumer demand" and other "organic" factors, *id.* at 213:¶257, 214:¶260, 216:¶266, while failing to disclose the unsustainable channel stuffing practices and how they artificially inflated sales figures.

**\*3** Carroll, the CEO of Hain North America, would review Hain's sales numbers so that he "would know of the sales shortfalls before negotiating the concessions with UNFI." *Id.* at 252:¶372. "Carroll then provided an incentive for

UNFI to take the amount of Hain's inventory necessary for Hain to meet its quarterly sales revenue numbers." *Id.* On internal sales calls, Carroll acknowledged having made these concessions. *Id.* Simon, Hain's CEO, would negotiate sales concessions directly with UNFI's owner and could "always make [UNFI] buy more if needed." *Id.* at 252:¶373.

Hain's Chief Operations Officer, James Meiers (who is not a named defendant) would work with his team to "creativ[ely]" account for the sales concessions, *id.* at 170:¶86, including by booking credits given to distributors as accruals, *i.e.*, "as money that distributors owed Hain," *id.* at 169:¶83. The "size of the accruals" was "correlat[ed]" to "how Hain was doing in a particular quarter." *Id.* at 170:¶85. Smith and Conte, in their capacities as CFO, signed off on Hain's accounting statements and certified their accuracy to the public. Employees who questioned the accounting practices were told to stop asking questions, *id.* at 175:¶104, 177:¶113, and employees who continued asking questions were fired, *id.* at 176:¶108.

#### ii. *The Alleged Scheme Comes to an End*

The channel stuffing scheme continued from 2013 until 2016, and ended only when distributors refused to take additional inventory and Hain opened an internal investigation into its financial reporting.

On August 15, 2016, less than a year after hiring a new Treasurer, James Langrock, Hain announced that it was opening an internal investigation into whether it had properly accounted for the revenue associated with the sales concessions, and whether Hain had adequate internal controls over its financial reporting. Ernst & Young, Hain's outside auditor, also commenced an independent audit. As a result, Hain delayed the filing of its financial results for the 2016 financial year. Hain's stock price fell by over 26% on the news.

On February 10, 2017, the final day of the Class Period, Hain announced it had expanded the scope of its internal investigation to encompass its historical financial results, and that the Securities and Exchange Commission ("SEC") was also investigating. Hain's stock price fell a further 8%.

#### iii. *Hain Restates Its Financials and Admits Weaknesses in Internal Controls*

On June 22, 2017, Hain filed its Form 10-K for the 2016 financial year. It identified "material weaknesses in [its] internal control[s] over financial reporting" as of June 30,

2016. App'x at 186. Specifically, Hain noted that its "control environment did not sufficiently promote effective internal control over financial reporting," and that its "internal controls to identify, accumulate and assess the accounting impact of certain concessions or side agreements on whether [its] revenue recognition criteria had been met were not adequately designed or operating effectively." *Id.* Hain further admitted that its documentation of agreements had been inadequate. *Id.* Hain revised its financial results for the 2014 and 2015 financial years, as well as the first three quarters of the 2016 financial year. According to the revisions, Hain's "net sales were overstated by 2.1%, 2.9% and 1.9% in fiscal 2014, fiscal 2015 and for the 9 months ended March 31, 2016, respectively." *Id.* at 187:¶149. These revisions were the result of: "(i) improperly recognized revenue related to the timing of trade and promotional accruals, (ii) prematurely recognized revenue on certain sales; and (iii) improperly classified promotion expenses." *Id.* at 145:¶11.

#### iv. *The SEC's Investigation*

 **\*4**  The SEC completed its investigation in December 2018 and reached a settlement with Hain, concluding that "[f]rom at least 2014 until May 2016, Hain U.S. sales personnel gave sales incentives to certain distributors to promote sales at the end of quarters." *Id.* at 279. While the terms of the settlement included statements that none of those sales incentives were "improper," *id.* at 280, and that "[t]he vast majority of the products purchased in connection with [end-of-quarter] sales to [UNFI] ultimately sold through to retailers," *id.* at 281, the SEC also determined that the incentives "had potential accounting implications," *id.* at 279, that some sales agreements "were not appropriately documented," *id.* at 281, and that Hain had "insufficient policies and procedures to monitor [the sales] incentives ... which could have potential revenue recognition implications," *id.*

While the settlement did not include charging Hain with securities fraud, it did declare that Hain had "violated Section 13(b)(2)(A) of the Exchange Act, which requires Hain to make and keep books, records and accounts which, in reasonable detail, accurately and fairly reflect Hain's transactions and disposition of assets," and had also violated "Section 13(b)(2)(B) ... which requires Hain to devise and maintain a system of internal accounting controls ...." *Id.* at 284.

