# Exhibit A

SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
WILMER CUTLER PICKERING HALE
    AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1002
Facsimile: (628) 235-1001

NOAH S. GUINEY (SBN 324079)
noah.guiney@wilmerhale.com
WILMER CUTLER PICKERING HALE
    AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

*Attorneys for Defendants Plantronics, Inc.,
Joseph Burton, Charles Boynton, and
Pamela Strayer*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PLANTRONICS, INC. SECURITIES LITIGATION | No. 4:19-cv-07481-JST<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF MOTION TO DISMISS ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date:    TBD<br>Time:    TBD<br>Place:   Courtroom 6, 2nd Floor<br>Judge:   The Honorable Jon S. Tigar |

MOTION FOR RECONSIDERATION
AND MPA ISO MOTION

NO. 4:19-cv-07481-JST

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................... 2

II.    LEGAL STANDARD............................................................................................... 3

III.    ARGUMENT ........................................................................................................... 4

    A.    The Court Should Reconsider Its Ruling that the SAC Alleges Specific Facts Required to Plead Falsity.................................................................. 4

        1.    The Order Either Misapprehends or Does Not Address Defendants' Arguments that the Confidential Witnesses Lack Personal Knowledge and Instead Rely on Hearsay and Conjecture ......................... 4

        2.    The Order Accepts Plaintiffs' Mischaracterizations of Certain Allegations Regarding the Confidential Witnesses and the ERM Project ............................................................................................... 7

        3.    The Remaining Allegations, Which Are Based on Post-Class Period Statements, Are Insufficient to Establish Falsity ..................................... 10

        4.    Recent Ninth Circuit Decisions Warrant Reconsideration of the Court's Puffery Analysis............................................................................ 11

    B.    The Court Should Reconsider Its Ruling that the SAC Pleads the Required Strong Inference of Scienter................................................................... 14

        1.    The Order Overlooks Defendants' Arguments that the Confidential Witnesses' Statements are Not Indicative of Scienter ............................. 14

        2.    The Order Misapplies the Core Operations Doctrine ............................. 16

        3.    The Remaining Allegations Fail to Establish the Individual Defendants' Scienter ............................................................................... 18

    C.    Reconsideration Should be Granted on the Control Person Claim ...................... 20

IV.    CONCLUSION ...................................................................................................... 20

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996)..............................................................................3

*Avila v. Bank of Am.*,
2017 WL 4168534 (N.D. Cal. Sept. 20, 2017) .....................................................8

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008).............................................................................. 18

*Bodri v. GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017) ......................................................... 10, 20

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002).................................................................................8

*Curry v. Yelp Inc.*,
2015 WL 1849037 (N.D. Cal. Apr. 21, 2015) .................................................... 18

*Elec. Workers Pension Fund, Local 103, I.B.E.W. v. HP Inc.*,
2021 WL 4199273 (N.D. Cal. Sept. 15, 2021) .............................................. 15, 16

*In re Align Tech., Inc.*,
2021 WL 1176642 (N.D. Cal. Mar. 29, 2021),
*aff'd sub nom. Macomb Cty. Empls. Ret. Sys. v.
Align Tech., Inc.*, 39 F.4th 1092 (9th Cir. 2022)................................................ 12

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) .......................................................................... 17, 18

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005).............................................................................. 5

*In re Nektar Therapeutics, Inc. Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) ................................................................................ 2

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. July 21, 2020)...................................................... 7

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012)............................................................................... 19

*In re SolarCity Corp. Sec. Litig.*,
274 F. Supp. 3d 972 (N.D. Cal. 2017) ................................................................ 20

*Inchen Huang v. Higgins*,
   2019 WL 1245136 (N.D. Cal. Mar. 18, 2019) .................................................. 6, 9, 15, 18

*Inchen Huang v. Higgins*,
   443 F. Supp. 3d 1031 (N.D. Cal. 2020) .................................................................. 16, 17

*Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*,
   522 F. Supp. 3d 660 (N.D. Cal. 2021) ............................................................................ 16

*Kinney v. Clark*,
   2016 WL 3401765 (N.D. Cal. June 21, 2016) ................................................................. 4

*Lopes v. Fitbit, Inc.*,
   2020 WL 1465932 (N.D. Cal. Mar. 23, 2020),
   *aff'd*, 848 F. App'x 278 (9th Cir. 2021)........................................................................ 10

*Macomb Cty. Empls. Ret. Sys. v. Align Tech., Inc.*,
   39 F.4th 1092 (9th Cir. 2022) ........................................................................... 11, 12, 13

*Mulligan v. Impax Laboratories, Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014) .............................................................................. 18

*Norfolk Cty. Ret. Sys. v. Solazyne, Inc.*,
   2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) .................................................................. 6

*Or. Pub. Empls. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014)........................................................................................... 19

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014)................................................................................... 13, 17

*Prodanova v. H.C. Wainwright & Co., LLC*,
   993 F.3d 1097 (9th Cir. 2021)......................................................................................... 19

*Roberts v. Zuora, Inc.*,
   2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) ................................................................ 12

*S. Ferry LP #2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008)..................................................................................... 16, 17

*Sayce v. Forescout Techs., Inc.*,
   2021 WL 1146031 (N.D. Cal. Mar. 25, 2021)................................................................ 15

*Scheller v. Nutanix, Inc.*,
   450 F. Supp. 3d 1024 (N.D. Cal. 2020) ........................................................................ 6, 7

*Shi v. Ampio Pharms., Inc.*,
   2020 WL 5092910 (C.D. Cal. June 19, 2020) ................................................................ 17

MOTION FOR RECONSIDERATION
AND MPA ISO MOTION

- iii -

NO. 4:19-cv-07481-JST

*Smith v. NetApp, Inc.*,
    2021 WL 1233354 (N.D. Cal. Feb. 1, 2021) ........................................................................ 9

*Vitalone v. Logitech Int'l SA*,
    2012 WL 13041992 (N.D. Cal. July 13, 2012) ................................................................... 11

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) .......................................................................................... 3, 20

*Weston Family P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611, 622-23 (9th Cir. 2022) ...................................................................... 8, 9, 11, 12

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ......................................................................................... *passim*

## STATUTES AND RULES

Civil Local Rule 7-9 ...................................................................................................................... 1, 3

