SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmherhale.com
JESSICA L. LEWIS (SBN 302467)
jessica.lewis@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco CA 94111
Telephone: (628) 235-1002
Facsimile: (628) 235-1001

PETER J. KOLOVOS (*Pro Hac Vice*)
peter.kolovos@wilmerhale.com
SONIA SUJANANI (*Pro Hac Vice*)
sonia.sujanani@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MIKE ROMEO (SBN 312264)
mike.romeo@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

*Attorneys for Defendants Plantronics, Inc., Joseph*
*Burton, Charles Boynton, and Pamela Strayer*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| IN RE PLANTRONICS, INC. SECURITIES LITIGATION | Case No. 4:19-cv-07481-JST |
|---|---|
| | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT** |
| | Date:  January 25, 2024<br>Time:  2:00 p.m.<br>Place:  Courtroom 6, 2nd Floor<br>Judge:  The Honorable Jon S. Tigar |

OPP. TO MOT. FOR
LEAVE TO FILE TAC

Case No. 4:19-cv-07481-JST

**TABLE OF CONTENTS**

I.     ISSUES PRESENTED..........................................................................................................1

II.    INTRODUCTION ...............................................................................................................1

III.   BACKGROUND ................................................................................................................2

       A.     The Court's Complete Dismissal of the First Amended Complaint........................2

       B.     The Court's Partial Dismissal of the Second Amended Complaint.........................3

       C.     Plaintiffs Seek to File an "Initial" and "Corrected" Third Amended Complaint ....5

IV.    STANDARD FOR ALLOWING AMENDMENT .............................................................7

V.     ARGUMENT......................................................................................................................7

       A.     Plaintiffs' Proposed Amendments Concerning the August and September 2018
              Statements Fail to State a Claim ..............................................................................7

              1.     Plaintiffs' Reliance on ███████████████████
                     ███████████████ Is Insufficient to State a Claim as to the
                     August or September 2018 Statements...........................................................9

              2.     The "Internal Communications" Relied Upon by Plaintiffs Undercut Their
                     Allegations and Do Not Establish The August or September 2018
                     Statements Were False or Misleading...........................................................14

              3.     Plaintiffs' New Challenge to the September 11, 2018 Statements Suffers
                     From Independent Fatal Flaws......................................................................17

       B.     Plaintiffs Provide No Basis for Amendment Concerning February 2020
              Statements ...............................................................................................................23

       C.     Plaintiffs Have Not Demonstrated the Diligence Necessary to Support Modifying
              the Court's Prior Scheduling Order ........................................................................23

VI.    CONCLUSION.................................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apollo Group, Inc. Sec. Litig.*,
  2011 WL 5101787 (D. Ariz. Oct. 27, 2011) ................................................................................10

*Best Label Co., LLC v. Custom Label & Decal, LLC*,
  2021 WL 5415260 (N.D. Cal. Nov. 19, 2021) .............................................................................25

*Bodri v. GoPro, Inc.*,
  252 F. Supp. 3d 912 (N.D. Cal. 2017) ..........................................................................18, 19, 20

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) .................................................................................................21, 22

*Cryer v. Franklin Templeton Resources, Inc.*,
  2017 WL 11715362 (N.D. Cal. July 26, 2017).............................................................................24

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) ....................................................................................................18

*In re eHealth, Inc. Sec. Litig.*,
  2023 WL 6390593 (N.D. Cal. Sept. 23, 2023) .........................................................................21

*Francisco v. Abengoa, S.A.*,
  624 F. Supp. 3d 365 (S.D.N.Y. 2022)...........................................................................9, 10, 12

*Hampton v. Aqua Metals, Inc.*,
  2020 WL 6710096 (N.D. Cal. Nov. 16, 2020) .............................................................18, 22, 23

*Huang v. Higgins*,
  443 F. Supp. 3d 1031 (N.D. Cal. 2019) ....................................................................................25

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) .....................................................................................10, 12

*Jedrzeczyk v. Skillz Inc.*,
  2022 WL 2441563 (N.D. Cal. July 5, 2022)................................................................................22

*In re Leapfrog Enter., Inc. Sec. Litig.*,
  200 F. Supp. 3d 987 (N.D. Cal. 2016) ...................................................................................8, 20

*In re Lexar Media, Inc. Sec. Litig.*,
  2005 WL 1566534 (N.D. Cal. July 5, 2005)...............................................................................21

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ....................................................................................................16

*Miller v. PCM, Inc.*,
2018 WL 5099722 (C.D. Cal. Jan. 3, 2018) ................................................................................10

*Murphy v. Precision Castparts Corp.*,
2017 WL 3084274 (D. Or. June 27, 2017) ...................................................................................4

*In re Nimble Storage, Inc. Sec. Litig.*,
2017 WL 4355570 (N.D. Cal. Oct. 2, 2017)................................................................................20

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. July 21, 2020)..............................................................................12

*Quantum Labs, Inc. v. Maxim Integrated Prods., Inc.*,
2020 WL 7027305 (N.D. Cal. Nov. 30, 2020) ...........................................................................24

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ..............................................................................................18, 20

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) .....................................................................................................22

*In re Rocket Fuel, Inc. Sec. Litig.*,
2017 WL 344983 (N.D. Cal. Jan. 24, 2017) ..............................................................................24

*Smith v. NetApp, Inc.*,
2021 WL 1233354 (N.D. Cal. Feb. 1, 2021) ..............................................................................20

*In re Splunk, Inc. Sec. Litig.*,
592 F. Supp. 3d 919 (N.D. Cal. 2022) .......................................................................................19

*In re Sunrun, Inc. Sec. Litig.*,
2018 WL 10323335 (N.D. Cal. July 19, 2018)...........................................................................10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)....................................................................................................................15

*In re Twitter, Inc. Sec. Litig.*,
2020 WL 4188787 (N.D. Cal. May 19, 2020).....................................................................7, 23, 24, 25

*Vladimir v. Bioenvision Inc.*,
606 F. Supp. 2d 473 (S.D.N.Y. 2009), *aff'd sub nom. Thesling v. Bioenvision, Inc.*, 374 F. App'x 141 (2d Cir. 2010) .....................................................................................10

*Weston Family P'ship LLLP v. Twitter, Inc.*,
29 F. 4th 611 (9th Cir. 2022) .....................................................................................................18

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) .................................................................................18, 19, 20, 25

*Yaron v. Intersect ENT, Inc.*,
2020 WL 6750568 (N.D. Cal. June 19, 2020)...................................................................8, 9, 22

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ...................................................................................10, 11, 13

**Statutes**

15 U.S.C. §78u-4(b)(1)(B)...................................................................................................22

15 U.S.C. §78u-5(c)(1)(A)(i) ..............................................................................................18

15 U.S.C. §78u-5(c)(1)(B) ..................................................................................................18

15 U.S.C. § 78u-5(c)(2)(B) .................................................................................................18

15 U.S.C. § 78u-5(e) ...........................................................................................................18

**Other Authorities**

Fed. R. Civ. P. 15(a) ..............................................................................................................7

Fed. R. Civ. P. 16(b)(4)................................................................................................. *passim*

## I.      ISSUES PRESENTED

1.      Whether the Court should deny Plaintiffs leave to file the [Proposed] Third Amended Complaint under Rule 15(a), where Plaintiffs' proposed amendments are futile.

