**HAGENS BERMAN SOBOL SHAPIRO LLP**
Reed R. Kathrein (139304)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com

*Counsel for Lead Plaintiff Ilya Trubnikov and*
*Co-Lead Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
LAUREN A. ORMSBEE (*admitted Pro Hac Vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
lauren@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension*
*Fund and Co-Lead Counsel for the Class*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| IN RE PLANTRONICS, INC. SECURITIES LITIGATION | No. 4:19-cv-07481-JST<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT**<br><br>Date:        January 25, 2024<br>Time:       2:00 p.m.<br>Courtroom:  Courtroom 6, 2nd Floor<br>Judge:     The Honorable Jon S. Tigar |

[REDACTED PUBLIC VERSION]

## **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...........................................................................................................1

II.   PLAINTIFFS HAVE CONSISTENTLY ALLEGED THAT DEFENDANTS
      IMPLEMENTED THE CHANGED SALES PRACTICES BEFORE THE
      POLYCOM MERGER, AFTER WHICH THE CHANGE WENT INTO
      "OVERDRIVE"..............................................................................................................3

III.  THE NEW DOCUMENTS SUPPORT THE AMENDMENT AND THE TAC
      SHOULD BE ALLOWED AND SUSTAINED..........................................................5

      A.    ████████████████████████ Supports the Amendment......................5

      B.    ████████████████████ Support Amendment..........................................8

      C.    Internal Emails Support Amendment...................................................................10

IV.   PLAINTIFFS ACTED DILIGENTLY BY TIMELY AMENDING................................12

V.    DEFENDANTS' SEPTEMBER 2018 STATEMENTS ARE ACTIONABLE ...............13

VI.   THE TAC'S CLARIFICATION OF PLAINTIFFS' LOSS CAUSATION
      ALLEGATIONS IS PROPER. ......................................................................................15

VII.  CONCLUSION..............................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Amgen Inc. Sec. Litig.*,
   2014 WL 12585809 (C.D. Cal. Aug. 4, 2014)...........................................................................15

*Baird v. Samsung Elecs. Am., Inc.*,
   522 F. Supp. 3d 679 (N.D. Cal. 2021) ...................................................................................14

*In re Cabletron Sys., Inc.*,
   311 F.3d 11 (1st Cir. 2002)...............................................................................................6, 8

*In re Comp. Sci. Corp. Sec. Litig.*,
   890 F. Supp. 2d 650 (E.D. Va. 2012) ......................................................................................6

*Cryer v. Franklin Templeton Res., Inc.*,
   2017 WL 11715362 (N.D. Cal. July 26, 2017)........................................................................13

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ................................................................................................9

*Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*,
   2021 WL 1156844 (C.D. Cal. Jan. 6, 2021) ..........................................................................12

*In re Dura Pharms., Inc. Sec. Litig.*,
   452 F. Supp. 2d 1005 (S.D. Cal. 2006)...................................................................................15

*In re Equifax Inc. Sec. Litig.*,
   357 F. Supp. 3d 1189 (N.D. Ga. 2019)....................................................................................9

*In re Fibrogen, Inc.*,
   2022 WL 2793032 (N.D. Cal. July 15, 2022)..........................................................................14

*Francisco v. Abengoa S.A.*,
   624 F. Supp. 3d 365 (S.D.N.Y. 2022)......................................................................................9

*In re Impinj, Inc., Sec. Litig.*,
   414 F. Supp. 3d 1327 (W.D. Wash. 2019)..............................................................................14

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .......................................................................................2, 6, 7, 14

*Miller v. PCM, Inc.*,
   2018 WL 5099722 (C.D. Cal. Jan. 3, 2018) ............................................................................9

*Mortimer v. Diplomat Pharmacy Inc.*,
   2019 WL 3252221 (N.D. Ill. July 19, 2019)...........................................................................15

*In re Plantronics Sec. Litig.*,
  2022 WL 17974627 (N.D. Cal. Nov. 7, 2022) ...........................................................................8

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ..............................................................................................14

*In re REMEC Inc. Sec. Litig.*,
  702 F. Supp. 2d 1202 (S.D. Cal. 2010)...................................................................................10

