SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
JESSICA L. LEWIS (SBN 302467)
jessica.lewis@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1002
Facsimile: (628) 235-1001

PETER J. KOLOVOS (*Pro Hac Vice*)
peter.kolovos@wilmerhale.com
SONIA SUJANANI (*Pro Hac Vice*)
sonia.sujanani@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MIKE ROMEO (SBN 312264)
mike.romeo@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

*Attorneys for Defendants Plantronics, Inc.,
Joseph Burton, Charles Boynton, and
Pamela Strayer*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE PLANTRONICS, INC. SECURITIES LITIGATION | Case No. 4:19-cv-07481-JST<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ISSUANCE OF LETTERS ROGATORY TO THE SUPREME COURT OF BRITISH COLUMBIA, CANADA REGARDING GREG SMITH**<br><br>Date:  May 16, 2024<br>Time:  2:00 p.m.<br>Place:  Courtroom 6, 2nd Floor<br>Judge:  The Hon. Jon S. Tigar |

DEFS' MOT. FOR LETTERS ROGATORY
REGARDING GREG SMITH

Case No. 4:19-cv-07481-JST

# **TABLE OF CONTENTS**

Page

INTRODUCTION ...............................................................................................................................1

STATEMENT OF FACTS ..................................................................................................................2

ARGUMENT......................................................................................................................................5

    I.   THIS COURT HAS THE POWER TO ISSUE LETTERS ROGATORY..........................5

    II.  THE TESTIMONY SOUGHT FROM MR. SMITH IS HIGHLY RELEVANT TO THE DETERMINATION OF THIS ACTION..................................................................7

    III. THE TESTIMONY SOUGHT FROM MR. SMITH IS NECESSARY TO THE FAIR DETERMINATION OF THE U.S. PROCEEDING ................................................8

    IV. THE TESTIMONY SOUGHT FROM MR. SMITH IS NOT AVAILABLE EXCEPT BY RESORT TO THE LETTER ROGATORY ..................................................8

    V.  DEFENDANTS' REQUEST IS CONSISTENT WITH THE LAW OF CANADA AND OF BRITISH COLUMBIA ......................................................................................9

        A.  The Supreme Court of British Columbia Has the Authority to Receive and Execute a Letter Rogatory in the Present Case ..................................................9

        B.  The Letter Rogatory Is Not Contrary to the Public Policy of Canada ..........................9

        C.  The Topics for Examination Are Identified with Reasonable Specificity ...................10

        D.  The Letter Rogatory Is Not Unduly Burdensome........................................................10

        E.  The Confidentiality of Any Information Provided as a Result of the Letter Rogatory is Protected By the Protective Order in this Case .......................................11

CONCLUSION.................................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes & Noble, Inc. v LSI Corp.*,
2012 WL 1808849 (N.D. Cal. May 17, 2012) ...................................................................6

*Doe v. Uber Techs., Inc.*,
2022 U.S. Dist. LEXIS 1285 (N.D. Cal. Jan. 4, 2022) .....................................................6

*Doe v. Uber Techs., Inc.*,
2022 WL 562740 (N.D. Cal. Feb. 24, 2022) .....................................................................6

*Glegg v. Glass*, 2020 ONCA 833; *France (Republic) v. De Havilland Aircraft of Canada Ltd.*, 1991 CanLII 7180 (Ont. C.A.) .................................................................10

*Gulf Oil Corp. v. Gulf Canada Ltd.*,
1980 CanLII 192 (S.C.C.) ...............................................................................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)........................................................................................................5, 6

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ...........................................................................................8

*Monster Energy Co. v. Craig*,
2016 BCCA 290................................................................................................................10

*Optimight Communications Inc. v. Innovance Inc.*,
2002 CanLII 41417 (Ont. C.A.)......................................................................................10

*Planet Aid, Inc. v. Reveal, Center for Investigative Reporting*,
2020 WL 887945 (N.D. Cal. Feb. 24, 2020) ....................................................................6

