**HAGENS BERMAN SOBOL SHAPIRO LLP**
Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
JONATHAN D. USLANER (256898)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470
jonathanu@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension Fund
and Lead Counsel for the Class*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE PLANTRONICS, INC. SECURITIES LITIGATION | No. 4:19-cv-07481-JST<br><br>**LEAD PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date:  May 30, 2024<br>Hearing Time:  2:00pm<br>Courtroom:  6, 2nd Floor<br>Judge:  Hon. Jon S. Tigar<br><br><u>CLASS ACTION</u> |

[REDACTED PUBLIC VERSION]

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................................................1

II.   PROCEDURAL UPDATE ...................................................................................................2

III.  ARGUMENT ......................................................................................................................2

    A.    The proposed Class Period is consistent with this Court's orders................................2

    B.    The proposed Class Representatives have established that they satisfy
    the typicality and adequacy requirements of Rule 23. ................................................3

        1.    Mr. Trubnikov's claims are typical of the Class because, among
        other things, he purchased Plantronics stock during the
        proposed Class Period. ...................................................................................3

        2.    The proposed Class Representatives have shown they are
        prosecuting this action vigorously on behalf of the Class...............................4

            a.    Defendants' challenges to Roofers' adequacy fail. ............................7

            b.    Defendants' challenges to Mr. Trubnikov's adequacy fail. ...............9

IV.   CONCLUSION .................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Connetics Corp. Sec. Litig.*,
257 F.R.D. 572 (N.D. Cal. 2009) ........................................................................................4

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .............................................................................................4

*In re Facebook Biometric Info. Priv. Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018), *aff'd sub nom.*, 932 F.3d 1264 (9th Cir. 2019) .....5, 7, 8, 10

*In re FibroGen Sec. Litig.*,
2024 WL 1064665 (N.D. Cal. Mar. 11, 2024) ...............................................................4, 5

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .............................................................................................3

*Johnson v. Hartford Cas. Ins. Co.*,
2017 WL 2224828 (N.D. Cal. May 22, 2017)...................................................................6

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
2009 WL 10669638 (C.D. Cal. Sept. 8, 2009) ..................................................................9

*In re Northrop Grumman Corp. ERISA Litig.*,
2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ...................................................................5

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012)......................................................................................1, 6

*Ravens v. Iftikar*,
174 F.R.D. 651 (N.D. Cal. 1997) ......................................................................................3

*Sali v. Corona Reg'l Med. Ctr.*,
889 F.3d 623 (9th Cir. 2018)..............................................................................................4

*In re Seagate Tech. II Sec. Litig.*,
1995 WL 66841 (N.D. Cal. Feb. 8, 1995), *aff'd*, 98 F.3d 1346 (9th Cir. 1996) ...................2, 3

*In re Snap Inc. Sec. Litig.*,
334 F.R.D. 209 (C.D. Cal. 2019).....................................................................................7, 9

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966) ...........................................................................................................5

*In re Twitter Inc. Secs. Litig.*,
326 F.R.D. 619 (N.D. Cal. 2018) ...............................................................................3, 4, 5

REPLY IN SUPPORT OF CLASS CERTIFICATION- ii
Case No.: 4:19-cv-07481-JST
010874-11/2513918 V1

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003)............................................................................................9

OTHER AUTHORITIES

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1766 (4th ed. 2023)..............................................................................................5

Fed. R. Civ. P. 23(a)(4) .......................................................................................................4

## I.    INTRODUCTION

Defendants do not contest, thereby conceding, that: (1) Rule 23(a)(1) numerosity is established, (2) common issues exist under Rule 23(a)(2), and (3) common issues predominate, and a class action is superior to other available methods of adjudication as required by Rule 23(b)(3). Defendants oppose class certification on only a few limited bases, arguing that the proposed August 7, 2018, to November 5, 2019, Class Period is inconsistent with the Court's orders regarding class scope; Plaintiff Trubnikov does not satisfy the typicality inquiry; and both Lead Plaintiffs are inadequate representatives.[1] In so arguing, Defendants distort cherry-picked deposition testimony and a small fraction of the record in a hollow attempt to "protect" the class, breathing new life into an old adage that "permitting defendants to police the adequacy of class representatives and their counsel is like permitting a fox . . . to take charge of the chicken house." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 48 (S.D.N.Y. 2012) (alteration in original) (internal citation omitted).

