**HAGENS BERMAN SOBOL SHAPIRO LLP**
Sean R. Matt (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
sean@hbsslaw.com

*Counsel for Lead Plaintiff Ilya Trubnikov and*
*Lead Counsel for the Settlement Class*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
John Rizio-Hamilton (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile:(212) 554-1444
johnr@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension*
*Fund and Lead Counsel for the Settlement Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

|  |  |
|---|---|
| IN RE PLANTRONICS, INC. SECURITIES LITIGATION | No. 4:19-cv-07481-JST<br><br>**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:       Hon. Jon S. Tigar<br>Courtroom: 6<br>Date:        August 14, 2025<br>Time:        2:00 p.m. |

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF ISSUES TO BE DECIDED ...............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................2

PRELIMINARY STATEMENT .....................................................................................................2

ARGUMENT ...................................................................................................................................5

       I.       Lead Counsel's request for attorneys' fees of 22% of the Settlement Fund is below the "benchmark percentage" in this Circuit. ................................................5

       II.      Additional factors considered by courts support approval of the requested fee. ......6

              A.      The quality of the result achieved supports the fee request. ........................7

              B.      The substantial risks of the litigation support the fee request.....................9

              C.      The skill required and the quality of the work performed support the fee request. ............................................................................................................11

              D.      The contingent nature of the fee supports the fee request. ........................13

               E.      The reaction of the Settlement Class to date and the approval of Lead Plaintiffs support the fee request................................................................14

               F.      The lodestar cross-check supports the fee request....................................15

       III.     Lead Counsel's expenses are reasonable and should be approved. .......................20

       IV.     Lead Counsel request that 100% of their expenses and 90% of the attorneys' fees be paid upon award. ........................................................................................22

CONCLUSION...............................................................................................................................23

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
 2018 WL 4959014 (C.D. Cal. Aug. 13, 2018)............................................................................5

*In re Am. Apparel, Inc. S'holder Litig.*,
 2014 WL 10212865 (C.D. Cal. July 28, 2014)........................................................................16

*In re Amgen Inc. Secs. Litig.*,
 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)..................................................................15, 17

*In re Anthem, Inc. Data Breach Litig.*,
 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ..........................................................................5

*In re Apollo Inc. Secs. Litig.*,
 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ...........................................................................17

*In re Aqua Metals, Inc. Sec. Litig.*,
 2022 WL 612804 (N.D. Cal. Mar. 2, 2022)...............................................................................7

*Azar v. Blount Int'l, Inc.*,
 2019 WL 7372658 (D. Or. Dec. 31, 2019) ...............................................................................8

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
 *aff'd*, 688 F.3d 713 (11th Cir. 2012)......................................................................................14

*Bellinghausen v. Tractor Supply Co.*,
 306 F.R.D. 245 (N.D. Cal. 2015).............................................................................................13

*In re Biolase, Inc. Sec. Litig.*,
 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)..........................................................................8

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) ....................................................................................................5

*Booth v. Strategic Realty Trust, Inc.*,
 2015 WL 6002919 (N.D. Cal. Oct. 15, 2015)............................................................................5

*In re Capacitors Antitrust Litig.*,
 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ........................................................................16

*In Re: Charles Schwab Corp.*,
 No. 08-CV-01510, ECF No. 1101 (N.D. Cal.) ........................................................................12

*Davis v. Yelp, Inc.*,
 2023 WL 3063823 (N.D. Cal. Jan. 27, 2023)..........................................................................17

*Destafano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Fec. 11, 2016)........................................................................11, 21

*In re Diamond Sports Net LLC*,
    Case No. 23-90126, ECF No. 53 (Bankr. S.D. Tex. Feb. 18, 2025)....................................18, 19

*In re Endo Int'l plc*,
    Case No. 22-22549, ECF No. 4312 (Bankr. S.D.N.Y. May 23, 2024)........................................19

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ..........................................................................................11

*In re Extreme Networks, Inc. Sec. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019)...........................................................................8, 15

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ........................................................................................................5

*Fleming v. Impax Lab'ys Inc.*,
    2022 WL 2789496 (N.D. Cal. July 15, 2022)........................................................................6, 16, 18

*Glass v. UBS Fin. Servs., Inc.*,
    331 F. App'x 452 (9th Cir. 2009) ...............................................................................................16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................................................................5

*Hefler v. Pekoc*,
    802 F. App'x 285 (9th Cir. 2020) ...............................................................................................18

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N. D. Cal. Dec. 17, 2018) ...........................................................................18

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) .............................................................................9

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................................................................11, 14

*Hessefort v. Super Micro Computer, Inc.*,
    2023 WL 7185778 (N.D. Cal. May 5, 2023) ..............................................................................22

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .............................................................................19

*Hopkins v. Stryker Sales Corp.*,
    2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ................................................................................16

*IBEW Local 697 v. Int'l Game Tech.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) .................................................................................8

*In re Impinj, Inc. Sec. Litig.*,
    No. 3:18-cv-05704-RSL, ECF No. 106 (W.D. Wash. Nov. 20, 2020) ...................................21

*In re Infinity Pharms., Inc.*,
    Case No. 23-11640, ECF No. 284 (Bankr. D. Del. Apr. 10, 2024) .........................................19

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................................17

*Johnson v. US Auto Parts Network, Inc.*,
    2008 WL 11343481 (C.D. Cal. Oct. 9, 2008)...........................................................................9

*Khoja v. Orexigen Therapeutics, Inc.*,
    2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ........................................................................17

*In re Lucent Techs., Inc., Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) ........................................................................................15

*In re Lyft Inc. Sec. Litig.*,
    2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ...........................................................................6

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)................................................................................................................17

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010)...................................................................................................14

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................... *passim*

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ...............................................................................................3, 5

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd,* 627 F.3d 376 (9th Cir.
    2010) ......................................................................................................................................14

*Pokorny v. Quixtar, Inc.*,
    2013 WL 3790896 (N.D. Cal. July 18, 2013)..........................................................................6

