**HAGENS BERMAN SOBOL SHAPIRO LLP**
Sean R. Matt (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
sean@hbsslaw.com

*Counsel for Lead Plaintiff Ilya Trubnikov and*
*Lead Counsel for the Settlement Class*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
John Rizio-Hamilton (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile:(212) 554-1444
johnr@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension Fund*
*and Lead Counsel for the Settlement Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE PLANTRONICS, INC. SECURITIES LITIGATION | No. 4:19-cv-07481-JST<br><br>**JOINT DECLARATION OF JOHN RIZIO-HAMILTON AND SEAN R. MATT IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**<br><br>Judge:　　Hon. Jon S. Tigar<br>Courtroom: 6<br>Date:　　August 14, 2025<br>Time:　　2:00 p.m. |

JOINT DECLARATION IN SUPPORT OF
FEE AND EXPENSE MOTION

4:19-cv-07481-JST

# TABLE OF CONTENTS

**PAGE**

EXHIBIT LIST ..................................................................................................................... iii

I.    HISTORY OF THE ACTION. ...................................................................................3

      A.    The Court appointed Lead Plaintiffs and Lead Counsel. ...........................3

      B.    Lead Counsel devoted substantial time to investigating, preparing,
            and filing the Amended Complaint. ............................................................3

      C.    There was lengthy motion to dismiss practice. ..........................................5

      D.    The Parties conducted extensive fact discovery. .......................................6

            1.    Document discovery. ......................................................................7

            2.    There were many discovery disputes. ............................................9

            3.    Deposition discovery. .....................................................................9

      E.    Lead Plaintiffs filed the Third Amended Complaint based on
            discovery. ..................................................................................................10

      F.    Lead Plaintiffs filed a Motion for Class Certification and worked with
            experts. ......................................................................................................11

      G.    After extensive mediation efforts, the Parties agreed to the proposed
            Settlement. ................................................................................................11

      H.    The Court preliminarily approved the Settlement. ...................................12

II.   THE SIGNIFICANT RISKS OF THE LITIGATION. ...........................................13

      A.    The Settlement Amount compares favorably to the likely damages
            that could be proved at trial, especially given the risks presented. ..........14

III.   NOTICE OF LEAD COUNSEL'S FEE AND EXPENSE REQUEST WAS MAILED TO
       ALL SETTLEMENT CLASS MEMBERS WHO COULD BE IDENTIFIED. ..................16

IV.   THE FEE AND EXPENSE APPLICATION. ..........................................................18

      A.    The Fee Application ...................................................................................18

            1.    Lead Plaintiffs have authorized and support the Fee
                  Application ....................................................................................18

            2.    Lead Counsel performed extensive work in this Action ...............19

            3.    The experience and standing of Lead Counsel. ...........................22

            4.    The standing and caliber of Defendants' Counsel. ......................23

5.    The risks of litigation and the need to ensure the availability of competent counsel in high-risk contingent cases. ...................................23

6.    The Settlement Class has thus far reacted favorably to the Fee Application...........................................................................................................24

B.    The Expense Application. ........................................................................................25

V.    CONCLUSION............................................................................................................................27

**EXHIBIT LIST**

| Ex. No. | Description |
|---|---|
| 1 | Declaration of Gary Menzel, Trustee and Chairman of Roofers' Pension Fund, in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Menzel Decl.") |
| 2 | Declaration of Ilya Trubnikov in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Trubnikov Decl.") |
| 3 | CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2024 REVIEW AND ANALYSIS (2025) |
| 4 | Declaration of Luiggy Segura Regarding (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date ("Segura Decl.") |
| 5 | Summary of Lead Counsel's Lodestar and Expenses |
| 5A | Declaration of John Rizio-Hamilton in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses Filed on Behalf of Bernstein Litowitz Berger & Grossmann LLP |
| 5B | Declaration of Sean R. Matt in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses Filed on Behalf of Hagens Berman Sobol Shapiro LLP |
| 6 | Summary of Lead Counsel's Litigation Expenses by Category |
| 7 | Compendium of Unpublished Authorities Cited in Fee and Expense Motion |

JOHN RIZIO-HAMILTON and SEAN R. MATT and declare as follows:

1.    I, JOHN RIZIO-HAMILTON, am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"). BLB&G is counsel for Lead Plaintiff Roofers' Pension Fund and is one of the Court-appointed Lead Counsel in the above-captioned action (the "Action").[1]

2.    I, SEAN R. MATT, am a partner in the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman"). Hagens Berman is counsel for Lead Plaintiff Ilya Trubnikov and is one of the Court-appointed Lead Counsel in the Action. Roofers' Pension Fund and Mr. Trubnikov are collectively referred to as "Lead Plaintiffs," and BLB&G and Hagens Berman are collectively referred to as "Lead Counsel."

3.    We submit this declaration in support of Lead Counsel's motion for attorneys' fees and for payment of Litigation Expenses. We have personal knowledge of the matters set forth herein based on our active participation in all aspects of the prosecution and settlement of the Action.

4.    The proposed Settlement before the Court provides for the resolution of all claims in the Action in exchange for a cash payment of $29,500,000.00, plus interest, for the benefit of the Settlement Class. The Settlement Amount has been paid into an escrow account and is earning interest. As will be discussed in greater detail in Lead Plaintiffs' motion for final approval of the Settlement, the Settlement is a highly favorable outcome for the Settlement Class because it confers a substantial, certain, and near-term recovery for class members while avoiding the significant risks of continued litigation, including the risk that the Settlement Class could recover nothing or less than the Settlement Amount after years of additional litigation, appeals, and delay.

5.    The proposed Settlement is also the result of extensive efforts by Lead Plaintiffs and Lead Counsel, which included, among other things: (1) conducting an extensive investigation into the alleged fraud, including interviews with over 50 former Plantronics employees and a thorough

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated July 18, 2024 (ECF No. 230-1) (the "Stipulation"), which was entered into by and among (i) Lead Plaintiffs, on behalf of itself and the Settlement Class, and (ii) defendant Plantronics Inc. ("Plantronics") and defendants Joseph Burton, Charles Boynton, and Pamela Strayer (collectively, the "Individual Defendants" and, together with Plantronics, "Defendants").

review of public information such as filings with the U.S. Securities and Exchange Commission ("SEC"), analyst reports, conference call transcripts, and news articles; (2) drafting a detailed Amended Complaint based on Lead Counsel's extensive investigation as well as a revised Second Amended Complaint to address certain issues identified by the Court; (3) drafting briefing in opposition to Defendants' motions to dismiss the Amended Complaint and Second Amended Complaint; (4) conducting substantial fact discovery, which included exchanging initial disclosures, propounding thorough document requests, and reviewing Defendants' extensive document productions; (5) preparing and serving document subpoenas to more than a dozen non-party witnesses; (6) obtaining over hundreds of thousands of pages of documents from Defendants and non-parties that were subject to extensive review; (7) taking or defending eight depositions, including of those of Lead Plaintiffs and several former Plantronics employees cited in the Complaint and extensively preparing for additional planned depositions; (8) preparing and filing a Third Amended Complaint based on additional information developed in the course of discovery; (9) preparing and filing Lead Plaintiffs' motion for class certification; (10) consulting extensively with experts, including on issues of damages and market efficiency; and (11) engaging in extended arm's-length settlement negotiations, including through two formal mediation sessions held roughly a year apart.  Due to these extensive efforts, Lead Plaintiffs and Lead Counsel were well informed of the strengths and weaknesses of the claims and defenses in the Action at the time they achieved the proposed Settlement.