#### v. *Procedural History*

On August 17, 2016, three plaintiffs filed separate securities fraud actions against Hain. The district court consolidated the cases and appointed Lead Plaintiffs. On September 7, 2017, Plaintiffs filed a Corrected Consolidated Class Action Complaint for Violations of Federal Securities Laws ("CAC"), adding additional individual defendants. The CAC asserted claims against all Defendants under Exchange Act § 10(b) and Rule 10b-5, as well as against the Individual Defendants under § 20(a) as control-persons.

Defendants moved to dismiss the CAC for failure to state a claim. The district court issued an order directing the parties to submit additional briefing on whether and how Plaintiffs' claims would be affected if the court found that Plaintiffs had failed to adequately plead that the channel stuffing was a violation of law.

After receiving the additional briefing, the court granted Defendants' motion to dismiss without prejudice and granted Plaintiffs leave to amend their complaint. Plaintiffs then filed the SAC asserting additional factual matter, including statements from two new confidential witnesses who had worked at Hain, to support the claims described above.

Defendants again moved to dismiss for failure to state a claim. Defendants argued that the Complaint failed to adequately allege both violations of the terms stated in Rule 10b-5 and wrongful state of mind. In response, Plaintiffs stressed that the thrust of their complaint was not the illegality of the channel stuffing as a fraudulent scheme or practice under Rule 10b-5(a) and (c), but rather that the Defendants' statements that their sales were attributable to strong consumer demand while omitting any mention of the channel stuffing were materially misleading, as prohibited by Rule 10b-5(b). The District Court granted Defendants' motion with prejudice, finding insufficient allegations both of violation of the terms of Rule 10b-5(a)-(c), and of wrongful state of mind. Plaintiffs brought this appeal.

### DISCUSSION

Plaintiffs have appealed from the district court's ruling with respect to the sufficiency of the Complaint's allegation of a violation of SEC Rule 10b-5(b). They have not appealed from the dismissal of the Complaint's allegations of violation of clauses (a) and (c) of the Rule.

Our court has said that a plaintiff pleading a violation of Rule 10b-5(b) "must plausibly allege: (1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019) (internal quotation marks and alterations omitted).

**\*5** Assessing Plaintiffs' arguments requires attention to the differences among clauses (a), (b), and (c). The rule prohibits three different things (if done "in connection with the purchase or sale of any security" and in a manner that brings the conduct within the Commerce Clause power of the United States Congress). Clause (a) prohibits the "employ[ment of] any device, scheme, or artifice to defraud." 17 C.F.R. § 240.10b–5(a). Clause (c), in very similar terms, prohibits "engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." *Id.* at § 240.10b–5(c). These two sections of the Rule thus require use of a fraudulent or deceptive device, scheme, artifice, act, or practice.

**[1]** Clause (b) is significantly different. It focuses not on schemes, devices, or practices, but on statements made. This clause renders it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b). The first part of the clause asks whether the speaker made an untrue statement of a material fact. The second part asks whether the speaker omitted to state a material fact in circumstances where that omission rendered misleading the things that were said. Violation of clause (b), unlike violations of clauses (a) and (c), does not require that the defendant have used a fraudulent or otherwise illegal device, scheme, artifice, act, practice, or course of business. Its focus is rather on whether something said was materially misleading, either because it included a false statement of a material fact or because it omitted to state a material fact which omission rendered the things said misleading. The district court mistakenly imported the requirement of clauses (a) and (c) of a fraudulent scheme or practice into clause (b), which includes no such requirement.

In its ultimate consideration of the motion to dismiss, the district court first analyzed whether the Complaint satisfactorily pleaded a violation of clauses (a) and (c). It found that the practice of channel stuffing—increasing sales by offering unsustainable incentives to customers—was not inherently fraudulent. It thus concluded that the channel stuffing allegations failed to assert a violation of those clauses because those practices were not, in themselves, fraudulent or illegal.