Federal Rules of Civil Procedure
    Rule 9(b) ................................................................................................................... 1, 4, 11
    Rule 54(b) ....................................................................................................................... 1, 3

Securities Exchange Act of 1934
    Section 10(b) ........................................................................................................ 1, 2, 3, 20
    Section 20(a) ....................................................................................................................... 20

MOTION FOR RECONSIDERATION
AND MPA ISO MOTION
    - iv -
    NO. 4:19-cv-07481-JST

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at a date and time to be determined, in the Courtroom of The Honorable Jon S. Tigar, located at the United States District Courthouse, 1301 Clay Street, 2nd Floor, Oakland, California 94612, Defendants Plantronics, Inc. ("Plantronics" or the "Company"), Joseph Burton, Charles Boynton and Pamela Strayer (the "Individual Defendants," and collectively with Plantronics, the "Defendants"), will and hereby do move, pursuant to Federal Rule of Civil Procedure 54(b) and Civil Local Rule 7-9, for reconsideration of portions of this Court's August 17, 2022 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (the "Order" [ECF No. 109]).  Specifically, Defendants respectfully request reconsideration insofar as the Order denied Defendants' motion to dismiss Plaintiffs' claims predicated on three challenged statements regarding revenue results (dated November 6, 2018, February 5, 2019, and May 7, 2019) because the Order "manifest[ly] fail[ed] … to consider material facts or dispositive legal arguments which were presented to the Court before" it issued the Order.  Civil. L.R. 7-9(b)(3).  Defendants' motion is based on: this Notice of Motion and Motion; the following Memorandum of Points and Authorities; the pleadings, papers and files in this action; any matter properly the subject of judicial notice; the argument of counsel; and such other matters as may be presented to the Court.

**ISSUES TO BE DECIDED**

1.   Whether reconsideration of the Order is appropriate in light of Plaintiffs' failure to allege specific facts required by the Private Securities Litigation Reform Act (PSLRA), Federal Rule of Civil Procedure 9(b) and governing Ninth Circuit law to plead falsity for their claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act").

2.   Whether reconsideration of the Order is also warranted by Plaintiffs' failure to plead particularized facts raising a strong inference of scienter in accordance with the PSLRA, Rule 9(b) and Ninth Circuit law as to any of the Defendants.

3.   Whether reconsideration of the Order is appropriate with respect to the Section 20(a) claim in light of Plaintiffs' inability to plead an underlying violation of the Exchange Act.

MOTION FOR RECONSIDERATION
AND MPA ISO MOTION
- 1 -
NO. 4:19-cv-07481-JST

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **INTRODUCTION**

Defendants do not seek reconsideration lightly.  Nonetheless, they respectfully submit that such relief is appropriate here, as the Court's conclusion that the Second Amended Complaint ("SAC" [ECF No. 93]) adequately alleged that the Company adopted an undisclosed new sales practice of channel stuffing that had a significant impact on the Company's revenues during the Class Period – and that the Individual Defendants had knowledge of this alleged practice and impact – appears to have been based on acceptance of Plaintiffs' mischaracterizations of several key allegations of the SAC and did not reflect consideration of certain material facts and dispositive legal arguments that Defendants presented in their motion to dismiss briefing.

In their Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp." [ECF No. 103]), Plaintiffs conceded that the SAC does not plead "illegitimate" channel stuffing, *e.g.*, shipping products that customers had not ordered.  *See* Opp. at 1, 16; *see also* Order at 11-13.  As such, Plaintiffs' claims hinge entirely on the theory that the challenged statements regarding the Company's financial results were misleading for failure to disclose its purported adoption of a new sales practice involving channel stuffing which allegedly resulted in sales that "were proper from an accounting standpoint," but unsustainable because they resulted in channel inventory backlog.  Opp. at 10; *see also id.* at 1, 7.  But Plaintiffs' pleading burden on this new theory of liability is no less rigorous than it was when their case was based on "illicit" channel stuffing.  Indeed, they arguably face a higher burden: while well-pleaded allegations of illegitimate channel stuffing (*e.g.*, fake sales) may be enough to support a Section 10(b) claim based on improper revenue recognition (*see* Order at 12), under their current theory of liability, Plaintiffs must plead *contemporaneous facts* establishing that: (1) the Company *actually adopted* channel stuffing as a new sales practice; (2) this new practice was so widespread that it had a *material* impact on operations; and (3) that impact rendered *specific* statements about the Company's revenue results *materially misleading* when made.  *See, e.g.*, *In re Nektar Therapeutics, Inc. Sec. Litig.*, 34 F.4th 828, 836-38 (9th Cir. 2022).  Moreover, Plaintiffs must also identify particularized facts to demonstrate a "strong inference" that each Individual Defendant had contemporaneous awareness

of information inconsistent with the challenged statements, such that each person can be said to have known *at the time* that the statements were false when made or was deliberately reckless. *See, e.g.*, *Webb v. Solarcity Corp.*, 884 F.3d 844, 850-51 (9th Cir. 2018).

Despite this, the Order seems to make it easier for Plaintiffs to plead a Section 10(b) claim premised on what Plaintiffs (and the Court) acknowledge are legitimate transactions and practices (*see* Order at 12, 17) as compared to a claim based on "illegitimate" sales, as the Court has allowed Plaintiffs to proceed with their claim in the absence of allegations of specific customers or distributors who were "stuffed" with product or the dates on which such sales occurred, and without any quantification of the purported impacted on these unspecified stuffed sales. But in reaching this conclusion, the Court appears to have misapprehended Defendants' arguments regarding the reliability of the three confidential witnesses the Court relied upon in its decision, and thus failed to address the Ninth Circuit's requirements that these witnesses have "personal knowledge of the events they report" and that the witnesses' statements must "themselves be indicative of scienter." *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). Moreover, the Order seems to have adopted Plaintiffs' mischaracterization of other key allegations and certain post-Class Period statements on which the Court relied in finding that the SAC adequately alleged falsity and scienter. For these and the other reasons set forth below, reconsideration is warranted under Civ. L.R. 7-9(b)(3) based on a "manifest failure . . . to consider [these] material facts [and] dispositive legal arguments." Defendants respectfully submit that, upon reconsideration, the Court should dismiss the SAC in its entirety.