2.      Whether the Court should deny Plaintiffs' proposed modification of the Scheduling Order under Rule 16(b), where Plaintiffs did not act diligently because: (i) they received the documents on which they purport to rely *five months* before moving to amend; and (ii) they could have, but did not, assert certain of their proposed amendments in prior pleadings.

## II.     INTRODUCTION

Defendants Plantronics, Inc. ("Plantronics" or the "Company"), Joseph Burton, Charles Boynton and Pamela Strayer ("Individual Defendants") respectfully submit their Opposition to Plaintiffs' Motion to Modify the Scheduling Order and for Leave to File a Third Amended Complaint to Conform to Evidence Produced in Discovery ("Motion").

In the proposed Third Amended Complaint, Plaintiffs seek to revive a dismissed claim and to assert new claims they could have asserted in prior pleadings in an apparent attempt to preserve the standing of an appointed class representative who did not purchase Plantronics stock during the operative Class Period. In so doing, Plaintiffs shift their theory of the case, abandon an allegation that was central to the Court's partial denial of Defendants' motion to dismiss the Second Amended Complaint, offer internally inconsistent allegations, and otherwise rely on allegations from: (1) ███████████, even though Plaintiffs admit ███████████ ████████████████████████████████████████; (2) ███████████ ████████████████████████████████████████████████ ███████████; and (3) internal Company documents that actually undercut their proposed new claims. Additionally, Plaintiffs—who have had the documents on which they primarily rely since early May 2023—fail to demonstrate that they have acted with the diligence necessary to justify amending the scheduling order previously entered by the Court. For the reasons set forth below, the Court should deny Plaintiffs' motion to amend in its entirety.

## III.    BACKGROUND

### A.    The Court's Complete Dismissal of the First Amended Complaint

This action was commenced on November 13, 2019. ECF No. 1. After their appointment as Lead Plaintiffs, Roofers' Pension Fund ("Roofers"), an institutional investor, and Ilya Trubnikov ("Trubnikov"), a former oil and gas executive and experienced investor (ECF No. 62), filed an amended complaint on behalf of themselves and "all other persons or entities who purchased or otherwise acquired securities of Plantronics . . . during the period from August 7, 2018 and November 5, 2019" (the "Original Class Period"). ECF No. 72 (Plaintiffs' First Amended Complaint or "FAC") at 1. Roofers asserts that it purchased Plantronics securities throughout the Original Class Period, while Trubnikov purchased only on October 24, 2018. *Id.*

Lead Plaintiffs filed the FAC on June 5, 2020 alleging that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder by engaging in an "illicit channel stuffing scheme designed to deceive investors into believing Plantronics' costly acquisition of audio video conferencing company, Polycom . . . had transformed the stagnant headset company into an overnight growth story." FAC ¶ 1; *and see* ECF No. 84 (Order Granting Defendants' Motion to Dismiss or "FAC Order") at 10.[1] Plaintiffs' core theory was that due to increasing competition, Plantronics, a leader in the headset market, began experiencing flat revenues in fiscal year 2016, which continued through 2018, FAC ¶¶ 43-44, and in response to these market conditions, acquired voice and video solution provider Polycom as a "transformative" move "in order to dramatically increase its revenues." FAC ¶¶ 75, 45. The acquisition, valued at approximately $2 billion, closed on July 2, 2018. FAC ¶¶ 6, 8, 45. Plaintiffs allege that, beginning on August 7, 2018, Plantronics began issuing "excellent" and "above-guidance" financial results. FAC ¶ 76. These reports of "'strong' revenue growth" continued through the Original Class Period, fueling the purportedly false narrative "that Plantronics' acquisition of Polycom was a major success[.]" FAC ¶¶ 1, 60.

---

[1] The Individual Defendants are Joseph Burton, the Company's CEO during the relevant period; Pamela Strayer, the Company's CFO from 2012 to March 8, 2019; and Charles Boynton, the Company's CFO beginning March 8, 2019. FAC ¶¶ 33-38.

Plaintiffs allege the entire post-acquisition "growth story was a sham," FAC ¶ 11, and, in fact, "after acquiring Polycom . . . to manufacture revenue growth, Defendants pushed products through [their distribution] channel[s] far in excess of end-user demand, resulting in elevated and unacceptable channel inventory levels." FAC ¶ 11. This "illicit channel stuffing scheme," pursuant to which Plantronics "covertly pulled forward or borrowed product sales from future periods" purportedly "enabled the Company to report net revenue that met or exceeded guidance for every quarter during the Class Period[.]" FAC ¶ 11. The truth about this alleged "channel-stuffing scheme" (FAC ¶ 106) was revealed through a series of partial disclosures, culminating on November 5, 2019, when the Company revealed that it "had built up channel inventory" and "disclosed a $65 million reduction in channel inventory in the upcoming third quarter" "by reducing sales to channel partners." FAC ¶¶ 107, 110-11.

The Court granted Defendants' motion to dismiss the FAC in its entirety (with leave to amend) on March 29, 2021. ECF No. 84. The Court found Plaintiffs had "failed to adequately plead the channel-stuffing scheme that form[ed] the basis of their complaint." FAC Order at 14. The Court explained that Plaintiffs had not identified any evidence that Plantronics had engaged in "the type of channel stuffing that has been categorized as illegitimate," and, with respect to the "one specific instance of alleged channel stuffing" Plaintiffs had identified, "[n]othing about that allegation indicate[d] a desire to artificially inflate sales." FAC Order at 11-12.

**B.     The Court's Partial Dismissal of the Second Amended Complaint**

On June 22, 2021, Plaintiffs filed the Second Amended Complaint ("SAC"), which has served as the operative complaint for the last two years. ECF No. 93. The SAC challenged the same press releases, earnings calls, and SEC filings discussing quarterly financial results that Plaintiffs challenged in the FAC. SAC ¶¶ 126-178. The Class Period, from August 7, 2018 to November 5, 2019, also stayed the same. SAC ¶ 1. Like the FAC, the SAC was based largely on the theory that the alleged misstatements were misleading because they did not disclose "channel stuffing." SAC ¶¶ 1, 2, 9, 10, 32. But the SAC provided a new story line.

The Court in its FAC Order clearly explained what Plaintiffs must plead to support a claim of improper channel-stuffing, namely, "specific transactions, specific shipments, specific

customers, specific times, or specific dollar amounts." FAC Order at 11 (quotation omitted). Plaintiffs included no such allegations in the SAC. *See* SAC ¶¶ 190-99 (alleging generally that all of Plantronics' revenue and accounts receivable figures were "indicative" of channel stuffing). Instead, Plaintiffs abandoned their theory of an "illicit" channel stuffing scheme, recasting their allegations to assert that, *after* completion of the Polycom acquisition, the Company adopted (and failed to disclose) a "new 'backend loaded' sales practice." Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("SAC Order") at 3 (ECF No. 109) (citing SAC ¶¶ 22, 182, 241). Plaintiffs alleged that the post-acquisition "change in sales practice" was "intended to boost revenues and enable the Company to meet revenue guidance at the end of each quarter." *Id.* (citing SAC ¶¶ 9, 16, 81, 94-97). Specifically, Plaintiffs alleged that, "[b]efore the Polycom acquisition"—when Plantronics was experiencing "flat or negative revenue growth" (*Id.* at 2 (citing SAC ¶ 65))—Plantronics "had a sales practice closely aligned with quarterly sale-through by its distributors . . . pursuant to which Plantronics would push six to eight weeks of product into the distributor channels so that the distributors could then sell it to end users." *Id.* at 2-3 (citing SAC ¶ 3). Post-acquisition, the "change[d]" practice allegedly resulted in "distributors h[olding] four to six months of inventory[,] . . . significantly more inventory than distributors held under the Company's prior, more linear sales practice[.]" *Id.* at 3 (citing SAC ¶¶ 9, 16, 81, 94-97).