*In re Rocket Fuel Inc. Sec. Litig.*,
  2017 WL 344983 (N.D. Cal. Jan. 24, 2017) ...........................................................................13

*In re Silver Wheaton Corp. Sec. Litig.*,
  2018 WL 1517130 (C.D. Cal. Mar. 26, 2018)..........................................................................15

*Snellink v. Gulf Res., Inc.*,
  870 F. Supp. 2d 930 (C.D. Cal. 2012) ....................................................................................15

*In re Sunrun, Inc. Sec. Litig.*,
  2018 WL 10323335 (N.D. Cal. July 19, 2018).........................................................................9

*In re Theragenics Corp. Sec. Litig.*,
  137 F. Supp. 2d 1339 (N.D. Ga. 2001) ....................................................................................9

*Vladimir v. Bioenvision, Inc.*,
  606 F. Supp. 2d 473 (S.D.N.Y. 2009).......................................................................................9

## I.   INTRODUCTION

In their Motion, Plaintiffs demonstrated good cause to modify the Court's February 21, 2023 Scheduling Order to permit the filing of their TAC, which includes allegations that conform to the evidence produced and reviewed at the time of filing. In opposition, Defendants argue that the TAC's new allegations contradict prior allegations, are based on unreliable evidentiary sources, are protected by the statutory safe harbor, and are brought without adequate diligence under Rule 16(b). Each argument can be set aside, and the Motion granted.[1]

*First*, contrary to Defendants' arguments, the new evidence and allegations are not a "shift" in the theory of the case. Opp. at 1, 8-9. Plaintiffs have consistently alleged that Defendants abandoned their longstanding sales practice and adopted an undisclosed channel-stuffing practice by no later than 2017, after Defendant Burton replaced Ken Kannappan as Plantronics' CEO. *See, e.g.*, SAC ¶¶ 10, 86, 214-217. But now, based on recently discovered evidence, the TAC provides the "non-conclusory factual matter suggesting that there was, prior to October 2018, excessive channel inventory accumulation caused by the undisclosed sales practice that could have significantly contributed to the revenues that Defendants disclosed on August 7, 2018" that the Court required in its August 17, 2022 Order. *See* Order at *13; *see also infra*, Section II.

*Second*, the three categories of documentary evidence included in the TAC support amendment. Each new source demonstrates that the Company's "undisclosed sales practice" "significantly contributed to the revenues that Defendants discussed on August 7, 2018," such that "Defendants Burton and Strayer were required to mention the undisclosed sales practice when making the August 7, 2018, statements in order to avoid misleading investors as to the causes for the revenues." Order at *13. After stepping down as CEO, Mr. Kannappan remained as an Executive Chairman and then consultant until March 2019 (TAC ¶ 10 n.5), █████████

████████████████████████

---

[1] The defined terms in the Motion shall have the same meaning herein. Defendants' opposition brief (ECF No. 175) will be referred to as "Opp." or "Opposition" herein. "Ex." refers to the Reply Declaration of Lucas E. Gilmore in Support of the Motion ("Gilmore Decl."), filed concurrently herewith. Unless otherwise indicated, all emphasis herein has been added to the quoted documents.

(TAC ¶ 96). Defendants attempt to minimize ███████████████ Opp. at 13-14. These arguments are inconsistent with ███████████████. *See infra*, at Section III.A. Moreover, to the extent that Defendants inappropriately call for a determination of ███████ both parties recently deposed Mr. Kannappan, and he confirmed, under oath: (i) ███████████████. *See infra*, at Section III.A. Mr. Kannappan further testified that ███████████████ Gilmore Decl. Ex. 2, Kannappan Tr. at 108:11-109:13. While the allegations in the TAC, standing on their own, are sufficient to support the Motion, Mr. Kannappan's testimony provides assurance to the Court that ███████████████. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (warning that, when considering extrinsic documents to assess the sufficiency of pleadings, courts must draw inferences in favor of the plaintiff and avoid "resolv[ing] competing theories against the complaint" because it "risks premature dismissals of plausible claims that may turn out to be valid after discovery").