*Presbyterian Church of Sudan v. Taylor*,
2006 CanLII 32746 (Ont. C.A.).......................................................................................10

*Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*,
2020 WL 7042860 (N.D. Cal. Dec. 1, 2020) ....................................................................6

*United States v. Staples*,
256 F.2d 290 (9th Cir. 1958) .............................................................................................6

*Westinghouse Electric Corp. v. Duquesne Light Co.*,
1977 CanLII 1315 (Ont. S.C.) ........................................................................................10

**Statutes, Rules, and Regulations**

22 C.F.R. § 92.54...................................................................................................................5

28 U.S.C. § 1781(b)(2) ..........................................................................................................6

Fed. R. Civ. P. 26..........................................................................................................7

   (b)(1) ..................................................................................................................6

   (d)(1) ..................................................................................................................6

Fed. R. Civ. P. 28..........................................................................................................5

   (b).......................................................................................................................1

   (b)(1)(B)............................................................................................................5

Civil Local Rule 37-3....................................................................................................6

**<u>Other Authorities</u>**

Canada Evidence Act, R.S.C. 1985, c. C-5 § 46.............................................................9

British Columbia Evidence Act, R.S.B.C. 1996, c. 124 ................................................9

Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77,
   596 U.N.T.S. 261, T.I.A.S. 6820 ...........................................................9

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 16, 2024, at 2:00 p.m. or as soon thereafter as the matter may be heard, in the Courtroom of The Honorable Jon S. Tigar, 1301 Clay Street, 2nd Floor, Oakland, California 94612, Defendants Plantronics, Inc. ("Plantronics" or the "Company"), Joseph Burton, Charles Boynton, and Pamela Strayer (collectively, the "Individual Defendants," and with Plantronics, the "Defendants") will and hereby do move the Court to issue letters rogatory pursuant to Rule 28 of the Federal Rules of Civil Procedure to the Supreme Court of British Columbia, Canada, to request international judicial assistance to obtain testimonial evidence from a non-party witness, Greg Smith, located in Surrey, British Columbia, Canada, to be used in a civil action proceeding before this Court.  This motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities herein; the Declaration of Jessica L. Lewis in Support of Defendants' Motion for Issuance of Letters Rogatory to the Supreme Court of British Columbia, Canada Regarding Greg Smith ("Lewis Decl."); the Exhibits attached thereto; the pleadings and records on file in this action; oral argument as permitted by the Court; and any such other matters that the Court may deem appropriate.

### ISSUES TO BE DECIDED

1.      Whether the Court should issue letters rogatory to the Supreme Court of British Columbia, Canada, requesting international judicial assistance to compel Greg Smith, a relevant non-party witness, to provide testimony at a deposition upon oral examination on matters known to him that are highly relevant in establishing defenses in this action.

### MEMORANDUM OF POINTS AND AUTHORITIES

#### INTRODUCTION

Pursuant to Rule 28(b) of the Federal Rules of Civil Procedure, Defendants respectfully move this Court to issue letters rogatory in the form attached hereto as Exhibit A ("Letter Rogatory") to the Supreme Court of British Columbia, Canada, requesting international judicial assistance to compel the attendance of Greg Smith, a highly relevant non-party witness, at a

deposition upon oral examination on the topics described below and in the Letter Rogatory. Plaintiffs identified Mr. Smith as the confidential witness designated as Former Employee No. 7 in the Second Amended Complaint ("SAC");[1] allegations attributed to Mr. Smith appear in substantially the same form in Plaintiffs' proposed Third Amended Complaint ("TAC"). The deposition testimony sought by Defendants from Mr. Smith is highly relevant to establishing defenses in this action; indeed, it is necessary for Defendants to be able to adequately prepare their defense. Further, Mr. Smith's testimony is not available to Defendants by any other means. Defendants have repeatedly contacted Mr. Smith, and he has not agreed to be deposed voluntarily. Defendants inquired of Plaintiffs' counsel whether Plaintiffs would make Mr. Smith available for a deposition; Plaintiffs' counsel responded that they left messages for Mr. Smith, to which he did not respond and noted that "[n]either Plaintiffs nor their counsel have any control over Mr. Smith." None of Defendants' efforts to arrange for a voluntary deposition of Mr. Smith has been successful.