None of Defendants' three opposing arguments provides a sound basis to deny class certification. *First*, the proposed Class Period is consistent with the Court's April 4, 2024 Order (ECF No. 209) permitting Lead Plaintiffs to amend the proposed Class Period to begin on August 7, 2018, based on allegations that Defendants' statements on that day were misleading. And because Defendants make no attempt to argue that the proposed Class Period should end on any date other than November 5, 2019, Plaintiffs' proposed class period of August 7, 2018, to November 5, 2019, is proper and should be adopted.

*Second*, Lead Plaintiff Ilya Trubnikov has demonstrated that his claims are typical of the claims of the class. Mr. Trubnikov purchased Plantronics stock on October 24, 2018, which is within the proposed Class Period. He suffered an economic injury as a result of this purchase because the price he paid was artificially inflated due to Defendants' misstatements and omissions. The same is true for

---

[1] Unless otherwise noted, (i) capitalized terms and abbreviations not defined herein have the same meanings ascribed to them in the Third Amended Complaint for Violations of Federal Securities Laws (the "TAC") (ECF No. 213) and Lead Plaintiffs' Notice of Motion and Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel and Memorandum of Points and Authorities in Support Thereof (ECF No. 190) (the "Motion"); (ii) all emphasis is added; and (iii) all internal citations and punctuation are omitted.

REPLY IN SUPPORT OF CLASS CERTIFICATION- 1
Case No.: 4:19-cv-07481-JST
010874-11/2513918 V1

all members of the proposed class. And Mr. Trubnikov is not subject to any unique or special defenses. It follows that his claims, as well as those of the proposed Class, will rise and fall based on the same facts and legal theories. This readily satisfies the typicality requirement of Rule 23(a)(3).

*Third*, both Lead Plaintiff Roofers' Pension Fund ("Roofers") and Mr. Trubnikov have demonstrated they are adequate Class Representatives because they are prosecuting this action vigorously on behalf of the Class. Both Lead Plaintiffs have participated directly in discovery, accurately described the claims at issue in their deposition testimony, kept abreast of case developments and milestones, and have been supervising Class Counsel. Defendants seek to elide these facts by distorting the Lead Plaintiffs' sworn testimony in a wayward attempt at misdirection. Defendants' arguments contradict the full record and governing case law and should be quickly dispatched as bereft of legal and factual support.

## II.    PROCEDURAL UPDATE

On October 20, 2023, Lead Plaintiffs filed a Motion to Amend the Scheduling Order and for Leave to File a Third Amended Complaint ("TAC"), citing powerful new evidence that Plantronics engaged in channel stuffing prior to its merger with Polycom. While the Court evaluated the merits of this motion and the TAC, Lead Plaintiffs filed the instant Motion for Class Certification on February 8, 2024. Lead Plaintiffs' proposed Class Period extended from August 7, 2018, to November 5, 2019— consistent with their allegations in the TAC and the evidence produced in discovery. Defendants filed an Opposition to the Motion for Class Certification on March 21, 2024 (the "Opp'n"). On April 4, 2024, "[a]fter carefully reviewing the proposed TAC," the Court held that Plaintiffs' new allegations raised the inference that Defendants' statements on August 7, 2018 were misleading. Order at 9–16, ECF No. 209 (the "TAC Order"). Consistent with the TAC Order, Lead Plaintiffs filed a conforming TAC on April 11, 2014, which pleads a Class Period of August 7, 2018, to November 5, 2019. ECF No. 213.