*In re Qualcomm Inc. Sec. Litig.*,
    Case No. 3:17-cv-00121-JO-MSB, ECF No. 450 (S.D. Cal. Sept. 27, 2024) ........................21

*In re QuantumScape Sec. Class Action*,
    2025 WL 353556 (N.D. Cal. Jan. 22, 2025) ............................................................................6

*Rihn v. Acadia Pharm. Inc.*,
    2018 WL 513448 (S.D. Cal. Jan. 22, 2018).............................................................................16

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ........................................................................................14

*Roberts v. Zuora, Inc.*,
    No. 3:19-cv-03422-SI (N.D. Cal.) ...................................................................................12

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    No. C 18-02902-WHA, ECF No. 421 (N.D. Cal. Feb. 10, 2022)......................................21

*In re Silver Wheaton Corp. Sec. Litig.*,
    2020 WL 4581642 (C.D. Cal. Aug. 6, 2020)......................................................................6

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ............................................................................................5

*In re Splunk Inc. Sec. Litig.*,
    Case No. 4:20-cv-08600-JST, ECF No. 143 (N.D. Cal. Mar. 4, 2024)..........................6, 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................................................14

*In re Tezos Sec. Litig.*,
    2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ..................................................................6

*In re Twitter Inc. Sec. Litig.*,
    2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) ............................................................19, 22

*In re Tyco Int'l, Ltd. Multi-Dist. Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007).................................................................................16

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .............................................................7, 8, 16

*Vega v. Weatherford U.S., Ltd. P'ship*,
    2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ....................................................................21

*Vincent v. Reser*,
    2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ....................................................................20

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...............................................................................7, 11, 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)...................................................................18

*In re Volkswagen "Clean Diesel" Mktg, Sales Practices, & Prods. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019) .....................................................................6

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ..................................................................................9, 13, 17

*In re Willis Towers Watson PLC Proxy Litig.*,
No. 1:17-cv-1338-AJT-JFA, ECF No. 347 (E.D. Va. May 21, 2021)....................................21

*In re Zymergen Inc.*,
Case No. 23-11661, ECF No. 436 (Bankr. D. Del. Mar. 22, 2024).........................................19

**STATUTES AND RULES**

15 U.S.C. §78-u ................................................................................................. *passim*

Fed. R. Civ. P. 23(h) ................................................................................................................1

**OTHER AUTHORITIES**

Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action
Litigation: 2024 Full-Year Review*, NERA (2025)......................................................................6

## NOTICE OF MOTION FOR AN AWARD OF
## ATTORNEYS' FEES AND LITIGATION EXPENSES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice As Modified (ECF No. 240) (the "Preliminary Approval Order"), Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Hagens Berman Sobol Shapiro LLP ("Hagens Berman" and, with BLB&G, "Lead Counsel") will and hereby do move the Court, before the Honorable Jon S. Tigar, on August 14, 2025, at 2:00 p.m. in Courtroom 6 of the Ronald V. Dellums Federal Building and United States Courthouse, 1301 Clay Street, Oakland, CA, 94612 or at such other location and time as set by the Court, for an Order awarding attorneys' fees and litigation expenses incurred in the above-captioned securities class action (the "Action").

This motion is based on the following Memorandum of Points and Authorities, the accompanying Joint Declaration of John Rizio-Hamilton and Sean R. Matt in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Joint Fee Declaration") and its exhibits, all other prior pleadings and papers in this Action, arguments of counsel, and such additional information or argument as may be required by the Court. A proposed Order is attached to this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award in the amount of 22% of the Settlement Fund (i.e., the Settlement Amount, plus interest accrued thereon).

2. Whether the Court should approve Lead Counsel's request for payment of $593,198.12 in litigation expenses incurred in this Action.

## MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Lead Counsel for the Settlement Class and counsel for Lead Plaintiffs Ilya Trubnikov and Roofers' Pension Fund ("Lead Plaintiffs") respectfully submit this memorandum of law in support of their application for (a) an award of attorneys' fees in the amount of 22% of the Settlement Fund (including interest earned on the Settlement Fund); and (b) payment of $593,198.12 in litigation expenses that were reasonably incurred by Lead Counsel in prosecuting and resolving the Action.[1]

## PRELIMINARY STATEMENT

Lead Counsel have vigorously litigated this securities class action over the last five years on a fully contingent basis, without receiving any compensation. The litigation was hard fought, and Lead Counsel faced risks from the outset that they would be unable to obtain a meaningful recovery for Lead Plaintiffs and the class. As such, Lead Counsel had to—and did—dedicate very substantial efforts to the Action from its outset. Lead Counsel conducted an extensive investigation, prepared a detailed consolidated complaint based on that investigation, opposed two rounds of motions to dismiss, prepared Lead Plaintiffs' motion for class certification, and conducted substantial fact discovery, which included obtaining and reviewing hundreds of thousands of pages of documents and conducting eight depositions.

Through Lead Counsel's sustained litigation efforts, they achieved the proposed $29.5 million Settlement for the benefit of Lead Plaintiffs and the Settlement Class. The $29.5 million recovery represents a very favorable result for the Settlement Class and provides meaningful and certain compensation to Settlement Class Members while avoiding the significant risks and delay of continued litigation, including the risk that there might be no recovery at all. Having achieved this significant monetary recovery after litigating this case without any payment for five years,

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated July 18, 2024 (ECF No. 230-1) (the "Stipulation"), or the Joint Fee Declaration. Citations to "¶ __" in this memorandum refer to paragraphs in the Joint Fee Declaration and citations to "Ex. __" refer to exhibits to the Joint Fee Declaration. Unless otherwise indicated, all emphasis is added and internal citations are omitted.

LEAD COUNSEL'S MOTION FOR                    2                    4:19-cv-07481-JST
ATTORNEYS' FEES AND
LITIGATION EXPENSES

Lead Counsel now apply for attorneys' fees in the amount of 22% of the Settlement Fund, as well as payment for the litigation expenses that Lead Counsel incurred in prosecuting the Action.