6.      For their efforts in achieving the Settlement, Lead Counsel request a fee of 22% of the Settlement Fund.  The 22% fee requested represents a 0.55 multiplier on Lead Counsel's lodestar, which represents a significant discount on the value of Lead Counsel's time at their normal hourly rates—in a context where contingency fee risks would reasonably support a positive multiplier.

7.      Lead Plaintiffs, who actively participated in the Action and closely supervised the work of Lead Counsel, have approved the Settlement and have endorsed Lead Counsel's fee request. *See* Declaration of Gary Menzel, Trustee and Chairman of Roofers' Pension Fund, in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Menzel Decl."), attached hereto as Exhibit 1, at ¶¶ 5-8; Declaration of Ilya Trubnikov in Support of Lead Counsel's Motion

for Attorneys' Fees and Litigation Expenses ("Trubnikov Decl."), attached hereto as Exhibit 2, at ¶¶ 4, 6-8.

8.      As discussed further below and in the accompanying memorandum, Lead Counsel respectfully submit that the requested fee is fair and reasonable in light of the positive result achieved in the Action, the efforts of Lead Counsel, and the risks and complexity of the litigation.

## I.      HISTORY OF THE ACTION.

### A.      The Court appointed Lead Plaintiffs and Lead Counsel.

9.      On November 13, 2019, the initial complaint in this action was filed in the United States District Court for the District of Northern District of California (the "Court"), alleging violations of the federal securities laws. (ECF No. 1.)

10.      On January 13, 2020, Roofers' Pension Fund and Ilya Trubnikov each filed motions for appointment to serve as Lead Plaintiff. (ECF Nos. 22, 31.) Multiple other movants also filed competing motions for appointment as Lead Plaintiff. (ECF Nos. 12, 16, 24.)

11.      On February 13, 2020, the Court entered a Stipulation and Order appointing Ilya Trubnikov and Roofers' Pension Fund as Lead Plaintiffs for the Action and approving their selection of Hagens Berman Sobol Shapiro LLP and Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel. (ECF No. 62.)

### B.      Lead Counsel devoted substantial time to investigating, preparing, and filing the Amended Complaint.

12.      Lead Counsel undertook an extensive investigation into the alleged fraud and potential claims that could be asserted by Lead Plaintiffs in the Action. This investigation began prior to the Court's appointment of Lead Plaintiffs and continued through preparation of the Amended Complaint for Violations of the Federal Securities Laws filed on June 5, 2020 ("Amended Complaint"). (ECF No. 72.) The investigation included a careful review and analysis of: (i) Plantronics' public filings with the SEC; (ii) research reports from securities and financial analysts; (iii) Company press releases and reports; (iv) Company website and marketing materials; (v) news and media reports concerning the Company and other facts related to this action; (vi) price

and volume data for Plantronics securities; and (vii) additional materials and data concerning the Company and industry.

13. In connection with their investigation, Lead Counsel and their in-house investigators located former employees of Plantronics who might have relevant information pertaining to the claims asserted in the Action. This included contacting over 360 former Plantronics employees who were believed to have potentially relevant information. Lead Counsel and/or their in-house investigators interviewed 52 of these individuals. Lead Counsel ultimately included detailed information received from nine of these former Plantronics employees in the Amended Complaint.

14. In connection with the preparation of the Amended Complaint, Lead Counsel also consulted with Chad Coffman, a financial economist who has substantial experience in providing expert analysis and testimony regarding loss causation and damages in securities class actions. Lead Counsel consulted with Mr. Coffman about, among other things, the impact of Defendants' alleged misstatements and omissions on the market price of Plantronics' common stock and the damages suffered by Plantronics shareholders.

15. On June 5, 2020, Lead Plaintiffs filed the Amended Complaint. (ECF No. 72.) The Amended Complaint asserted claims on behalf of all persons and entities who purchased the common stock of Plantronics from August 7, 2018, through November 5, 2019, inclusive. The Amended Complaint asserted claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b 5, promulgated thereunder, against all Defendants; and claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the Individual Defendants. The Amended Complaint alleged that Defendants made materially false and misleading statements or omissions regarding Plantronics' sales practices during the Class Period; that the price of Plantronics common stock was artificially inflated during the Class Period as a result of the alleged false statements; and that the price of Plantronics stock declined when the truth concerning the alleged false statements was revealed to the market through a series of corrective disclosures from June 18, 2019 through November 5, 2019.

**C.      There was lengthy motion to dismiss practice.**

16.      On August 7, 2020, Defendants moved to dismiss the Amended Complaint, asserting (among other things) that Lead Plaintiffs failed to sufficiently allege (i) actionable misstatements or omissions and (ii) that Defendants acted with scienter.  (ECF No. 75.)  Defendants also filed a request for judicial notice in connection with their motion to dismiss.  (ECF No. 76.)

17.      On October 2, 2020, Lead Plaintiffs filed and served memoranda of law in opposition to Defendants' motion to dismiss (ECF No. 79) and Defendants' request for judicial notice (ECF No. 80).  Lead Plaintiffs explained that the Amended Complaint adequately identified the false and misleading statements and omissions, detailed the reasons why each challenged statement was materially false or omitted material facts, and raised a strong inference of scienter.

18.      On November 16, 2020, Defendants filed their reply in further support of their motion to dismiss.  (ECF No. 81.)

19.      On March 29, 2021, the Court issued an order granting Defendants' motion to dismiss and permitting Lead Plaintiffs to file an amended complaint to correct the deficiencies identified in the Court's order.  (ECF No. 84.)

20.      Lead Plaintiffs filed a Second Amended Complaint for Violations of the Federal Securities Laws (the "SAC") on June 22, 2021, which contained new allegations meant to address the concerns identified by the Court in its March 29, 2021 order.  (ECF No. 93.)

21.      On September 7, 2021, Defendants filed their motion to dismiss the SAC (ECF No. 97) and related request for judicial notice (ECF No. 98), arguing that the SAC did not adequately allege material misstatement or omissions, or a strong inference of scienter.

22.      On November 5, 2021, Lead Plaintiffs filed their opposition to Defendants' motion to dismiss the SAC, arguing that the SAC adequately alleged material misstatements and omissions and the requisite strong inference of scienter.  (ECF No. 103.)  The same day, Lead Plaintiffs also filed their opposition to Defendants' request for judicial notice.  (ECF No. 104.)  On December 13, 2021, Defendants filed their replies in further support of their motion to dismiss the SAC (ECF No. 105) and their request for judicial notice (ECF No. 106).

23. On August 17, 2022, the Court issued an order granting in part and denying in part Defendants' motion to dismiss the SAC. The Court's ruling had the effect of limiting the Class Period to November 6, 2018, through November 5, 2019, inclusive. (ECF No. 109.) Defendants sought leave to file a motion for the Court to reconsider its order with respect to its denial in part of their motion to dismiss. (ECF No. 112.) The Court denied Defendants' motion for leave to file a reconsideration motion on November 7, 2022. (ECF No. 128.)

24. On October 31, 2022, Defendants filed their answer to the SAC. (ECF No. 123.) Defendants' answer denied Lead Plaintiffs' allegations of wrongdoing and asserted various defenses to the claims.