In then considering whether the Complaint alleged a violation of clause (b) the court reasoned that it "fails because its predicate is the illegitimacy of the channel stuffing practices the Court already found to be legitimate." *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2020 WL 1676762, at \*12 (E.D.N.Y. Apr. 6, 2020). The court explained that "[s]ubsections (a) and (c) do not prohibit offering such incentives, so that the Lead Plaintiffs cannot assert that subsection (b) required their disclosure.... [T]he Defendants were under no generalized obligation to disclose wholly legal sales incentives simply because the Lead Plaintiffs allege those incentives to be unsustainable." *Id.*

**[2]** This reflects a misunderstanding of the requirements of clause (b), as well as of Plaintiffs' theory. The district court's conclusion that the Complaint could not succeed under clauses (a) or (c) because the channel stuffing did not constitute a fraudulent device, scheme, artifice, act, practice, or course of business (a question we do not consider as Plaintiffs have not appealed from dismissal of the Complaint under those clauses) is not dispositive of Plaintiffs' Rule 10b-5(b) claim. As noted above, clause (b) does not require that conduct underlying a purportedly misleading statement or omission amount to a fraudulent scheme or practice.

**\*6** The theory of the Complaint in reference to clause (b) was that Defendants made statements attributing Hain's high sales volume to strong consumer demand, while omitting to state that increased competition had weakened consumer demand and that Hain's high sales volume was achieved in significant part by the offer of unsustainable channel stuffing incentives. The success of such a complaint in alleging a violation of clause (b) does not depend on whether the alleged channel stuffing practices themselves were fraudulent or otherwise illegal. In light of the district court's error as to the requirements of Rule 10b-5(b), we vacate its decision that the Complaint failed to satisfy the Rule.

**[3]** The district court also found the Complaint deficient with respect to its allegation of wrongful state of mind, *i.e.*, scienter. We vacate that ruling as well.

The district court's mistaken understanding of the substance of the alleged offense inevitably affected the district court's view of whether it was done with scienter. As the district court found that the conduct alleged to be wrongful was not wrongful at all, it would be incongruous for the court to have concluded that it was done with a wrongful state of mind.

Furthermore, the court erred in failing to weigh Plaintiffs' scienter allegations as a whole. The court considered the cumulative weight of Plaintiffs' circumstantial allegations of scienter, which included, *inter alia*, the Individual Defendants' knowledge of and involvement in the channel stuffing practices; Hain's inadequate internal controls and inaccurate financial reporting; and suspicious terminations, resignations, and demotions of senior employees. These allegations, the court found, "came quite close" to supporting a strong inference of scienter. *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2020 WL 1676762, at *15 (internal quotation marks omitted). Separately, the court considered Plaintiffs' allegations with respect to the Individual Defendants' motive and opportunity to commit fraud, including high-volume insider trading activity by Simon and Carroll during the Class Period. The court failed, however, to assess the total weight of the circumstantial allegations *together with* the allegations of motive and opportunity. This was error. *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198-99 (2d Cir. 2009) (explaining that the strength of circumstantial allegations required to plead scienter varies depending on whether there are also allegations of motive and opportunity on the part of corporate officers to commit fraud). On remand, the district court should independently reassess the sufficiency of the scienter allegations, considering the cumulative effect of the circumstantial allegations of intent together with the pleaded facts relating to motive and opportunity. We express no views on whether, when weighed cumulatively, these allegations are sufficient to plead scienter.

By reason of the death of Judge Spatt, the case must be reassigned to a new judge upon remand. The newly assigned judge should consider afresh whether the Complaint adequately stated a claim under Rule 10b-5(b).

## CONCLUSION

For the foregoing reasons, the judgment is VACATED and the case is REMANDED for reconsideration of Defendants' motion to dismiss the Second Amended Complaint.

**All Citations**

--- F.4th ----, 2021 WL 5979098

## Footnotes

1    Simon, Hain's founder, served as President, Chief Executive Officer ("CEO"), and Chairman of the Board until June 2018.

2    Conte was Chief Financial Officer ("CFO") and Executive Vice President of Finance from September 2015 to June 2017. He previously served as Senior Vice President of Finance from October 2014 to September 2015, and Treasurer and Vice President from July 2009 and October 2014.

3    Carroll is Hain's Executive Vice President for Global Brands, Categories, and New Business Ventures; he previously served as Hain's Executive Vice President and CEO for Hain Celestial North America from February 2015 to March 2017.

4    Smith preceded Conte as CFO, serving in this capacity from September 2013 to September 2015.

**End of Document**                                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.