## II.    LEGAL STANDARD

The Court possesses inherent authority to reconsider its interlocutory orders at any point before it enters a final judgment. Fed. R. Civ. P. 54(b); *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996). In the Northern District of California, reconsideration of an interlocutory order is appropriate where there has been a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civ. L.R. 7-9(b)(3). While Civil Local Rule 7-9(c) holds that "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in

support of or in opposition to the interlocutory order which the party now seeks to have reconsidered," this does not prohibit a motion for reconsideration where there has been "clear" or "manifest" error. *See, e.g.*, *Kinney v. Clark,* 2016 WL 3401765, at *1 (N.D. Cal. June 21, 2016) (noting that while "generally speaking . . . a motion for reconsideration may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment," the "sole exception is when the court has committed clear or manifest error." (internal quotation marks omitted)).

## III.   ARGUMENT

### A.   The Court Should Reconsider Its Ruling that the SAC Alleges Specific Facts Required to Plead Falsity

The Court cited six categories of allegations in the SAC which, "considered as a whole," supported the finding that Plaintiffs had alleged "sufficient factual matter" to support the inference that Plantronics adopted a new channel stuffing sales practice that had a significant impact on the Company's revenues during the Class Period. *See* Order at 17-20. For three of these six categories, the Court's analysis turned on statements purportedly attributed to three confidential witnesses: FE-6, FE-7, and FE-9. *See* Order at 24. But in relying on these three witnesses, the Court either misapprehended or did not address Defendants' arguments regarding the reliability of those confidential witness accounts. Moreover, the Order adopted Plaintiffs' mischaracterizations of certain of the SAC's allegations, including allegations concerning the information that these confidential witnesses purportedly provided. When understood in their proper context, these allegations fail to support a finding that the Company implemented a new channel stuffing sales practice during the Class Period, let alone that this purported practice had a substantial impact on revenues. These and other reasons set forth below merit reconsideration of the Court's finding that the SAC contains "sufficient factual matter" to plead falsity under the PSLRA, Federal Rule of Civil Procedure 9(b) and governing Ninth Circuit law.

#### 1.   The Order Either Misapprehends or Does Not Address Defendants' Arguments that the Confidential Witnesses Lack Personal Knowledge and Instead Rely on Hearsay and Conjecture

In their motion to dismiss briefing, Defendants argued that FE-7 and FE-9 were not

adequately alleged to be "reliable" witnesses because their accounts lacked facts demonstrating their personal knowledge of channel stuffing. *See* Motion to Dismiss ("Motion" or "Mot." [ECF No. 97]) at 12; Reply Brief ("Reply" [ECF. No. 105]) at 5-7; *see also Zucco*, 552 F.3d at 995 ("[T]he complaint must provide an adequate basis for determining that the witnesses in question have personal knowledge of the events they report."). In the Order, the Court found that Plaintiffs' allegations concerning FE-7 and FE-9 satisfied "the standard set forth in *In re Daou*" because they contained "sufficient particular factual matter to '*support the probability that a person in the position occupied by the source would possess the information alleged*[.]'" Order at 24 (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015-16 (9th Cir. 2005)). The Order also noted that "Defendants do not address, much less distinguish, *In re Daou*." *Id.*

Defendants submit that the Court's analysis of this issue misapprehends their arguments regarding the reliability of these witnesses. Defendants did not contest that the SAC adequately alleged the job titles and duties of the confidential witnesses, or that individuals in those positions *could* have access to information about the Company's sales practices or the work of the ERM project. Because Defendants were not contesting these issues, it was unnecessary to address *In re Daou*.[1] Rather, what Defendants argued is that *despite* FE-7's and FE-9's alleged job titles and roles, the allegations in the SAC nonetheless failed to establish that either FE-7 or FE-9 actually had *personal knowledge* that Plantronics engaged in undisclosed channel stuffing that rendered its reported results misleading, and that the SAC instead made clear FE-7 and FE-9 were relying on hearsay and conjecture. *See* Mot. at 12; Reply at 5-7. Indeed, the Ninth Circuit has made clear that even where (as here) the putative sources' respective job titles and responsibilities are adequately described, pleading their "reliability" under the PSLRA requires much more:

> Although the SAC describes the confidential witnesses' job titles and employment information with ample detail to satisfy *Daou*'s requirement that a complaint make apparent a confidential witnesses' position within the defendant corporation, *we conclude that the SAC fails to allege with particularity facts supporting its assumptions that the confidential witnesses were in a position to be personally knowledgeable of the information alleged.*

[1] Indeed, in their Reply, Defendants noted that Plaintiffs sought to salvage the FE allegations by offering the "straw man" that the SAC adequately alleged the FEs' roles and responsibilities, a point Defendants were not arguing. *See* Reply at 12 n.11.

*Zucco*, 552 F.3d at 996 (emphasis added); *see also Inchen Huang v. Higgins*, 2019 WL 1245136, at *6-7 (N.D. Cal. Mar. 18, 2019) (Tigar, J.) (while confidential witnesses' positions and responsibilities were adequately described, their "allegations [were] too vague to establish personal knowledge that any off-label marketing took place").  The Court should therefore revisit its reliance on these confidential witnesses with this understanding of Defendants' arguments.

With respect to FE-7, Defendants argued that his conclusory assertion that Plantronics adopted a new sales practice after the Polycom merger was based on general impressions and hearsay about "what we heard," not the requisite personal knowledge.  *See* Mot. at 12; Reply at 5-6.[2]  While the SAC alleged that FE-7 had personal knowledge of one distributor having one year of product in its inventory, SAC ¶ 94, and another distributor complaining that it was taking on too much product, *id.* ¶ 96, these allegations (which the SAC does not even attribute to a specific time period, in contravention of governing law)[3] do not plausibly suggest that FE-7 had personal knowledge of the "facts" that purportedly rendered the challenged statements misleading: the supposed existence of a *new widespread sales practice change* instituted after the merger that rendered *contemporaneous statements* materially misleading.  *See Zucco,* 552 F.3d at 997-98 (rejecting confidential witness allegations that were conclusory, lacking detail, and based on hearsay from anonymous sources); *see also Norfolk Cty. Ret. Sys. v. Solazyne, Inc.*, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016) (plaintiffs must plead "contemporaneous facts that would establish a contradiction between the alleged materially misleading statements and reality").