Defendants moved to dismiss on the grounds that the SAC did not plead facts to plausibly support falsity and scienter. SAC Order at 10. The Court granted in part, and denied in part, Defendants' motion. Relying on *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274 (D. Or. June 27, 2017), *report and recommendation adopted*, 2017 WL 3610523 (D. Or. Aug. 22, 2017), the Court found that Plaintiffs' claim was "not subject to dismissal to the extent that it [wa]s predicated on allegations that the challenged statements of November 6, 2018; February 5, 2019; and May 7, 2019, were misleading on the basis that they touted positive revenue results and created the impression that such results were based on organic growth or other factors *that did not include the undisclosed sales practice*, which generated unsustainable sales." SAC Order at 17 (emphasis added).

However, the Court granted Defendants' motion with respect to the challenged August 7, 2018 statements, reasoning that "the SAC raise[d] the inference that Defendants adopted the undisclosed sales practice *as part of the Polycom acquisition*, which was completed in July 2018" and Plaintiffs failed to plead "non-conclusory factual matter suggesting that there was, prior to October 2018, excessive channel inventory accumulation caused by the undisclosed sales practice that could have significantly contributed to the revenues that Defendants discussed on August 7, 2018[.]" SAC Order at 21-22 (emphasis added). As a result of the Court's dismissal of the claims based on the challenged August 7, 2018 statements, the operative class period became November 6, 2018 through November 5, 2019 ("Operative Class Period").

The Court allowed Plaintiffs thirty days to "cure" the SAC's "deficiencies" with respect to the August 7, 2018 statements "to the extent that Plaintiffs c[ould] do so without contradicting the allegations in their prior pleadings." SAC Order at 34. The Court noted that a "failure to file an amended complaint w[ould] result in dismissal with prejudice[.]" *Id.* at 34-35. On September 9, 2022, Plaintiffs notified the Court that they did not intend to amend the SAC at that time (and acknowledged that any later amendment would require a demonstration of good cause under Fed. R. Civ. P. 16(b)(4)). ECF No. 115.

**C.      Plaintiffs Seek to File an "Initial" and "Corrected" Third Amended Complaint**

On October 2, 2023—more than a year after the deadline set by the Court for filing amended pleadings—Plaintiffs sought leave to modify the scheduling order and for leave to file a Third Amended Complaint (the "Initial Proposed TAC"). ECF No. 160 (the "Initial Motion"). In their Initial Motion, Plaintiffs sought to reassert their claims based on the dismissed August 7, 2018 statements and thus restore the Original Class Period. As support, Plaintiffs claimed that they had "diligently pursued discovery" and, in doing so, only "recently" "uncovered powerful evidence" supporting the purported falsity of the dismissed August 7, 2018 statements as well as the falsity of previously unchallenged statements Defendants made on September 11, 2018. Initial Motion at 6, 11, 8. Plaintiffs' "newly uncovered evidence" primarily consisted of

███████████████████. *Id.* at 8 (citing Initial Proposed TAC ¶¶ 91-95). Acknowledging that Defendants had produced ████████ five months earlier, Plaintiffs alleged, for the first time, that ████████████████████████████████████████████████ *Id.* at 8 (citing Initial Proposed TAC ¶¶ 91-95) (emphasis added). In addition, Plaintiffs cited "[n]ewly-produced internal communications," including ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████ *Id.* at 14; Initial Proposed TAC ¶¶ 18, 102. Finally, Plaintiffs alleged for the first time that class members suffered losses from "corrective adverse information disclosed on February 4, 2020," three months after the end of the Class Period. *Id.* at 3 (citing Initial Proposed TAC ¶¶ 209-13).

Despite Plaintiffs' reliance on, and purported diligence into, ████████████ ████████████████████████████████████████████ (*id.* at 20) and formed the centerpiece of Plaintiffs' Initial Motion, Defendants learned that Plaintiffs had █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ████. Kolovos Decl. Ex. A; ████████ Decl. ¶ 4. And in fact, ████████████ █████████████████████████████████████████████████████ ████████████████████████████████████████ Kolovos Decl. Ex. A; ████████ Decl. ¶ 3. When Defendants notified Plaintiffs of ████████████████ ████████, Plaintiffs requested a modification to the motion to amend briefing schedule and, on October 20, 2023, filed a "corrected" motion for leave to amend and proposed TAC ("Proposed TAC") that, among other things, ████████████████████████████████████ ████████████████. ECF No. 168. Notably, however, Plaintiffs have not explained why—despite ████████████████████████████████████████████████████████ ███████████████████████████████████████████████.

## IV.   STANDARD FOR ALLOWING AMENDMENT

Plaintiffs seek to modify the Court's scheduling order which set a deadline of September 16, 2022 for filing amended pleadings. Motion at 1. Plaintiffs concede that they must meet the "good cause" standard for amendment under Federal Rule of Civil Procedure 16 in order for their proposed amendment to be measured by Rule 15(a). *Id.* at 1, 16; *see* Fed. R. Civ. P. 16(b)(4); *In re Twitter, Inc. Sec. Litig.*, 2020 WL 4188787, at *3 (N.D. Cal. May 19, 2020) (Tigar, J.) (the good cause standard "primarily considers the diligence of the party seeking the amendment."). The Motion should be denied if the proposed amendments are futile or Plaintiffs fail to establish that they acted with the diligence required for "good cause." *In re Twitter*, 2020 WL 4188787, at *3-4.

## V.   ARGUMENT

Plaintiffs' proposed amendments reflect two significant changes. First, in what appears to be an attempt to maintain Lead Plaintiff Trubnikov's standing, Plaintiffs seek to revive their claims regarding the dismissed August 7, 2018 statements and assert, for the first time, that statements Defendants made on September 11, 2018 were also false or misleading.[2] Second, they allege for the first time that Class members suffered losses from the "corrective adverse information disclosed on February 4, 2020," three months after the end of the Class Period. Motion at 3 (citing Proposed TAC ¶¶ 209-13). The Court should deny Plaintiffs' request for leave as to both proposed sets of amendments.