The TAC's new claims are also supported by ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ TAC ¶ 92; Kolovos Decl. Ex. A at PLANT_00007715 (emphasis added). Defendants broadly claim ██████████████████████████████████████ Opp. at 9-12. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ is unquestionably indicative of Defendants' scienter. *See infra*, at Section III.B.

The TAC cites internal Plantronics communications that ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ TAC ¶¶ 101, 103-04; *see also* Opp., Exs. B, C, and D. Defendants' attempts to rewrite the internal documents or minimize their import all fail. *Infra*, Section III.C.

***Third***, Plaintiffs did not delay in fling the Motion. Rather, Plaintiffs acted with diligence in quickly identifying and reviewing new evidence sufficient to support previously insufficient allegations of falsity and scienter dating back to August 7, 2018. *Infra*, Section IV.

***Fourth***, Defendants' statements on September 11, 2018 are actionable misleading statements of present and historical facts, and therefore are not protected by the safe harbor. *Infra*, Section V. ***Finally***, Plaintiffs' clarification of their loss causation arguments is permissible and will cause no undue prejudice to Defendants. *Infra*, Section VI.

## II.    PLAINTIFFS HAVE CONSISTENTLY ALLEGED THAT DEFENDANTS IMPLEMENTED THE CHANGED SALES PRACTICES BEFORE THE POLYCOM MERGER, AFTER WHICH THE CHANGE WENT INTO "OVERDRIVE"

Defendants argue, incorrectly, that the Motion should be denied because the TAC's allegations contradict Plaintiffs' earlier allegations and "shift[s] their theory of the case" in a manner inconsistent with the Court's prior direction. Opp. at 1, 8-9. Specifically, Defendants claim that in the TAC, █████████████████████████████████████

████████████████████████████████████████ *Id.* at 6 (emphasis in original). Defendants are

incorrect; Plaintiffs have consistently alleged that Defendants abandoned their longstanding sales practice and adopted an undisclosed channel stuffing practice by no later than 2017, after Defendant Burton became CEO.

In both the FAC and SAC, Plaintiffs alleged that Defendants' scheme to increase revenues through a change in sales practices had begun by early 2017 and was planned as early as 2016. *See, e.g.*, SAC ¶¶ 10-11, 98 (alleging that, **on March 2, 2017**, FE-2 overheard Defendant Burton discussing a plan to engage gain control of global channel partner inventories as part of channel-stuffing scheme), **and** SAC ¶¶ 214-217, 242 (alleging that "almost immediately after Defendant Burton took over as CEO … **in 2016**," FE-3 was instructed to lie to local distributors as part of channel-stuffing scheme); *accord* FAC ¶ 121 (reciting the same allegations concerning FE-2's account as pled in the SAC (¶ 234)), *and* FAC ¶¶ 129-132 (reciting the same allegations concerning FE-3's account as pled in the SAC (¶¶ 242-244)). Plaintiffs' allegations in the TAC are consistent with those earlier allegations. The TAC continues to allege, albeit with new evidentiary support, ▮▮▮▮▮▮▮▮▮ TAC ¶¶ 91-95. Thus, Defendants' argument that Plaintiffs have alleged this "for the first time" in the TAC is plainly wrong.

Defendants next take issue with the TAC's allegations that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Opp. at 14 (citing TAC ¶¶ 14, 103). Defendants argue these allegations are "contradictory" and "internally inconsistent" with Plaintiffs' theory of liability in the SAC. Opp. at 1, 8. Not only is this incorrect, as argued above, but these **identical allegations were also pled in the SAC**. *See* SAC ¶ 87 ("Following the acquisition of Polycom, Defendant Burton put this changed sales practices/channel stuffing plan into overdrive."). Defendants' argument that Plaintiffs' allegations in the TAC contradict the prior allegations in the SAC lacks any credibility.

Although pled in the SAC, the Court found that these allegations they were insufficient to

state a claim as early as August 7, 2018, largely because the SAC did not sufficiently support the claim "that there was, prior to October 2018, excessive channel inventory accumulation caused by the undisclosed sales practice." Order at *13. The TAC properly responds to the Court's conclusions with respect to the August 2018 statements by providing previously unavailable factual support for the false and misleading nature of Defendants' statements in August and September 2018.