## STATEMENT OF FACTS

Greg Smith resides in Surrey, British Columbia, Canada. Both the operative complaint (the SAC) and Plaintiffs' proposed amended complaint (the TAC) center on the theory that Plantronics made an undisclosed change to its sales practices, and began pushing its channel partners to take on inventory in excess of actual demand. Per the Plaintiffs, the Company did so in order to inflate the Company's revenue figures and create a "feel good" story for investors that would bolster the Company's stock price. SAC ¶¶ 6-17; TAC ¶¶ 6-23. In support of this theory, Plaintiffs rely on statements supposedly made by Mr. Smith, who was employed by Plantronics from 2005 to 2020, and who was the Company's National Channel Sales Manager for Canada from 2010 to 2020. *See* SAC ¶¶ 16, 57, 93-97; TAC ¶¶ 22, 61, 110-14. Specifically, Plaintiffs allege that Mr. Smith said that at a certain point, the Company "implemented new channel-stuffing

---

[1] On May 5, 2023, Defendants served their First Set of Interrogatories to Lead Plaintiffs, wherein they sought the identities of the former employees anonymously cited in the Second Amended Complaint, including "FE-7," and contact information for each. Lewis Decl. ¶ 2. In a June 9, 2023 letter, Plaintiffs identified Mr. Smith as FE-7 and provided his home address, which showed he resides in Surrey, British Columbia, Canada. *Id.* ¶ 3.

sales practices that dramatically altered the Company's historic practice of 'shipping to order' with channel partners carrying six to eight weeks of inventory, into a practice where the Company asked channel partners to carry four to six months of inventory, with large sales at the end of each quarter."  SAC ¶ 57; TAC ¶ 61.

The complaint alleges that Mr. Smith "worked directly with the [*sic*] some of the Company's largest national channel partners" and that he had knowledge of the Company's sales practices both before and during the class period.  SAC ¶ 93; TAC ¶ 110.  Plaintiffs rely on Mr. Smith's allegations to support their theory that the Company adopted a policy of improper channel stuffing in order to falsely inflate revenue.  More specifically, Mr. Smith is alleged to have identified Plantronics Executive Vice President of Global Sales Jeff Loebbaka as the person who put "Plantronics' channel stuffing policies" "into place," SAC ¶ 94; TAC ¶ 111, and Mr. Smith apparently claims that Loebbaka "consistently pushed product on the channel partners [every quarter] in order to meet or exceed sales expectations."  SAC ¶ 95; TAC ¶ 112.  In the complaint, Mr. Smith is further described as saying "that he was warned by numerous people that Loebbaka's channel stuffing policies would hurt the company and eventually trigger an audit," SAC ¶ 97; TAC ¶ 114, ostensibly lending support to Plaintiffs' claim that people at the Company were aware that the purported channel-stuffing practice was unsustainable and would eventually harm the Company.  Further, in support of Plaintiffs' claim that the Company engaged in sales practices that were nefarious and that made the Company's stated revenue figures misleading to investors, Mr. Smith is alleged to have "said that David Angel [Plantronics Senior Director, Americas Channel Sales] had been asked to report shipments to [a channel partner] as sales prior to the shipment being received by [that channel partner] to prematurely recognize revenue before quarter end."  SAC ¶ 96; TAC ¶ 113.  Finally, Plaintiffs rely on statements attributed to Mr. Smith that he "specifically recalled [channel partners] complaining that [they were] taking on too much product" and that channel partners "complained about not being able to pay storage bills [for inventory]" to support their claim that the Company was pushing inventory on its channel partners far in excess of natural demand.  SAC ¶ 96; TAC ¶ 113.