## III.    ARGUMENT

**A.    The proposed Class Period is consistent with this Court's orders.**

"In a securities class action lawsuit, liability cannot attach to statements made either before or after the class period." *In re Seagate Tech. II Sec. Litig.*, 1995 WL 66841, at *4 (N.D. Cal. Feb. 8,

REPLY IN SUPPORT OF CLASS CERTIFICATION- 2
Case No.: 4:19-cv-07481-JST
010874-11/2513918 V1

1995), *aff'd*, 98 F.3d 1346 (9th Cir. 1996). Thus, the class period typically starts when the first alleged misrepresentation occurred. *See Ravens v. Iftikar*, 174 F.R.D. 651, 664 (N.D. Cal. 1997) ("[I]t is required that the class representative have transacted in the security during a time that the price of the security was affected by, or responded to, the alleged misstatement or misleading omission for which relief on behalf of the class is sought."); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 501 (9th Cir. 1992). The TAC Order found that "[t]he proposed TAC raises the inference that Defendants' failure to disclose the sales practice at issue when making the August 7, 2018 statements rendered those statements misleading." TAC Order at 13–14, ECF No. 209. The effect of this order is that the first actionable statement made by Defendants now occurred on August 7, 2018. And Defendants do not challenge the fact that the Class Period should end on November 5, 2019—when Defendants announced quarterly losses of $25.9 million and disclosed a $65 million reduction in channel inventory for the following quarter. *See* Opp'n at 9–11; TAC, ¶ 25. Accordingly, the proposed Class Period of August 7, 2018, to November 5, 2019, reflects only the time in which the price of Plantronics securities was affected by the Company's alleged misstatements, and the Class Period fully complies with governing caselaw and this Court's orders.

**B.    The proposed Class Representatives have established that they satisfy the typicality and adequacy requirements of Rule 23.**

    **1.    Mr. Trubnikov's claims are typical of the Class because, among other things, he purchased Plantronics stock during the proposed Class Period.**

Defendants contend that Lead Plaintiff Ilya Trubnikov is not typical because he purchased his Plantronics securities on October 24, 2018, before the date of the first statement that purportedly inflated Plantronics' stock price. Opp'n at 11. However, as discussed in Section III.A, Defendants made their first actionable statement on August 7, 2018, and the proposed Class Period continues until November 5, 2019. It is undisputed that Mr. Trubnikov's purchases of Plantronics securities occurred during this period. *See* Joint Reply Declaration of Sean R. Matt and Lauren A. Ormsbee in Support of Lead Plaintiffs' Reply in Support of Their Motion for Class Certification ("Jt. Reply Decl."), Ex. A (Trubnikov Dep.) at 59:11–19, 67:7–10 (stock purchased on October 24, 2018). Mr. Trubnikov has thus established he is among the class of shareholders entitled to pursue recovery here and has typical claims. *See, e.g., In re Twitter Inc. Secs. Litig.*, 326 F.R.D. 619, 629 (N.D. Cal. 2018) (Tigar, J.) ("The

REPLY IN SUPPORT OF CLASS CERTIFICATION- 3
Case No.: 4:19-cv-07481-JST
010874-11/2513918 V1

test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." (quoting *Hanon*, 976 F.2d at 508)). Mr. Trubnikov suffered an economic injury due to his purchase, as did all other members of the proposed Class because of their purchases. In addition, Mr. Trubnikov is not subject to any unique or special defenses. Nor have Defendants suggested that he is. It follows that Mr. Trubnikov's claims and those of the Class concern the veracity of Defendants' statements and will rely on the same facts and legal theories to establish liability. Hence, Mr. Trubnikov satisfies Rule 23(a)(3)'s typicality requirement. *See In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 578 (N.D. Cal. 2009) (finding typicality met where lead plaintiff "share[d] class members' interest in proving that the stock price was artificially inflated as a result of defendants' misrepresentations").[2]

### 2. The proposed Class Representatives have shown they are prosecuting this action vigorously on behalf of the Class.

Rule 23(a)(4) only permits class certification if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). Thus, in making its adequacy determination, the Court only needs to resolve two questions: (1) do Lead Plaintiffs and class counsel have any conflicts of interest with other class members? and (2) will Lead Plaintiffs and class counsel prosecute the action vigorously on behalf of the class? *See id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 634 (9th Cir. 2018); *Twitter*, 326 F.R.D. at 626.

Along with these considerations, when determining if class representatives will vigorously prosecute the action on behalf of the class, if "the record supports a finding that each Lead Plaintiff has a basic understanding of the facts underlying the case, their injury, and their role as a class representative . . . the adequacy requirements of Rule 23(a)(4) are met." *In re FibroGen Sec. Litig.*,

---

[2] Defendants do not argue that Roofers' claims are atypical of the class—nor could they.