The Ninth Circuit has long recognized that, in class actions resulting in a common fund like this one, a percentage award is appropriate, and an award of 25% of the settlement amount is the "benchmark." *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 949 (9th Cir. 2015). The requested 22% fee is below this "benchmark" and is well within the range of fees awarded in comparable class action cases. The requested fee percentage is also strongly supported by factors often considered by courts in determining the reasonableness of the fee (and that could support an upward adjustment to the benchmark), including the significant risks presented by this contingent fee litigation, the quality of the result achieved, the extent and quality of Lead Counsel's efforts, and the lodestar cross-check.

Lead Counsel prosecuted the Action on a contingency-fee basis and bore the risk that counsel would receive no compensation. As discussed herein, there were multiple risks inherent in the Action. The riskiness of the Action is highlighted by, among other things, the facts that the Company never restated any of its financial statements and there was no parallel SEC or DOJ enforcement action ever brought related to the alleged fraud.

As discussed below, Defendants strenuously argued that there was no channel-stuffing scheme and that their statements at issue were not false when made, were not material to investors, and not made with the required scienter. There were risks from the outset that a factfinder might support Defendants' view on one of these issues—in which case there would be no recovery at all. Lead Counsel also faced notable risks in proving loss causation and damages in the Action. In particular, there were serious challenges in proving that disclosure of Defendants' alleged channel stuffing—and not other non-fraud information concerning Plantronics' business—caused the price declines at issue. And, even if Lead Plaintiffs could establish a causal connection, quantifying the amount of damages resulting from the alleged fraud (as opposed to other non-fraud-related news) would pose additional challenges. Thus, Lead Plaintiffs would have faced substantial tests at summary judgment, trial, and on appeal in prevailing on its claims, including damages. Lead

Counsel were able to overcome these hurdles and secure a meaningful recovery for the Settlement Class.

The requested attorneys' fees are also supported by the substantial efforts that Lead Counsel dedicated to the Action to achieve the Settlement over the last five years. Among other things, Lead Counsel (1) conducted an extensive investigation into the claims asserted, which included a detailed review of public documents, interviews with over 50 former Plantronics employees, and consultation with an expert financial economist; (2) drafted a detailed amended complaint sufficient to satisfy the heightened pleading standards of the Private Securities Litigation Reform Act (the "PSLRA"); (3) researched and briefed Lead Plaintiffs' opposition to Defendants' two rounds of motions to dismiss; (4) researched and briefed Lead Plaintiffs' motion for class certification; (5) conducted extensive discovery, including propounding detailed document requests to Defendants and subpoenas to third parties, obtaining and reviewing substantial document productions, taking depositions, and working with experts; and (6) engaged in extensive arm's-length settlement negotiations to achieve the Settlement, including preparation of mediation briefing and two formal mediation sessions.

Lead Counsel dedicated a total of over 20,500 hours of attorney and other professional staff time over the course of litigation to bring the Action to this resolution. ¶¶ 79-80. In class actions like this one, which are prosecuted on a contingent-fee basis, courts commonly award fees representing a positive "multiplier" of counsel's lodestar of up to four times the amount of their lodestar to compensate counsel for taking the risks of non-recovery and other factors. Here, in contrast, the requested fee represents a "negative" multiplier of 0.55 of Lead Counsel's lodestar (¶ 79), which is below the range of multipliers typically awarded in comparable cases and strongly supports the reasonableness of the fee requested. In other words, despite the substantial contingency risk Lead Counsel faced and the fact that courts often apply positive multipliers in similar circumstances, the requested fee here represents a substantial discount of roughly 45% on Lead Counsel's lodestar. Moreover, Lead Counsel's fee request is consistent with the more restrictive of two separate retainer agreements entered into between Lead Counsel and Lead

Plaintiffs at the outset of the litigation, and following their diligent supervision of the Action, Lead Plaintiffs endorse Lead Counsel's fee request.

Finally, Lead Counsel seek to recover the litigation expenses that they incurred in prosecuting and resolving this litigation, which totaled $593,198.12. As discussed below, these expenses were reasonable and necessary for the prosecution and resolution of the litigation and are of the type that are routinely charged to clients in non-contingent litigation.

For the reasons set forth herein, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 22% of the Settlement Fund and payment of litigation expenses in the amount of $593,198.12.

## ARGUMENT

**I.   Lead Counsel's request for attorneys' fees of 22% of the Settlement Fund is below the "benchmark percentage" in this Circuit.**

The Ninth Circuit has established that, in common-fund cases such as this one, the "benchmark" percentage attorney fee award is 25% of the settlement fund. *See, e.g.*, *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949; *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011); *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Courts in this District have found fee awards in the amount of the 25% benchmark to be "presumptively reasonable." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018) ("[I]t is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees."); *Booth v. Strategic Realty Trust, Inc.*, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) (same). Indeed, courts have found that, "in most common fund cases, the award *exceeds* that benchmark" of 25%. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) ("The Ninth Circuit uses a 25% benchmark in common fund class actions, and 'in most common fund cases, the award exceeds that benchmark,' with a 30% award the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'");

*Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("The Ninth Circuit uses a 25% baseline in common fund class actions, and 'in most common fund cases, the award exceeds that benchmark,' with a 30% award the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'").

The 22% fee request here is thus below with the 25% Ninth Circuit benchmark and more than presumptively reasonable.  Further, the 22% fee request is also well within the range of percentage fees typically awarded in securities class actions and other complex class actions in the Ninth Circuit with recoveries comparable to the $29.5 million settlement achieved here.  *See, e.g.*, *In re QuantumScape Sec. Class Action*, 2025 WL 353556, at *5 (N.D. Cal. Jan. 22, 2025) (awarding 30% of $47.5 million settlement); *In re Splunk Inc. Sec. Litig.*, Case No. 4:20-cv-08600-JST, slip op. at 1 (N.D. Cal. Mar. 4, 2024), ECF No. 143 (Ex. 7A) (awarding 25% of $30 million settlement); *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *11 (N.D. Cal. Aug. 7, 2023) (awarding 25% of $25 million settlement); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% of $33 million settlement); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.3% of $25 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Volkswagen "Clean Diesel" Mktg, Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement).  And a statistical review of all PSLRA settlements from 2015 to 2024 reveals that the median fee award in settlements ranging from $25 million to $100 million was 25%.  *See* Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, NERA (2025), at 30 (Ex. 7B).