**D.      The Parties conducted extensive fact discovery.**

25. Discovery in the Action commenced in December 2022 and continued into June 2024.

26. Lead Plaintiffs served their first sets of interrogatories and requests for the production of documents to all Defendants on December 2, 2022. Five interrogatories were submitted asking Defendants to identify witnesses with knowledge, all of Plantronics' channel partners, the relevant document custodians, and the location of documents. Seventy-one requests for documents were submitted seeking, among other things, documents relating to Plantronics' leadership structure and key executives with knowledge of issues relevant to the case, the Enterprise Risk Management Project, Audit Committee investigations, and accounting and sales practices relating to Plaintiffs' allegations.

27. Lead Counsel prepared Lead Plaintiffs' Initial Disclosures and participated in the conference with Defendants under Federal Rule of Civil Procedure 26(f).

28. The Parties also drafted a Joint Case Management Statement submitted to the Court on February 14, 2023, which discussed the facts, issues, and history of the case and set forth the Parties' views on the scope of discovery to be conducted, e-discovery procedures, and proposed scheduling. (ECF No. 133.)

29. The Court held a case management conference on February 21, 2023 (ECF No. 134) and entered a Case Management Order on the same day. (ECF No. 135.)

30.     The Parties exchanged their Initial Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure on February 21, 2023.

31.     The Parties also negotiated the terms of the protective order governing the treatment of documents and other information produced in discovery, which the Parties submitted to the Court on February 22, 2023, (ECF No. 136), and which the Court entered as an order on February 23, 2023 (ECF No. 137).  The Parties also negotiated, and the Court so-ordered, the Stipulation and Order Establishing the Protocol for the Production of Documents and Electronically Stored Information (ECF No. 139, the "ESI Order") and the Stipulation and Order Establishing the Protocol for the Use of Technology Assisted Review (ECF No. 152, the "TAR Protocol").

### 1.     Document discovery.

32.     Defendants served their Responses and Objections to Lead Plaintiffs' First Request for Production of Documents on January 20, 2023.  The Parties began exploring the possibility of a settlement in the spring of 2023 and agreed to engage in private mediation to be held on June 22, 2023.  The parties agreed that Defendants would produce documents in a phased manner in response to Plaintiffs' discovery requests, and Defendants accordingly prioritized the production of certain categories of documents ahead of the June 22, 2023 mediation.

33.     After the Parties did not reach a resolution of the Action during the June 22, 2023, mediation, Lead Counsel then engaged in numerous meet-and-confers with Defendants' Counsel and conducted extensive negotiations over the scope and adequacy of Defendants' discovery responses, including relating to the TAR search process to be used and custodians whose documents should be searched.  After extensive, hard-fought negotiations, Defendants produced documents from 33 custodians, including documents from Plantronics central files, hardcopy files, emails, Plantronics data, and certain custodians' text messages.  In response to Lead Plaintiffs' requests, Defendants produced a total of over 114,000 documents, comprising over 616,000 pages.

34.     Lead Plaintiffs also prepared and issued extensive discovery requests to various non-parties who might possess relevant information.  In total, Lead Plaintiffs issued subpoenas to more than a dozen third parties, including channel distributors for Plantronics products, consultants on the ERM project described in the Complaint, Plantronics Board Members, and Plantronics' former Chief

Executive Officer. The subpoenaed parties included Crowe LLP, PK Analytics LLC, Model N, Inc., ZineMind USA, Inc., D&H Distributing Co., Ingram Micro Inc., Jenne Inc., ScanSource, Inc., TD Synnex Corp., Marv Tseu, Kathy Crusco, Marshall Mohr, Gregg Hammann, and Ken Kannappan. Lead Plaintiffs engaged in extensive meet and confers in pursuit of documents responsive to these subpoenas and obtained significant productions of additional documents. In total, the third parties produced more than 52,000 pages of documents in response to the subpoenas.

35. In total, Defendants and third parties produced over 660,000 pages of documents from March 2023 through June 2024. Lead Counsel carefully reviewed, analyzed, and coded the documents produced by Defendants and third-parties. In reviewing the documents, attorneys were tasked with making several analytical determinations as to the documents' importance and relevance. Specifically, they determined whether the documents were "hot," "relevant," or "not relevant." They also assessed which specific issues the documents concerned and determined the identities of the Plantronics employees or other potential deponents to whom the documents related so that the documents could be retrieved when preparing for depositions. Lead Counsel's partners structured the document review to include quality control checks and regular team meetings to discuss the documents of highest interest and other issues that arose during the document review. Through these meetings, Lead Counsel ensured that all attorneys involved in the review understood the developing nature of the evidence and focused document review on the key issues in the Action. The documents discussed included those that were particularly relevant to Lead Plaintiffs' claims and that offered insight into other important aspects of the case, including Defendants' likeliest defenses.

36. On May 5, 2023, Defendants served their First Set of Requests for Production of Documents to Lead Plaintiffs, propounding 29 document requests, and Defendants' First Set of Interrogatories to Lead Plaintiffs, which propounded 11 interrogatories. These discovery requests sought information concerning, among other things, Lead Plaintiffs' transactions in Plantronics securities, any related communications concerning Plantronics, their involvement in the Action, and engagement of Lead Counsel. On July 14, 2023, Lead Plaintiffs served objections and responses thereto, which the Parties discussed during meet and confers held August 9 and 14, 2023, and in subsequent written exchanges. Lead Plaintiffs engaged in significant meet and confers and

negotiations with Defendants concerning the scope of discovery to be produced in response to Defendants' discovery requests. Lead Plaintiffs searched for and gathered documents responsive to Defendants' requests for production of documents, which documents were then reviewed by Lead Counsel. Lead Plaintiffs subsequently engaged in additional meet and confers with Defendants concerning the scope of Lead Plaintiffs' productions and produced additional documents in response to Defendants' requests.

37. In addition, Defendants served a document subpoena on the outside investment manager for Lead Plaintiff Roofers' Pension Fund and that investment manager produced documents to Defendants.

**2. There were many discovery disputes.**

38. Discovery in the Action was highly contested. Lead Counsel and Defendants' Counsel exchanged numerous letters and participated in numerous meet-and-confer sessions regarding, among other things, the scope of the documents produced, the collection and production of text messages from Defendants' document custodians, and Defendants' assertions of legal privilege over documents in discovery.

39. Defendants' Counsel also represented several of the non-parties on whom Lead Plaintiffs served subpoenas, and Lead Counsel and Defendants' Counsel exchanged multiple letters and participated in multiple meet-and-confer sessions regarding the non-parties' responses to those subpoenas. These disputes were resolved through negotiation between the Parties and resulted in Defendants producing thousands of pages of additional documents.