Similarly, with respect to FE-9, Defendants argued that his/her assertion that the Company engaged in channel stuffing relied entirely on hearsay and speculation based on what FE-9

[2] *See also* SAC ¶ 58 ("When asked if he/she had heard some suggestions that Loebbaka had been engaging in channel stuffing . . . FE-7 said, '***Yeah, that was what we heard***. [Loebbaka] definitely had a different sales model than we thought that he should be doing, with all the quarter end discounts.'") (emphasis added); *id*. ¶ 97 ("FE-7 stated that he was warned by numerous people that Loebbaka's channel stuffing policies would hurt the company and eventually trigger an audit.")

[3] *See, e.g.*, *Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1040 (N.D. Cal. 2020) (channel-stuffing allegations not adequate "under the law of this circuit" when based on witness with limited knowledge and lacking "specific details").

purportedly heard second hand in interviews or other conversations, without identifying the interviewees, the specific information or details those unnamed persons provided, the positions they held, or any information to demonstrate that those other unnamed employees had personal knowledge of channel stuffing. *See, e.g.*, SAC ¶ 111 ("FE-9 said, 'People were talking [during ERM interviews] about how this [the channel stuffing] had been a company-wide practice to make sure that sales were hitting their targets at the very end of quarters. It was not a coincidence it always happened then.'"). Such allegations do not suffice under the PSLRA. *See, e.g.*, *Zucco*, 552 F.3d at 997-98 (rejecting confidential witness allegations that were conclusory, lacking detail, and based on hearsay from anonymous sources); *Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1040 (N.D. Cal. 2020) (channel-stuffing allegations not adequate when based on witness with limited knowledge and lacking "specific details"); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *13 (N.D. Cal. July 21, 2020) (allegation that FE "confirmed hearing that customers did not want Pivotal's new product" was inadequate; where "witnesses report only unreliable hearsay or allege conclusory assertions, [the] allegations are insufficient"). The Order does not reflect consideration of these arguments concerning FE-7's and FE-9's reliance on hearsay, rather than personal knowledge, to establish an alleged channel stuffing sales practice. Further consideration of that issue is therefore warranted.

### 2. The Order Accepts Plaintiffs' Mischaracterizations of Certain Allegations Regarding the Confidential Witnesses and the ERM Project

In addition, the Order accepted several of Plaintiffs' arguments concerning allegations attributed to FE-6 and FE-9, including those regarding the work of the ERM project, to find that their accounts were indicative of falsity. But in so doing, the Order adopted Plaintiffs' mischaracterizations of the SAC's allegations regarding these matters.

First, the Order accepted Plaintiffs' mischaracterization of an L1 meeting in October or November 2018 that FE-6 purportedly attended with Mr. Burton and Ms. Strayer. In their Opposition, Plaintiffs claimed that "the new sales practice and its problematic impact were discussed" at this L1 meeting (Opp. at 17 (citing SAC ¶¶ 99-101)), which appears to have supported the Court's conclusion that the Company had adopted a new sales practice that was

already impacting operations by the date of this meeting. *See* Order at 19. But the cited paragraphs in the SAC do *not* suggest that there was *any* discussion of a "new sales practice" at this meeting. *See, e.g.*, *Avila v. Bank of Am.*, 2017 WL 4168534, at *4 (N.D. Cal. Sept. 20, 2017) ("Plaintiff cannot rewrite its complaint now in its opposition to the motion to dismiss"). Instead, the SAC generally alleges only that "FE-6 attended several meetings in which [the] issue of the channel partners carrying too much inventory was discussed," and that FE-6 "recalled concerns with channel partner inventory levels being raised and discussed at an L1 meeting occurring in October or November 2018, three to four weeks before FE-6 left the Company." SAC ¶¶ 100-01. These allegations about FE-6 are nearly identical to those in the First Amended Complaint ("FAC" [ECF No. 72]). *Compare* SAC ¶ 99-101 *with* FAC ¶ 145-47. In dismissing the FAC, the Court held that these allegations did not establish falsity because, *inter alia*, they did not "identif[y] any specific alleged channel-stuffing transactions." ECF No. 84 at 14. Although that finding concerned whether Plaintiffs had pled an "illegitimate" channel-stuffing scheme – a theory which Plaintiffs conceded in their Opposition they are no longer pursuing (Opp. at 1, 16) – the Court's previous finding is equally applicable here. Plaintiffs' current theory of liability *still* requires them to establish that Plantronics engaged in channel stuffing; indeed, their new theory requires them to plead specific facts showing that (as they have framed the claim) channel stuffing was such a widespread practice that its adoption rendered the Company's contemporaneously reported results materially misleading. *See* Opp. at 7 ("Defendants falsely represented that Plantronics' market demand and synergies drove increasing and record revenue growth, when in reality it was achieved only by an undisclosed, new sales practice of stuffing distributors with excess inventory."). Thus, FE-6's recollection of general "concerns" about inventory levels is no more supportive of Plaintiffs' current theory than their now-abandoned one. The statements attributed to FE-6 fail to demonstrate that the Company was actually "stuffing" any distributor or had adopted a new sales practice that had any impact whatsoever on the Company's actual or anticipated results – much less do they supply *contemporaneous and specific facts* actually rendering a challenged statement materially misleading when made. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *see also Weston Family*

*P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 622-23 (9th Cir. 2022) (alleged failure to disclose software "bug" not actionable where complaint lacked specific factual allegations to show that software issues "had materialized and impacted revenues" when challenged statement was made in July 2019).