### A.   Plaintiffs' Proposed Amendments Concerning the August and September 2018 Statements Fail to State a Claim

The Court's dismissal of Plaintiffs' claims as to the August 7, 2018 statements was based on "the absence of non-conclusory factual matter suggesting that there was, prior to October 2018, excessive channel inventory accumulation caused by the undisclosed sales practice that

---

[2] Lead Plaintiff Trubnikov asserts he purchased Plantronics securities on only *one date*, October 24, 2018. ECF No. 31-1 at 4. With the Court's dismissal of the claims based on the August 7, 2018 statements, Trubnikov lost his standing and any argument he had that he was "misled" by Plantronics' post-July 2018 acquisition "growth story," as he purchased his Plantronics holdings *before* the Company issued any challenged statements in the Operative Class Period (the earliest of which took place on November 6, 2018).

could have significantly contributed to the revenues that Defendants discussed on August 7, 2018." SAC Order at 22. Because the proposed new pleading *still* provides no basis to "infer that Defendants . . . were required to mention the undisclosed sales practice" when making either the challenged August 2018 or September 2018 statements "in order to avoid misleading investors as to the causes for the [reported] revenues," *id.*, the Court should deny leave to amend to the extent Plaintiffs seek to challenge those statements.

As an initial matter, in their belated attempt to challenge the August and September 2018 statements, Plaintiffs defy the Court's instruction that any subsequent amendment would be permitted only "to the extent that Plaintiffs c[ould] do so without contradicting the allegations in their prior pleadings[.]" SAC Order at 34. The Proposed TAC, however, expressly contradicts the prior pleading. The SAC asserted that Plantronics "adopted the undisclosed sales practice *as part of the Polycom acquisition*" in order to turn around flat revenue results. SAC Order at 18, 21-22 (emphasis added). Now, Plaintiffs make the contradictory (and internally inconsistent) assertion that Plantronics had engaged in "channel stuffing" for years prior to the acquisition, *even when its revenues remained stagnant,* and only shifted the (apparently unsuccessful) practice into "overdrive" when Plantronics acquired Polycom. Plaintiffs cannot satisfy the PSLRA with these internally inconsistent allegations. *See, e.g., In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1005 (N.D. Cal. 2016) ("[T]he sparse allegations Plaintiffs do provide contradict Plaintiffs' theory.").

Moreover, as the Court recognized in the SAC Order, the alleged new and undisclosed "back-end loaded channel stuffing" practice would have generated "unsustainable sales[.]" SAC Order at 17. "Because channel stuffing 'borrows' from future demand, the underlying weakness will necessarily reveal itself in time, and the fraud lies in capitalizing on the appearance of strength while aware of the underlying weakness." *Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568 at *6 (N.D. Cal. June 19, 2020).

But in their Proposed TAC, Plaintiffs premise their claim on the theory that channel stuffing began in October 2016 and somehow continued *over three years* before the alleged corrective disclosure on November 5, 2019. Based on Plaintiffs' new allegations, "the sheer

length of time that" the practice of stuffing the channels purportedly took place "undermines the argument that it was inherently unsustainable or hid short-term weakness." *Id.* at \*8 (dismissing complaint based on allegations that channel stuffing took place over six quarters). In *Yaron*, "[a]lthough bulk discounting eventually resulted in built-up inventory among customers," the court dismissed the claim because the plaintiff did not "allege facts to show that channel stuffing negatively impacted" sales or growth at the time of the challenged statements. *Id. at* \*9. For this reason alone, Plaintiffs' motion should be denied. But even apart from that conclusion, the new allegations regarding Plantronics' pre-November 2018 statements run afoul of the PSLRA and are inadequate to support claim, as discussed below.

**1. The** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Are Insufficient to State a Claim as to the August or September 2018 Statements**

Plaintiffs' attempt to cure their pleading deficiencies as to the August 7, 2018 statements and to issue a new challenge to the September 11, 2018 statements hinges on ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. None of ▮▮▮▮▮▮▮▮▮▮ is sufficiently reliable to support Plaintiffs' claims.

With respect to ▮▮▮▮▮▮▮▮▮▮, in the Initial Proposed TAC, Plaintiffs sought to ascribe *some* modicum of reliability to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; indeed, the suggestion that these ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was the centerpiece of Plaintiffs' Initial Motion. ECF No. 160 at 8-11. Of course, Plaintiffs were wrong.[3] Now, after ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] Had Plaintiffs made even the most basic inquiry of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ before seeking amendment, *see* ▮▮▮▮▮ Decl., ¶¶ 3-4, they would not have ▮▮▮▮▮▮▮▮▮▮▮▮. *See infra* Section V.C. *See also Francisco v. Abengoa, S.A.*, 624 F. Supp. 3d 365, 393 (S.D.N.Y. 2022) (noting best practice for counsel relying on confidential sources is to confirm the statements from the witness). Notably, while Plaintiffs explain that they filed a "corrected" motion to amend to correct ▮▮▮▮▮▮▮ (Motion at 1 n.1), nowhere do Plaintiffs acknowledge that their initial effort ▮▮▮▮▮▮▮▮▮▮▮▮▮▮; nor do they acknowledge that ▮▮▮▮▮▮▮ ▮.

██████ from the "corrected" Proposed TAC, ████████████ lack any semblance of reliability and cannot pass muster under the rigid standards the PSLRA imposes.

Where, as here, a securities fraud complaint relies ████████████, courts apply the same standards to evaluate the knowledge and reliability of ██████████████ as with confidential witness allegations: particularized facts must establish that the sources are reliable (*i.e.*, they held positions making it likely they would have relevant information) and that they "have personal knowledge of the events they report." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995-96 (9th Cir. 2009); *see also Miller v. PCM, Inc.*, 2018 WL 5099722 at *9 n.6 (C.D. Cal. Jan. 3, 2018) (applying *Zucco* standard "to anonymous sources, such as the Seeking Alpha blog post, because both the confidential witnesses in *Zucco* and the author of the Seeking Alpha blog post are unknown persons whose reliability courts must gauge using external indicia"); *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 485-86 (S.D.N.Y. 2009), *aff'd sub nom. Thesling v. Bioenvision, Inc.*, 374 F. App'x 141 (2d Cir. 2010) (declining to credit allegations from anonymous source because complaint did not "describe[e] him with any particularity whatsoever" and court was "wholly unable to determine whether this source was in a position to know what he is alleged to have told" plaintiff in another matter).[4] Indeed, when addressing the reliability of an anonymous internet post, another court recognized that "the only appreciable difference that the Court can ascertain between anonymous internet postings and confidential witness statements is that anonymous internet postings are less reliable than confidential witness statements." *In re Apollo Group, Inc. Sec. Litig.*, 2011 WL 5101787 at *11 n.7 (D. Ariz. Oct. 27, 2011); *see also In re Sunrun, Inc. Sec. Litig.*, 2018 WL 10323335, at *1 (N.D. Cal. July 19, 2018) (statements by Wall Street Journal reporter did not support claim because they lacked facts showing the reporter "had the personal knowledge of the company's

---

[4] *See also In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 368-69 (D.N.J. 2007) (declining to credit assertions in anonymous internet post absent specifics about "the time period that the source worked at the defendant-company, the dates on which the relevant information was acquired, the facts detailing how the source obtained access to the information, details regarding the basis for the source's personal knowledge and detailed descriptions of the alleged events"); *Francisco*, 624 F. Supp. 3d at 394 (declining to credit whistleblower assertions, even when former employee's position was identified, when allegations did not support the probability that person in that position would possess information alleged).

OPP. TO MOT. FOR
LEAVE TO FILE TAC                 - 10 -              Case No. 4:19-cv-07481-JST

internal operations to make this information sufficiently reliable" and did not "identify the source whose personal knowledge she was allegedly reporting").