**III.    THE NEW DOCUMENTS SUPPORT THE AMENDMENT AND THE TAC SHOULD BE ALLOWED AND SUSTAINED.**

Each new source of information, independently and collectively, supports amendment.

**A.**    ███████████████████████████    **Supports the Amendment**

Defendants contend that Plaintiffs fail to allege ████████████████████████████ ████████████████████████████████ Opp. at 13-14. This argument fails for multiple reasons.

*First*, Defendants cite inapposite authorities dealing with the pleading requirements for *confidential* witnesses. *See* Opp. at 13. ████████████████████████ Accordingly, the burden of pleading additional facts "with sufficient particularity" to establish [the confidential witness's] reliability and "personal knowledge" is simply inapplicable.

*Second*, the facts pled in the TAC *are sufficient* to plead ████████████████ ███████████████████████ The TAC details that Mr. Kannappan served as Plantronics CEO from 1999 through October 2, 2016, and after stepping down remained at Plantronics, serving in the role of Executive Vice Chairman of Plantronics, *and reported to Defendant Burton* until September 2017, and then serving as a consultant until March 1, 2019. *See* TAC ¶ 10 n.5. The TAC even further alleges that, as Burton's direct report, Mr. Kannappan remained involved in Burton's dealings with suppliers that Plaintiffs allege were used to carry out the Company's channel-stuffing practices. *See, e.g.*, TAC ¶ 98 (alleging that Mr. Kannappan accompanied Defendant Burton to the March 2, 2017 meeting that precipitated FE-2's account of overhearing Mr. Burton's channel-stuffing plans). Thus, Defendants are simply mistaken to argue that the TAC "provide[s] no information about Mr. Kannappan's consulting role" and fails to allege a basis for "his personal knowledge *after* October 2016." Opp. at 13 (emphasis in original).



Accordingly, the TAC adequately pleads ⬛⬛⬛⬛. *See In re Comp. Sci. Corp. Sec. Litig.*, 890 F. Supp. 2d 650, 666-67 (E.D. Va. 2012).

**Third**, ⬛⬛⬛⬛—which are pled in large part in the TAC (¶ 96) and attached as Ex. 1 to the Gilmore Decl.—⬛⬛⬛⬛.[2] Defendants argue that ⬛⬛⬛⬛. Opp. at 14. This is wrong and ignores its contents. ⬛⬛⬛⬛ TAC ¶ 96 (emphasis in original); Gilmore Decl. Ex. 1 at PLANT_00007722. There is no dispute that Mr. Kannappan resigned as CEO in October 2016. TAC ¶ 3. Thus, contrary to Defendants' arguments, ⬛⬛⬛⬛ is sufficient to establish that these practices began prior to the August 2018 and September 2018 misstatements.

**Fourth**, Defendants ignore the TAC's numerous allegations that corroborate ⬛⬛⬛⬛ TAC ¶ 96. ⬛⬛⬛⬛ (TAC ¶ 104 (quoting PLANT_00024744 (Opp. Ex. D))) ⬛⬛⬛⬛ *In re Cabletron Sys., Inc.*, 311 F.3d 11, 30 (1st Cir. 2002) (noting "the accumulated amount of detail the sources provide tends to be self-verifying" and that the "consistent accounts reinforce one another and undermine any argument that the complaint relies unduly on the stories of just one or two former employees").

---

[2] The Court may consider the contents of ⬛⬛⬛⬛ because it is incorporated by reference into the pleadings. *See Khoja*, 899 F.3d at 1002.