As described above, Plaintiffs allege that, in his role as Plantronics' National Channel Sales Manager for Canada, Mr. Smith had direct knowledge of the Company's sales practices, including what Plaintiffs allege were improper "channel stuffing" practices.  *See* SAC ¶¶ 93-97; TAC ¶¶ 110-14.  Further, Mr. Smith is alleged to have information concerning the individuals at the Company who may have directed and implemented any change in the Company's sales practices, which is central to Plaintiffs' complaint.  *See* SAC ¶¶ 94-95; TAC ¶¶ 111-12.  In its order on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, the Court reaffirmed Mr. Smith's centrality to Plaintiffs' allegations, finding that "in light of [Mr. Smith's] role and responsibilities and the time period during which [Mr. Smith] was with the Company, the Court may infer that [Mr. Smith] would possess reliable information as to the Company's company-wide channel sales practices, both before and after the Polycom acquisition, including any persons who may have changed them or spearheaded them."  Order Granting in Part and Denying in Part Motion to Dismiss at 24, ECF No. 109.  Defendants now seek to obtain Mr. Smith's deposition testimony on these precise topics.

Defendants' repeated efforts to secure Mr. Smith's voluntary attendance at a deposition have not been successful.  Defendants reached Mr. Smith by telephone on August 24, 2023; he indicated that he did not wish to answer any questions or speak further.  Lewis Decl. ¶ 5.  When asked about the allegations attributed to him in the SAC, Mr. Smith replied that he was not familiar with Plaintiffs and "wanted nothing to do with" this action.  *Id.*  At Defendants' request, the Company's corporate counsel in October 2023 tried to contact Mr. Smith to encourage him to speak with Defendants' counsel about this action; these efforts were not successful.  *Id.* ¶ 6.  On November 8, 2023, Defendants again called Mr. Smith and left a voicemail message asking to speak to him about this action and the allegations attributed to him; Defendants did not receive a response.  *Id.* ¶ 7.

On December 18, 2023, Defendants notified Plaintiffs' counsel by email that they intended to take Mr. Smith's deposition and asked Plaintiffs' counsel whether, "[g]iven that Plaintiffs are relying on [Mr. Smith's] allegations," they "w[ould] make Greg Smith available, or reach out to [him] to confirm if [he] will voluntarily sit for a deposition." *Id.* ¶ 8; Ex. 1.  On January 10, 2024,

Plaintiffs' counsel replied, stating that "[n]either Plaintiffs nor their counsel have any control over Mr. Smith." *Id.* ¶ 9; Ex 2. Plaintiffs noted that they "did attempt to leave messages for [Mr. Smith] and will let [Defendants' counsel] know if we hear back concerning [his] position[] on accepting service of any deposition subpoena." *Id.* On January 18, 2024, Defendants replied to Plaintiffs' counsel, asking "to the extent there have been any developments with respect to Plaintiffs' communications with Mr. Smith . . . please let us know." *Id.* ¶ 10; Ex. 3. Plaintiffs' counsel replied that they had "no further developments" to report regarding Mr. Smith and his willingness to sit for a deposition. *Id.* ¶ 11; Ex. 4. To date, Defendants have received no further updates from Plaintiffs concerning Mr. Smith. *Id.* ¶ 12.

Defendants' efforts to reach out to Mr. Smith have proven ineffective. Mr. Smith has either not responded to these efforts or indicated that he does not wish to voluntarily provide testimony in connection with this action.

**ARGUMENT**

## I.    THIS COURT HAS THE POWER TO ISSUE LETTERS ROGATORY

Rule 28 of the Federal Rules of Civil Procedure provides that a deposition of a witness in a foreign country may be taken "pursuant to a letter of request, whether or not captioned a 'letter rogatory.'" Fed. R. Civ. P. 28(b)(1)(B). A letter rogatory is a formal request "from a court in which an action is pending[ ] to a foreign court to perform some judicial act." 22 C.F.R. § 92.54; *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004) (defining "letter rogatory" as "the request by a domestic court to a foreign court to take evidence from a certain witness"). Courts have "inherent power to issue Letters Rogatory." *United States v. Staples*, 256 F.2d 290, 292 (9th Cir. 1958); *see also Barnes & Noble, Inc. v LSI Corp.*, 2012 WL 1808849, at *2 (N.D. Cal. May 17, 2012); *accord* 28 U.S.C. § 1781(b)(2) ("This section does not preclude the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed . . . .").