REPLY IN SUPPORT OF CLASS CERTIFICATION- 4
Case No.: 4:19-cv-07481-JST
010874-11/2513918 V1

2024 WL 1064665, at *7 (N.D. Cal. Mar. 11, 2024). "[K]nowledge of all the intricacies of the litigation is *not* required" to demonstrate adequacy of representation; instead, "*general* knowledge of what is involved is sufficient." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1766 (4th ed. 2023) (emphasis added); *see Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 376 (1966) (affirming class certification where the named plaintiff knew nothing about the content of the suit except that she was not getting her stock dividends). Ultimately, a general understanding of the litigation "is sufficient for purposes of adequacy, . . . particularly in a legally complex case such as this one." *See In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *14 (C.D. Cal. Mar. 29, 2011) (collecting cases demonstrating general knowledge suffices to show adequacy of representation).

Consequently, the law is clear that "objections to adequacy based on a named representative's alleged ignorance are disfavored." *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 543 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) (citing *Surowitz*, 383 U.S. at 370–74). As this Court recently explained, a plaintiff may be inadequate only if he is "'startlingly unfamiliar' with the case," and "the Court has not uncovered any case in this circuit finding a plaintiff inadequate on this ground." *Twitter*, 326 F.R.D at 628  (internal citations omitted).

In challenging adequacy, Defendants do not raise purported conflicts between the Class and the proposed Class Representatives or proposed Class Counsel, and Defendants do not dispute (nor could they) that Class Counsel is prosecuting this action vigorously on behalf of the Class. Instead, Defendants argue that Lead Plaintiffs are inadequate because they lacked encyclopedic knowledge of the case in response to certain deposition questions. But the record is clear that both Roofers and Mr. Trubnikov clearly understand their claims and have had more than adequate engagement with the case, as they have, among other things:

- received and reviewed periodic updates about the litigation, and copies of the pleadings and other case documents from Class Counsel (such as this Court's prior rulings, the filing of

the TAC, and the Motion for Class Certification), engaged in case strategy discussions, and kept abreast of case developments and were aware of case milestones;[3]

- participated directly in discovery through the production of documents, verification of interrogatory responses, preparation for depositions, and sitting for depositions;[4]

- accurately described the claims at issue, the identities of the Individual Defendants and relevant information about the business of Plantronics and Polycom, and the source of their injury;[5] and

- exhibited an understanding of their fiduciary duties as Class Representatives.[6]

This is far more than is required of a reasonably diligent class representative. *See, e.g.*, *Johnson v. Hartford Cas. Ins. Co.*, 2017 WL 2224828, at *14 (N.D. Cal. May 22, 2017) ("[W]hat is required of a class representative is that he be able to explain the factual basis for the lawsuit and why he believes he was wronged."); *Pfizer*, 282 F.R.D. at 51 (finding that plaintiffs had more than adequate knowledge of the litigation when they testified to the claims at issue, the identities of parties and counsel, procedural milestones in the case, and their fiduciary duties as class representatives). As explained below, Defendants' remaining attacks are based on mischaracterizations of Lead Plaintiffs' sworn testimony that are easily rebutted.

---

[3] *See, e.g.*, ECF 190–4, ¶ 4 (Trubnikov Decl.); 190–5, ¶ 3 (Menzel Decl.); Jt. Reply Decl., Ex. B (Menzel Dep.) at 22:20–32:20, 108:21–111:1, 111:15–112:7, 142:17–143:12, 145:2–147:18, 152:6–154:11; Jt. Reply Decl., Ex. A at 23:3–30:3, 80:13–81:15, 108:18–109:14.

[4] *See, e.g.*, ECF 190–4, ¶ 4 (Trubnikov Decl.); 190–5, ¶ 3 (Menzel Decl.); Jt. Reply Decl., Ex. B at 22:20–32:20, 51:8–54:19, 142:16, 147:19–152:5; Jt. Reply Decl., Ex. A at 30:15–33:17.