**II.    Additional factors considered by courts support approval of the requested fee.**

The reasonableness of Lead Counsel's 22% fee request is further confirmed by additional factors considered by courts in this Circuit, including (1) the results achieved, (2) the risks of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiffs, (5) awards made in similar cases, (6) the class's reaction,

and (7) a lodestar cross-check. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *Omnivision*, 559 F. Supp. 2d at 1046-48.

### A.    The quality of the result achieved supports the fee request.

Courts consider the results achieved in assessing a fee award request. *See Vizcaino*, 290 F.3d at 1048 ("results are a relevant" factor in awarding attorneys' fees). Lead Counsel respectfully submit that the $29.5 million cash settlement is a very favorable result for the Settlement Class in this case, especially when considering the risk of a significantly lower recovery—or no recovery at all—if the case proceeded through summary judgment, trial, and the inevitable appeals.

The $29.5 million Settlement is approximately three times as large as the median securities class action settlement in the Ninth Circuit. ¶ 58. The Settlement is also very favorable when considered against the risks of litigation and the range of potential damages that could be proved at trial. Lead Plaintiffs and their damages expert estimate that the maximum theoretical damages that could be established at trial would be approximately $248 million. Accordingly, the Settlement achieved here represents a favorable recovery of approximately 12% of the Settlement Class's maximum damages. ¶ 63. Moreover, that maximum recovery amount assumes that Lead Plaintiffs would prevail entirely on all liability issues for the entire Class Period and all loss causation and damages issues, and could establish that the full amount of the abnormal declines in Plantronics stock on the three alleged corrective disclosure dates (as well as a follow-on reaction on June 19, 2019), was causally connected to Defendants' alleged misstatements. ¶ 60. As discussed further below, Plaintiffs' success on all of these elements was far from certain.

Courts in this Circuit have approved settlements with comparable or lower percentage recoveries than obtained here as fair and reasonable. *See, e.g.*, *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) ("Class Counsel contends that this settlement offer constitutes 7.3% of the most likely recoverable damages, assuming Plaintiffs were to prevail on all claims against the Defendants . . . . The Court agrees that this recovery is in line with comparable class action settlements."); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov.

5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" and noting that it was "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements"); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving settlement representing between 5% and 9.5% of maximum potential damages); *Azar v. Blount Int'l, Inc.*, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement recovering 4.63% to 7.65% of the class's total estimated damages); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding settlement recovering 8% of estimated damages "equals or surpasses the recovery in many other securities class actions"); *IBEW Local 697 v. Int'l Game Tech.,* 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered" and finding it "within the median recovery in securities class actions settled in the last few years").

Moreover, the recovery is particularly strong in light of Defendants' potential arguments that might have substantially reduced the class's damages. For example, Defendants were expected to argue that the price declines on June 18 and 19, 2019, following the initial alleged corrective disclosure, resulted from Plantronics' disclosure of tariffs impacting its sales in China—rather than from release of information about the alleged channel stuffing scheme. ¶ 64. Defendants were also expected to challenge loss causation for the other two remaining alleged corrective disclosures on the grounds that the information disclosed was not sufficiently related to the alleged misstatements. *Id*. In addition, if Defendants succeeded in arguing that certain of the misstatements were not actionable, the Class Period could have been shortened and the maximum damages for the shortened Class Period would be greatly reduced, potentially to $112.9 million if the first actionable misstatement was found to occur on May 8, 2019. *Id.* Accordingly, if Lead Plaintiffs were unable to sustain the entire Class Period or were unable to establish loss causation for certain of the alleged disclosures, or for some portion of the price declines on those days, the potential damages that could be recovered at trial would be substantially reduced from the $248 million maximum. *Id.*

Given the significant risks of establishing liability and loss causation here, Lead Counsel believe that this level of recovery represents an excellent result for the Settlement Class and that the result achieved supports the fee requested.

### B.    The substantial risks of the litigation support the fee request.

"The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award." *In re Heritage Bond Litig.*, 2005 WL 1594389, at \*14 (C.D. Cal. June 10, 2005); *see also, e.g.*, *In re Washington Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1299-1301 (9th Cir. 1994); *Omnivision*, 559 F. Supp. 2d at 1047.

Lead Counsel faced significant risks in this Action.  This action was subject to the pleading requirements of the PSLRA.  *See Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at \*3 (C.D. Cal. Oct. 9, 2008) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").  To satisfy the PSLRA's requirements, Lead Counsel were required to—and did—conduct a substantial investigation, which included (among other things) interviewing over 50 former Plantronics or Polycom employees, with nine of their accounts featured in the complaint.  To satisfy the PSLRA's requirements, Lead Counsel also needed to consult extensively with Lead Plaintiffs' expert on issues of loss causation and damages, as well as conduct a thorough review of Plantronics' public statements and stock price movements—all before filing the amended complaint.

Despite this significant effort, some of the many risks in the Action were realized at the motion to dismiss stage when the Court dismissed certain categories of Lead Plaintiffs' claims in its August 17, 2022 Order, although Lead Plaintiffs were later able to restore their claims concerning statements made on August 7, 2018, based on further evidence developed in discovery. ¶¶ 42-43.

Moreover, as discussed in greater detail in the Joint Fee Declaration, many substantial challenges remained.  This was not a case in which Plantronics ever restated its financials, nor was there any parallel SEC or other government action brought against Plantronics or any of the

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND
LITIGATION EXPENSES

9

4:19-cv-07481-JST

Defendants for the alleged fraud. Lead Plaintiffs would have none of those tailwinds in attempting to prove that Defendants' statements were materially false; that Defendants knew that their statements were false when made or were deliberately reckless in making the statements; and that the disclosures concerning Defendants' false and misleading statements caused declines in the price of Plantronics' common stock.