**3. Deposition discovery.**

40. The Parties also conducted substantial deposition discovery. Lead Counsel took or defended eight depositions that occurred prior to the Parties' agreement to settle, which included the depositions of six key former Plantronics employees and both Lead Plaintiffs. These depositions required significant time devoted to preparation, including reviewing documents and drafting preparation materials to facilitate questioning. Details on these eight depositions are as follows:

| Deponent | Title | Date(s) taken |
|---|---|---|
| Ken Kannapan | Former Chief Executive Officer of Plantronics | 12/11/2023 12/12/2023 |

| Deponent | Title | Date(s) taken |
|---|---|---|
| FE-6 | Former Executive Vice President of Engineering at Plantronics (witness cited in Complaint) | 2/13/2024 |
| Gary Menzel | Trustee and Chairman of Co-Lead Plaintiff Roofers' Pension Fund (Rule 30(b)(6) witness for Roofers' Pension Fund) | 2/26/2024 |
| Ilya Trubnikov | Co-Lead Plaintiff | 3/4/2024 |
| FE-9 | Former Manager of Internal Audit at Plantronics (witness cited in Complaint) | 4/26/2024 |
| FE-2 | Former Senior Country Manager for the Philippines and Vietnam at Plantronics (witness cited in Complaint) | 5/14/2024 5/15/2024 |
| FE-4 | Former Operations Finance Manager at Polycom (witness cited in Complaint) | 5/17/2024 |
| Roland Rice | Former Vice President of Sales at Plantronics | 5/24/2024 |

41.     In addition to the eight depositions taken, Lead Plaintiffs had noticed, and the Parties had scheduled, eight additional depositions at the time the Settlement was reached, including those of the three Individual Defendants, as well as additional fact witnesses who were current or former Plantronics employees.  These depositions were scheduled to occur between June 12, 2024 and July 16, 2024.  Lead Counsel incurred significant time preparing for these depositions before the agreement to settle was reached on June 7, 2024, including by reviewing voluminous document discovery relevant to the depositions and drafting preparation materials including proposed questions and document exhibits.

**E.     Lead Plaintiffs filed the Third Amended Complaint based on discovery.**

42.     On November 7, 2023, Lead Plaintiffs moved for leave to file a Third Amended Complaint for Violations of the Federal Securities Laws (the "TAC" or "Complaint"), which included allegations based on documents produced in discovery in support of the claims, including to restore claims based on Defendants' alleged August 7, 2018 misstatements that the Court had previously dismissed, as well as allegations concerning alleged misstatements by Defendants on September 11, 2018, and new facts regarding loss causation.  (ECF No. 173.)  Defendants filed their opposition to Lead Plaintiffs' motion for leave to file the TAC on December 1, 2023, arguing that

Lead Plaintiffs did not pursue the proposed amendments with the diligence required for leave to be granted and the new allegations did not support any of the claims Lead Plaintiffs sought to add or restore to the Action.  (ECF No. 177.)  Lead Plaintiffs filed their reply in further support of permission to file the TAC on December 21, 2023.  (ECF No. 180.)

43.    On April 12, 2024, the Court granted in part and denied in part Lead Plaintiffs' motion for leave to file the TAC.  (ECF No. 215.)  The Court denied the motion to add claims based on the alleged September 11, 2018 misstatement and the additional allegations of loss causation, but permitted the amendment to reinstate claims based on the August 7, 2018 statements, restoring the Class Period to August 7, 2018 through November 5, 2019.  On May 10, 2024, Defendants filed their Answer to the TAC.  (ECF No. 220.)

**F.    Lead Plaintiffs filed a Motion for Class Certification and worked with experts.**

44.    On February 8, 2024, Lead Plaintiffs filed their motion for class certification and appointment of class representatives and class counsel, which was accompanied by a report from Lead Plaintiffs' expert Chad Coffman on market efficiency and common damages methodologies. (ECF No. 190.)

45.    On March 21, 2024, Defendants filed their opposition to that motion.  (ECF No. 201.) On April 18, 2024, Lead Plaintiffs filed their reply papers in further support of the motion.  (ECF No. 217.)

46.    On May 17, 2024, the Court informed the Parties that it would consider the motion on their papers and vacated the hearing on the motion.  (ECF No. 224.)  Lead Plaintiffs' motion for class certification was still pending when the Parties reached their agreement to settle.

47.    Lead Counsel further consulted with Mr. Coffman and his team in preparing Lead Plaintiffs' complaints, in reviewing documents produced in discovery, and in preparation for settlement negotiations.

**G.    After extensive mediation efforts, the Parties agreed to the proposed Settlement.**

48.    The Parties began exploring the possibility of a settlement in the spring of 2023.  The Parties agreed to engage in private mediation and retained Michelle Yoshida of Phillips ADR Enterprises to act as mediator in the Action.  On June 22, 2023, counsel for the Parties participated

in a full-day mediation session before Ms. Yoshida.  In advance of that session, the Parties exchanged and submitted detailed confidential mediation statements to Ms. Yoshida, accompanied by documents and exhibits.  The session ended without any agreement being reached.

49.    On June 7, 2024, after conducting substantial fact discovery and after the Court had granted in part Lead Plaintiffs' motion for leave to file the TAC, the Parties participated in a second full-day mediation session.  This session was held before the Honorable Layn R. Phillips of Phillips ADR Enterprises (the "Mediator"), a former Unites States District Judge.  In advance of the mediation session, the Parties again prepared and submitted detailed confidential mediation statements to the Mediator addressing issues of liability and damages issues, accompanied by documents and exhibits.

50.    At the conclusion of this second mediation session, and following extensive arm's-length negotiations conducted with the assistance and facilitation of the Mediator, the Parties reached agreement to settle the Action in its entirety for $29,500,000.

51.    In the ensuing weeks, the Parties negotiated the full terms of the Settlement and drafted the settlement agreement and related papers, including the notices to be provided to the Settlement Class.

52.    On July 18, 2024, the Parties executed the Stipulation and Agreement of Settlement (ECF No. 230-1), which set forth the complete terms of the Parties' agreement to settle all claims asserted in the Action for $29,5000,000, subject to the approval of the Court.  On the same day, the Parties also executed a Supplemental Agreement which provides that Plantronics has the option to terminate the Settlement if persons who request exclusion from the Settlement Class exceed a certain threshold.  (ECF No. 231-3.)

**H.    The Court preliminarily approved the Settlement.**

53.    On July 19, 2024, Lead Plaintiffs filed a motion for preliminary approval of the Settlement.  (ECF No. 230.)  On August 6, 2024, Lead Plaintiffs filed a notice informing the Court that there had been no opposition to the preliminary approval motion.  (ECF No. 235.)

54.    On February 10, 2025, the Court entered the Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice As Modified (ECF No. 240) (the "Preliminary

Approval Order") which, among other things: (1) preliminarily approved the Settlement; (2) approved the form of Notice, Summary Notice, and Claim Form, and authorized notice to be given to Settlement Class Members through mailing of the Notice and Claim Form, posting the Notice and Claim form on a Settlement website, and publication of the Summary Notice in *The Wall Street Journal* and over the *PR Newswire*; (3) established procedures and deadlines by which Settlement Class Members could participate in the Settlement, request exclusion from the Settlement Class, or object to the Settlement, the proposed Plan of Allocation, and/or the fee and expense application; and (4) set a schedule for the filing of opening papers and reply papers in support of the proposed Settlement, Plan of Allocation, and the Fee and Expense Application. The Preliminary Approval Order also scheduled the Settlement Hearing for August 14, 2025 at 2:00 p.m. to determine, among other things, whether the Settlement should be finally approved.

## II. THE SIGNIFICANT RISKS OF THE LITIGATION.

55. The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a $29,500,000 cash payment. Lead Plaintiffs and Lead Counsel believe that the proposed Settlement is a very favorable result for the Settlement Class.

56. As explained in the Motion and below, Lead Plaintiffs faced meaningful risks in this Action from the outset with respect to proving liability and recovering full damages in this case. To prevail in this case, Lead Plaintiffs had the burden to convince a unanimous jury by a preponderance of the evidence of each of the elements of their claims, including that (1) Defendants made misstatements; (2) the misstatements were material; (3) the misstatements were made with *scienter* (*i.e.*, knowingly or with deliberate recklessness); (4) investors relied upon the misstatements; and (5) Defendants' fraud caused investors' losses.