The Order also accepted Plaintiffs' mischaracterization of the SAC's allegations regarding the "findings" of the ERM project with respect to supposed channel stuffing. *See* Opp. at 5, 19 (arguing that the ERM team identified channel stuffing "as Plantronics' *second biggest enterprise risk* that was "*actually happening*"") (emphasis in original). Adopting Plaintiffs' framing, the Court found that "*[c]hannel stuffing was discussed in ERM-generated reports and drafts of reports* as the second largest enterprise risk that the Company faced *because it was already happening*." Order at 20 (citing SAC ¶¶ 108-111) (emphasis added). But a close review of the SAC reveals that the statement that channel stuffing "was already happening" is attributable to FE-9, *not* any ERM-generated report – and even FE-9 does not allege that the ERM report included a "finding" that channel stuffing "was actually happening." *See* SAC ¶¶ 59, 108.[4]

Indeed, while the SAC alleges that the ERM report identified channel stuffing as a "risk," it does not allege that the ERM report found that channel stuffing was an existing practice that was actually impacting the Company's financial results. *See id.* Thus, while Defendants do not contest that FE-9 was in a position to know of the ERM project team's work and findings, there are no allegations in the SAC (sourced from FE-9 or otherwise) linking the ERM project to any finding that the Company had actually adopted channel stuffing as a sales practice, much less that it was materially impacting revenues in any quarter. *See, e.g.*, *Smith v. NetApp, Inc.*, 2021 WL 1233354, at *6-7 (N.D. Cal. Feb. 1, 2021); *see also Inchen Huang*, 2019 WL 1245136, at *7 (while former employees' accounts suggested internal discussion that drug was a "safer opioid," they did not establish the existence of any practice of improper off-label marketing).

In light of the above, Defendants respectfully request that the Court revisit the context of the allegations regarding the Fall 2018 L1 meeting and the purported "findings" of the ERM

---

[4] For the reasons explained above, FE-9's alleged statement that channel stuffing was "already happening" is based solely on hearsay, rather than his personal knowledge, and thus unreliable.

project—and, specifically, the confidential witnesses' statements regarding these occurrences—and reconsider its conclusion that these allegations supported an inference that the Company had adopted channel stuffing as a new sales practice that was significantly impacting revenues during the Class Period.

> **3.    The Remaining Allegations, Which Are Based on Post-Class Period Statements, Are Insufficient to Establish Falsity**

As noted, the Court identified six categories of allegations which, "considered as a whole," supported its finding that Plaintiffs adequately alleged falsity.  *See* Order at 17-20. Defendants submit that the Court should reconsider whether, absent reliance on the statements attributed to FE-6, FE-7, and FE-9 and the allegations regarding the work and purported findings of the ERM project team, the remaining allegations – namely, those based on Mr. Boynton's post-Class Period statements, which Plaintiffs contend explained the reduction in channel inventory that the Company announced at the end of the Class Period (*see* Order at 18, 20) – are sufficient to support the inference that Plantronics adopted a new channel stuffing sales practice that had a significant impact on the Company's revenues during the Class Period.

This Court has stressed that, under governing Ninth Circuit law, there is a high bar for plaintiffs who seek to use an after-the-fact statement as an admission that a prior statement was false, requiring the supposed admission to so clearly contradict the prior statement that it "essentially states 'I knew it all along.'"  *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (Tigar, J.), *aff'd*, 848 F. App'x 278 (9th Cir. 2021); *see also Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 928 (N.D. Cal. 2017) (Tigar, J.) ("Plaintiff has not alleged any facts that 'directly contradict[ ]' the earlier statement such that they 'may suggest that [the Defendants] had contemporaneous knowledge of the falsity' of their statements.").  Mr. Boynton's November 20, 2019 remarks are not an admission under this standard.

The Court appears to have accepted Plaintiffs' mischaracterization of Mr. Boynton's statement as an admission that Plantronics "changed its sales practices at the beginning of the Class Period" (Opp. at 13), ascribing to Mr. Boynton the statement that the Company had "'migrated' to a *sales practice* involving 'a lot of shipments' at the end of each quarter, which

caused significant channel inventory build-up . . . ." Order at 18 (emphasis added). But the *actual* statement *makes no reference* to a new "sales practice" or channel stuffing, nor did it suggest that this supposed change materially impacted *any* results the Company had *previously* announced – let alone revenue results Plantronics announced between *six months* and *one year earlier* (*i.e.*, the dates of the challenged statements on which the Order allows Plaintiffs to proceed). Instead, Mr. Boynton simply acknowledged that sales were fairly linear "back in the day" (a time that is not specified), and that, with the benefit of hindsight, sales had "sort of migrated" to a point where they had become more "backend loaded." SAC ¶ 234; *see also* Mot. at 15-16, 23; Reply at 8. Mr. Boynton's actual words reflect an after-the-fact observation of something that occurred over an unspecified time period, with no suggestion that the adoption of a "new sales practice" was the cause of the change or that any previously reported revenue results were inaccurate. *See Vitalone v. Logitech Int'l SA*, 2012 WL 13041992, at *5 (N.D. Cal. July 13, 2012) ("To demonstrate falsity, the [complaint] must present facts showing statements were false when made, not that defendants learned of the falsity months later. . . . Consequently, plaintiffs cannot rely on defendants' alleged admissions of overstocked channels at the end of FY11 in order to establish the existence of unhealthy inventory months earlier."); *see also Weston Family P'ship*, 29 F.4th at 619-20 ("[A] statement is not actionable just because it is incomplete. . . . Disclosure is required . . . only when necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading." (internal quotation marks and citations omitted)). Accordingly, Defendants submit that, upon reconsideration, the Court should find that the remaining allegations in the SAC, even considered as a whole, do not provide "sufficient factual matter" to plead falsity under Rule 9(b) or the PSLRA.

### 4. Recent Ninth Circuit Decisions Warrant Reconsideration of the Court's Puffery Analysis

The Court also should reconsider its conclusion that certain of the challenged statements are not inactionable puffery (Order at 26), particularly in light of two decisions the Ninth Circuit issued after the parties completed their briefing on Defendants' motion to dismiss: *Weston Family*

*P'ship* and *Macomb Cty. Empls.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092 (9th Cir. 2022).[5] In both cases, the Ninth Circuit found statements that used vague and generically optimistic phrases similar to those at issue here to be non-actionable puffery, which provides grounds for the Court to revisit its analysis on this issue. For example, the statement that Twitter was "continuing [its] work to increase the stability, performance, and flexibility" of its advertising platform, *Weston Family P'ship*, 29 F.4th at 620-21, is akin to the statement that Plantronics "continue[s] to make progress on [its] ongoing product roadmap, integration plans, and financial goals." SAC ¶ 151. Similarly, the statements that the Ninth Circuit found to be inactionable puffery in *Macomb Cty.* – "describing China as 'a great growth market,' 'a huge market opportunity,' 'a market that's growing significantly for us,' and possessing 'really good' 'dynamics,' and describing Align's performance there as 'tremendous' and 'great'" (39 F.4th at 1099) – are virtually indistinguishable from other statements that are challenged here: that the post-merger entity is "uniquely positioned to offer a more integrated and seamless experience," Plantronics saw "strong Enterprise growth" and was "build[ing] top line momentum" (SAC ¶¶ 127, 128); that the Company's "solid results" provide "a demonstration [of] the leverage available in [our] model" (*id.* ¶¶ 139, 140); that there had been "rapid adoption" of new products (*id.* ¶ 150); and that the Company "demonstrated a real strength in execution" (*id.* ¶ 158).