Here, Plaintiffs speculate that ██████████████████████████ and ██████████████████████████ ██████████████████████████████████████████████ ██████████████████████████ Proposed TAC ¶¶ 10, 91. But this speculation about ██████████████████████████████████ is no substitute for the well-pleaded facts that the PSLRA and Ninth Circuit require: "the complaint must provide an adequate basis for determining that the witnesses in question have personal knowledge of the events they report." *Zucco,* 552 F.3d at 995. The Proposed TAC does nothing of the sort. Among other deficiencies, the proposed pleading offers *no* information about ████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████. *Id.* (sources must be described "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged") (citations omitted).

To the contrary, the limited information the complaint includes makes clear that the ██████████████████████████████████ ██████████████████████████████████████ ████████████████████ Proposed TAC ¶ 92. Thus, as just one example, while ██████████████████████████████ ██████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████ ████████████████████ In either event, Plaintiffs do not plead any facts to show that the "source" has personal knowledge of the matters asserted. Reliance on ████████████ is thus plainly insufficient to support a claim for securities fraud. *See Zucco,* 552 F.3d at 997-98

(rejecting confidential witness allegations that were based on hearsay from anonymous sources); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *13 (N.D. Cal. July 21, 2020) (where former employee "witnesses report only unreliable hearsay or allege conclusory assertions, [the] allegations are insufficient"); *Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1015 (N.D. Cal. 2018) (hearsay based on information learned "from an undisclosed source at an undisclosed time" is "insufficient"). In short, because Plaintiffs offer no basis from which the Court can credit the allegations drawn from ███████████████████████ should be disregarded when assessing whether to permit Plaintiffs to amend. *See Francisco*, 624 F. Supp. 3d at 393-94, 394; *In re Intelligroup*, 527 F. Supp. 2d at 369.

In any event, even if Plaintiffs could establish that ████████████████████████ were in a position to have personal knowledge of the matters alleged, nothing in ██████████ provides the well-pleaded factual allegations required to support an inference that, ***at the time of the challenged August and September statements***, Plantronics was already experiencing excessive channel inventory accumulation due to channel stuffing. Plaintiffs contend that ██ ███████████████████████████████████████ ████████████████████. Motion at 8-11. But █████████████████████ █████████████████████, provide no information about what impact (if any) the alleged "channel stuffing" sales practice had on channel inventory levels or financial results ***as of August 7, 2018 or September 11, 2018***.[5] Thus, ████████ fail to cure the pleading deficiency the Court identified in the SAC:  the lack of well-pleaded allegations "suggesting that there was . . . excessive channel inventory accumulation caused by the undisclosed sales practice that could have significantly contributed to the revenues" disclosed in the challenged statements. SAC

---

[5] Although ████████████████████████████████████████████ (Proposed TAC ¶ 92), ████████████████████████████████████████████ ████████████████████████████████████████████ (*id.* ¶¶ 14, 103).

Order at 21-11.[6]

Plaintiffs' reliance on ███████████████████████████████ suffers from many of the same shortcomings. Most significantly, Plaintiffs fail to allege that ████████ ████████████████████████████████████████. Critically, ██████████████████ ███████████████████████████████████ (Proposed TAC ¶ 10 n.5) ████ ████████████████████████████████████████████████████. The Proposed TAC contains no information about ████████████████████████████ ██████████████████████████████████████. Proposed TAC ¶ 10 n.5. Because nothing in the Proposed TAC establishes that ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████ provides no support for Plaintiffs' proposed claims. *Zucco*, 552 F.3d at 995-96.

Nor does the Proposed TAC provide a sufficient basis to conclude that ████████ ███████████████████████████████████████████████████. Because Plaintiffs provide no information about ████████████████████████, they have not adequately alleged his █████████████████████████████████ ███████████. *See, e.g.*, *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1053 (N.D. Cal. 2019) (sources lacked personal knowledge where, among other things, they did not work at company during relevant period); *Costabile*, 293 F. Supp. 3d at 1015 (similar). The fact that this claim is directly contradicted by the Proposed TAC's other allegations, which describe channel stuffing as a "new sales practice" as of the summer of 2018 (Proposed TAC ¶¶ 155,

---

[6] ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████. *See* Proposed TAC ¶ 94 ██ ██████████████████████████████████████████████████ ████ (emphasis added)); ¶ 95 (██████████████████████████ ██████████████████████████████████████████ (emphasis added)).

160), underscores Plaintiffs' failure to plead facts establishing [REDACTED] [REDACTED]. *See also id*. ¶ 262 (post-class period statements were admission that "sales practices had changed materially *in connection with the merger*" (emphasis added)).

But even assuming Plaintiffs had adequately alleged [REDACTED] [REDACTED] is not sufficient to support Plaintiffs' claims as to the August 2018 or September 2018 statements. As explained *infra* at 15-17, Plaintiffs must also establish that [REDACTED] led to excessive channel inventory accumulation *as of the time of the challenged statements*. [REDACTED] [REDACTED] [REDACTED] [REDACTED] [REDACTED] [REDACTED] (Proposed TAC ¶ 96), [REDACTED] [REDACTED] [REDACTED] [REDACTED] at the time of the challenged August or September 2018 statements. If anything, in light of the Proposed TAC's allegations that [REDACTED] [REDACTED] (*id.* ¶¶ 14, 103), the only reasonable inference to be drawn from the totality of these allegations is that [REDACTED] [REDACTED] – *i.e.*, well after the challenged August and September 2018 statements.

### 2. The "Internal Communications" Relied Upon by Plaintiffs Undercut Their Allegations and Do Not Establish That the August or September 2018 Statements Were False or Misleading

In an apparent acknowledgement that [REDACTED] discussed above are unreliable and devoid of contemporaneous knowledge, Plaintiffs "began searching for documents confirming the allegations made in [REDACTED] before seeking to amend the Second Amended Complaint." *See* ECF No. 173-1, Sean Matt Decl. ¶ 7. Ultimately, they cite

██████ internal communications to support their amendment: ████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ███████████. Rather than cure the SAC's deficiencies, these communications ***undercut*** Plaintiffs' allegations that channel inventory had increased by August or September 2018. ██████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ Proposed TAC ¶ 12. ███████ ████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ █████████████████████████████████. *See* Proposed TAC ¶¶ 9, 22, 25, 61. █ ████████████████████████ ████████████████████████████████████ █████████████████████████████. *Id.* Moreover, Plaintiffs ignore that ██████████████████████████ ████████████████████████████████ ████████████████████████████████████ ████████████████████████████ ██████████████. Kolovos Decl. Ex. B (PLANT_00017714)[7] (████████████ ███████████); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323-24 (2007).

In any event, ████████████████████████████ ████████████████████████████ sheds no light whatsoever on channel inventory levels at the time of the challenged August and September 2018 statements. For this additional reason, ██████ ██████ fails to provide a basis for inferring that statements the Company made ████████████

---

[7] Defendants note that █████████████████ cited by Plaintiffs (Proposed TAC ¶¶ 12, 100) was produced by Defendants at Bates number PLANT_00017714, not PLANT_00018562.

███████ were misleading. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008) ("[T]he complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." (emphasis added) (quoting *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001)).