*Lastly*, faced with these well-pled allegations and ██████████████████████ ████████████████████████████████████ Defendants inappropriately raise fact and credibility questions concerning ████████████████████████ reserved for summary judgment. Opp. at 14. As the Ninth Circuit forcefully reaffirmed in *Khoja*, such disputed factual questions are not resolvable at the pleadings stage, where the Court must "draw all reasonable inferences in favor of the plaintiff," including from documents that the Court may consider in evaluating the plausibility of alleged claims. *See* 899 F.3d at 1003. While such questions are beyond the scope of this Motion, Plaintiffs' allegations in the TAC and ████████████ ████████████████ are only bolstered by the sworn testimony from Mr. Kannappan's recent deposition, which took place on December 11-12, 2023. In his deposition testimony, excerpts of which are attached as Ex. 2 to the Gilmore Decl., Mr. Kannappan details that:

- ████████████████████████████████████████████████ ████████ (Kannappan Tr. at 120:25-124:12; 130:17-131:21);

- ████████████████████████████████████████████████ ████████████████████████████████████████ (*id.* at 128:2-130:5);

- ████████████████████████████████████████████████ ████████████████ (*id.* at 89:2-94:16; 153:5-158:24);

- ████████████████████████████████████████████████ ████████████████████████████████████████████ (*id.* at 146:7-149:4; 317:18-319:18);

- ████████████████████████████████████████████████ ████████████████████████████████████ (*id.* at 85:18-94:16; 150:21-154:7, 160:3-161:18).

- ████████████████████████████████████████████████ ████████████████████████████ (*id.* at 108:11-109:13)

(emphasis added).

Mr. Kannappan's testimony was given under oath, with both Plaintiffs and Defendants exercising the opportunity to question him. To the extent the Court considers this testimony, it confirms: (i) the accuracy and reliability of the statements made in ████████████████████ ████████████████████████████████████████████████████████████████████████████████;

(ii) ██████████████████████████████████████████████ (iii) █████████ ██████████████████████████████████████ and (iv) ███████████████████████████████████████

**B.** ████████████████████████ **Support Amendment**

Defendants also argue that, with respect to ███████████████████████ ████████████████████ Plaintiffs have not shown "any semblance of reliability" and that ██ ██ "cannot pass muster under the rigid standards the PSLRA imposes." Opp. at 10. Defendants overstate the particularity requirements for allegations by anonymous sources by asserting that, because Plaintiffs have not provided ██████████████████████ ████████████████████████████████████ ██████████████████████. *Id.* at 11. This is incorrect. As this Court has already made clear, such level of specificity is not required. *In re Plantronics Sec. Litig.*, 2022 WL 17974627, at *4 (N.D. Cal. Nov. 7, 2022) ("*Plantronics II*"). ████████ ████████████████████████████████ ████████████████████████████████ ██████████████████████. TAC ¶ 91. *See also, e.g.,* Gilmore Decl. Ex. 2 (Kannappan Tr. at 358:19-360:12).

As this Court has stated in this Action, Plaintiffs need only "support the probability that a person in the position occupied by the source would possess the information alleged." Order at *14-15 (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015-16 (9th Cir. 2005)); *see also Plantronics II*, 2022 WL 17974627, at *4. The Court can look to "the level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia." *In re Cabletron*, 311 F.3d at 29-30.

In each of the cases cited by Defendants declining to credit the confidential witness allegations, the plaintiffs provided significantly less indicia of reliability than Plaintiffs do here.

*Francisco v. Abengoa S.A.*, 624 F. Supp. 3d 365, 394 (S.D.N.Y. 2022) (no indication the witness had interacted with management and witness's accounts lacked specificity); *In re Sunrun, Inc. Sec. Litig.*, 2018 WL 10323335, at *1 (N.D. Cal. July 19, 2018) (anonymous reporter lacked personal knowledge of the issues); *Miller v. PCM, Inc.*, 2018 WL 5099722, at *9 (C.D. Cal. Jan. 3, 2018) (anonymous author lacked personal knowledge of the relevant issues and had "no business relationship" with the defendant); *Vladimir v. Bioenvision, Inc.*, 606 F. Supp. 2d 473, 485-86 (S.D.N.Y. 2009) (plaintiffs had "not alleged anything at all" about the anonymous source including "whether the anonymous source even exist[ed]").