Whether to issue letters rogatory is a matter for the Court's discretion. *Doe v. Uber Techs., Inc.*, 2022 WL 562740, at *1 (N.D. Cal. Feb. 24, 2022) (quoting *Barnes & Noble, Inc.*, 2012 WL 1808849, at *2)). In determining whether to issue letters rogatory, the Court considers the "scope

---

of discovery provided by the Federal Rules of Civil Procedure." *Planet Aid, Inc. v. Reveal, Center for Investigative Reporting*, 2020 WL 887945, at \*1 (N.D. Cal. Feb. 24, 2020).  Rule 26 of the Federal Rules of Civil Procedure provides that, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, [and] the parties' relative access to information."  Fed. R. Civ. P. 26(b)(1).  Courts in the Northern District of California "have held that motions requesting issuance of a letter of request or letter rogatory should generally be granted and that '[t]he opposing party must show good reason for a court to deny an application for a letter rogatory.'" *Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 2020 WL 7042860, at \*2 (N.D. Cal. Dec. 1, 2020) (quoting *SEC v. Leslie*, 2009 WL 688836, at \*2 (N.D. Cal. Mar. 16, 2009)).  Even if a letter rogatory might not be executed in time for the close of fact discovery, Civil Local Rule 37-3 provides that depositions may occur "after the applicable discovery cut-off . . . by order of the Court for good cause shown."  N.D. Cal. Civil L.R. 37-3; *see also Doe v. Uber Techs., Inc.*, 2022 U.S. Dist. LEXIS 1285, at \*4-5 (N.D. Cal. Jan. 4, 2022) (granting issuance of letters rogatory for foreign deponent despite inability to obtain deposition before discovery cut-off where good cause was shown because "obtaining deposition testimony via letter rogatory is a time-consuming process which requires cooperation from domestic and foreign governmental entities over which the party seeking discovery has no control," movant unsuccessfully sought cooperation of plaintiff in securing the deponent's availability, and "the only legal means for [the movant] to seek his deposition was through the letter rogatory process").

Here, the Court should exercise its discretion and grant the Motion to issue the Letter Rogatory in the form attached as Exhibit A.  Defendants seek international judicial assistance in compelling Mr. Smith to testify at a deposition about the topics described in the Statement of Facts and in the Letter Rogatory.  As discussed below, letters rogatory are the accepted procedure for obtaining evidence from witnesses residing in Canada.  The evidence Defendants seek is highly relevant to establishing claims and preparing defenses in this action, and Defendants expect that

evidence concerning the issues about which Mr. Smith would testify will be presented at the trial of this action if the evidence is admissible.

## II.   THE TESTIMONY SOUGHT FROM MR. SMITH IS HIGHLY RELEVANT TO THE DETERMINATION OF THIS ACTION

Issuing the Letter Rogatory to obtain international judicial assistance in compelling the deposition testimony of Mr. Smith comports with the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure. Plaintiffs' complaint contains allegations attributed to Mr. Smith that go to the heart of Plaintiffs' claims. Specifically, Plaintiffs allege that the Company made a material, undisclosed change to its sales practices after the Company's acquisition of Polycom in 2018. SAC ¶ 9; TAC ¶ 9. This alleged undisclosed changed sales practice consisted in persuading the Company's channel partners to buy more inventory than they needed to meet customer demand, thus boosting the Company's quarterly sales revenue figures, a practice Plaintiffs refer to as "channel stuffing." SAC ¶ 9; TAC ¶ 9. According to Plaintiffs, this undisclosed changed sales practice caused the Company's public statements about its earnings and revenue growth in the quarters between August 2018 and November 2019 to be materially misleading. SAC ¶¶ 17, 21; TAC ¶¶ 16, 23.