[5] *See, e.g.*, Jt. Reply Decl., Ex. B at 19:18–24:10, 80:23–85:16, 105:12–108:20, 111:2–11, 112:5–116:22, 144:1–14, 168:10–170:20; Jt. Reply Decl., Ex. A at 19:25–20:17, 61:17–62:9, 67:1–68:9, 71:7–72:2, 72:22–74:20, 79:22–80:11, 81:16–83:16, 98:21–101:9, 120:17–121:21.

[6] *See, e.g.*, ECF Nos. 190–4, ¶ 3 (Trubnikov Decl.); 190–5, ¶ 2 (Menzel Decl.); Jt. Reply Decl., Ex. B at 14:24–19:14, 153:15–155:2, 163:6–164:11, 165:6–168:13; Jt. Reply Decl., Ex. A at 20:18–23:2, 138:2–139:14.

REPLY IN SUPPORT OF CLASS CERTIFICATION- 6
Case No.: 4:19-cv-07481-JST
010874-11/2513918 V1

### a.    Defendants' challenges to Roofers' adequacy fail.

Defendants cherry-pick snippets of out-of-context deposition testimony to create the illusion that Roofers' representative lacks sufficient knowledge to supervise this action on behalf of the class. Each example provided by Defendants is both factually and legally baseless.

*First*, Defendants claim that "[Roofers'] testimony refutes any suggestion that Roofers has 'supervised' or 'monitored' the litigation" because the deponent spent insufficient time tracking the litigation and relied on counsel's legal analysis of the case. Opp'n at 12–13. This is not so. Defendants cite only three lines of testimony in contending that Roofers spent "a *grand total* of '[m]aybe five or six hours' on the case." Opp'n at 12 (citing Menzel Dep. at 140:5–8). While there is no minimum time requirement to establish adequacy, Mr. Menzel actually testified: (1) he spent "eight to ten hours" preparing for his deposition on his own, Jt. Reply Decl., Ex. B at 53:13–16; (2) he met with counsel in preparation for his deposition for an additional two to three hours, *id*. at 54:1–11; (3) he spent several hours meeting with counsel and discussing the case with Roofers' other trustees around late 2019 or early 2020, *id*. at 22:20-25, 25:1–25; (4) he participated in a call with Mr. Trubnikov and counsel to discuss "partnering up in the class" and not "fighting each other" for resources, *id*. at 165:18–24; and (5) Roofers' personnel and Plan Administrator also spent additional time gathering documents for review and production that Mr. Menzel was unable to quantify at his deposition, *id*. at 140:14–141:25. Defendants' mischaracterization also ignores the fact that Mr. Menzel spent five hours testifying at the deposition itself, as well as over ten hours traveling between California and Chicago for the deposition.

*Second*, citing no cases, Defendants also take issue with Roofers' reliance on the advice of its counsel in assessing the merits of this action. Opp'n at 13–14. This argument fails because reliance on "the advice of attorneys and others . . . is hardly a badge of inadequacy, . . . particularly in a complex case like this one." *Facebook Biometric*, 326 F.R.D. at 543 (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 62 (2d Cir. 2000)); *see also In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 228–29 (C.D. Cal. 2019) (rejecting similar adequacy challenges because "clients necessarily look to counsel to understand the factual and legal intricacies" of their class action (quoting *Johnson*, 2017 WL 2224828 at *14)).