Defendants had substantial arguments concerning each of these issues. To start, Lead Plaintiffs faced challenges in proving that Defendants made misleading statements or omissions by failing to disclose the Company's revenues were the result of an alleged channel-stuffing scheme that temporarily boosted the Company's short-term revenues at the expense of long-term revenue. Defendants argued that the Company's channel sales and inventory data from the Class Period was inconsistent with Lead Plaintiffs' allegations that the Company had engaged in a channel-stuffing scheme—because the sales data did not show any appreciable spike in channel inventory as to the total units of Company products in the overall channel. Second, Defendants would have argued that any increases in channel inventory were unrelated to any purported channel stuffing scheme but resulted instead from the Company's switch to a "back-end loaded" sales model—a model that involved higher percentages of sales and inventory accumulation at the end of fiscal quarters.

For similar reasons, Lead Plaintiffs also expected that Defendants would argue the alleged misstatements were not made with "scienter" as required under the Exchange Act. Defendants would likely have argued that the Individual Defendants did not have fraudulent intend to mislead investors given that sales data on a unit basis did not meaningfully increase, and that, even if their statements were false or misleading, that they believed those statements to be true based on information available when the statements were made. Thus, there was a meaningful risk that the Court or jury could find against Lead Plaintiffs on these issues on a complete record at summary judgment or trial. Moreover, if Defendants succeeded in arguing that certain of the misstatements were not actionable, the Class Period would have been shortened and this would have resulted in a significant reduction in recoverable damages. For example, as noted above, if

LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

10

4:19-cv-07481-JST

Defendants persuaded the Court that their alleged misrepresentations prior to May 8, 2019 were not actionable, the class could recover no more than $112.9 million in damages (which would make the settlement worth 26% of revised damages).  ¶ 64.

In addition, Lead Plaintiffs also expected that Defendants would raise challenges to loss causation, arguing that the price declines at issue were caused by the disclosure of information unrelated to the alleged fraud.  For example, Defendants were expected to argue that the price declines following the alleged corrective disclosure on June 18, 2019 resulted from the Company's disclosure of tariffs impacting its sales in China, rather than disclosure of harms resulting from the alleged channel stuffing scheme.  Lead Plaintiffs also expected that Defendants would challenge loss causation for the two remaining alleged corrective disclosures on August 6, 2019, and November 5, 2019, on the basis that information they disclosed was not sufficiently related to the alleged misstatements.  If Defendants had succeeded on these arguments, the recoverable damages might have been less than the amount provided in the Settlement.  ¶ 64.

All of these substantial litigation risks further support the fee requested.

## C.    The skill required and the quality of the work performed support the fee request.

Courts have recognized that the "'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Destafano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Fec. 11, 2016); *see also Vizcaino*, 290 F.3d at 1048.  "'This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss.'" *Zynga*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F. Supp. 2d at 1047).  In considering this factor, courts also consider the quality and vigor of opposing counsel.  *See, e.g.*, *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").

Lead Counsel are among the most experienced and skilled practitioners in the securities-litigation field, and the firms have a long and successful track record in securities cases throughout the country, including within this Circuit.  ¶¶ 82-83.  Industry sources consistently rank Lead Counsel BLB&G as one of the top plaintiffs' firms in the country, and BLB&G has served as lead or co-lead counsel in more "Top 100 U.S. Class Action Settlements of All Time" than any other law firm in history.  *Id.* at ¶ 82.  BLB&G's successes in this Circuit and elsewhere include, among others, *In re McKesson HBOC, Inc. Securities Litigation*, No. 99-cv-20743 (N.D. Cal.), in which BLB&G recovered $1.05 billion for investors, the largest recovery in a securities class action in the Ninth Circuit; *Hefler v. Wells Fargo & Co.*, No. 16-cv-5479 (N.D. Cal.), in which BLB&G recovered $480 million for investors; *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 14-cv-2004 (C.D. Cal.), in which BLB&G recovered $250 million for investors; and *In re Wells Fargo & Co. Securities Litigation*, 1:20-CV-04494 (GHW) (S.D.N.Y.), in which BLB&G recovered $1 billion for investors.

Similarly, trial courts in this District and throughout the Ninth Circuit have repeatedly recognized Hagens Berman's ability to serve as class counsel in securities class actions similar to the instant litigation.  ¶ 83.  For example, Hagens Berman served as Lead Counsel and Class Counsel in *Roberts v. Zuora, Inc.*, No. 3:19-cv-03422-SI (N.D. Cal.) (Illston, J.), where on behalf of the certified class, Hagens Bermans secured a $75.5 million settlement that was recently finally approved by the Court (ECF No. 277), representing a recovery of five times greater than the median recovery obtained in comparable securities class actions cases in 2023.  *Id.* at ECF No. 270 at p. 8.  Similarly, in *In Re: Charles Schwab Corp.*, No. 08-CV-01510, ECF No. 1101 (N.D. Cal.) (Alsup, J.), after Hagens Berman secured settlements totaling $235 million recovering 45 percent and 85 percent of investor losses for the two different classes, the Honorable William Alsup commented, "Class counsel did a good job persistently advocating for the best interests of the class members, and obtained a very good result for the class . . . ." ECF No. 1101 at p. 12.  Further, in the *Aequitas Investor Litigation*, Case No. 3:16-cv-00580-AC (D. Or.) (Hernandez, J.),

Hagens Berman, on behalf of its clients, reached a unified $234 million settlement with defendants, allowing investors to recover 80% to 90% of their losses after the liquidation of the Aequitas estate.

Lead Counsel's experience in complex securities cases facilitated Lead Counsel's ability to negotiate the Settlement, ultimately resulting in the $29.5 million recovery. Lead Counsel achieved this recovery by litigating against highly skilled and well-respected lawyers from Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") who vigorously advocated for their clients.