57. While Lead Plaintiffs had largely sustained their claims following the pleading stage of the Action, absent a settlement, Lead Plaintiffs would still need to prevail at several additional stages of the litigation, including defeating Defendants' opposition to Lead Plaintiffs' motion for class certification, Defendants' anticipated motion for summary judgment, at trial, and on appeal. At each of these stages, Lead Plaintiffs would have faced significant risks related to establishing liability and full damages, including, among other things, overcoming Defendants' falsity, scienter,

and loss causation challenges.  Even after any trial, Lead Plaintiffs would have faced post-trial motions, including a potential motion for judgment as a matter of law, as well as further appeals that might have prevented Lead Plaintiffs from successfully obtaining a recovery for the Settlement Class.

**A.    The Settlement Amount compares favorably to the likely damages that could be proved at trial, especially given the risks presented.**

58.    The Settlement Amount—$29.5 million in cash, plus interest—represents a significant recovery for the Settlement Class.  The Settlement is nearly triple the size of the median securities class-action settlement in the Ninth Circuit from 2015 through 2024 ($10 million).  *See* CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2024 REVIEW AND ANALYSIS (2025), attached hereto as Exhibit 3, at 20.

59.    The $29.5 million Settlement is also a favorable result considered in relation to the maximum amount of damages that could be realistically established at trial, in the event that Lead Plaintiffs overcame all the risks discussed above and fully prevailed on class certification and liability issues, including falsity, scienter and loss causation, at summary judgment, and before a jury.

60.    Lead Plaintiffs calculated the range of possible class damages in consultation with their damages expert, Chad Coffman of Peregrine Economics.  Mr. Coffman estimated that the maximum theoretical damages that could be established at trial would be approximately $248 million.  This figure assumed that Lead Plaintiffs would prevail *entirely*—which was far from certain (and, indeed, unlikely)—on all liability issues for the entire Class Period *and* all loss causation and damages issues by establishing the full amount of the abnormal declines in Plantronics stock on the three alleged corrective disclosure dates (as well as a follow-on reaction on June 19, 2019) was causally connected to Defendants' alleged misstatements.

61.    Lead Plaintiffs' damages expert arrived at these estimated damages by first calculating the amount of "artificial inflation" that existed in Plantronics' stock price as a result of Defendants' misstatements (before the alleged corrective disclosures in this case occurred), and then applying a trading model to estimate the number of shares were purchased during the Class Period

when the price of Plantronics shares were inflated and sold after some or all of the artificial inflation had been removed (or held until the end of the period). To quantify the amount of artificial inflation in Plantronics' stock price prior to the alleged corrective disclosures in this case, Mr. Coffman used an "event study"—a standard regression analysis that compared the movements in the price of Plantronics common stock to the movements in the stock prices of the overall stock market and an index of industry peers—to determine that Plantronics' common stock suffered statistically significant abnormal declines (relative to the market and industry peers) following the alleged corrective disclosures and the amount of those declines. Mr. Coffman concluded that the artificial inflation in each share of Plantronics stock at the outset of the Class Period was $24.72 and declined by $2.11 on June 18, 2019, $3.10 on June 19, 2019, $5.16 on August 7, 2019, and $14.35 on November 6, 2019.

62.   Mr. Coffman then used a trading model to calculate the number of damaged shares purchased by the entire class of investors. Shares are considered "damaged" if they were purchased during the Class Period when the Plantronics' share price was artificially inflated and held over the date of one or more of the corrective disclosures that dissipated the artificial inflation. To estimate how many shares of Plantronics stock were held over each of the alleged corrective disclosure dates, Mr. Coffman and his team looked at publicly available information about institutional investors' trades and used a standard, two-trader proportional trading model for all other investors. Based on these analyses, Mr. Coffman has estimated that the total number of damaged shares would be approximately 20.4 million and total resulting damages would be $248 million.

63.   The $29.5 million Settlement Amount therefore represents approximately 12% of Lead Plaintiffs' *maximum* class-wide damages. This is a favorable recovery for Settlement Class Members, especially when considered in light of the real risk of lesser recovery (or no recovery at all), and the typical level of recovery in securities class actions. Indeed, Defendants continue to vigorously dispute that Lead Plaintiffs or investors were damaged at all or that the alleged misstatements caused any portion of the price declines, and further believe Lead Plaintiffs and the class are not entitled to recover anything through this Action.

64.    Moreover, the recovery is particularly strong in light of Defendants' potential arguments that might have substantially reduced the class's damages.  For example, Defendants have argued that the price declines on June 18 and 19, 2019, following the initial alleged corrective disclosure, resulted from Plantronics' disclosure of tariffs impacting its sales in China—rather than from release of information about the alleged channel-stuffing scheme.  Defendants have also challenged loss causation for the other two remaining alleged corrective disclosures on the grounds that the information disclosed was not sufficiently related to the alleged misstatements.  In addition, as noted above, if Defendants succeeded in arguing that certain of the misstatements were not actionable, the Class Period could have been shortened and the maximum damages for the shortened Class Period would be greatly reduced, potentially to $112.9 million if the first actionable misstatement was found to occur on May 8, 2019, in which case the Settlement Amount would represent approximately 26% of these revised class-wide damages.  Indeed, this risk was particularly acute here, given that the Court's motion to dismiss ruling had initially shortened the Class Period.  Accordingly, if Lead Plaintiffs were unable to sustain the entire Class Period or were unable to establish loss causation for certain of the alleged disclosures, or for some portion of the price declines on those days, the maximum potential damages at trial would be substantially reduced from the $248 million maximum.

65.    Given the meaningful litigation risks, and the immediacy and amount of the $29,500,000 recovery for the Settlement Class, Lead Plaintiffs and Lead Counsel believe that the Settlement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class.

**III.    NOTICE OF LEAD COUNSEL'S FEE AND EXPENSE REQUEST WAS MAILED TO ALL SETTLEMENT CLASS MEMBERS WHO COULD BE IDENTIFIED.**

66.    The Court's Preliminary Approval Order directed that the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses (the "Notice") and Proof of Claim and Release Form ("Claim Form") be disseminated to potential members of the Settlement Class.  The Preliminary Approval Order also set June 25, 2025, as the deadline for Settlement Class Members to submit objections to the

JOINT DECLARATION IN SUPPORT OF
FEE AND EXPENSE MOTION

16

4:19-cv-07481-JST

Settlement, the Plan of Allocation, or the Fee and Expense Application; to request exclusion from the Settlement Class; or to submit a Claim Form.

67.     In accordance with the Preliminary Approval Order, Lead Counsel instructed JND Legal Administration ("JND"), the Court-approved Claims Administrator, to begin disseminating copies of the Notice Packet and the Claim Form by mail and to publish the Summary Notice. The Notice informs Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 22% of the Settlement Fund, and for Litigation Expenses in an amount not to exceed $750,000.

68.     To disseminate the Notice and Claim Form (together, the "Notice Packet"), JND obtained information from Plantronics and from banks, brokers, and other nominees regarding the names and addresses of potential Settlement Class Members. The accompanying Declaration of Luiggy Segura ("Segura Decl."), attached hereto as Exhibit 4, provides additional information about the Claims Administrator's distribution of the Notice Packet. *See* Segura Decl. ¶¶ 2-11.