In denying Defendants' motion to dismiss, the Court recognized that the optimistic statements challenged here could qualify as inactionable puffery, but concluded that because Plaintiffs alleged that "Defendants were aware of material adverse facts" – *i.e.*, the purported adoption of channel stuffing as a new sales practice that was negatively impacting revenues – "that cut against the positive representations." Order at 26. Absent this predicate finding regarding the adequacy of the SAC's channel stuffing allegations – which the Court should revisit for the reasons explained above – there are no "undisclosed facts" that "cut against" the

---

[5] In arguing that the challenged statements of corporate optimism are non-actionable, Defendants relied on the District Court decision in *Align Tech.*, which the Ninth Circuit affirmed in *Macomb Cty. See* Mot. at 19 n.14 (citing *In re Align Tech., Inc.*, 2021 WL 1176642, at *3 (N.D. Cal. Mar. 29, 2021), *aff'd sub nom. Macomb Cty. Empls. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092 (9th Cir. 2022)).

challenged optimistic statements.[6]

But even if the Court does not revisit its predicate finding, the Ninth Circuit's analysis in *Macomb Cty.* still merits reconsideration of whether the statements are actionable – or whether, regardless of the purported existence of a new sales practice of channel stuffing, the challenged statement are "not objectively verifiable" and lack "the kind of precise information on which investors rely when valuing corporations." *Macomb Cty.*, 39 F.4th at 1099 (citations and internal quotation marks omitted). The Ninth Circuit found that the *known* and *undisclosed* fact that Align's growth rate in China "was declining substantially at the time of the challenged statements" did not render misleading the company's optimistic statements touting its performance in China as "tremendous" and describing China as "a market that's growing significantly for us." *Id.* at 1097-99. The Court also rejected plaintiffs' claim that Align's positive statements about the market in China gave rise to a duty to disclose its declining growth rate in China. *Id.* at 1100-01. Arguably, the undisclosed declining growth rate in *Macomb Cty.* is more closely tied to the challenged optimistic statements than those at issue here. While a substantial decline in growth in China seems directly relevant to Align's statement that the Chinese market is "growing significantly for us," in contrast, the alleged adoption of a channel stuffing practice (which allegedly impacts the timing of some sales but not the legitimacy of those sales) is only tangentially relevant to the challenged optimistic statements regarding Plantronics' "solid results," "strong Enterprise growth," and "real strength in execution." Accordingly, the Ninth Circuit's analysis in *Macomb Cty.* warrants reconsideration of the Court's finding that the challenged statements of corporate optimism are not inactionable as a matter of law.

---

[6] The Court noted that Defendants did not address *Roberts v. Zuora, Inc.*, 2020 WL 2042244 (N.D. Cal. Apr. 28, 2020), one of the cases the Court (and Plaintiffs) cited for the proposition that optimistic statements may form the basis for a securities fraud claim in certain circumstances. *See* Order at 26 n.11. But Defendants did address the underlying premise of *Zuora* – whether the SAC adequately alleged the existence (let alone Defendants' awareness) of an undisclosed sales practice that rendered the challenged statements misleading by omission – at length in their briefs, and seek reconsideration on that issue here. *See* Mot. at 15-18; Reply at 2-4. In this regard, Defendants also addressed the Ninth Circuit's decision in *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (9th Cir. 2014), which the Court and the Ninth Circuit in *Macomb Cty.* also cited as setting out the legal standard that was applied in *Zuora*. *See Macomb Cty.*, 39 F.4th at 1099-1100; Mot. at 16.

**B.     The Court Should Reconsider Its Ruling that the SAC Pleads the Required Strong Inference of Scienter**

**1.     The Order Overlooks Defendants' Arguments that the Confidential Witnesses' Statements are Not Indicative of Scienter**

Defendants also respectfully submit that the Court should reconsider its scienter ruling. The Court commenced its scienter analysis by noting that the same allegations that supported its conclusions regarding falsity also supported its finding that the scienter element was met. *See* Order at 29-30. Accordingly, all of the reasons set forth above for reconsidering the Court's falsity finding also provide a basis to revisit the scienter analysis.

In particular, the Court's apparent misapprehension of Defendants' arguments regarding the reliability of the confidential witnesses applies equally here. As explained above, the Order addresses an issue that Defendants did not contest: whether the SAC alleged sufficient details about the putative sources' job titles and responsibilities to "make apparent a confidential witnesses' position within the defendant corporation." *Zucco*, 552 F.3d at 996. But that is only one part of the test. Where, as here, Plaintiffs rely on confidential witness statements to establish scienter, the witnesses "must be described with sufficient particularity to establish their reliability and personal knowledge" *and* the statements "must themselves be indicative of scienter." *Id.* at 995. Defendants raised both of these issues in their motion to dismiss briefing, and submit that the Court should reconsider its scienter ruling in view of this understanding of Defendants' arguments regarding FE-6, FE-7, and FE-9.