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████. Proposed TAC ¶¶ 13, 101-02; Kolovos Decl. Ex. C (PLANT_00061567). ████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████. Kolovos Decl. Ex. C (PLANT_00061567)

(█████████████████████████████████████████

████████████████████████). Plaintiffs do not allege ██████████

███████████████████████████████████████████████

██████████████████████.[8]

████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████. Proposed TAC ¶ 14, 104; Kolovos Decl. Ex. D (PLANT_00023924).[9] Plaintiffs allege ████████████████████████████████

███████████████████████████ (TAC ¶¶ 14, 39, 103), but it does just

---

[8] Plaintiffs' reference to ██████████████████████ as noted in the email is a red herring. As Plantronics disclosed in the very same August 2018 statement that Plaintiffs challenge, consigned inventories were not recorded on its balance sheet "until [the Company] take[s] title to the raw materials, components, and subassemblies, which occurs when they are consumed in the production process. Prior to consumption in the production process, our suppliers bear the risk of loss and retain title to the consigned inventory." *See* Kolovos Decl. Ex. G, Aug. 7, 2018 10-Q at 12.

[9] Defendants note that ████████████████████ cited by Plaintiffs (TAC ¶¶ 14, 104) was produced by Defendants at Bates number PLANT_00023924, not PLANT_00024743.

OPP. TO MOT. FOR
LEAVE TO FILE TAC                     - 16 -                     Case No. 4:19-cv-07481-JST

the opposite. When read in context, ███████████████████████████████ ████████████████████████████ ███████████████████████████████ ████████████████████████. *See* Ex. D (PLANT_00023925).  Plaintiffs' reading to the contrary is puzzling. If, as Plaintiffs allege, ████████████████████ ███████████████████████████████ ███████████████████████████████ ██████████████████████████.

Moreover, ███████████████████████████ ███████████████████████████████ ██████████████████████████████ ███████████████████████████████ █████████████████████████████ ████████████████████████ Ex. D ( PLANT_00023925).

It is nonsensical, then, to allege that ██████████████████████████████ ██████████████████████████████ ████████████████████████████████.

### 3. Plaintiffs' New Challenge to the September 11, 2018 Statements Suffers From Independent Fatal Flaws

Plaintiffs challenge two September 11, 2018 statements: (i) guidance provided by Ms. Strayer during a conference call regarding anticipated revenues and earnings (Proposed TAC ¶ 156); and (ii) a Form 8-K/A reporting Polycom's pre-merger revenues for the quarter ending March 31, 2018 (*id*. ¶ 157). To do so, Plaintiffs rely on the same deficient factual allegations that fail to state a claim as to the August statements, and therefore their attempt fails for the same reasons. *See supra* at 9-17.  But Plaintiffs' claims as to these newly challenged statements also suffer from additional, independent weaknesses.

*First,* with respect to the guidance Ms. Strayer provided during a conference call

regarding anticipated revenues and earnings (Proposed TAC ¶ 156), those statements are insulated by the PSLRA's safe harbor, which precludes liability for statements identified as forward-looking and accompanied by meaningful cautionary language. 15 U.S.C. §78u-5(c)(1)(A)(i); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189-90 (9th Cir. 2021). Even absent identification and cautionary language, a forward-looking statement is not actionable unless Plaintiffs plead facts showing that the speaker had actual knowledge of falsity. 15 U.S.C. §78u-5(c)(1)(B); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010). Ms. Strayer's challenged statements—regarding expected "cost synergies" in FY 2019, "2Q FY 2019 guidance of $500-$530 million in revenues and $1.00-$1.25 EPS," and potential growth in FY 2020 and FY 2021 (Proposed TAC ¶ 156)—are "forward-looking on their face" and thus qualify for the safe harbor. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014); *see also Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F. 4th 611, 623 (9th Cir. 2022).

At the outset of the conference call, the Company informed listeners that the information presented may include forward-looking statements and referred them to the press release the Company issued that same day and its most recent 10-K and 10-Q for discussion of risks that could cause actual results to differ from expectations. Kolovos Decl. Ex. E at 1-2.[10] These admonitions properly invoked the safe harbor. *See Intuitive Surgical*, 759 F.3d at 1059-60; *Cutera*, 610 F.3d at 1112; *see also Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 931 (N.D. Cal. 2017) (safe harbor applied where company "point[ed] potential investors to its Form 10–K . . . and the specific risk factors contained therein").

The referenced documents contained detailed cautionary language. For example, the September 11, 2018 press release (i) reiterated that "expectations concerning the benefits of the acquisition of Polycom, cost synergies, profitability and growth," estimates of future financial results, and "expectations for organic growth" were all forward-looking, and (ii) enumerated "risks and uncertainties that may cause actual results to differ materially from those

---

[10] For oral statements, speakers may refer to cautionary language in documents. 15 U.S.C. § 78u-5(c)(2)(B); *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *5 (N.D. Cal. Nov. 16, 2020). The Court must consider such disclosures in assessing a pleading. 15 U.S.C. § 78u-5(e).

contemplated." Kolovos Decl. Ex. H at 6. Those risks included challenges in integrating the Polycom business, the difficulties of "forecast[ing] financial results of the combined company" and "successfully integrat[ing] our reporting system," the possibility that "expected synergies … may fail to materialize in whole or part or may not occur within expected time-frames," and the acquisition's potential "adverse[] impact" on "relationships with . . . customers, suppliers and strategic partner" as well as "operating results and businesses generally." *Id*. The 10-K and 10-Q provided further discussion of these and other risks, including economic conditions, "variations in the volume and timing of orders received during each quarter," "shifts in the particular types of products ordered," the integration of Polycom, whether the Company could "realize the anticipated benefits of the acquisition," the ability to "accurately forecast [customer] demand" and resulting impact on "inventories," production and supply chain issues, competition, reliance on large customers "whose order patterns are difficult to predict," "[e]ffectively managing [] relationships" with "distributors, retailers, OEMs, and telephony service providers," and "avoiding channel conflicts." Kolovos Decl. Ex. F at 10-25 (2018 Form 10-K); *see also* Ex. G at 38-41 (1Q FY19 Form 10Q).

In short, Plantronics provided a meaningful description of a host of factors that could cause actual results to differ from expectations regarding cost synergies, revenues, earnings, and revenue growth (*see, e.g.*, *In re Splunk, Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 935 (N.D. Cal. 2022)), which Plaintiffs cannot seriously contest.[11] Instead, Plaintiffs rely on the conclusory averment that unspecified cautionary language was not meaningful (Proposed TAC ¶ 271), but that boilerplate assertion is ineffective to circumvent the safe harbor. *See Wochos*, 985 F.3d at 1190 ("[P]laintiff must plead . . . facts indicating that the 'cautionary statements' cited by the defendant were not 'meaningful.'"); *Bodri*, 252 F. Supp. 3d at 931-32 (rejecting attack on cautionary language where plaintiff failed to plead particularized facts showing the language was not meaningful). The PSLRA therefore bars any claims based on Ms. Strayer's challenged

---

[11] Although Plantronics' comprehensive risk factors go to the heart of Plaintiffs' theory of liability, this Court has stressed that "cautionary language . . . *does not need to warn of the exact risk that transpires* and causes a company to miss a guidance forecast." *Bodri*, 252 F. Supp. 3d at 931 (emphasis added; citation and internal quotation marks omitted).

statements without regard to whether the statements were allegedly misleading or made with scienter. *See Wochos*, 985 F.3d at 1190-97; *Intuitive Surgical*, 759 F.3d at 1058-60; *Splunk,* 592 F. Supp. 3d at 937-38.