Here, it is evident from the face of ███████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████. For example, the TAC notes that ████████ ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████ ████████ TAC ¶¶ 91-95. Moreover, ████████████████████████ has been corroborated by the accounts from former employees, including specifically FE-2 and FE-3 (*id.* ¶¶ 98-100), as well as by ██████████████████████████████ ██████████████████████████ Internal Company documents and communications further establish that ██████████████ ███████████████████████████ *Id.* ¶¶ 100-04. That is more than sufficient for this Court to conclude that ████████████ was in a position to possess the information alleged and is therefore a reliable source. *Daou*, 411 F.3d at 1015-16; *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1235-36 (N.D. Ga. 2019) (crediting news articles citing anonymous sources when articles stated that whistleblower 1) had direct knowledge of matter and 2) article cited two independent, anonymous sources with direct knowledge who corroborated each other's assertions); *In re Theragenics Corp. Sec. Litig.*, 137 F. Supp. 2d 1339, 1345 (N.D. Ga. 2001) (noting that plaintiffs need not provide names of corporate whistleblowers if there are other facts that provide an adequate basis for believing defendants' statements were false).

## C.    Internal Emails Support Amendment

The TAC cites to ███ nternal Plantronics emails that corroborate and support the accounts of FE-2, ███████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ *See* TAC ¶¶ 100-04. Unable to address with these compelling documents head on, Defendants mischaracterize the emails or draw implausible conclusions regarding the information communicated therein. Defendants' efforts to diminish the internal emails' relevance fails.

The TAC highlights ███████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████ TAC ¶ 100. Defendants attempt to downplay ████ ███████████████████████████████████████ Opp. at 15. ███████████████████████████████████████████████ ███████████████████████████████████████████████ TAC ¶ 100. Defendants also emphasize ██████████████ ███████████████████████████████████████████████ ██████████████████████████ Opp. at 15 (quoting Opp. Ex. B at PLANT_00017715). ███████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████ Opp. Ex. B (PLANT_00017714). Defendants' contention that ███████████████████████████ ███████████████████████████████████████████ (Opp. at 15), misses the point. █████████████████████████ ███████████████████████████████████████████████ ██████████████████████████ *See, In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1222 (S.D. Cal. 2010) (pre-class period communications may be relevant evidence on the

issue of scienter because "they may provide insight into what the defendant knew during the class period") (quoting *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1222 (S.D. Cal. 2001) (citation omitted)).

Similarly, Defendants argue that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 16 (quoting Opp. Ex. C).[3] Not only is this an improper factual argument on this Motion, but it is also untrue. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Gilmore Decl. Ex. 2 at 73:11-15; 74:7-21. The document is also consistent with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 114:18-117:12.

Defendants argue that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. at 16-17. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. TAC ¶ 104. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ▮▮▮▮▮▮▮▮

---

[3] Defendants note that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is Bates numbered PLANT_00023924, not PLANT_00024743. The mismatch, however, was caused by Defendants' application of new Bates numbering to previously produced documents shortly before filing the Motion.

███████████████████████████████████████████

███████████████████████████████████████████

██████ *Id.* ████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████ *Id.*

Defendants claim that ███████████████████████

███████████████████████████████████████████

███████████████████████████████. Opp. at 17. Not so.

Indeed, ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████. TAC ¶ 152.

The internal communications support Plaintiffs' allegations.

## IV.   PLAINTIFFS ACTED DILIGENTLY BY TIMELY AMENDING

Contrary to Defendants' arguments (Opp. at 23-24), Plaintiffs acted diligently in amending shortly after Defendants produced the relevant documents. Though Defendants produced ████████ ████████████████ in May 2023, their production was made as part of limited pre-mediation discovery in advance of the June 22, 2023 mediation. Given the parties' agreement to mediate in late June 2023, no amendment could have been filed at that time. Further document productions in this case, which involved extensive discovery negotiations with Defendants over e-discovery issues, such as search terms and the use of Technology Assisted Review, did not begin in earnest until mid-August 2023. Between August 11 and September 18, 2023, Defendants produced nearly 420,000 pages of documents, including key internal emails cited in the TAC that were not identified until mid-September. ECF No. 168-1, ¶¶ 4-8. Plaintiffs filed their TAC only weeks later. *See Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 2021 WL 1156844, at *3 (C.D. Cal. Jan. 6, 2021) (no undue delay when plaintiff "recently obtained over 23,000 documents from Defendants which included information giving rise to additional allegations and claims.").