Plaintiffs put Mr. Smith at the center of their complaint. The lynchpin of Plaintiffs' allegations is not merely that the Company made a change to its sales practices, but that people at the Company knew the alleged change in sales practices would make the Company's revenue statements misleading to investors. The complaint alleges that Mr. Smith was employed by the Company for nearly fifteen years, "worked with some of the Company's largest national channel partners," and had direct, personal knowledge of the change in the Company's sales practices. SAC ¶¶ 93, 16; TAC ¶¶ 110, 22. According to the allegations attributed to Mr. Smith, he also has direct, personal knowledge of when and how changes were implemented to the Company's sales practices, by whom, and whether or not such changes were made intentionally. SAC ¶¶ 57, 94-96; TAC ¶¶ 61, 111-13. Testimony on these topics would be probative of whether the Company in fact changed its sales practices in a way that might have caused its revenue figures to be misleading.

Further, essential to Plaintiffs' claim is that Defendants "acted with scienter—that the defendant[s] had an intention to deceive, manipulate, or defraud" at the time the statements challenged by Plaintiffs were made. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1065-66 (9th Cir. 2008) (cleaned up). On this point, according to the complaint, Mr. Smith has personal knowledge about whether Company employees were asked to report shipments as sales in order to "prematurely recognize revenue before quarter end." SAC ¶ 96; TAC ¶ 113. In other words, Mr. Smith could provide testimony about whether Defendants acted intentionally (or not) to render the Company's revenue statements misleading. In light of the scienter requirement, the testimony Mr. Smith could provide is of paramount importance in determining claims and establishing defenses in this action.

## III.   THE TESTIMONY SOUGHT FROM MR. SMITH IS NECESSARY TO THE FAIR DETERMINATION OF THE U.S. PROCEEDING

Issuance of the Letter Rogatory is warranted because Mr. Smith's testimony is necessary for the fair determination of the case in the United States. Without obtaining Mr. Smith's testimony at a deposition, Defendants would have no way of assessing the basis for Mr. Smith's personal knowledge for the assertions attributed to him in the SAC and TAC; no way of assessing Mr. Smith's credibility or the powers of his memory; and no way of assessing the veracity of the allegations attributed to him in the complaint or whether they even accurately reflect what Mr. Smith told Plaintiffs or their investigators. Defendants will be unable to adequately prepare their defense in this action without the opportunity to test the strength of Mr. Smith's allegations.

## IV.   THE TESTIMONY SOUGHT FROM MR. SMITH IS NOT AVAILABLE EXCEPT BY RESORT TO THE LETTER ROGATORY

As discussed in the Statement of Facts and in the attached Declaration of Jessica L. Lewis, Defendants have made repeated efforts over a period of more than four months to attempt to contact Mr. Smith and obtain his agreement to appear voluntarily at a deposition. These efforts, which have involved contacting Mr. Smith directly, requesting Plaintiffs' counsel contact Mr. Smith and attempt to make him available for a deposition, and even attempting to contact Mr.

Smith via outreach to his prior counsel in an earlier litigation involving the Company, have all been to no avail.

Further, Mr. Smith is not a party to this action; is not a citizen of the United States; and resides in Canada. He is therefore not subject to the Court's subpoena power, and a letter rogatory is the only viable process for Defendants to compel his attendance at a deposition.

**V.      DEFENDANTS' REQUEST IS CONSISTENT WITH THE LAW OF CANADA AND OF BRITISH COLUMBIA**

As well as being proper under the Federal Rules of Civil Procedure and applicable U.S. case law, Defendants' request for the issuance of the Letter Rogatory to compel Mr. Smith's attendance at a deposition fully comports, both procedurally and substantively, with the laws of Canada and of British Columbia. Defendants have retained local Canadian counsel to assist in executing the Letter Rogatory, and Canadian counsel aided in drafting the following analysis of the applicable Canadian law. Lewis Decl. ¶ 13.