REPLY IN SUPPORT OF CLASS CERTIFICATION- 7
Case No.: 4:19-cv-07481-JST
010874-11/2513918 V1

*Third*, Defendants fault Mr. Menzel because he testified that he "looked" at key case documents, rather than "reviewed" them. Opp'n at 13-14. In Defendants' eyes, this is sufficient to show that "Roofers lacks a basic understanding of the facts relevant to this case." *Id.* There is no meaningful distinction between "looking at" and "reviewing" a document. *See* Review, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/review (offering as one definition of review, "to look back on"). Further, Mr. Menzel's testimony demonstrates that he understands the parties, the allegations, and the claims in this case, and it is clear from his testimony that this understanding was developed through a review of pertinent documents and discussions with counsel. Jt. Reply Decl., Ex. B at 19:18–24:10, 80:23–85:16, 105:12–108:20, 111:2–11, 112:5–116:22, 144:1–4, 168:10–170:20. Defendants' choice to present fragments of Mr. Manzel's testimony and to then claim these excerpts reveal he lacked a basic understanding of the case is similarly deceptive. Opp'n at 14 (quoting Menzel Dep. at 105:15–106:4, 125:24–25). For example, while Mr. Menzel may not have recalled where Plantronics was headquartered, he accurately testified as to where Plantronics was incorporated; what products Plantronics and Polycom sold; the identities of Plantronics' CEOs, CFOs, and other key employees; the core claims in the case; and the practice of channel stuffing. Jt. Reply Decl., Ex. B at 105:14–110:14, 113:5–123:20.

*Fourth*, Defendants criticize Roofers' delegation of investment authority to sophisticated investment managers, including the manager who made investment decisions with respect to Plantronics common stock. Opp'n at 13–14. This argument only proves Roofers' adequacy. Roofers hired competent professionals to invest its beneficiaries' assets—the mark of a sophisticated institutional investor. Jt. Reply Decl., Ex. B at 17:4–14 (testifying that Roofers is a "sophisticated institutional investor" because the fund "hire[s] professional[s] to guide us along the path of our investments, and we hire investment consultants and investment managers to make[] decisions or help us make decisions"); *see Facebook Biometric*, 326 F.R.D. at 543. Notably, it is exceedingly common for pension funds and other institutional investors to hire investment managers and delegate full investment authority to them. *Middlesex Ret. Sys. v. Quest Software, Inc.*, 2009 WL 10669638, at *4 (C.D. Cal. Sept. 8, 2009) ("[C]ourts have found commonplace a scenario in which an investor relies on the purchase decisions of either a stockbroker or investment manager and have not found such a

REPLY IN SUPPORT OF CLASS CERTIFICATION- 8
Case No.: 4:19-cv-07481-JST
010874-11/2513918 V1

fact reason alone to deny class certification." (quoting *In re VeriSign, Inc.*, 2005 WL 88969, *7 (N.D. Cal. Jan. 13, 2005))). Characterizing this well-accepted practice as an indicator of inadequacy would also directly contradict the PSLRA, the main purpose of which was to encourage institutional investors to act as lead plaintiffs precisely because they are adequate to oversee such cases. *See In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 284 (S.D.N.Y. 2003) ("[T]he PSLRA ensures client control by encouraging the selection of a lead plaintiff who is an institutional investor with the largest financial stake in the action.").

*Fifth*, Defendants claim that Roofers "does not comprehend the role of a lead plaintiff or class representative in a case such as this" because Mr. Menzel stated he did not know whether Roofers could be "compensated" if they did not act as lead plaintiff, and because Roofers' fee arrangement with counsel was orally agreed. Opp'n at 14–16. Neither argument has any merit. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ Jt. Reply Decl., Ex. B at 153:5–154:11. He also testified that Roofers had a discussion with counsel about the fee arrangement and thereafter agreed to cap any requested fee to an industry standard, which Roofers understands will be negotiated and then decided by the Court at the appropriate time. *Id*. at 163:6–167:6. In any case, arguments alleging "inadequate control over potential fee arrangements are not relevant to the adequacy inquiry more generally and ignore the role of this Court in approving any fee award under Rule 23(h)." *In re Snap*, 334 F.R.D. at 229.

### b.      Defendants' challenges to Mr. Trubnikov's adequacy fail.

Defendants' three arguments attacking Mr. Trubnikov's adequacy are equally specious.