Lead Counsel's efforts over the past five years of litigation included: (1) an extensive investigation of the claims at issue; (2) research and preparation of the detailed Amended Complaint and the revised Second Amended Complaint; (3) opposing Defendants' motions to dismiss the Amended Complaint and Second Amended Complaint through detailed briefing; (4) drafting a motion for class certification, including assisting in the preparation of a related expert report; (5) conducting substantial discovery, which included preparing and exchanging initial disclosures and document requests, serving subpoenas on multiple third-parties, obtaining and reviewing Defendants' substantial production of hundreds-of-thousands of pages of documents, and taking depositions; (6) succeeding on a motion to compel production of additional documents from Defendants and third parties; (7) working with experts in loss causation and damages; and (8) engaging in extended settlement negotiations, including preparing detailed mediation statements and participating in two full-day mediation sessions. ¶¶ 5, 12-52.

**D.      The contingent nature of the fee supports the fee request.**

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *WPPSS*, 19 F.3d at 1299; *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) ("when counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award"). The Supreme Court has emphasized that private securities actions, like this one, "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary

supplement to [SEC] action.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007).

As courts recognize, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expending thousands of hours and millions of dollars, yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g.*, *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming grant of summary judgment in favor of defendant on loss-causation grounds after years of litigation); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *34 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation), *aff'd,* 627 F.3d 376 (9th Cir. 2010).

Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict), *aff'd*, 688 F.3d 713 (11th Cir. 2012).

Here, Lead Counsel have committed significant resources, time, and money to prosecute this Action vigorously and successfully for the Settlement Class's benefit for five years—without any payment or any guarantee of compensation. Lead Counsel's fee award and expense reimbursement in this Action has always been at risk in the case and contingent on this Court's discretion in awarding fees and expenses. If Lead Counsel had been unsuccessful at the motion to dismiss stage, or lost at summary judgment or at trial, Lead Counsel would have received nothing for their years of diligent prosecution of the claims for the benefit of the Settlement Class. This significant contingency-fee risk further supports the requested fee.

**E.      The reaction of the Settlement Class to date and the approval of Lead Plaintiffs support the fee request.**

The reaction of the Settlement Class to the proposed Settlement and the fee motion also supports approval of the fee request. *See Heritage Bond*, 2005 WL 1594403, at *21 ("The

existence or absence of objectors to the requested attorneys' fee is a factor i[n] determining the appropriate fee award."). A total of 21,659 copies of the Notice and Claim Form have been sent to potential Settlement Class Members and their nominees, and the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on March 11, 2025. *See* Segura Decl. (Ex. 4) at ¶¶ 11-12. The Notice informed potential Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 22% of the Settlement Fund. *See* Notice (Segura Decl. Ex. A) at ¶¶ 5, 57. The Notice further informed Settlement Class Members of their right to object to the request for attorneys' fees and expenses. *See id*. at p. 3 and ¶¶ 65-66. Although the deadline for filing any objections will not run until June 25, 2025, to date, no Settlement Class Member has filed an objection to the fees and expenses requested. Joint Fee Decl. ¶¶ 66, 72.

In addition, Lead Plaintiffs, which took an active role in the litigation and closely supervised the work of Lead Counsel, both support the approval of the requested fee based on the result obtained, the efforts of Lead Counsel, and the risks in the Action. *See* Menzel Decl. (Ex. 1) at ¶¶ 5, 7; Trubnikov Decl. (Ex. 2) at ¶¶ 4-5, 7. Lead Plaintiffs' endorsement of the fee request further supports its approval. *See, e.g.*, *In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

**F.     The lodestar cross-check supports the fee request.**

"Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness." *In re Amgen Inc. Secs. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016); *see also In re Extreme Networks, Inc. Secs. Litig.*, 2019 WL 3290770, at *10 (N.D. Cal. July 22, 2019) (noting that the "lodestar may provide a useful perspective on the reasonableness of a given percentage award"). When the lodestar is used as a cross-check, the "focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader

LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES                    15                    4:19-cv-07481-JST

question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multi-Dist. Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *see In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014) ("'In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.'"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009).

Fee awards in class actions with contingency risks, such as this one, routinely represent positive multipliers of counsel's lodestar to account for the possibility of non-payment. *See Rihn v. Acadia Pharm. Inc.*, 2018 WL 513448, at *6 (S.D. Cal. Jan. 22, 2018) ("Courts have 'routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases'" because, in doing so, it provides a "'financial incentive to accept contingent-fee cases which may produce nothing.'"). Courts award lodestar multipliers up to four times the counsel's lodestar, and sometimes even more. *See Vizcaino*, 290 F.3d at 1051-52 & n.6 (affirming 28% fee award representing 3.65 multiplier and finding that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases," and that, when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing examples of higher multipliers); *see also Impax*, 2022 WL 2789496, at *9 (awarding 30% of $33 million settlement representing a 2.6 multiplier); *Vataj*, 2021 WL 5161927, at *9 (approving 2.5 multiplier); *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases.").

As detailed in the Joint Fee Declaration, Lead Counsel spent over 20,500 hours of attorney and other professional time prosecuting the Action for the benefit of the Settlement Class through July 19, 2024, the date that Lead Plaintiffs filed their motion for preliminary approval of the Settlement. ¶ 79. Lead Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney or other professional by their 2024 hourly rates, is $11,785,325. *Id.* It is well

established that it is appropriate to calculate counsel's lodestar based on current, rather than historical rates, as a method of compensating for the delay in payment and the loss of interest on the funds. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *WPPSS*, 19 F.3d at 1305; *In re Apollo Inc. Secs. Litig.*, 2012 WL 1378677, at *7 n.2 (D. Ariz. Apr. 20, 2012).

The requested fee of 22% of the Settlement Fund equates to $6,490,000 (plus interest) and, therefore, represents a multiplier of 0.55 on Lead Counsel's lodestar. ¶ 79. In other words, the requested fee represents only 55% of the lodestar value of the time that Lead Counsel dedicated to the Action. This "negative" or fractional multiplier is well below the range of multipliers—often between one and four—commonly awarded in comparable litigation.