69.     JND began mailing copies of the Notice Packet to potential Settlement Class Members and nominee owners on February 25, 2025. *Id*. ¶¶ 3-7. As of April 24, 2025, JND had mailed a total of 21,659 Notice Packets to Settlement Class Members and nominees. *Id.* ¶ 11.

70.     On March 11, 2025, in accordance with the Preliminary Approval Order, JND caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over the *PR Newswire*. *Id*. ¶ 12.

71.     Lead Counsel also caused JND to establish a dedicated settlement website, www.PlantronicsSecuritiesLitigation.com, to provide potential Settlement Class Members with information concerning the Settlement and access to copies of the Notice and Claim Form, as well as copies of the Complaint, Stipulation, Preliminary Approval Order, and other relevant documents. *See* Segura Decl. ¶ 13. That website became operational on February 25, 2025. *Id*. Lead Counsel and JND will continue to monitor and to update the settlement website as the settlement process continues. For example Lead Counsel's papers in support of their motion for attorneys' fees and litigation expenses and Lead Plaintiffs' papers in support of their motion for final approval of the

Settlement will be made available on the website after they are filed, and any orders entered by the Court in connection with the motions will also be posted.

72.     As noted above, the deadline for Settlement Class Members to file objections to the Settlement, Plan of Allocation, or Fee and Expense Application, or to request exclusion from the Settlement Class is June 25, 2025.  To date, no requests for exclusion have been received, *see* Segura Decl. ¶ 15, and no objections to the Settlement, Plan of Allocation, or Lead Counsel's Fee and Expense Application have been received.

## IV.     THE FEE AND EXPENSE APPLICATION.

73.     Lead Counsel are applying to the Court for an award of attorneys' fees of 22% of the Settlement Fund, or $6,490,000, plus interest earned on that amount at the same rate as earned by the Settlement Fund (the "Fee Application").  Lead Counsel also move for payment for expenses that Lead Counsel incurred in connection with the prosecution of the Action from the Settlement Fund in the amount of $593,198.12.

74.     The legal authorities supporting the requested fee and expenses are discussed in Lead Counsel's accompanying Fee Memorandum.  As discussed in the Fee Memorandum, the 22% fee award requested is (a) below the benchmark for percentage fee awards in the Ninth Circuit; (b) well within the range of percentage fees typically awarded in comparable securities class actions in this Circuit and elsewhere; and (c) fair and reasonable in light of all the circumstances in this case.

### A.     The Fee Application.

75.     For the efforts of Lead Counsel on behalf of the Settlement Class, Lead Counsel are applying for a fee award to be paid from the Settlement Fund on a percentage basis, which, as discussed in the accompanying Fee Memorandum, is the standard and appropriate method of fee recovery because it aligns the lawyers' interest in being paid a fair fee with the interests of the Settlement Class in achieving the maximum recovery in the shortest amount of time required under the circumstances.

#### 1.     Lead Plaintiffs have authorized and support the Fee Application.

76.     Lead Plaintiffs have closely supervised and monitored the prosecution and settlement of this Action.  *See* Menzel Decl. ¶ 5; Trubnikov Decl. ¶¶ 4-5.  Lead Plaintiffs have evaluated the

Fee Application and fully support the fee requested. *See* Menzel Decl. ¶ 7; Trubnikov Decl. ¶¶ 7-8. Lead Plaintiffs believe that the proposed fee of 22% is fair and reasonable in light of the result obtained for the Settlement Class, the amount and quality of the work performed by Lead Counsel, and the significant litigation risks counsel faced. *Id.*

**2.    Lead Counsel performed extensive work in this Action.**

77.    Lead Counsel devoted substantial time to the prosecution of the Action. As discussed above, the work that Lead Counsel performed in this Action included, among other things: (1) conducting an extensive investigation into the claims asserted, which included a detailed review of public documents, interviews with over 50 former employees, and consultation with experts; (2) drafting the detailed Amended Complaint and revised SAC; (3) researching and briefing Lead Plaintiffs' opposition to Defendants' motions to dismiss the Amended Complaint and revised SAC; (4) researching and briefing Lead Plaintiffs' motion for class certification; (5) conducting extensive fact discovery, including propounding detailed document requests to Defendants and subpoenas to third parties, obtaining and reviewing substantial document productions, and conducting eight depositions; and (6) engaging in extensive arm's-length settlement negotiations to achieve the Settlement, including two formal mediation sessions.

78.    Attached hereto as Exhibits 5A and 5B are Declarations from each of our firms in support of the motion for attorneys' fees and litigation expenses (the "Lodestar & Expense Declarations"). The first page of Exhibit 5 contains a summary chart of the hours expended and lodestar amounts for each Lead Counsel firm, as well as a summary of each firm's litigation expenses. Included within each supporting Declaration are schedules summarizing the hours and lodestar of each firm from the inception of the case through July 19, 2024 (the date Lead Plaintiffs filed their motion for preliminary approval), and a summary of Litigation Expenses, by category, and a firm resume, among other documents. Consistent with the Northern District of California's Procedural Guidance for Class Action Settlements and the Court's requests of plaintiffs' counsel in *Rodman v. Safeway, Inc.*, Case No. 11-cv-03003-JST (N.D. Cal. Mar. 21, 2018), ECF No. 487, these Declarations include detailed exhibits showing the hours worked by each of the professionals who worked on the matter, broken down by month and by 14 different substantive categories of work,

and various summaries of that information, as well as biographical information for each timekeeper. No time expended in preparing the application for fees and expenses has been included. Lead Counsel also note that there will not be any additional fees charged for any work by counsel following this application, notwithstanding that counsel already has and will continue to invest substantial time and effort in this case after the July 19, 2024, cut-off imposed for its lodestar submissions on this application.

79.    As set forth in Exhibit 5, Lead Counsel collectively expended a total of 20,562.4 hours in the investigation and prosecution of the Action from its inception through July 19, 2024, for a lodestar of $11,785,325 at their 2024 rates, and $11,094,638 based on the hourly rates in effect at the time the work was performed ("historical rates"). If the Court awards Lead Counsel's litigation expenses as requested, the requested fee of 22% of the Settlement Fund represents $6,490,000 (plus interest accrued at the same rate as the Settlement Fund), and therefore represents a multiplier of approximately 0.55 of Lead Counsel's lodestar at 2024 rates, and 0.58 at historic rates. As discussed in further detail in the Fee Memorandum, the requested multiplier cross-check is well within the range of multipliers typically seen in comparable securities class actions and in other class actions involving significant contingency fee risk, in this Circuit and elsewhere.