Plaintiffs' allegations regarding FE-6 are not "indicative of scienter." In dismissing Plaintiffs' prior complaint, the Court held that FE-6's recollection of discussions about inventory level "concerns" does not "bear[] any connection to an alleged desire to artificially inflate sales" (ECF No. 84 at 14), which forecloses any claim that the statements attributed to FE-6 could support an inference that Mr. Burton or Ms. Strayer (who allegedly attended the Fall 2018 L1 meeting) acted with an intent to mislead investors. Nor do FE-6's statements suggest that either defendant had contemporaneous knowledge of information contradicting any challenged statement. While the Court found that FE-6's allegations about the Fall 2018 L1 meeting "raise the inference that Defendants Burton and Strayer were aware of excessive channel inventory

accumulation *relating to the undisclosed sales practice* by October or November 2018" (Order at 29-30 (emphasis added)), as discussed above, the allegations attributed to FE-6 do not suggest that there was any discussion of channel stuffing (or any "new" sales practice) at any meeting FE-6 attended, nor do they identify anything specific that Mr. Burton or Ms. Strayer said or heard at any meeting. *See supra* at 7-8. And the mere allegation that there may have been discussions about general inventory level "concerns" does not warrant an inference that either Mr. Burton or Ms. Strayer knew that the Company had adopted channel stuffing as a sales practice, much less that such practice was having a material impact on any reported or anticipated results. *See Elec. Workers Pension Fund, Local 103, I.B.E.W. v. HP Inc.*, 2021 WL 4199273, at \*8 (N.D. Cal. Sept. 15, 2021) (FE "statements regarding inventory pushing and discounting were not themselves indicative of scienter"); *see also Inchen Huang*, 2019 WL 1245136, at \*7.

Because FE-7's only purported knowledge of the adoption of a new sales practice was based on "vague hearsay" and "conclusory assertions" rather than personal knowledge (*see supra* at 6), the allegations attributed to FE-7 are "not sufficient to raise a strong inference of scienter" as to any Individual Defendant. *Zucco*, 552 F.3d at 996-98. But even if the Court puts aside FE-7's lack of personal knowledge, his statements are not indicative of any Individual Defendants' state of mind: FE-7 does not claim to have had any dealings with any Individual Defendant, does not aver that any of them was aware of what FE-7 purportedly knew about inventory levels at two distributors (SAC ¶¶ 94-96), and does not allege that they "heard" the same "suggestions" that FE-7 purportedly heard (from unknown sources) about Mr. Loebbaka "engaging in channel stuffing" (*id.* ¶ 58). Thus, FE-7 offers no facts "indicat[ing] Individual Defendants' mental states." *Elec. Workers Pension Fund*, 2021 WL 4199273, at \*8. And FE-7 offers nothing to quantify the purported impact of what he/she claims to have "heard" about sales practices or observed about inventory levels at certain channel partners; as such, FE-7's statements are not indicative of scienter because they are not inconsistent with any challenged statement about the Company's results. *See Sayce v. Forescout Techs., Inc.*, 2021 WL 1146031, at \*8 (N.D. Cal. Mar. 25, 2021) (no scienter where "admissions" that defendants had knowledge of the company's "pipeline" and "big deals" were not shown to contradict challenged statements).

Finally, Plaintiffs' averments concerning FE-9 and the ERM project fail to raise a strong inference of scienter. The Order cites the SAC's allegations that "Burton sent company-wide emails about the ERM project since its inception," that "Defendant Boynton and the Audit Committee were regularly informed of the ERM project's findings," and that "drafts of the final report generated by the ERM project team were circulated to Defendants Burton and Boynton and the Audit Committee by no later than Summer 2019." Order at 20. But, as discussed above (*see supra* at 9), the SAC does not allege that the ERM project resulted in any finding that the Company had adopted channel stuffing as a sales practice or it that it was impacting revenues in any quarter.[7] Instead, the SAC alleges only that the ERM team was informed by unnamed interviewees about end-of-quarter discounts and channel partners taking on more inventory. *See* SAC ¶¶ 59, 106, 121. "[S]tatements regarding inventory pushing and discounting [are] not themselves indicative of scienter" regarding purported undisclosed channel stuffing. *Elec. Workers Pension Fund*, 2021 WL 4199273, at *8. Here again, because the SAC does not allege that the ERM team provided any quantification of the operational impact of the matters FE-9 purportedly heard about, FE-9's statements are not inconsistent with any challenged statement and thus not indicative of scienter. *See Inchen Huang v. Higgins,* 443 F. Supp. 3d 1031, 1045-46 (N.D. Cal. 2020) (Tigar, J.).

### 2. The Order Misapplies the Core Operations Doctrine

The Court also rested its finding that the SAC adequately pled scienter on the so-called "core operations" doctrine, concluding that the Individual Defendants, given their positions as CEO and CFO, must have known of the alleged new channel stuffing practice due to its purported significance to the Company's revenues and financial health. Order at 30. Because the parties

---

[7] Because the SAC does not aver that the ERM report included a finding that the Company had adopted channel stuffing as a sales practice that was impacting revenues (or that such conclusion was ever shared with Mr. Burton or Mr. Boynton), allegations about "company-wide emails" or "status reports" about the ERM project or the circulation of "drafts of the ERM project team's report" (SAC ¶¶ 120-21) fail to establish that either Mr. Burton or Mr. Boynton had knowledge of a widespread channel stuffing practice. *See Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 674-75 (N.D. Cal. 2021) (no scienter where "Plaintiffs do not adequately tie the specific contents of any of these data sources to particular statements so as to plausibly show that the Defendant who made each specified statement knowingly or recklessly spoke falsely").

did not address the Ninth Circuit decision on which the Court relied, *S. Ferry LP #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008), in briefing Defendants' motion to dismiss, Defendants respectfully submit that the Court should reconsider its application of the core operations doctrine with the benefit of the parties' briefing on this issue.

The core operations doctrine is a narrow exception to the "no scienter by status" rule, restricted to "'exceedingly rare' cases" where particularized facts establish that: (1) undisclosed information shows that a statement was materially false or misleading when made; and (2) that information "is so prominent that it would be 'absurd' to suggest that key officers lacked knowledge of it." *Shi v. Ampio Pharms., Inc.*, 2020 WL 5092910, at *6 (C.D. Cal. June 19, 2020) (quoting *South Ferry*, 542 F.3d at 785-86)). "Proof under this theory is not easy," as Plaintiffs must produce "either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring," or "witness accounts demonstrating that executives had actual involvement in creating false reports." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014); *see also S. Ferry*, 542 F.3d at 785 ("the allegations at issue in *Daou* and *Oracle* go beyond a mere inference of management knowledge of all 'core operations,' and were sufficient under the PSLRA because they included details about the defendants' access to information within the company").