Even if Plaintiffs could show that the cautionary language was not meaningful (and they cannot), any claim would still fail because they plead *no facts* showing Ms. Strayer *actually knew* the forecasts were false. *Bodri*, 252 F. Supp. 3d at 930. Plaintiffs suggest she "omitted to disclose" that future revenue growth "was reliant upon a *new sales practice* that intentionally *replaced* Plantronics' stable and predictable 30-30-40 model with a hockey stick model" (Proposed TAC ¶ 160; emphasis added), but that allegation is *directly contradicted* by allegations in the TAC that there was no "new" practice, and that a "hockey stick" model had been implemented ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Proposed TAC ¶ 10; *see also* ¶¶ 38, 89, 91.

Putting that aside, the Proposed TAC does not establish that a purportedly new "hockey stick" model rendered the projections unattainable or that Ms. Strayer *knew* the adoption of a new model meant that the forecasts "could not be met *when issued*." *Bodri*, 252 F. Supp. 3d at 928-29 (emphasis added).[12] In fact, Plaintiffs cannot point to any source or allegation establishing Ms. Strayer's state of mind as of September 11, 2018,[13] let alone that she knew the stated expectations regarding synergies, revenues and earnings were false. And the allusion to an unspecified "buildup . . . of channel inventory" (Proposed TAC ¶ 160) is unsupported by facts establishing: (i) any "buildup" before "October or November 2018," as the Court held with respect to the SAC (*see* SAC Order at 22) and (ii) Ms. Strayer's knowledge in September 2018 that any "buildup" would doom the forecasts. *See Leapfrog*, 200 F. Supp. 3d at 1004-05 (allegations of excess inventory did not show forecasts were made with knowledge of falsity); *In*

---

[12] *See also Smith v. NetApp, Inc.*, 2021 WL 1233354, at *7-8 (N.D. Cal. Feb. 1, 2021) (plaintiffs did not plead facts to show forecasts were known to be false when made); *In re Nimble Storage, Inc. Sec. Litig.*, 2017 WL 4355570, at *5 (N.D. Cal. Oct. 2, 2017) (projections not actionable absent facts establishing they were known to be impossible when made).

[13] While Plaintiffs aver in passing that "internal documents" suggest the September 11, 2018 statements were false (Proposed TAC ¶ 39), the TAC cites no documents to show that Ms. Strayer knew the forecasts were unattainable when made. *See Bodri*, 252 F. Supp. 3d at 929.

*re Lexar Media, Inc. Sec. Litig.*, 2005 WL 1566534, at *3 (N.D. Cal. July 5, 2005) ("A rise in inventories does not necessarily signify slowing sales. Without additional facts, it is no less likely that a rise in inventories signifies growing sales, or an anticipation of growing sales.").[14]

*Second,* Plaintiffs' challenge to the report of Polycom's pre-merger revenues for the quarter ending March 31, 2018 fails to establish that Polycom's reported revenues were materially misleading, much less that Defendants acted with scienter. Proposed TAC ¶ 157. The TAC assails two line items in the report of Polycom's pre-merger revenues for the quarter ending March 31, 2018, as set forth in an attachment to Plantronics' September 11, 2018 Form 8-K/A— product revenues and total revenues for the March 2018 quarter ($192.3 million and $271.2 million, respectively)—but does not contend that the numbers were inaccurate or revenue was improperly recognized. Proposed TAC ¶ 157; *see also* Ex. H. Rather, Plaintiffs merely suggest that these reported results were misleading absent disclosure of a new "hockey stick" model adopted by Plantronics that supposedly resulted in an unspecified channel inventory increase. Proposed TAC ¶ 160. As discussed in the preceding sections, that omission theory is incompatible with the Proposed TAC's explicit allegations that there was no "new" sales model, and that the Company was instead using a sales strategy purportedly commenced nearly two years earlier. *See Leapfrog*, 200 F. Supp. 3d at 1005. But even if Plaintiffs could overcome that obstacle, their claim is a *non sequitur*: they fail to demonstrate that the alleged "omission" of a purportedly *new* practice at *Plantronics* rendered misleading the straightforward reporting of *Polycom's* revenues for a quarter ending *six months earlier*. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (plaintiffs must identify undisclosed facts showing that the challenged statement created "an impression of a state of affairs that differ[ed] in a material way from the one that actually exists," and merely claiming a statement is "incomplete" does not suffice); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880-81 (9th Cir. 2012) (no

---

[14] Because the challenged statements were made orally by Ms. Strayer, they cannot support a claim against the other individual defendants (Mr. Burton and Mr. Boynton). *In re eHealth, Inc. Sec. Litig.*, 2023 WL 6390593, at *9 (N.D. Cal. Sept. 23, 2023). Indeed, Mr. Boynton did not even join Plantronics until March 2019 (Proposed TAC ¶ 50), some *six months after* the challenged statements.

claim where undisclosed facts were "not inconsistent" with statement); *Jedrzeczyk v. Skillz Inc.*, 2022 WL 2441563, at *5 (N.D. Cal. July 5, 2022) (same); *Yaron*, 2020 WL 6750568, at *7 (reported revenue not misleading for failure to disclose that it "was artificially inflated by channel stuffing"). Nor do Plaintiffs identify facts showing that Mr. Burton, Ms. Strayer, or anyone else knew or believed in September 2018 that an accurate recitation of Polycom's revenues for the March 2018 quarter would mislead investors absent discussion of Plantronics' supposed sales practices.  Scienter is therefore absent. *See Hampton*, 2020 WL 6710096, at *14 (no facts to support inference that defendants knew undisclosed issues would be significant and render statements misleading); *Yaron*, 2020 WL 6750568, at *9 ("[D]efendants may know that most sales occur at the end of quarter without suspecting that the practice had any negative impact.").

Similarly unavailing is the allegation that Polycom's "reported revenues and recent revenue growth was [*sic*] materially misleading because it omitted that a material part of the growth was attributable to Polycom's policy of orchestrating revenue at the end of the quarter." Proposed TAC ¶ 160. As an initial matter, the Proposed TAC runs afoul of the PSLRA by identifying *no statement* in the Form 8-K/A regarding Polycom's "recent revenue growth." *See* 15 U.S.C. §78u-4(b)(1)(B). To the contrary, the Form 10-Q disclosed that Polycom's revenues for the March 2018 quarter *declined* from the same period in the prior year. Ex. G at 4.

Plaintiffs also fail to identify what portion of Polycom's quarterly revenues was allegedly attributable to a "policy of orchestrating revenue at the end of the quarter," and plead no facts demonstrating that such a "policy" was so inconsistent with the reported revenues as to create "an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Brody*, 280 F.3d at, 1006; *Yaron*, 2020 WL 6750568, at *7.[15] And given Plaintiffs' failure to plead falsity in accordance with the PSLRA, it is not surprising that they cannot plead contemporaneous facts raising a strong inference of scienter—*i.e.*, that Defendants knew or

---

[15] The Proposed TAC also ignores that the allegedly "omitted" fact was not omitted at all: before going private in 2017, Polycom's SEC filings noted that "a high percentage of [] bookings and resulting revenues" occurred "in the third month of the quarter."  Kolovos Decl. Ex. I at 52-53; Ex. J at 50; Ex. K at 24.

deliberately disregarded in September 2018 that reporting Polycom's historical revenues for an earlier three-month period would be materially misleading without also noting that a large portion was generated late in that quarter.  *See Hampton*, 2020 WL 6710096, at *13-14.