Defendants' cited authorities are inapt. Opp. at 23-24. In *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 11715362 (N.D. Cal. July 26, 2017), the proposed amendment relied exclusively on a "key document" plaintiff's counsel discovered four months before moving for leave to amend and plaintiff did "not explain a delay of nearly four months before he filed the instant motion." *Id*. at *1. In *In re Rocket Fuel Inc. Sec. Litig.*, 2017 WL 344983 (N.D. Cal. Jan. 24, 2017), defendants had produced the evidence giving rise to the amendment four months prior, and plaintiffs failed to explain why the relevant documents "were unexpected, revelatory, or otherwise justify untimely amendment." *Id*. at *4. Here, in contrast, Plaintiffs predicate the amendment on ███████ ████████████████████████████████████████████████ produced just weeks prior to the instant motion.

## V.    DEFENDANTS' SEPTEMBER 2018 STATEMENTS ARE ACTIONABLE

Defendants mischaracterize the September 11, 2018 statements (TAC ¶¶ 156-57) as challenging Plantronics' 2Q 2019 guidance and Polycom's pre-merger revenues. Opp. at 17. They then devote seven pages to explaining why these unasserted claims are either forward-looking statements barred by the PSLRA's safe harbor provision, or otherwise inactionable. Opp. at 17-22. Defendants' misdirected arguments fail. Plaintiffs do not base their claim on Plantronics' expected "cost synergies" in FY 2019, "2Q FY 2019 guidance of $500-$530 million in revenues and $1.00-$1.25 EPS," or potential growth in FY 2020 and FY 2021. Opp. at 18. Nor do Plaintiffs attack the accuracy Polycom's reported pre-merger revenues.

Rather, at the September 11, 2018 conference, Defendant Strayer reiterated the same positive, misleading statement concerning Plantronics' and Polycom's revenues that Defendant Burton communicated at Plantronics' August 7, 2018 earnings call—that both Plantronics and Polycom had experienced revenue growth in the June 2018 quarter due to organic factors. *Compare* TAC ¶ 152 *with* ¶ 156. To provide investors with context for Polycom's return to revenue growth, Plantronics filed Polycom's pre-merger financial statements as of March 31, 2018, signaling that Polycom's revenue in the June 2018 quarter exceeded $271 million. TAC ¶ 157.

Strayer's touting of Plantronics' and Polycom's revenue growth due to organic factors were misleading because they omitted contemporaneous or historical facts; namely, that Plantronics'

recent revenue growth was reliant upon a new sales practice that intentionally replaced Plantronics' stable and predictable sales model with a hockey stick model wherein sales were generated from quarter-end deals to get distributors to take product. These undisclosed changed practices resulted in the buildup of months of channel inventory rather than weeks, and materially undermined the Company's ability to set proper return reserves. Moreover, Defendants' statements about Polycom, Inc.'s recent revenue growth was materially misleading because it omitted that a material part of the growth was attributable to Polycom's policy of orchestrating revenue at the end of the quarter.

As the Ninth Circuit held in *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017), "a defendant may not transform non-forward-looking statements into forward-looking statements that are protected by the safe harbor provisions of the PSLRA by combining non-forward-looking statements about past or current facts with forward-looking statements about projected revenues and earnings." Because Defendant Strayer's statement that Plantronics and Polycom had experienced recent revenue growth due to organic factors concerns the present or historical state of the company, the safe harbor does not apply here. *See In re Fibrogen, Inc.*, 2022 WL 2793032, at *8 (N.D. Cal. July 15, 2022).