**A.      The Supreme Court of British Columbia Has the Authority to Receive and Execute a Letter Rogatory in the Present Case**

Defendants' request complies with Canadian law and British Columbia law, as the Canada Evidence Act and the British Columbia Evidence Act both state that a court outside of Canada may serve letters rogatory upon a Canadian court to obtain relevant discovery. Evidence Act, R.S.C. 1985, c. C-5 § 46; Evidence Act, R.S.B.C. 1996, c. 124. Additionally, under Article 5 of the 1963 Vienna Convention on Consular Relations, letters rogatory are an appropriate method for requesting evidence between the United States and Canada. Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261, T.I.A.S. 6820.

**B.      The Letter Rogatory Is Not Contrary to the Public Policy of Canada**

Under Canadian law, in response to letters rogatory, the starting presumption is that the request from the foreign court will be granted unless it would be contrary to Canadian public policy or would otherwise be prejudicial to Canadian sovereignty or to Canadian citizens. *Monster Energy Co. v. Craig*, 2016 BCCA 290. There is no defined list of public policy considerations that may lead a Canadian court to refuse to enforce a letter rogatory. The focus is whether granting

the request, not the underlying foreign proceeding, contravenes Canadian public policy. *Presbyterian Church of Sudan v. Taylor*, 2006 CanLII 32746 (Ont. C.A.) at ¶ 23. Public policy considerations under Canadian law include interference with attorney-client privilege, business confidentiality concerns, Crown privilege and trade secrets. *Glegg v. Glass*, 2020 ONCA 833; *France (Republic) v. De Havilland Aircraft of Canada Ltd.*, 1991 CanLII 7180 (Ont. C.A.); *Westinghouse Electric Corp. v. Duquesne Light Co.*, 1977 CanLII 1315 (Ont. S.C.); *Optimight Communications Inc. v. Innovance Inc.*, 2002 CanLII 41417 (Ont. C.A.). More generally, the Canadian public policy inquiry will ask whether giving effect to the request would be contrary to federal or provincial law or otherwise engage Canadian moral or legal principals. *Gulf Oil Corp. v. Gulf Canada Ltd.*, 1980 CanLII 192 (S.C.C.).

Defendants' request for oral examination of Mr. Smith does not implicate any public policy concerns under Canadian law.

**C.     The Topics for Examination Are Identified with Reasonable Specificity**

Defendants' request for oral examination of Mr. Smith conforms to governing Canadian law. The subjects for examination described in Annex B to the Letter Rogatory are narrowly tailored and concern issues within Mr. Smith's personal knowledge, in conformity with the laws and practices of Canada and British Columbia. Defendants intend to use Mr. Smith's testimony at trial, and because the topics for examination described in the Letter Rogatory will produce evidence admissible at trial, the Defendants' requested Letter Rogatory adheres to the applicable laws, practices, and rules of evidence.

**D.     The Letter Rogatory Is Not Unduly Burdensome**

Defendants' Letter Rogatory does not place an undue burden on Mr. Smith. As described in the Letter Rogatory, Defendants request to take the deposition of Mr. Smith either via videoconference or in person, at the office of a court reporter convenient to him in Vancouver, British Columbia. The burden imposed by the Letter Rogatory is comparable to the burden Mr. Smith would face in a local action in Canadian court.

**E.     The Confidentiality of Any Information Provided as a Result of the Letter Rogatory is Protected By the Protective Order in this Case**

The Stipulation Regarding Confidentiality and Protective Order ("Protective Order") entered in this case, ECF No. 137, may be used to protect the confidentiality of any testimony provided by Mr. Smith in response to the Letter Rogatory, consistent with the implied undertaking of confidentiality which applies in litigation in Canada.  A copy of the Protective Order is attached as Appendix A to the Letter Rogatory.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and issue the Letter Rogatory to compel Greg Smith to give deposition testimony on the topics specified in the Letter Rogatory.

Respectfully submitted,

Dated:  March 13, 2024

WILMER CUTLER PICKERING
  HALE AND DORR LLP

By:     /s/ Jessica L. Lewis

*Attorney for Defendants Plantronics, Inc.,*
*Joseph Burton, Charles Boynton, and*
*Pamela Strayer*