*First*, Defendants make the sweeping claim that Mr. Trubnikov "lacks even a basic understanding of the claims being asserted" because he testified "that he and the putative class are suing Plantronics for 'manipulat[ing] its records.'" Opp'n at 15 (citing Trubnikov Dep. at 79:22–80:11, 92:9–93:6, 106:15–109:9, 115:5–116:4). But this testimony is directly on point with the Lead Plaintiffs' allegations. TAC, ¶ 25 ("At no time during the scheme did Defendants disclose that: (1) Plantronics was artificially manipulating its reported financial metrics to meet guidance . . . ."). And a simple review of the cited testimony—as well as the surrounding testimony that Defendants omitted but should not have—demonstrates that Mr. Trubnikov adequately understands the claims here. For

REPLY IN SUPPORT OF CLASS CERTIFICATION- 9
Case No.: 4:19-cv-07481-JST
010874-11/2513918 V1

instance, he testified that Plantronics reported that equipment was sold and shipped to purchasers when, in reality, it was "filling up [dealers' and distributors'] warehouses" with product that did not sell. Jt. Reply Decl., Ex. A at 82:2–12. He additionally testified that Plantronics' actions "disinformed the investors who lost a lot of money from incorrect information." *Id.* at 79:25–80:8.

*Second*, Defendants fault Mr. Trubnikov's reliance on capable and experienced counsel by positing that "he does not know whether it is necessary to show that Defendants made any misstatements in order to recover." Opp'n at 15. But when asked, "is it enough just to allege that you've lost money in order to recover damages on the stock drop, or do you have to allege more than that?," he responded: "if I had to go to the court to prove something, I will have to hire an attorney to consult me on that. To your question whether it's enough to just allege that I suffered the losses, no. I think you have to hire an attorney who will help you to point out what else is needed to prove that loss happened for a reason." Jt. Reply Decl., Ex. A at 107:22–25 and 108:5–11. Of course, this is practically and legally correct. And, as discussed above, Mr. Trubnikov's reliance on counsel for advice concerning specific legal claims or misrepresentations is "hardly a badge of inadequacy, . . . particularly in a complex case like this one." *Facebook Biometric*, 326 F.R.D. at 543.

*Third*, Defendants state that Mr. Trubnikov cannot fulfill his duties as class representative because he "has familial obligations that may prevent him from traveling to the United States" to testify at trial. Opp'n at 15–16. The possibility that his wife's serious illness could potentially limit his ability to travel has no bearing on his adequacy. Moreover, Mr. Trubnikov testified that he would certainly travel to the United States for trial, if his wife is healthy at that time. Jt. Reply Decl., Ex. A at 139:1–14. And even in the event that his wife's health did not improve by the time of trial, he also testified that he would be willing to appear remotely. *Id*. at 138:18–25 ("As you can see for yourself, it's not a problem for me to sit on Zoom [for] 10 or 15 hours."). Mr. Trubnikov, just like Roofers, is an adequate representative.

## IV.   CONCLUSION

For the foregoing reasons, and for the reasons set forth in Lead Plaintiffs' opening brief, Lead Plaintiffs respectfully ask the Court to certify the proposed class, appoint Lead Plaintiffs as Class Representatives, and appoint Hagens Berman and Bernstein Litowitz as Class Counsel.

DATED: April 18, 2024

HAGENS BERMAN SOBOL SHAPIRO LLP

/s/ *Sean R. Matt*

Steve W. Berman (admitted *Pro Hac Vice*)
Sean R. Matt (admitted *Pro Hac Vice*)
Joseph M. Kingerski (admitted *Pro Hac Vice*)
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
joeyk@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
*Counsel for Lead Plaintiff Ilya Trubnikov
and Co-Lead Counsel for the Class*

DATED: April 18, 2024

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

/s/ *Lauren A. Ormsbee*

John Rizio-Hamilton (admitted *Pro Hac Vice*)
Lauren A. Ormsbee (admitted *Pro Hac Vice*)
Alexander Noble (admitted *Pro Hac Vice*)
William Freeland (admitted *Pro Hac Vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
johnr@blbglaw.com
lauren@blbglaw.com
alexander.noble@blbglaw.com
billy.freeland@blbglaw.com

Jonathan D. Uslaner (256898)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470
jonathanu@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension
Fund and Co-Lead Counsel for the Class*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(I)(3)

I, Sean R. Matt, am the ECF User whose identification and password are being used to file this Lead Plaintiffs' Reply in Support of Their Motion for Class Certification. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.

Dated: April 18, 2024                     By:     _/s/ SEAN R. MATT_

                                                       SEAN R. MATT

SIGNATURE ATTESTATION - 1
Case No.: 4:19-cv-07481-JST
010874-11/2513918 V1