Indeed, Courts repeatedly recognize that a percentage fee request that is less than counsel's lodestar provides strong confirmation of the reasonableness of the award. *See, e.g., Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) ("[A] multiplier of less than one suggests that the negotiated fee award is reasonable."); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *10 (S.D. Cal. Nov. 30, 2021) (where 33% fee requested resulted in a fractional multiplier of 0.528, the court found that the "lodestar cross-check [] provides a strong indication of the reasonableness of Lead Counsel's requested percentage award"); *Amgen*, 2016 WL 10571773, at *9 ("[C]ourts have recognized that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award."); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (finding "no real danger of overcompensation" given that the requested fee represented a discount to counsel's lodestar).

Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, the Joint Fee Declaration includes a breakdown of the hours that each attorney and other professional devoted to the litigation into 14 distinct projects undertaken over the course of the litigation. *See* ¶¶ 78, 80. In addition, for each attorney whose time is included in Lead Counsel's lodestar, a summary of the principal tasks that he or she worked on in the litigation has been provided. *See* Ex. 5A-2, 5B-2. Moreover, Lead Counsel have not included in the fee application *any* time expended preparing the motion for fees and expenses. ¶ 78. Lead Counsel

also made other reductions to its time in the interest of billing judgment, including, for example, removing timekeepers with fewer than 10 hours dedicated to the Action.

The hourly rates used to calculate Lead Counsel's lodestar are also reasonable. The hourly rates for Lead Counsel range from $800 to $1,350 for partners, from $700 to $875 for senior counsel or "of counsel"; $350 to $700 for associates, and from $300 to $425 for paralegals and case managers. *See* Exs. 5A-1, 5B-1. The blended hourly rate for all timekeepers in the application is $572. Lead Counsel believe these rates are within the range of reasonable fees for attorneys working on sophisticated class action litigation in this District. *See, e.g.*, *Impax*, 2022 WL 2789496, at *9 (finding that hourly rates for class counsel which ranged "from $760 to $1,325 for partners, $895 to $1,150 for senior counsel, and $175 to $520 for associates" were in line with "prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 17, 2018) (approving Lead Counsel BLB&G's then-applicable 2018 rates, ranging from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals, as reasonable for purposes of lodestar cross-check), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check in 2017 where blended average hourly rate was $529 per hour, with hourly rates ranging up to $1,600 for partners and up to $790 for associates).

Lead Counsel's staff attorneys are or were full-time employees of the firms and were integrally involved in the prosecution of this case. *See* Ex. 5A at ¶ 7; Ex. 5B at ¶ 7. These attorneys are highly experienced, as set forth in their attorney biographies. *See* Ex. 5A-3, at pp. 11-12; Ex. 5B-3, at pp. 29-30. Their hourly rates ranged from $410 to $575 per hour, which is reasonable based on the market rates for staff attorneys working in similar contexts.[2] *See, e.g.*, *In re Diamond*

---

[2] Hagens Berman also employed a small number of contract attorneys with hourly rates of $400 per hour, as needed to complete document review in order to prepare for depositions. *See* Ex. 5B at 7; Ex. 5B-1; Ex 5B-3, at pp. 31-33.

*Sports Net LLC*, Case No. 23-90126 (CML), Seventh Interim and Final Fee Application of WilmerHale, at 18 (Bankr. S.D. Tex. Feb. 18, 2025), ECF No. 53 (Ex. 7C) (staff attorneys at WilmerHale in bankruptcy matter in 2024 had $695 hourly rate); *In re Endo Int'l plc*, Case No. 22-22549 (JLG), Fifth Interim & Final Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP (Bankr. S.D.N.Y. May 23, 2024), ECF No. 4312 (Ex. 7D) (staff attorneys at Skadden Arps in bankruptcy matter in 2024 had rates ranging from $630 to $657); *see also In re Twitter Inc. Sec. Litig.*, 2022 WL 17248115, at \*1 (N.D. Cal. Nov. 21, 2022) (approving fee award in securities class action that included lodestar crosscheck that included Staff Attorneys' 2021 rates ranging from $335 to $425 per hour with a blended rate of $388 per hour).

The reasonableness of Lead Counsel's rates is further underscored here by the significantly higher rates charged by defense counsel in this case. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at \*14 (S.D.N.Y. Dec. 19, 2014) (approving as reasonable hourly rates in securities action that were "comparable to . . . defense-side law firms litigating matters of similar magnitude"). Several recent filings by WilmerHale, counsel for Defendants here, indicate that its hourly rates for 2023 and 2024 ranged from $1,161 to $1,920 for partners; from $1,057 to $1,335 for of counsel and special counsel; from $612 to $1,120 for associates; and from $517 to $710 for paralegals. *See In re Diamond Sports Net LLC*, Case No. 23-90126 (CML), Seventh Interim and Final Fee Application of WilmerHale, at 18 (Bankr. S.D. Tex. Feb. 18, 2025), ECF No. 53 (Ex. 7C) ("During the Final Fee Period [October 1, 2024 to November 13, 2024], WilmerHale's hourly billing rates for attorneys ranged from $1,205 to $1,920 for partners, $1,125 to $1,310 for counsel, $680 to $1,115 for associates, $695 for staff attorneys, and $195 to $660 for paraprofessionals."); *In re Infinity Pharms., Inc.*, Case No. 23-11640 (BLS), Fourth Monthly and Final Fee Application of WilmerHale (Bankr. D. Del. Apr. 10, 2024), ECF No. 284 (Ex. 7E) (reporting blended hourly rate of $1,049.37); *In re Zymergen Inc.*, Case No. 23-11661 (KBO), Third Monthly & Final Fee Application of WilmerHale (Bankr. D. Del. Mar. 22, 2024), ECF No. 436 (Ex. 7F) (blended hourly rate of $906.18).

These rates are substantially higher—at all levels—than the rates used by Lead Counsel to calculate their lodestar.

**III.    Lead Counsel's expenses are reasonable and should be approved.**

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser,* 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013).  In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

The expenses sought here are of the type that are charged to hourly paying clients and were required to prosecute the litigation.  These expense items were incurred separately by Lead Counsel and are not duplicated in the firms' hourly rates.  From the beginning of the case, Lead Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate it for the lost use of the funds advanced to prosecute this Action.  Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.  ¶ 91.