80.    As noted above, Exhibits 5A and 5B include charts summarizing worked performed by professionals at each Lead Counsel firm who worked on the matter, broken down by month and by 14 different substantive categories of work. The categories for work used (and total hours for all Lead Counsel on each category) are set forth here:

(1)    **Pre-Filing Case Analysis (4.50 hours):** includes time spent on analysis of potential claims to assert in the Action, initial case development; and analysis of clients' and class losses;

(2)    **Factual Investigation (949.65 hours):** includes time spent on the thorough factual investigation into the claims asserted in the Action, including reviewing the voluminous public record and identifying, contacting, and interviewing potential witnesses;

(3)    **Lead-Plaintiff Motion (119.85 hours):** includes time spent researching and drafting motion papers for appointment of Lead Plaintiffs and Lead Counsel;

(4)    **Complaints (1,114.70 hours):** includes time incurred by Lead Counsel in researching and preparing the Amended Complaint, SAC, and TAC, including

associated legal and factual research, and in preparing and litigating the motion to amend the complaint;

(5) **Motions to Dismiss (850.85 hours):** includes time incurred in researching and drafting Lead Plaintiffs' oppositions to Defendants' motions to dismiss the Amended Complaint and SAC, as well as related briefing on Defendants' requests for judicial notice;

(6) **Class Certification (270.70 hours):** includes the time spent on Lead Plaintiffs' motion for class certification, including related legal research and briefing;

(7) **Written Discovery & Misc. Discovery (14,309.55 hours):** includes time spent on strategy and planning related to discovery efforts, discovery correspondence, numerous meet and confers with Defendants' Counsel, preparing Lead Plaintiffs' Initial Disclosure Statement under Rule 26(a), drafting and negotiating the proposed protective order, drafting requests for production of documents and subpoenas; preparing responses and objections to requests for production of documents served on Lead Plaintiff; reviewing Lead Plaintiffs' documents for production; reviewing and analyzing documents produced by Defendants and third parties; work related to the electronic document database; reviewing privilege logs; and discovery disputes (including communications re same and research and briefing);

(8) **Deposition Discovery (1,437.85 hours):** includes the time incurred by Lead Counsel in identifying potential deponents; preparing a deposition plan; and preparing to take and defend depositions, including preparation of deposition kits with relevant documents;

(9) **Expert Work (73.65 hours):** includes time spent communicating with experts and consultants and working on preparing expert reports;

(10) **Mediation & Settlement (906.65 hours):** includes time incurred in extended settlement negotiations with Defendants; preparing for and attending the mediation sessions; drafting the mediation statements; drafting and negotiating the Stipulation of Settlement and related documents; and drafting Lead Plaintiffs' motion for preliminary approval of the Settlement;

(11) **Case Strategy & Analysis (305.55 hours):** includes time devoted to overall case strategy and analysis, including litigation strategy and damages issues and development of an order of proof;

(12) **File and Case Management (98.05 hours):** includes time incurred in maintain case filed and other procedural and administrative tasks not connected to one of the other substantive tasks;

(13) **Research (62.25 hours):** includes time devoted to legal research conducted that was not directly connected to one of the other litigation tasks;

(14) **Client Communications (55.6 hours):** includes time incurred in communications with Lead Plaintiffs.

### 3.     The experience and standing of Lead Counsel.

81.     Lead Counsel's firm resumes, which include information about the standing of each firm and brief biographical summaries for each attorney or other included in the firms' respective lodestar chart (including information about their position, education, and relevant experience) are attached to the respective Lodestar & Expense Declarations.

82.     As demonstrated by its firm resume, BLB&G is among the most experienced and skilled law firms in the securities litigation field, with a long and successful track record representing investors in such cases.  BLB&G is consistently ranked among the top plaintiffs' firms in the country.  For example, Chambers has repeatedly ranked BLB&G as the top plaintiff-side securities litigation firm.  In addition, ISS/Securities Class Action Services' 2025 report on the "Top 100 U.S. Class Action Settlements of All Time" shows that BLB&G has been lead or co-lead counsel in more top recoveries than any other firm in history.  BLB&G served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which settlements were obtained for the class totaling in excess of $6 billion.  BLB&G also secured a resolution of $2.43 billion for the class in *In re Bank of America Corp. Securities, Derivative & "ERISA" Litigation*, No. 09-md-2058 (S.D.N.Y.); a $1.06 billion recovery for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (D.N.J.); a $1 billion recovery for the class in *In re Wells Fargo & Co. Securities Litigation*, No. 1:20-cv-04494-GHW-SN (S.D.N.Y.); and a $730 million settlement on behalf of the class in *In re Citigroup Inc. Bond Action Litigation*, No. 08-cv-9522 (S.D.N.Y.).  Courts in this District and Circuit have recognized BLB&G as qualified class counsel in securities class actions.  Such examples include *In re McKesson HBOC, Inc. Securities Litigation*, No. 99-cv-20743 (N.D. Cal.), in which BLB&G recovered $1.05 billion for investors, the largest recovery in a securities class action in the Ninth Circuit; *Hefler v. Wells Fargo & Company*, No. 16-cv-5479 (N.D. Cal.), in which BLB&G recovered $480 million for investors; *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 14-cv-2004 (C.D. Cal.), in which BLB&G recovered $250 million for investors; and *In re New Century Securities Litigation*, No. 07-cv-931 (C.D. Cal.), in which BLB&G secured an approximately $125 million recovery for investors.

83.    Trial courts in this District and throughout the Ninth Circuit have repeatedly recognized Hagens Berman's ability to serve as class counsel in securities class actions similar to the instant litigation.  For example, Hagens Berman served as Lead Counsel and Class Counsel in *Roberts v. Zuora, Inc. et al.*, No. 3:19-cv-03422-SI (N.D. Cal.) (Illston, J.), where on behalf of the certified class, Hagens Bermans secured a $75.5 million settlement that was recently finally approved by the Court (ECF No. 277), representing a recovery of five times greater than the median recovery obtained in comparable securities class actions cases in 2023.  *Id.* at ECF No. 270 at p. 8. Similarly, in *In Re: Charles Schwab Corporation*, No. 08-CV-01510, ECF No. 1101 (N.D. Cal.) (Alsup, J.), after Hagens Berman secured settlements totaling $235 million recovering 45 percent and 85 percent of investor losses for the two different classes, the Honorable William Alsup commented, "Class counsel did a good job persistently advocating for the best interests of the class members, and obtained a very good result for the class . . . ."  ECF No. 1101 at p. 12.  Further, in the *Aequitas Investor Litigation*, Case No. 3:16-cv-00580-AC (D. Or.) (Hernandez, J.), Hagens Berman, on behalf of its clients, reached a unified $234 million settlement with defendants, allowing investors to recover 80% to 90% of their losses after the liquidation of the Aequitas estate.

### 4.    The standing and caliber of Defendants' Counsel.

84.    The quality of the work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition.  Defendants were represented in the Action by a team of extremely able counsel from Wilmer Cutler Pickering Hale and Dorr LLP, who vigorously litigated the Action.  In the face of this skillful and well-financed opposition, Lead Counsel were nonetheless able to develop a case that was sufficiently strong to persuade Defendants and their counsel to settle the case on terms that are highly favorable to the Settlement Class.

### 5.    The risks of litigation and the need to ensure the availability of competent counsel in high-risk contingent cases.

85.    The prosecution of these claims was undertaken entirely on a contingent-fee basis, and the considerable risks assumed by Lead Counsel in bringing this Action to a successful conclusion are described above and in the Motion.  The risks assumed by Lead Counsel here, and the time and expenses incurred by Lead Counsel without any payment, were extensive.

86.     From the outset, Lead Counsel understood that they were embarking on a complex, expensive, lengthy, and hard-fought litigation with no guarantee of ever being compensated for the substantial investment of time and the outlay of money that the prosecution of the case would require. In undertaking that responsibility, Lead Counsel were obligated to ensure that sufficient resources (in terms of attorney and support staff time) were dedicated to the litigation, and that Lead Counsel would further advance all of the costs necessary to pursue the case vigorously on a fully contingent basis, including funds to compensate vendors and consultants and to cover the considerable out-of-pocket costs that a case such as this typically demands. Because complex shareholder litigation often proceeds for several years before reaching a conclusion, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Lead Counsel have received no compensation during the course of this Action and no reimbursement of any out-of-pocket expenses.