Plaintiffs have not demonstrated that this is one of the "exceedingly rare" cases. As an initial matter, because the SAC fails to adequately allege that the Company adopted the purported new channel stuffing practice in the first instance (*see supra* at 6-11), any resort to the core operations doctrine necessarily fails. *See Inchen Huang*, 443 F. Supp. 3d at 1057 (core operations theory unavailing where it relied on insufficient allegations of "systematic off-label marketing"); *Shi*, 2020 WL 5092910, at *6 (core operations theory inapplicable absent "the existence of contemporaneous information within [the Company] that contradicted or undermined Defendants' public statements at the time Defendants made those statements"). But even if the SAC did establish the adoption of a new practice, the alleged distribution practices at issue here are a far cry from the types of corporate events that courts have deemed to be so significant that it would be "absurd" to argue that officers were unaware of them. *See, e.g., In re Alphabet, Inc. Sec.*

*Litig.*, 1 F.4th 687, 706 (9th Cir. 2021) (implausible to suggest that Alphabet CEO was unaware of "the largest data-security vulnerability in the history of two Companies whose existence depends on data security … at a time when social media networks were under immense regulatory and governmental scrutiny"); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-88 & n.5 (9th Cir. 2008) (executives overseeing day-to-day operations deemed to be aware of stop work order "on the company's largest contract with one of its most important customers"); *Mulligan v. Impax Laboratories, Inc.*, 36 F. Supp. 3d 942, 969-70 (N.D. Cal. 2014) (officers deemed to be aware of non-compliant conditions due to receipt of FDA warning letter and other FDA notices of potential violations).  Furthermore, while application of the core operations doctrine in these cases was premised on a corporate trauma that existed at a specific point in time, here the most Plaintiffs can muster are vague allusions to channel partner inventory levels that purportedly took place at unspecified points in time between late 2018 and November 2019.  It is not "absurd" to suggest that Plantronics' most senior officers would be unaware of purported changes in the timing of shipments to certain distributors, especially where these changes may have been implemented over an extended period of time – such alleged operational details are in line with the practices at issue in recent cases where this Court found that the "core operations" inference was not warranted.  *See, e.g.*, *Inchen Huang*, 2019 WL 1245136, at *12 (where complaint provided only vague accounts of sales representatives marketing product off-label, it is not "absurd to suggest" that executives were unaware of such conduct); *Curry v. Yelp Inc.*, 2015 WL 1849037, at *12 (N.D. Cal. Apr. 21, 2015) (Tigar, J.) (not "absurd to suggest" that, although senior executives were "aware that some businesses had complained about the manipulation of their reviews, Defendants were unaware that, in certain cases, the reviews of businesses that refused to advertise had in fact been manipulated by someone at Yelp").  Defendants therefore respectfully request that the Court reconsider application of the core operations doctrine.

### 3.  The Remaining Allegations Fail to Establish the Individual Defendants' Scienter

Finally, the Court should reconsider whether – absent application of the "core operations" doctrine – the SAC adequately pleads what each Individual Defendant purportedly knew about

the alleged new channel stuffing practice or its impact on specific reported results. *See Or. Pub. Empls. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014). For example, while the Court relies on FE-6's allegations regarding the Fall 2018 L1 meeting to establish Ms. Strayer's scienter (Order at 19, 30), those averments are not indicative of scienter for the reasons explained above. *See supra* at 14-15. Aside from this lone L1 meeting and the core operations inference, the allegations the Court cites in support of its conclusion that the SAC pleads the required strong inference of scienter (*see* Order at 30-31) largely concern other individuals or matters that are otherwise irrelevant to Ms. Strayer's state of mind – namely, allegations about (a) Mr. Burton's compensation and his desire to justify the Polycom acquisition, (b) two employee departures that occurred at least a year after Mr. Strayer left the Company, and (c) the ERM project, which did not start until after Ms. Strayer left the Company. The remaining allegation asserts a generic motive to attract a potential buyer for the Company that is not specific to any Individual Defendant and which, standing alone, cannot support an inference of fraudulent intent. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021); *see also In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) ("allegations of routine corporate objectives . . . without more," do not suffice to allege scienter under the PSLRA).

Similarly, while the Court's scienter analysis as to Mr. Boynton centers on the ERM project and its purported findings, here again, the Court's finding appears to rest on Plaintiffs' mischaracterization of the relevant allegations. *See supra* at 9. Other than the ERM-related allegations and the core operations inference, the allegations the Court cites to support its scienter finding do not concern Mr. Boynton or bear in any way on his purported knowledge of a new channel stuffing practice. The SAC does not allege that any FE had direct dealings with Mr. Boynton, the general averment regarding a desire to sell the Company (SAC ¶ 148) concerns the period before Mr. Boynton joined Plantronics, and the Court found that the alleged departures of Messrs. Burton and Loebbaka only supported an inference of scienter as to Mr. Burton, and even so was only one piece of the "scienter puzzle." Order at 31.[8]

---

[8] As explained above (*see supra* at 10-11), Mr. Boynton's post-Class Period statements are not an "admission" that any challenged statement was false, and thus do not support an inference that he acted with scienter. *See Bodri*, 252 F. Supp. 3d at 928 ("Plaintiff has not alleged any facts that

Accordingly, Defendants respectfully request that the Court reconsider its conclusion that, considering the facts alleged holistically, the SAC supports a strong inference of scienter as to Plantronics *and* Mr. Burton, Ms. Strayer, and Mr. Boynton.

**C.    Reconsideration Should be Granted on the Control Person Claim**

Because failure to plead an underlying violation of Section 10(b) is fatal to a control person claim, *see, e.g.*, *Webb*, 884 F.3d at 858, Defendants submit that reconsideration is also warranted as to Plaintiffs' Section 20(a) claim.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Court grant reconsideration of its August 17, 2022 Order and dismiss the SAC in its entirety.

Dated:  September 2, 2022

WILMER CUTLER PICKERING HALE AND
 DORR LLP

By: _____*Kevin P. Muck*_____
             Kevin P. Muck

*Attorneys for Defendants Plantronics, Inc., Joseph Burton, Charles Boynton, and Pamela Strayer*

---

'directly contradict[ ]' the earlier statement such that they 'may suggest that [the Defendants] had contemporaneous knowledge of the falsity' of their statements."); *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1008 (N.D. Cal. 2017) ("[T]he complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." (citation omitted)).