**B.     Plaintiffs Provide No Basis for Amendment Concerning February 2020 Statements**

For the first time in over four years of litigation, Plaintiffs assert that Class members suffered losses from the "corrective adverse information disclosed on February 4, 2020," three months after the end of the Class Period. Motion at 3 (citing Proposed TAC ¶¶ 211-15). Plaintiffs provide no facts—new or otherwise—in support of their proposed amendments concerning the February 4, 2020 disclosures. Instead, Plaintiffs contend that they are only "clarify[ing] Plaintiffs' loss causation theory." Motion at 3, 21 (citing Proposed TAC ¶¶ 211-15). Because Plaintiffs provide no factual or legal basis for this proposed amendment, their motion should be denied.

**C.     Plaintiffs Have Not Demonstrated the Diligence Necessary to Support Modifying the Court's Prior Scheduling Order**

Plaintiffs concede (Motion at 16) that the deadline for amendment of pleadings may be modified "only for good cause." Fed. R. Civ. P. 16(b)(4). As the Court has explained, "the good cause standard 'primarily considers the diligence of the party seeking the amendment.'" *In re Twitter, Inc. Sec. Litig.*, 2020 WL 4188787, at *3 (N.D. Cal. May 19, 2020) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Because Plaintiffs do not make the requisite showing of diligence as to any of their proposed amendments—the purportedly misleading statements in August and September 2018 as well as the "clarified" loss causation statements from February 2020—their motion must be denied.  *See id*.

Plaintiffs rely principally on ███████████████████████████████████████ ████████████████████████████████ discussed above to support their new allegations regarding the August and September 2018 statements. *See* Motion at 2, 8-11, 18; *see also* Proposed TAC ¶¶ 10, 38, 91, 97. Yet Plaintiffs concede that Defendants produced ████████ on *May 2, 2023* (Motion at 8)—nearly *five months* before Plaintiffs first moved for relief from the scheduling order. Such a delay is inconsistent with the diligence required by Rule 16(b)(4).  *See,*

*e.g.*, *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 11715362, at *1-2 (N.D. Cal. July 26, 2017) (plaintiff unable to justify "delay of nearly four months"); *In re Rocket Fuel, Inc. Sec. Litig.*, 2017 WL 344983, at *3-5 (N.D. Cal. Jan. 24, 2017) (motion denied where plaintiffs waited four months after production of documents purportedly warranting amendment).[16] Plaintiffs' references to "the number of documents produced" and "the complex securities fraud litigation issues involved" (Motion at 18) do nothing to support a contrary conclusion. *See Cryer*, 2017 WL 11715362, at *1-2 (rejecting argument that plaintiff's delay was excused by need to "conduct further research into the potential claim" after information was produced); *Rocket Fuel*, 2017 WL 344983, at *4-5 (purported need to review document productions was "an insufficient explanation for plaintiffs' substantial delay in seeking leave to amend"). Despite Plaintiffs' note that "over 444,000 pages" have been produced (Motion at 18), they ignore that Defendants explicitly called Plaintiffs' attention to ▓▓▓▓▓▓ in early May 2023. Kolovos Decl. ¶ 2.

Further, Plaintiffs fail to provide any justification for their belated attack on the September 11, 2018 statements. As noted above, the Proposed TAC avers that those statements were misleading because they did not disclose Plantronics' supposedly new sales model (Proposed TAC ¶ 160)—the exact theory advanced in the SAC. Plaintiffs are unable to explain why they did not assert that claim in September 2022 (pursuant to the Court's August 2022 SAC Order granting leave to amend), let alone demonstrate that they have acted diligently by waiting for more than a year to seek to assert this claim. *See In re Twitter*, 2020 WL 4188787, at *4. As for the claim that reporting Polycom's March 2018 quarterly revenues was misleading for failure to disclose its "back-end loaded" model (Proposed TAC ¶ 160), Plaintiffs cite one document produced in August 2023. Motion at 14-15. But Plaintiffs do not explain why they were unable to assert the claim prior to receipt of that lone document, particularly given that (i) Polycom's

---

[16] In evaluating a party's diligence under Rule 16(b)(4), a court may consider materials submitted by a non-party. *Quantum Labs, Inc. v. Maxim Integrated Prods., Inc.*, 2020 WL 7027305, at *3-4 (N.D. Cal. Nov. 30, 2020) (considering non-party's declaration, along with other materials, in concluding that plaintiff was not diligent and that "the amended pleading cannot be allowed"). Here, ▓▓▓▓▓▓▓ Declaration underscores Plaintiffs' lack of diligence in not contacting ▓▓▓▓▓▓▓▓▓▓ to investigate the circumstances surrounding the ▓▓▓▓▓▓▓ that were the centerpiece of their Initial Motion. Kolovos Decl. Ex. A; ▓▓▓▓ Decl. ¶ 4.

historical SEC filings disclosed that "a high percentage of . . . bookings and resulting revenues" occurred "in the third month of the quarter" (Ex. I at 52-53; Ex. J at 50; Ex. K at 24), and (ii) the SAC's allegations regarding Polycom's "backend loaded model" (*see, e.g.*, SAC ¶¶ 9, 234).

Similarly, Plaintiffs cannot justify the addition of allegations regarding a February 2020 stock price decline. Motion at 21 (citing Proposed TAC ¶¶ 211-15). Setting aside that loss causation is not satisfied by a drop three months after the last "corrective disclosure" allegedly revealing the "truth" (Proposed TAC ¶ 267),[17] that new theory—based on public information—could have been asserted in prior pleadings. The fact that Plaintiffs did not discuss this issue with "experts" until August 2023 (Motion at 15) does not establish diligence. *See, e.g.*, *Best Label Co., LLC v. Custom Label & Decal, LLC*, 2021 WL 5415260, at *6-7 (N.D. Cal. Nov. 19, 2021).

Finally, the argument that there is no undue prejudice to Defendants (Motion at 18-20) is a red herring. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to *deny* a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Twitter,* 2020 WL 4188787, at *3 (quoting *Johnson*, 975 F.2d at 609). Where, as here, Plaintiffs fail to establish their diligence, "the inquiry should end' and the motion to modify should not be granted" *regardless* of any prejudice. *Id.* (quoting *Zivkovic v. S. Cal. Edison, Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002)).

## VI.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for leave to file their proposed Third Amended Complaint.

Dated:  November 21, 2023

WILMER CUTLER PICKERING HALE
AND DORR LLP

By:   */s/ Susan S. Muck*

*Attorney for Defendants Plantronics, Inc.,
Joseph Burton, Charles Boynton, and
Pamela Strayer*

---

[17] *See, Wochos*, 985 F.3d at 1198 (loss causation generally requires that "the stock price [fell] shortly after the disclosure of the true facts"); *Huang v. Higgins*, 443 F. Supp. 3d 1031, 1058-59 (N.D. Cal. 2019) (no loss causation for disclosure and price drop six months after class period).