Polycom's 2016 SEC filings, of which Defendants seek judicial notice, neither undermine falsity nor show Plaintiffs' lack of diligence in seeking amendment. Opp. at 22, n.15 & 24-25 (citing Exs. I, J & K). The Court should not consider these materials because they are not mentioned in any pleading. *See Baird v. Samsung Elecs. Am., Inc.*, 522 F. Supp. 3d 679, 685 (N.D. Cal. 2021). Moreover, these SEC filings merely show that in 2016, years before the merger, Polycom disclosed that its sales typically increased toward the end of quarters. They have no bearing on Plantronics' sustained channel-stuffing scheme years later. At most, Defendants' argument raises factual questions concerning whether (and to what precise extent) the Company truthfully represented its sales practices, which "cannot be ascertained in the context of this motion to dismiss." *In re Impinj, Inc., Sec. Litig.*, 414 F. Supp. 3d 1327, 1333 (W.D. Wash. 2019). "To do otherwise would be to assume the truth of defendants' regulatory filings despite plaintiffs' underlying contention that defendants were not truthful in their public representations." *Id.* (citing *Khoja*, 899 F.3d at 998-99, 1003).

## VI.   THE TAC'S CLARIFICATION OF PLAINTIFFS' LOSS CAUSATION ALLEGATIONS IS PROPER.

The TAC's loss causation allegations concerning Plantronics' February 2020 share price drop (TAC ¶¶ 211-15) do not raise a "new theory." Opp. at 25. The SAC referenced these same post-Class Period events as revelatory of Defendants' fraud. SAC ¶¶ 29, 191-95, 240(a)). The TAC simply clarifies that the factors Defendants attributed to its disappointing 3Q FY 2020 results— "channel inventory reduction," "product transitions, sales integration, and channel consolidation" and "portfolio optimization"—are all direct and foreseeable byproducts of Defendants' fraud. TAC ¶¶ 211-15. Thus, the premise that Plantronics' February 4, 2020 disclosure and share price decline were related to the fraud is neither new nor does it significantly alter Defendants' current defense strategy. *See In re Silver Wheaton Corp. Sec. Litig.*, 2018 WL 1517130, at *4 (C.D. Cal. Mar. 26, 2018). To the contrary, the fact and expert discovery required as to these new allegations overlap completely with that required of the operative SAC.

The fact that a later portion of the TAC (Section X: Loss Causation (TAC ¶ 267)) does not again identify the February 4, 2020 date as a corrective disclosure event does not negate the TAC's earlier allegations at paragraphs 211-15. *See Mortimer v. Diplomat Pharmacy Inc.*, 2019 WL 3252221, at *3 (N.D. Ill. July 19, 2019). Moreover, the TAC at ¶ 268 (a) references the February 4, 2020 disclosure in the materialization of the risk section. *See also*, *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *20 (C.D. Cal. Aug. 4, 2014) (recognizing viability of materialization of the risk loss causation theory). Finally, Defendants' suggestion at Opp. 25 that "Plaintiffs cannot suffer any loss as a result of fraud that was not disclosed until after the close of the class period is incorrect." *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 942 (C.D. Cal. 2012) (citing *In re Dura Pharms., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005, 1023 (S.D. Cal. 2006)). *Dura* only requires "the Plaintiffs to properly allege a causal connection between the economic losses suffered and the Defendants' misrepresentations." *Id.* (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005)), which Plaintiffs have done here.

## VII.   CONCLUSION

Lead Plaintiffs respectfully request that the Court grant their Motion.

PLAINTIFFS' REPLY ISO MOT. FOR
LEAVE TO FILE TAC
Case No.: 4:19-cv-07481-JST

15

DATED: December 21, 2023

**HAGENS BERMAN SOBOL SHAPIRO LLP**

/s/ *Lucas E. Gilmore*
Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (admitted *Pro Hac Vice*)
Sean R. Matt (admitted *Pro Hac Vice*)
Karl P. Barth (admitted *Pro Hac Vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
karlb@hbsslaw.com

*Counsel for Lead Plaintiff Ilya Trubnikov
and Lead Counsel for the Class*

DATED: December 21, 2023

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*/s/ Lauren A. Ormsbee*
Lauren A. Ormsbee (*admitted Pro Hac Vice*)
Alexander T. Payne (*admitted Pro Hac Vice*)

1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
lauren@blbglaw.com
alex.payne@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension
Fund and Lead Counsel for the Class*