As discussed in detail in the Joint Fee Declaration, Lead Counsel incurred a total of $593,198.12 in litigation expenses in litigating the Action over the past five years.  ¶¶ 90-97.  The expenses for which payment is sought were reasonable and necessary for the prosecution and resolution of the litigation and are of the types that are routinely charged to clients in non-contingent litigation.  These include expert fees, document-management costs, online research, court fees, and telephone and postage expenses.  ¶¶ 93-97.

Of the total expenses, Lead Counsel incurred $191,578.31, or approximately 32% of the total litigation expenses, on Lead Plaintiffs' experts and consultants, including Plaintiffs' expert in the areas of financial economics (including damages, loss causation, and market efficiency), as

well as several other expert consultants. ¶ 93. The combined costs for online legal and factual research amounted to $108,378.67, or approximately 18% of the total expenses. ¶ 94. Lead Counsel also incurred $53,575 for Lead Plaintiffs' share of the mediation costs charged for the services of the experienced mediators from Philips ADR Enterprises. ¶ 96.

In addition, Lead Counsel incurred $138,112.32 in attorneys' fees for the retention of independent counsel, Hach Rose Schirripa & Cheverie LLP, to represent several former Plantronics or Polycom employees that Lead Counsel contacted during its investigation and who wished to be represented by independent counsel. ¶ 95. These costs were substantial because Defendants deposed four of these former employees concerning the statements they made that were included in the Complaint. *Id.* Similar expenses for payment of fees for independent witness counsel have been approved by courts. *See, e.g., In re Qualcomm Inc. Sec. Litig.*, Case No. 3:17-cv-00121-JO-MSB, slip op. at 1-2 (S.D. Cal. Sept. 27, 2024), ECF No. 450 (awarding expenses to class counsel that included reimbursement for the costs of paying for independent counsel for third-party witnesses); *SEB Inv. Mgmt. AB v. Symantec Corp.*, No. C 18-02902-WHA, slip op. at 15 (N.D. Cal. Feb. 10, 2022), ECF No. 421 (same); *In re Willis Towers Watson PLC Proxy Litig.*, No. 1:17-cv-1338-AJT-JFA, slip op. at 1-3 (E.D. Va. May 21, 2021), ECF No. 347 (same); *In re Impinj, Inc. Sec. Litig.*, No. 3:18-cv-05704-RSL, slip op. at 1 (W.D. Wash. Nov. 20, 2020), ECF No. 106 (same).

The other Litigation Expenses for which payment sought are all types of expenses that are necessarily incurred in litigation and routinely charged to clients. These expenses included document management costs, court fees, photocopying, long-distance telephone calls, and postage and express mail. A complete breakdown by category of the expenses incurred by Lead Counsel is set forth in Exhibit 6 to the Joint Fee Declaration. Courts routinely approve litigation expenses such as these*. See, e.g.*, *Vega v. Weatherford U.S., Ltd. P'ship*, 2016 WL 7116731, at *17 (E.D. Cal. Dec. 7, 2016) ("legal research expenses, copying costs, mediation fees, postage, federal express charges, expert fees, . . . and travel expenses," among others, were all categories of expenses "routinely reimbursed" in class actions); *Zynga*, 2016 WL 537946, at *22 ("courts

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND
LITIGATION EXPENSES

21

4:19-cv-07481-JST

throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation").

The Notice provided to potential Settlement Class Members informed them that Lead Counsel intended to apply for the payment of litigation expenses in an amount not to exceed $750,000.  Notice ¶¶ 5, 57.  The total amount of expenses sought, $593,198.12, is less than the amount stated in the Notice.  The deadline for objecting to the fee and expense application is June 25, 2025.  To date, there have been no objections to the request for attorneys' fees or litigation expenses.

**IV.    Lead Counsel request that 100% of their expenses and 90% of the attorneys' fees be paid upon award.**

Consistent with this Court's practices, Lead Counsel requests that 100% of the Litigation Expenses and 90% of the attorneys' fees awarded by the Court be paid upon approval of the Settlement and entry of the order approving the fee and expense award, with the remaining 10% of the attorneys' fees to be paid upon entry of the Post-Distribution Accounting (following distribution of the Net Settlement Fund to eligible claimants).  *See Splunk*, Case No. 4:20-cv-08600-JST, slip op. at 2 (N.D. Cal. Mar. 4, 2024), ECF No. 143 (Ex. 7A) (awarding 90%); *Hessefort v. Super Micro Computer, Inc.,* 2023 WL 7185778, at *11 (N.D. Cal. May 5, 2023) (same); *Twitter*, w, at *1 (same).

Lead Counsel believe that that a 10% holdback of attorneys' fees is most appropriate here because it balances Lead Counsel's interest and reasonable expectation in receiving prompt payment after having prosecuted the Action for over five years without compensation, while creating sufficient financial incentive to ensure that Lead Counsel remain actively involved in overseeing the prompt distribution of settlement funds to eligible Claimants.

**CONCLUSION**

For all the foregoing reasons, Lead Counsel respectfully request that the Court award attorneys' fees of 22% of the Settlement Fund and payment of Litigation Expenses in the amount of $593,198.12.

Dated: April 25, 2025

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

*/s/ John Rizio-Hamilton*
John Rizio-Hamilton (admitted *pro hac vice*)
Alexander M. Noble (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
johnr@blbglaw.com
alexander.noble@blbglaw.com

*-and-*

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, California 90067
Tel: (310) 819-3470
jonathanu@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension Fund and Lead Counsel for the Settlement Class*

HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com

*-and-*

Steve W. Berman (admitted *pro hac vice*)
Sean R. Matt (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101

LEAD COUNSEL'S MOTION FOR
ATTORNEYS' FEES AND
LITIGATION EXPENSES

23

4:19-cv-07481-JST

Telephone: (206) 623-7292
steve@hbsslaw.com
sean@hbsslaw.com

*Counsel for Lead Plaintiff Ilya Trubnikov and Lead Counsel for the Settlement Class*