87.     Lead Counsel also bore the risk that no recovery would be achieved in the Action. As discussed above and in the Motion, this case presented a number of significant trial risks and uncertainties from the outset, including challenges in proving the materiality and falsity of Defendants' statements, establishing scienter, and establishing loss causation and damages. These risks were elevated in this case. Defendants vigorously denied making any false statements and denied that the price decline at issue was caused by revelation of the truth related to the challenged statements. Moreover, Plantronics never restated any of its financial statements and there was no parallel SEC enforcement action or any criminal prosecution here concerning the claims asserted.

88.     The Settlement was reached only after Lead Counsel had overcome Defendants' motion to dismiss, engaged in substantial fact discovery, and filed Lead Plaintiffs' motion for class certification. Lead Counsel's persistent efforts in the face of significant risks and uncertainties have resulted in a significant and certain recovery for the Settlement Class.

### 6.     The Settlement Class has thus far reacted favorably to the Fee Application.

89.     As noted above, as of April 25, 2025, over 21,000 Notice Packets had been sent to potential Settlement Class Members advising them that Lead Counsel would apply for attorneys'

fees in an amount not to exceed 22% of the Settlement Fund. *See* Segura Decl. ¶ 11 and Ex. A (Notice ¶¶ 5, 57). In addition, the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on March 11, 2025. *See* Segura Decl. ¶ 12. To date, no objections to the request for attorneys' fees have been received.

**B.    The Expense Application.**

90.    Lead Counsel also seek payment from the Settlement Fund of $593,198.12 in litigation expenses that the firms reasonably incurred in connection with commencing, litigating and settling the claims asserted in the Action.

91.    From the outset of the Action, Lead Counsel have been aware that they might not recover any of the expenses they incurred, and, further, if there were to be reimbursement of expenses, it would not occur until the Action was successfully resolved, often a period lasting several years. Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement of expenses would not necessarily compensate them for the lost use of funds advanced by them to prosecute the Action. Consequently, Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

92.    As set forth in Exhibit 6 hereto, Lead Counsel have paid or incurred a total of $593,198.12 in litigation expenses in connection with the prosecution of the Action. These expense items are billed separately by Lead Counsel, and such charges are not duplicated in Lead Counsel's hourly rates.

93.    Of the total amount of expenses, $191,578.31, or approximately 32%, was expended for the retention of experts and consultants. As discussed above, Lead Counsel consulted extensively with Chad Coffman, a well-qualified expert in market efficiency, loss causation, and damages, and members of his team at Global Economics Group LLC and subsequently at Peregrine Economics LLC. Lead Counsel worked with Mr. Coffman during their investigation of the claims and the preparation of the Amended Complaint; in connection with Lead Plaintiffs' motion for class certification (which was supported by an expert declaration from Mr. Coffman on market efficiency and class-wide damages); in connection with discovery; and during the settlement negotiations with

Case 4:19-cv-07481-JST   Document 243   Filed 04/25/25   Page 30 of 32

Defendants. Finally, after the Settlement was reached, Lead Counsel worked with Mr. Coffman and his team to develop the proposed Plan of Allocation. In addition, Lead Counsel also consulted with several other expert consultants in the areas of electronic document review, damages, and investigation.

94. Another large component of the litigation expenses was for online legal and factual research, which was necessary to prepare the complaints, research the law pertaining to the claims asserted in the Action, oppose Defendants' motions to dismiss, and prepare Lead Plaintiffs' class certification motion and mediation submissions. The total charges for on-line research amounted to $108,378.67 or 18% of the total amount of expenses.

95. Lead Counsel also incurred $138,112.32 in attorneys' fees for the retention of independent counsel, Hach Rose Schirripa & Cheverie LLP, to represent several former Plantronics or Polycom employees that Lead Counsel contacted during the course of its investigation and who wished to be represented by independent counsel. These costs were substantial because Defendants deposed four of these former employees concerning the statements they made that were included in the Complaint.

96. The Parties retained Michelle Yoshida and Layn Phillips of Philips ADR Enterprises, both of whom are experienced mediators of securities class actions and other complex litigation, to assist with settlement negotiations in the Action, including the two formal mediation sessions on June 22, 2023 (Ms. Yoshida) and June 7, 2024 (Judge Phillips). The mediation expenses were split between the Parties. Lead Plaintiffs' total share of the costs for Philips ADR Enterprises' services was $53,575.

97. The other expenses for which Lead Counsel seek payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, document management costs, court fees, long distance telephone charges, postage and delivery expenses, and copying costs.

98. All of the litigation expenses incurred by Lead Counsel were reasonable and necessary to the successful litigation of the Action, and have been approved by Lead Plaintiffs. *See* Menzel Decl. ¶ 8; Trubnikov Decl. ¶ 8.

---

JOINT DECLARATION IN SUPPORT OF          26          4:19-cv-07481-JST
FEE AND EXPENSE MOTION

99.    The amount requested for Lead Counsel's expenses, $593,198.12, is below the $750,000 that Settlement Class Members were advised could be sought in the Notice. To date, no objection has been raised as to the maximum amount of expenses set forth in the Notice.

100.    Attached in Exhibit 7 hereto are true and correct copies of the following documents cited in the Fee Memorandum:

Ex. 7A    *In re Splunk Inc. Sec. Litig.*, Case No. 4:20-cv-08600-JST, slip op. (N.D. Cal. Mar. 4, 2024), ECF No. 143

Ex. 7B    EDWARD FLORES & SVETLANA STARYKH, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2024 FULL-YEAR REVIEW (2025)

Ex. 7C    *In re Diamond Sports Net LLC*, Case No. 23-90126 (CML), Seventh Interim and Final Fee Application of WilmerHale (Bankr. S.D. Tex. Feb. 18, 2025), ECF 53 (excerpted pages)

Ex. 7D    *In re Endo Int'l plc*, Case No. 22-22549 (JLG), Fifth Interim & Final Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP (Bankr. S.D.N.Y. May 23, 2024), ECF No. 4312 (excerpted pages)

Ex. 7E    *In re Infinity Pharms., Inc.*, Case No. 23-11640 (BLS), Fourth Monthly and Final Fee Application of WilmerHale (Bankr. D. Del. Apr. 10, 2024), ECF No. 284 (excerpted pages)

Ex. 7F    *In re Zymergen Inc.*, Case No. 23-11661 (KBO), Third Monthly & Final Fee Application of WilmerHale (Bankr. D. Del. Mar. 22, 2024), ECF No. 436 (excerpted pages)

## V.    CONCLUSION.

101.    For all the reasons set forth above, Lead Counsel submit that the requested fee in the amount of 22% of the Settlement Fund should be approved as fair and reasonable, and the request for total Litigation Expenses in the amount of $593,198.12, should also be approved.

We declare, under penalty of perjury, that the foregoing is true and correct. Executed on April 25, 2025.


 /s John Rizio-Hamilton                          /s Sean R. Matt
JOHN RIZIO-HAMILTON                      SEAN R. MATT

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)(3)**

I am the ECF User whose identification and password are being used to file the foregoing Joint Declaration of John Rizio-Hamilton and Sean R. Matt in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses.  Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other signatories have concurred in this filing.:

By   /s John Rizio-Hamilton
     John Rizio-Hamilton