**HAGENS BERMAN SOBOL SHAPIRO LLP**
Sean R. Matt (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
sean@hbsslaw.com

*Counsel for Lead Plaintiff Ilya Trubnikov and*
*Lead Counsel for the Settlement Class*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
John Rizio-Hamilton (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile:(212) 554-1444
johnr@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension*
*Fund and Lead Counsel for the Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

|  |  |
|---|---|
| IN RE PLANTRONICS, INC. SECURITIES LITIGATION | No. 4:19-cv-07481-JST<br><br>**LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:     Hon. Jon S. Tigar<br>Courtroom:  6<br>Date: August 21, 2025<br>Time:     2:00 p.m. |

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES TO BE DECIDED ..................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................2

    I.      PRELIMINARY STATEMENT ...........................................................2

    II.    PROCEDURAL REVIEW ..................................................................4

    III.   THE PROPOSED SETTLEMENT PRELIMINARILY APPROVED BY THE COURT ...................................................................................6

    IV.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ................8

    V.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ................8

        A.    The Settlement satisfies the requirements of Rule 23(e)(2) and the Ninth Circuit factors. .............................................................10

            1.    The Settlement provides the Settlement Class adequate relief, considering the costs, risks, and delay of litigation and the other Ninth Circuit factors addressing whether a settlement is fair, reasonable, and adequate.................................................................... 10

                a.    The amount offered in the Settlement.............................. 10

                b.    The strength of Lead Plaintiffs' case and the risks of the litigation. ......................................... 13

                c.    The complexity, expense, and duration of continued litigation. ......................................... 15

                d.    The risk of maintaining class action status. ..................... 16

                e.    The extent of discovery completed and the stage of the proceedings.................................... 17

                f.    The experience and views of counsel. ............................. 17

                g.    The reaction of Settlement Class Members to date. ............................................................. 18

            2.    The remaining Rule 23(e)(2) factors also support final approval. ......................................................... 19

                a.    Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class. ................... 19

b.    The Settlement was negotiated at arm's length after mediation with experienced mediators. ............................................................. 19

c.    The proposed method of distribution and claims processing ensures equitable treatment of Settlement Class Members. ........................... 20

d.    The terms of any proposed award of attorneys' fees, including the timing of payment. ............................................................. 20

e.    Lead Plaintiffs have identified all agreements made in connection with the Settlement. ........................... 21

VI.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL ....................................21

VII.    NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA ....................................................24

VIII.    CONCLUSION ..............................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................................................13

*In re Aqua Metals, Inc. Sec. Litig.*,
  2022 WL 612804 (N.D. Cal. Mar. 2, 2022).............................................................12

*In re Biolase, Inc. Sec. Litig.*,
  2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)........................................................12

*In re BofI Holding, Inc. Sec. Litig.*,
  2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .........................................................23

*Brown v. Hain Celestial Grp., Inc.*,
  2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ..........................................................20

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ..........................................................................8, 9

*Chang v. Wells Fargo Bank, N.A.*,
  2023 WL 6961555 (N.D. Cal. Oct. 19, 2023)..........................................................15

*Chavez v. Converse, Inc.*,
  2020 WL 4047863 (N.D. Cal. July 8, 2020)............................................................19

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019)............................................................9

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004), The 2018 ...............................................9, 10, 15, 18

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...............................................................................21

*Davis v. Yelp, Inc.*,
  2023 WL 3063823 (N.D. Cal. Jan. 27, 2023)...........................................................9

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...........................................................10

*Elliott v. Rolling Frito-Lay Sales, LP*,
  2014 WL 2761316 (C.D. Cal. June 12, 2014) ..........................................................8

*Fleming v. Impax Lab'ys Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022)................................................8, 15, 25

*Foster v. Adams & Assocs.*,
2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ...............................................................17

*In re Google LLC Street View Elec. Commc'ns Litig.*,
2020 WL 1288377 (N.D. Cal. Mar. 18, 2020).............................................................17

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir.
2012) ..............................................................................................................................16

*Hayes v. MagnaChip Semiconductor Corp.*,
2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) .............................................................25

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018).................................................... *passim*

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................................................8

*Hsu v. Puma Biotech., Inc.*,
No. 15-cv-00865, ECF No. 913 (C.D. Cal. Aug. 3, 2022) ..........................................16

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
2012 WL 5199742 (D. Nev. Oct. 19, 2012) ................................................................12

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007).........................................................................13

*Kendall v. Odonate Therapeutics, Inc.*,
2022 WL 1997530 (S.D. Cal. June 6, 2022).................................................................12

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ..........................................................................13

*Kuraica v. Dropbox, Inc.*,
2021 WL 5826228 (N.D. Cal. Dec. 8, 2021).................................................................18

*In re LendingClub Sec. Litig.*,
2018 WL 1367336 (N.D. Cal. Mar. 16, 2018).................................................................7

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .........................................................................................8

*In re Lyft, Inc. Secs. Litig.*,
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022)............................................................12

*Mendoza v. Hyundai Motor Co.*,
2017 WL 342059 (N.D. Cal. Jan. 23, 2017)....................................................................9

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) .........................................................................13

*In re OmniVision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................16, 17, 21

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) .......................................................................................8

*Satchell v. Fed. Express Corp.*,
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................................................19

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) .........................................................................21

*Smith v. NetApp, Inc.*,
No: 4:19-cv-04801-JST, slip op. (N.D. Cal. Dec. 8, 2022) ..............................................23

*Stewart v. Applied Materials, Inc.*,
2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ......................................................................17

*Taafua v. Quantum Glob. Techs., LLC*,
2021 WL 579862 (N.D. Cal. Feb. 16, 2021) ...........................................................................18

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...........................................................................18

*In re Veritas Software Corp. Sec. Litig.*,
496 F.3d 962 (9th Cir. 2007) ..........................................................................................24

*Young v. LG Chem, Ltd.*,
783 F. App'x 727 (9th Cir. 2019) ..............................................................................23, 25

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ...................................................................................................24

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................23, 24

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................................24

Fed. R. Civ. P. 23(e)(2)(C)(i).............................................................................................15

Fed. R. Civ. P. 23(e)(2)(C)(ii)......................................................................................19, 21

Fed. R. Civ. P. 23(e)(2)(C)(iii) ..........................................................................................20

Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment.......................................10

Fed. R. Civ. P. 23(e)(2)(D) ...................................................................................................................19, 21

**NOTICE OF MOTION FOR FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMEMENT**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice As Modified (ECF No. 240) (the "Preliminary Approval Order"), Lead Plaintiffs will and hereby do move the Court, before the Honorable Jon S. Tigar, on August 21, 2025, at 2:00 p.m. in Courtroom 6 of the Ronald V. Dellums Federal Building and United States Courthouse, 1301 Clay Street, Oakland, CA, 94612 or at such other location and time as set by the Court, for entry of (i) a Judgment Approving Class Action Settlement granting final approval to the proposed class action settlement in the above-captioned securities class action (the "Action") and (ii) an Order approving the proposed Plan of Allocation.

This motion is based on the following Memorandum of Points and Authorities, the accompanying Joint Declaration of Sean R. Matt and John Rizio-Hamilton and in Support of Lead Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement (the "Joint Declaration" or "Joint Decl."), the Supplemental Declaration of Luiggy Segura Regarding: (A) Update on Dissemination of Notice Packet; (B) Update on Call Center Services and Settlement Website; (C) Requests for Exclusion Received; and (D) Claims Received to Date (the "Supplemental Segura Decl."), all other prior pleadings and papers in this Action, arguments of counsel, and such additional information or argument as may be required by the Court. The proposed Judgment and proposed Order Approving the Plan of Allocation are attached to this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should grant final approval of the proposed Settlement of this securities class action as fair, reasonable, and adequate under Rule 23(e)(2).

2.      Whether the Court should grant final approval of the proposed Plan of Allocation as fair and reasonable.

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL                                  4:19-cv-07481-JST
PROPOSED CLASS ACTION SETTLEMENT         1

### MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Lead Plaintiffs Ilya Trubnikov and Roofers' Pension Fund ("Lead Plaintiffs") respectfully submit this memorandum of law in support of their Motion for final approval of the proposed Settlement and Plan of Allocation.[1]

### I.      PRELIMINARY STATEMENT

Lead Plaintiffs, through Lead Counsel, have obtained a Settlement for $29,500,000 in cash in exchange for the dismissal of all claims brought against Defendants. The Settlement is a very positive result for the Settlement Class, as it represents a meaningful percentage of the estimated maximum damages and is approximately three times as large as the median securities class action settlement in the Ninth Circuit. *See* Joint Decl. ¶¶ 57-62. Following the deadlines for doing so, to date no Settlement Class Member has objected to the Settlement or Plan of Allocation; nor has any Settlement Class Member elected to opt out of the Settlement. *Id.* ¶ 79.

The decision to settle the case was well-informed by an extensive investigation, hard-fought litigation, and arm's-length negotiations between the Parties under the supervision of experienced mediators Michelle Yoshida and former Judge Layn R. Phillips, both of Phillips ADR Enterprises.[2] *See id.* ¶¶ 47-51. Based on these extensive efforts, Lead Plaintiffs and Lead Counsel possessed a thorough understanding of the relative strengths and weaknesses of the claims and whether the Settlement obtained was fair, reasonable, and adequate. As made clear during the litigation and settlement discussions, both sides believed in the strength of their claims and defenses. Lead Counsel, moreover, consistently stated throughout the discussions that it was willing and able to take the case to trial rather than settle for less than fair value. *Id.* ¶ 49. The

---

[1] Unless otherwise defined in this memorandum, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated July 18, 2024 (ECF No. 230-1) (the "Stipulation"), or the Joint Declaration. Citations to "¶ ___" in this memorandum refer to paragraphs in the Joint Declaration. Unless otherwise indicated, all emphasis is added and internal citations are omitted.

[2] Lead Plaintiffs respectfully refer the Court to the Joint Declaration filed herewith. The Joint Declaration contains a detailed description of, among other things, the nature of the claims asserted, the procedural history of the Action, the negotiations leading up to the Settlement, and the terms of the Plan of Allocation.

result is an excellent recovery for the Settlement Class that readily satisfies Rule 23(e)(2)'s standards for final approval.

Lead Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was detailed in the Notice. The Plan of Allocation governs the calculation of claims and the distribution of Settlement proceeds among Authorized Claimants. *Id.* ¶¶ 80-86. Based on the analysis of Lead Plaintiffs' expert, the Plan of Allocation subjects all Settlement Class Members to the same formulas for calculating damages. *Id.*

The Court granted preliminary approval of the Settlement on February 10, 2025. *See* ECF No. 240. In that Order, the Court approved the process by which Settlement Class Members would receive notice of the Settlement and submit claims and objections. *Id.* To date, the Court-authorized Claims Administrator, JND Legal Administration ("JND"), has disseminated 22,299 copies of the Notice to potential Settlement Class Members and nominees. *See* Supplemental Segura Decl. ¶ 4. The Notice, Claim Form, and other key Settlement documents have been made available on a dedicated website maintained for the Settlement by JND and the Notice was posted on the Depository Trust Company Legal Notice System. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *PRNewswire*. ECF No. 243-4,  ¶ 14. The deadline for submitting claims, exclusions from, and objections to, the Settlement Class was June 25, 2025, and no Settlement Class Member has objected to the Settlement or Plan of Allocation or requested to opt out. Joint Decl. ¶ 79 JND has received approximately 15,400 timely filed claims.[3] *See* Supplemental Segura Decl. ¶ 10. Moreover, Lead Plaintiffs fully support the Settlement. *See* ECF No. 243-1 (Gary Menzel declaration), ¶¶ 6, 9; ECF No. 243-2 (Ilya Trubnikov declaration), ¶ 6.

---

[3] The Northern District's *Procedural Guidance for Class Action Settlements*, Final Approval § 1 states that the motion for final approval and briefing should include information about the number of undeliverable class notices and claim packets, the number of valid claims, the number of opt outs and objections and address any objections. The number of undeliverable notices, number of valid claims, and number of opt-outs and objections to the Settlement (zero) is addressed in the Segura and Joint Declarations. *See* Supplemental Segura Decl. ¶¶ 5, 8, 10; Joint Decl. ¶ 79.

For these reasons, Lead Plaintiffs submit that the Settlement meets the standards for final approval under Rule 23 and is a fair, reasonable, and adequate result for the Settlement Class. Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and approve the Plan of Allocation as the method for distributing the Net Settlement Fund to the Settlement Class.

## II.      PROCEDURAL REVIEW

On November 13, 2019, a class action complaint, styled *Felice Bassuk v. Plantronics, Inc.*, Case No. 4:19-cv-07481-JST, was filed in the Court asserting violations of federal securities laws against Plantronics and the Individual Defendants. Joint Decl. ¶ 8. In accordance with the PSLRA, notice to the public was issued stating the deadline by which putative class members could move the Court for appointment as lead plaintiff.

On January 13, 2020, Ilya Trubnikov ("Trubnikov") and Roofers' Pension Fund ("Roofers") each filed motions seeking appointment as Lead Plaintiff. On January 24, 2020, Trubnikov and Roofers filed a stipulation requesting to be appointed as co-Lead Plaintiffs. ECF No. 58. On February 13, 2020, after directing Trubnikov and Roofers to submit a supplemental brief in support of their request, the Court appointed them as Lead Plaintiffs and approved their counsel, Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), as Lead Counsel. ECF No. 62; Joint Decl. ¶¶ 9-10.

After substantial investigation, on June 5, 2020, Lead Plaintiffs filed a detailed Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint"). ECF No. 72. Lead Plaintiffs opposed Defendants' motion to dismiss the Amended Complaint through extensive briefing. On March 29, 2021, the Court issued an order granting the Defendants' motion to dismiss. ECF No. 84. The Court also permitted the Lead Plaintiffs to file a further amended complaint within 21 days to address the identified deficiencies. Lead Plaintiffs filed a Second Amended Complaint for Violations of the Federal Securities Laws (the "SAC") on June 22, 2021, which contained new allegations meant to address the concerns identified by the Court. ECF No. 93. Thereafter, Lead Plaintiffs and Lead Counsel litigated Defendants' motion to dismiss the SAC through further briefing. On August 17, 2022, the Court issued an order granting in part and

denying in part Defendants' motion to dismiss the SAC, which had the effect of limiting the Class Period to November 6, 2018, through November 5, 2019, inclusive. ECF No. 109; Joint Decl. ¶¶ 11-23.

Discovery in the Action commenced in December 2022. The Parties conducted substantial fact discovery, with Lead Plaintiffs obtaining and reviewing hundreds of thousands of pages of documents from Defendants. In addition, the Parties subpoenaed more than a dozen third parties and received additional documents from them. The Parties also took or defended a total of eight depositions, including depositions of each of the Lead Plaintiffs and of six former Plantronics employees (including the former Chief Executive Officer). The Parties met and conferred and exchanged numerous letters concerning disputed discovery issues over several months. Joint Decl. ¶¶ 24-40.

On October 2, 2023, Lead Plaintiffs moved for leave to file a Third Amended Complaint for Violations of the Federal Securities Laws (the "TAC" or "Complaint"). ECF No. 160. On April 12, 2024, the Court issued an order granting in part and denying in part Lead Plaintiffs' motion for leave to file the TAC. ECF No. 215. As a result of this order, the original Class Period of August 7, 2018, through November 5, 2019, was reinstated. The Complaint was filed April 11, 2024. ECF No. 213. On May 10, 2024, Defendants filed their Answer to the TAC. ECF No. 220; Joint Decl. ¶¶ 41-42.

The Parties began exploring the possibility of a settlement in the summer of 2023. The Parties agreed to engage in private mediation and retained Michelle Yoshida of Phillips ADR Enterprises to act as mediator in the Action. On June 22, 2023, counsel for the Parties participated in a full-day mediation session before Ms. Yoshida. In advance of that session, the Parties exchanged and submitted detailed confidential mediation statements to Ms. Yoshida. The session ended without any agreement being reached. Joint Decl. ¶ 47.

On February 8, 2024, Lead Plaintiffs filed a class certification motion, which was accompanied by a report from Lead Plaintiffs' expert on market efficiency and common damages

methodologies. ECF No. 190. The class certification motion was fully briefed by April 18, 2024 and was still pending when the Parties reached their agreement to settle. Joint Decl. ¶¶ 43-46.

On June 7, 2024, the Parties participated in a second full-day mediation session before former Judge Layn R. Phillips of Phillips ADR Enterprises. In advance of the mediation session, the Parties again exchanged and submitted confidential mediation statements. At the conclusion of this second mediation session and following extensive arm's-length negotiations conducted with the assistance and facilitation of Judge Phillips, the Parties agreed to settle the Action. Joint Decl. ¶¶ 47-48.

The agreement's terms were memorialized in a term sheet executed on June 7, 2024 (the "Term Sheet"). The Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims against Defendants and Defendants' Releasees (defined below) in return for a cash payment of $29,500,000 by or on behalf of Defendants for the benefit of the Settlement Class. On July 18, 2024, the Parties entered into a Stipulation and Agreement of Settlement (the "Stipulation"), which sets forth the terms and conditions of the Settlement. ECF No. 230-1. The same day, the Parties also entered into a confidential Supplemental Agreement that provides Plantronics with the right to terminate the Settlement if the number of requests for exclusion from the Settlement Class reaches a certain threshold. *See* Stipulation ¶ 37; ECF No. 231-3; Joint Decl. ¶¶ 48-51.

Lead Plaintiffs filed a motion for preliminary approval of the Settlement on July 19, 2024. ECF No. 230. The Court preliminary approved the Settlement on February 10, 2025. ECF No. 240.

### III.    THE PROPOSED SETTLEMENT PRELIMINARILY APPROVED BY THE COURT

The Settlement provides that Defendants will pay $29.5 million in cash into an interest-bearing escrow account. The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Notice and Administration Costs, and Taxes and related expenses (the "Net Settlement Fund"), will be distributed among Settlement Class Members who submit valid Claim Forms, in accordance with a plan of allocation to be approved by the Court. The Settlement is a non-recapture settlement: if the Settlement is approved,

Defendants and their insurers will have no right to the return of any portion of the Settlement Fund based on the number or value of Claims submitted. *See* Stipulation ¶ 13.

The Settlement Class. The Court preliminarily certified the Settlement Class, consisting of all persons or entities who purchased or otherwise acquired the publicly traded common stock of Plantronics between August 7, 2018, and November 5, 2019 (the "Class Period"). *See* Stipulation ¶ 1(qq); ECF No. 240, ¶ 1. Excluded from the Settlement Class are (i) Defendants, (ii) the Immediate Family Members of Defendants Burton, Boynton, and Strayer; (iii) any current or former Officers and directors of Plantronics; (iv) any firm or entity in which any Defendant has or had a controlling interest; (v) Defendants' liability insurance carriers; (vi) any affiliates, parents, or subsidiaries of Plantronics; (vii) all Plantronics plans that are covered by ERISA; and (viii) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any excluded person or entity, in their respective capacity as such. Also excluded from the Settlement Class are any persons or entities that excluded themselves by submitting a request for exclusion that is accepted by the Court. The definition of the Settlement Class matches the proposed class pled in the Complaint.

The Release.  In exchange for the payment of the Settlement Amount, Settlement Class Members will release the "Released Plaintiffs' Claims." Stipulation ¶ 1(ll). The Settlement's release provision is tailored to the Settlement Class's claims. Specifically, the release is limited to "all claims and causes of action that Lead Plaintiffs or any other member of the Settlement Class (i) asserted in the Complaint, or (ii) were or could have been asserted in any forum that both (a) arise out of the same facts, matters, events, transactions, acts, occurrences, statements, representations, misrepresentations, disclosures, and/or omissions alleged in the Complaint and (b) relate to the purchase or other acquisition of Plantronics common stock during the Class Period." Stipulation ¶ 1(ll). The Parties are not aware of any other pending cases that will be affected by the Settlement or the proposed release.

The proposed release is tailored to the conduct at issue in this Action and is consistent with release provisions approved by courts in this District. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018

WL 6619983, at *3 (N.D. Cal. Dec. 18, 2018) (approving similar release); *In re LendingClub Sec. Litig.*, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018) (approving release in securities class action that was "anchored to 'the purchase, acquisition, holding, sale, or disposition of LendingClub common stock by Class Members during the [class] period'"); *see generally Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (a class release may release claims not asserted in the action as long as they arise from the same set of factual allegations).

## IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

At the preliminary approval stage, the Court found that it would likely be able to certify the Settlement Class for purposes of judgment on the proposed Settlement. ECF No. 240, ¶ 2. Class certification for settlement purposes remains appropriate as discussed in ECF No. 230 at 15-18 (preliminary approval motion detailing why the Rule 23(a) and 23(b)(3) factors are satisfied), and nothing has changed since preliminary approval that would undermine the Court's conclusion. *See Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022). There are no issues that would prevent the Court from certifying the Settlement Class, appointing Lead Plaintiffs as class representatives, and appointing Lead Counsel as counsel for the Settlement Class.

## V.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

The Ninth Circuit upholds a robust judicial policy that strongly encourages the voluntary settlement of litigation, especially within the context of class action lawsuits. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("There is an overriding public interest in settling and quieting litigation, and this is particularly true in class action suits."). Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice. *See Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ("judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation").

Under Rule 23(e)(2), "a district court may approve a class action settlement only after finding that the settlement is 'fair, reasonable, and adequate.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir. 2020). In making that determination, the Court must consider the factors laid out in Rule 23(e)(2)(A)-(D), which are: (i) the class representatives and class counsel have adequately represented the class; (ii) the proposal was negotiated at arm's length; (iii) the relief provided for the class is adequate considering the costs, risks, and delay of trial and appeal, the effectiveness of distributing relief to the class (including the method of processing claims), the terms of any proposed award of attorney's fees (including the timing of payment), and the proposal treats class members equitably relating to each other; and (iv) any agreements made in connection with the settlement are identified. Additionally, courts in the Ninth Circuit look at the following factors when assessing final approval of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[4]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[5]

After a preliminary review, the Court found the Settlement was fair, reasonable, and adequate, subject to further consideration at the Settlement hearing. *See* ECF No. 240, ¶ 4. The Court's conclusion on preliminary approval is equally true now, as nothing has changed between February 10, 2025, and the present to contradict the Court's preliminary findings. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at

---

[4] "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

[5] The 2018 amendments to Rule 23(e)(2) were not meant to "displace" any of the factors historically applied by the Ninth Circuit, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See Campbell*, 951 F.3d at 1121 n.10. The Court should therefore apply the "framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler*, 2018 WL 6619983, at *4.

*2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now."); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *1 (N.D. Cal. Jan. 27, 2023) (reaffirming finding at preliminary approval stage). As discussed below, the Settlement is fair, reasonable, and adequate and warrants final approval under the Rule 23(e)(2) factors and Ninth Circuit law.

**A.      The Settlement satisfies the requirements of Rule 23(e)(2) and the Ninth Circuit factors.**

**1.      The Settlement provides the Settlement Class adequate relief, considering the costs, risks, and delay of litigation and the other Ninth Circuit factors addressing whether a settlement is fair, reasonable, and adequate.**

The issue considered under Rule 23(e)(2)(C)—whether the "relief provided for the class is adequate"—overlaps considerably with the additional Ninth Circuit factors used to assess final approval of a settlement, and all entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide." *See* Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment; *see also Churchill*, 361 F.3d at 575-77. As demonstrated below, these considerations weigh strongly in favor of approving the Settlement.

**a.      The amount offered in the Settlement.**

In evaluating the adequacy of a recovery coming from a settlement, "courts primarily consider [the] expected recovery balanced against the value of the settlement offer." *See Hefler*, 2018 WL 6619983, at *8; *see also Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (amount of settlement is "generally considered the most important" factor).

Lead Plaintiffs' damages expert, Chad Coffman of Peregrine Economics, estimated that the maximum theoretical damages that could be established for the class at trial would be approximately $248 million. This estimate assumes that Lead Plaintiffs would prevail entirely on all liability issues for the entire Class Period, and that they would prevail on all loss causation and damages issues too, by establishing that the full amount of the abnormal declines in Plantronics stock on all three alleged corrective disclosures dates (June 18, 2019, August 7, 2019, and

November 6, 2019), as well as the follow-on reaction on June 19, 2019, was causally connected to Defendants' alleged misstatements. Joint Decl. ¶¶ 58-59.

Lead Plaintiffs' damages expert arrived at these estimated damages by first calculating the amount of "artificial inflation" that existed in Plantronics' stock price as a result of Defendants' misstatements (before the alleged corrective disclosures in this case occurred), and then applying a trading model to estimate the number of shares purchased during the Class Period when the price of Plantronics shares were inflated and sold after some or all of the artificial inflation had been removed (or held until in the end of the period). To quantify the amount of artificial inflation in Plantronics' stock price prior to the alleged corrective disclosures in this case, Mr. Coffman and his team conducted an "event study"—a standard regression analysis that compared the movements in the price of Plantronics common stock to the movements in the stock prices of the overall stock market and also an index of industry peers—to determine that Plantronics' common stock suffered statistically significant abnormal declines (relative to the market and industry peers) following the alleged corrective disclosures and the amount of those declines. Mr. Coffman concluded that the artificial inflation in each share of Plantronics stock at the outset of the Class Period was $24.72 and declined by $2.11 on June 18, 2019, $3.10 on June 19, 2019, $5.16 on August 7, 2019, and $14.35 on November 6, 2019.[6] Joint Decl. ¶ 60.

Mr. Coffman then used a trading model to calculate the number of damaged shares purchased by the entire class of investors. Shares are considered "damaged" if they were purchased during the Class Period when the Plantronics' share price was artificially inflated and held over the date of one or more of the corrective disclosures that dissipated the artificial inflation. To estimate how many shares of Plantronics stock were held over each of the alleged corrective disclosure dates, Mr. Coffman and his team looked at publicly available information about institutional investors' trades and used a standard, two-trader proportional trading model for all other investors. Based on these analyses, Mr. Coffman has estimated that the total number of

_____

[6] The same artificial inflation numbers are used in the proposed Plan of Allocation which was developed in consultation with Mr. Coffman and his team. *See* Notice at p. 23 (Table A).

damaged shares would be approximately 20.4 million and total resulting damages would be $248 million. Joint Decl. ¶ 61.

The $29.5 million Settlement Amount therefore represents approximately 12% of Lead Plaintiffs' maximum class-wide damages, assuming that Lead Plaintiffs would prevail entirely on all liability issues for the entire Class Period and all loss causation and damages issues and could establish that the full amount of the abnormal declines in Plantronics stock on the three alleged corrective disclosure dates (as well as a follow-on reaction on June 19, 2019), was causally connected to Defendants' alleged misstatements. *Id.* ¶ 62.

Lead Plaintiffs' success on all of these elements was far from certain, as discussed in the next section below.  Further, as noted below, Defendants strenuously argued that the Class Period should be shortened and/or that Lead Plaintiffs could not establish loss causation for all three corrective events. Had the class been certified but the Class Period shortened based on Defendants' arguments, maximum recoverable damages could have been reduced to $112.9 million, making the recovery approximately **26%** of such damages and further demonstrating the strength of the Settlement. *Id.* ¶ 63.

In short, the Settlement represents a favorable recovery for Settlement Class Members, especially when considered in light of the real risk of lesser recovery (or no recovery at all), and the typical level of recovery in securities class actions. *See, e.g.*, *In re Lyft, Inc. Secs. Litig.*, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (finding the settlement equal to 3.2% to 4.7% of estimated maximum damages was "well within the range of possible approval"); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022) (approving settlement of "approximately 3.49% of the maximum estimate damages"); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) ("Class Counsel contends that this settlement offer constitutes 7.3% of the most likely recoverable damages, assuming Plaintiffs were to prevail on all claims against the Defendants. . . . The Court agrees that this recovery is in line with comparable class action settlements."); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (settlement representing "approximately 8% of the maximum

recoverable damages . . . equals or surpasses the recovery in many other securities class actions"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered" and finding it "within the median recovery in securities class actions settled in the last few years").

### b.    The strength of Lead Plaintiffs' case and the risks of the litigation.

To determine whether the Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of [a] recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). Given the "complexity" of securities class actions, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials." *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

While Lead Plaintiffs believed in the merits of their claims, there were significant risks that could have prevented Lead Plaintiffs from prevailing at trial. This was not a case in which Plantronics ever restated its financials, nor was there any parallel SEC or other government action brought against Plantronics or any of the other Defendants. Lead Plaintiffs would be required to prove all elements of their claims to prevail, while the Defendants needed to succeed on only one defense to potentially defeat the entire Action. Over the course of the litigation, including the mediation sessions, Defendants disputed the falsity and materiality of their alleged misstatements and vigorously challenged scienter. *See* Joint Decl. ¶ 65; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is "complex and difficult to establish at trial"). Defendants also challenged Lead Plaintiffs' theory of loss causation and damages in opposing class certification and would have been expected to continue doing so at summary judgment and trial. *See* Joint Decl. ¶ 66; *see also Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (noting to prove and calculate damages involves "complex analysis, requiring [a] jury to parse divergent positions of expert witnesses in a complex

area of the law," rendering "the outcome of that analysis … inherently difficult to predict and risky").

Defendants had substantial arguments concerning each of these issues. To start, Lead Plaintiffs faced challenges in proving that Defendants made misleading statements or omissions by failing to disclose the Company's revenues were the result of an alleged channel-stuffing scheme that temporarily boosted the Company's short-term revenues at the expense of long-term revenue. Defendants argued that the Company's channel sales and inventory data from the Class Period was inconsistent with the allegations that the Company had engaged in a channel-stuffing scheme—because the sales data did not show any appreciable spike in channel inventory as to the total units of Company products in the overall channel. Second, Defendants would have argued that any increases in channel inventory were unrelated to any purported channel-stuffing scheme but resulted instead from the Company's switch to a "back-end loaded" sales model—a model that involved higher percentages of sales and inventory accumulation at the end of fiscal quarters. Joint Decl. ¶ 67.

For similar reasons, Lead Plaintiffs also expected that Defendants would argue the alleged misstatements were not made with "scienter" as required under the Exchange Act. Defendants would likely have argued that the Individual Defendants did not have an intent to mislead investors given that sales data on a unit basis did not meaningfully increase, and that, even if their statements were false or misleading, that they believed those statements to be true based on information available when the statements were made. Thus, there was a meaningful risk that the Court or jury could find against Lead Plaintiffs on these issues on a complete record at summary judgment or trial. Joint Decl. ¶ 68.

In addition, Lead Plaintiffs expected that Defendants would raise challenges to loss causation, arguing that the price declines at issue were caused by the disclosure of information unrelated to the alleged fraud. For example, Defendants were expected to argue that the price declines on June 18 and 19, 2019, following the initial alleged corrective disclosure, resulted from Plantronics' disclosure of tariffs impacting its sales in China—rather than from release of

LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL                    4:19-cv-07481-JST
PROPOSED CLASS ACTION SETTLEMENT       14

information about the alleged channel-stuffing scheme. *Id.* ¶ 63. Defendants were also expected to challenge loss causation for the other two remaining alleged corrective disclosures on August 6, 2019, and November 5, 2019, on the grounds that the information disclosed was not sufficiently related to the alleged misstatements. *Id.* ¶ 69.

As noted above, if Defendants succeeded in arguing that certain of the misstatements were not actionable, the Class Period could have been shortened and the maximum damages for the shortened Class Period would be greatly reduced, potentially to $112.9 million if the first actionable misstatement was found to occur on May 8, 2019 (making the $29.5 million Settlement 26% of such damages). *Id.* ¶ 63. Accordingly, if Lead Plaintiffs were unable to sustain the entire Class Period or were unable to establish loss causation for certain of the alleged disclosures, or for some portion of the price declines on those days, the potential damages that could be recovered at trial would be substantially reduced from the $248 million maximum. *Id.*

Further, in order to obtain recovery for the Settlement Class, Lead Plaintiffs would have to prevail at several stages—on the pending motion for class certification, at summary judgment, and at trial—and, even if they prevailed on those, on the appeals that were likely to follow. Thus, there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all. In light of these risks, the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiffs and Lead Counsel believe that the proposed $29,500,000 Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *Id.* ¶ 70.

Given the significant risks of establishing liability and loss causation here, Lead Counsel believe that this level of recovery represents an excellent result for the Settlement Class and that this factor strongly warrants final approval. *Id.* ¶ 71.

### c.    The complexity, expense, and duration of continued litigation.

In evaluating the fairness of the Settlement, the Court should also account for the "expense, complexity, and likely duration of further litigation," *Churchill*, 361 F.3d at 576, or "delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i). In general, "unless the settlement is clearly inadequate,

its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *See Chang v. Wells Fargo Bank, N.A.*, 2023 WL 6961555, at *4 (N.D. Cal. Oct. 19, 2023); *see also Fleming*, 2022 WL 2789496, at *5 ("Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.").

Barring the Settlement, the continued litigation of the Action would require the expenditure of substantial additional sums of time and money at trial and beyond, with no guarantee that any additional benefit would be provided to the Settlement Class. Even if Lead Plaintiffs prevailed at trial and met their burdens in establishing falsity, materiality, class-wide reliance under the "fraud of the market" presumption, loss causation, the measure of per-share damages (if any), and control person liability, the case would still be far from over. For example, Defendants would have had the opportunity to challenge an individual Settlement Class Member's membership in the Class, the presumption of reliance for any Settlement Class Member, and the amount of damages due each Settlement Class Member. Moreover, Defendants would have certainly filed an appeal, which would further delay (and risk entirely) any additional benefit received via trial. Joint Decl. ¶ 72; *see also Hsu v. Puma Biotech., Inc.*, No. 15-cv-00865, ECF No. 913 (C.D. Cal. Aug. 3, 2022) (granting final approval of securities class action settlement 2.5 years after a February 4, 2019 jury verdict in plaintiff's favor following trial).

As opposed to continued litigation, with its risk, expense, and potential delay, the Settlement provides a certain, near-term recovery for the Settlement Class. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members … favors settlement of this action."), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012). This factor favors the Court granting final approval of the Settlement.

### d.    The risk of maintaining class action status.

At the time the parties reached the Settlement, the Court had not yet considered and ruled upon the pending motion for class certification. Thus, it is possible that the Court would have denied that motion, even though courts regularly certify federal securities claims for class

treatment or could have certified a class for a shorter period. Further, maintaining class action status through the end of trial and on appeal always presents an appreciable risk. *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]here is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

### e.    The extent of discovery completed and the stage of the proceedings.

The extent of discovery completed and the stage of the proceedings at which settlement was achieved supports final approval of the Settlement. Lead Plaintiffs reached the agreement to settle only after conducting extensive litigation, which included a thorough investigation of the claims and preparation of multiple, detailed pleadings; full briefing of two rounds of motions to dismiss; full briefing on a detailed motion to amend; the review of hundreds of thousands of pages of documents produced by Defendants and more than a dozen third parties that were subpoenaed; the depositions of the Lead Plaintiffs; depositions of six former Plantronics employees (including its former Chief Executive Officer); and full briefing of Lead Plaintiffs' class certification motion. Lead Plaintiffs and Lead Counsel had ample information to ascertain the strengths and risks of the claims asserted in the Action and for their conclusion that the $29.5 million Settlement is fair and reasonable. Joint Decl. ¶¶ 11-46. The parties also participated in multiple mediation sessions and exchanged detailed mediation submissions. Lead Plaintiffs and Lead Counsel had sufficient information to evaluate the case and the merits of the Settlement by the time it was reached. *See Foster v. Adams & Assocs.*, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022) (finding "[p]laintiffs were 'armed with sufficient information about the case' to broker a fair settlement" given the discovery conducted, years of litigation, and multiple settlement conferences).

### f.    The experience and views of counsel.

The opinion of experienced counsel as to the merits of a class settlement after arm's-length negotiation is entitled to considerable weight. *See Omnivision*, 559 F. Supp. 2d at 1043 ("'The recommendation of plaintiffs' counsel should be given a presumption of reasonableness.' … In addition to being familiar with the present dispute, Lead Counsel has significant experience in

securities litigation."). In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017); *accord Omnivision*, 559 F. Supp. 2d at 1043. Here, Lead Counsel have a thorough understanding of the merits and risks of the Action and extensive experience in securities litigation and fully recommend Settlement approval. Joint Decl. ¶ 64.

### g.    The reaction of Settlement Class Members to date.

In assessing the fairness of a class action settlement, "courts within the Ninth Circuit typically consider 'the reaction of the class members to the proposed settlement.'" *In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020); *see also Churchill*, 361 F.3d at 577. Specifically, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v. Dropbox, Inc.*, 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021).

The objection deadline has passed and following mailing of Notices to over 22,299 potential Settlement Class Members, no objections to the Settlement have been received; nor have any Settlement Class Members opted out of the Settlement. Joint Decl. ¶ 79; Supplemental Segura Decl. ¶ 8. These circumstances provide strong support for Settlement approval. *See, e.g.*, *Vataj v. Johnson*, 2021 WL 5161927, at *7 (N.D. Cal. Nov. 5, 2021) (the "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Taafua v. Quantum Glob. Techs., LLC*, 2021 WL 579862, at *7 (N.D. Cal. Feb. 16, 2021) ("The lack of objections and low number of requested exclusions . . . indicates support among the class members and weighs in favor of approving the settlement.").

Moreover, to date, approximately 15,400 Claims have been received. *See* Supplemental Segura Decl. ¶ 10. Based on JND's preliminary review of the Claims received, 7,612 of those Claims appear to be valid, and those Claims represent a total of approximately 18,807,588 damaged shares of Plantronics common stock (that is, shares that calculate to a Recognized Claim

under the Plan of Allocation and will be eligible for a portion of the Settlement proceeds). *Id*. ¶ 11. The damaged shares in the Claims received represent 92% of the total number of damaged Plantronics shares as estimated by Lead Plaintiffs' damages expert. Because the Claim-filing deadline was just two weeks ago and a large percentage of Claims are filed immediately before the deadline, this analysis is necessarily preliminary. The Claims are still being processed and are subject to further reviews. *Id*. ¶ 12.

## 2. The remaining Rule 23(e)(2) factors also support final approval.

### a. Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A). The Settlement is the result of approximately four years of diligent prosecution of this action by Lead Plaintiffs and Lead Counsel. *See Hefler*, 2018 WL 6619983, at *6 (finding Rule 23(e)(2)(A) satisfied and reiterating that counsel "prosecuted this action through dispositive motion practice, extensive … discovery, and formal mediation). Lead Plaintiffs have claims that are coextensive with those of the Settlement Class. In addition, Lead Plaintiffs have retained counsel highly experienced in securities class action litigation who have successfully prosecuted many securities and other complex class actions. Thus, Lead Plaintiffs are adequate representatives of the Settlement Class, and their counsel are qualified, experienced, and capable of prosecuting the Action.

### b. The Settlement was negotiated at arm's length after mediation with experienced mediators.

The Parties reached the Settlement after extended arm's-length negotiations between experienced counsel and with the assistance of two experienced mediators. Counsel engaged in a mediation process overseen by two highly experienced mediators, Michelle Yoshida and Judge Phillips, which included the exchange of detailed mediation statements and two full-day mediation sessions. As courts in this District and elsewhere have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Chavez v. Converse,*

*Inc.*, 2020 WL 4047863, at *2 (N.D. Cal. July 8, 2020).

In sum, the extent of the litigation, the arm's-length nature of the negotiations, and the participation of experienced mediators all support a finding that the proposed Settlement is fair, reasonable, and adequate.

###### c. The proposed method of distribution and claims processing ensures equitable treatment of Settlement Class Members.

The proposed method of distribution and claims processing ensures equitable treatment of Settlement Class Members, as their claims will be processed and the Net Settlement Fund distributed pursuant to a standard method routinely approved in securities class actions. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D); *see also infra* Section § VI. The Court-authorized Claims Administrator, JND, will review and process all the received Claims, provide each Claimant an opportunity to cure any deficiency in a Claim or request judicial review of a denied Claim, if applicable, and if the Settlement is approved, will distribute Authorized Claimants their *pro-rata* share of the Net Settlement Fund, as calculated under the Plan of Allocation. *See* Joint Decl. ¶¶ 80-86.

###### d. The terms of any proposed award of attorneys' fees, including the timing of payment.

The Settlement relief remains adequate when considering the proposed award of attorneys' fees and litigation expenses incurred in prosecuting the Action, including the timing of any such Court-approved payments. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). As detailed in Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (ECF No. 242), the requested attorneys' fees of 22% of the Settlement Fund is reasonable based on Lead Counsel's efforts and the risks undertaken in obtaining the $29.5 million cash recovery and are in line with fee awards granted in the Ninth Circuit. Any fee award is also separate from approval of the Settlement, and no Party may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Stipulation ¶ 17. In addition, the proposal that 100% of the Litigation Expenses and 90% of any attorneys' fees be paid upon the entry of the Court's order with the remaining 10% paid after distribution of settlement funds to eligible Claimants is reasonable and consistent with

common practice in similar cases, as the Stipulation states that if the Settlement is terminated or any fee award is subsequently modified, Lead Counsel must repay the subject amount with interest.[7] *See* Stipulation ¶ 17.

> **e.      Lead Plaintiffs have identified all agreements made in connection with the Settlement.**

Rule 23(e)(3) requires the parties to identify all agreements made in connection with the Settlement. In addition to the Stipulation, Lead Plaintiffs and Defendants entered into a confidential Supplemental Agreement that establishes the conditions under which Plantronics may terminate the Settlement if requests for exclusion ("opt-outs") exceed an agreed-upon threshold. *See* Stipulation ¶ 37. Lead Plaintiffs submitted a copy of the Supplemental Agreement to the Court for its review with the preliminary approval motion (together with a motion to file under seal). ECF No. 231. "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020). In any event, the Supplemental Agreement is now moot because no requests for exclusion have been submitted.

## VI.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

Along with requesting final approval of the Settlement, Lead Plaintiffs request final approval of the Plan of Allocation. Per Rules 23(e)(2)(C)(ii) and (e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other" and be "effective[]." Assessment of the Plan of Allocation "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *OmniVision*, 559 F. Supp. 2d at 1045; *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).

Developed in consultation with Lead Plaintiffs' damages expert, Chad Coffman of Peregrine Economics, the Plan of Allocation details the method for equitably distributing the Net Settlement Fund to Settlement Class Members who suffered economic losses as a result of the

---

[7] "Courts in this district approve these 'quick pay' provisions routinely." *Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016).

alleged violations of the Securities Exchange Act of 1934 ("Exchange Act") as set forth in the Federal Action and timely submit a valid Claim. *See* Joint Decl. ¶¶ 80-82. Lead Plaintiffs' damages expert calculated the estimated amount of alleged artificial inflation in the per-share price of Plantronics common stock during the Class Period that was allegedly proximately caused by Defendants' alleged materially false and misleading statements and omissions. In calculating the alleged artificial inflation, Lead Plaintiffs' damages expert considered the price change in Plantronics common stock in reaction to the public disclosure that allegedly corrected the alleged misrepresentations, adjusting for factors that were attributable to market or industry forces. *See* Notice ¶ 77; Joint Decl. ¶ 83

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Plantronics common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. Notice ¶¶ 79-80. Under the Plan, Claimants who purchased shares during the Class Period but did not hold those shares through the first alleged corrective disclosure on June 18, 2019, will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the alleged fraud. *Id*. ¶ 80A. For shares sold on or after 2:30 pm Eastern Time on June 18, 2019, through and including the close of trading on November 5, 2019, the Recognized Loss Amount will *be the lesser of*: (i) the amount of artificial inflation per share on the date of purchase/acquisition *minus* the amount of artificial inflation per share on the date of sale, or (ii) the purchase price *minus* the sale price. *Id*. ¶ 80B. For shares sold from November 6, 2019, through and including the close of trading on February 3, 2020, the Recognized Loss Amount will be *the least of*: (i) the amount of artificial inflation per share on the date of purchase or acquisition; (ii) the purchase price *minus* the sale price, or (iii) the purchase price *minus* the average closing price between November 6, 2019, and the date of sale as stated in Table B in the Notice. *Id*. ¶ 80C. For shares held as of the close of trading on February 3, 2020, the Recognized Loss Amount will be *the lesser of*: (i) the amount of artificial inflation per share on the date of purchase or acquisition; or (ii) the purchase price *minus* $27.19, the average closing price for

Plantronics common stock from November 6, 2019, through February 3, 2020 (the 90-day lookback period following the Class Period). *Id*. ¶ 80D; Joint Decl. ¶ 84.

The sum of a Claimant's Recognized Loss Amounts for all of his, her, their, or its Class Period purchases is the Claimant's "Recognized Claim." Notice ¶ 81. The Plan of Allocation also limits Claimants' Recognized Claim based on whether they had an overall market loss in their transactions in Plantronics common stock during the Class Period. *Id*. ¶¶ 88-89. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id*. ¶¶ 90-91; Joint Decl. ¶ 85.

One hundred percent of the Net Settlement Fund will be distributed to eligible Claimants. Moreover, if any funds remain after an initial distribution to eligible Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective. Notice ¶ 93. The Plan of Allocation identifies the Howard University School of Law Investor Justice and Education Clinic ("IJEC") as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to all eligible Claimants have been completed. *Id*. The IJEC is a law school clinic that provides law students with the opportunity to represent clients in securities cases against securities broker-dealers in FINRA arbitrations. The IJEC also provides investor education and outreach programs for underserved investing communities. *See* https://law.howard.edu/academics/clinical-law-center/investor-justice-and-education-clinic-ijec. The Parties have no connection to the IJEC. Joint Decl. ¶ 86. The IJEC is an appropriate *cy pres* recipient because of the nature of the securities fraud claims at issue in this Action, and this Court has approved it as a *cy pres* recipient in another similar action. *See Smith v. NetApp, Inc.*, No: 4:19-cv-04801-JST, slip op. at 2-3 (N.D. Cal. Dec. 8, 2022), ECF No. 92. But to reiterate, only a small residual amount will be paid to IJEC, if and when further distributions to eligible Settlement Class Members are no longer cost effective.

Critically, approximately 22,299 notice packets advising Settlement Class Members of the Plan of Allocation and their right to object to the Plan of Allocation have been mailed to potential

Settlement Class Members and Nominees. Supplemental Segura Decl. ¶ 4. There have been no objections to the Plan of Allocation. Joint Decl. ¶ 79.

Based on the foregoing, the Plan of Allocation is fair, reasonable, and adequate, and it should be approved. *See In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at \*8 (S.D. Cal. Oct. 14, 2022).

## VII.   NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA

A district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B). The notice also must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Young v. LG Chem, Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019). The PSLRA further requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

The substance of the Notice, which the Court preliminarily approved, satisfies Rule 23 and due process. In addition to publication of a summary notice in *The Wall Street Journal* and releasing it via *PR Newswire*, the Claims Administrator mailed 22,299 copies of the Court-approved Notice to potential Class Members and their nominees who could be identified with reasonable effort. *See* Supplemental Segura Decl. ¶ 4; ECF No. 243-4 ¶¶ 3-12. The Claims Administrator also provided all information regarding the Settlement online through the Settlement website, which also provided access to downloadable copies of the Notice, Claim Form, and other Settlement related documents. ECF No. 243-4 ¶ 13. Pursuant to the Stipulation, Defendants issued notice pursuant to CAFA on July 26, 2024. *See* ECF No. 241.

The notice program provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement, as required by the PSLRA.

Specifically, the Notice and Summary Notice apprise Settlement Class Members of, *inter alia*: (i) the Settlement amount; (ii) the reasons why the Parties are proposing the Settlement; (iii) the estimated average recovery per affected share of Plantronics common stock; (iv) the maximum amount of attorneys' fees and expenses that will be sought; (v) the identity and contact information for representatives from Lead Counsel to answer questions concerning the Settlement; (vi) the right of Settlement Class Members to request exclusion from the Settlement Class or object to the Settlement; (vii) the binding effect of a judgment on Settlement Class Members; (viii) the dates and deadlines for certain Settlement-related events; and (ix) the opportunity to obtain additional information about the Action and the Settlement by contacting Lead Counsel, the Claims Administrator, or visiting the Settlement website. *See* Joint Decl. ¶ 73; *see also* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Notice also detailed the Plan of Allocation and further explained that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid and timely Claim Forms under the Plan of Allocation. *See* Joint Decl. ¶ 73.

Based on the foregoing, the notice program fairly apprises Settlement Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval order, Rule 23, the PSLRA, and due process. *See, e.g.*, *Young*, 783 F. App'x at 736; *Fleming*, 2022 WL 2789496, at *5-6; *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

## VIII.  CONCLUSION

Lead Plaintiffs and Lead Counsel achieved a highly favorable settlement for the Settlement Class. Lead Plaintiffs therefore respectfully request that the Court approve the Settlement and Plan of Allocation. Attached as Appendix A to this Motion is a checklist that summarizes the Motion's compliance with the Northern District of California's Procedural Guidance for Class Action Settlements.

Dated: July 10, 2025                                    **HAGENS BERMAN SOBOL SHAPIRO LLP**

                                                         */s/ Sean R. Matt*
                                                         Steve W. Berman (admitted *pro hac vice*)
                                                         Sean R. Matt (admitted *pro hac vice*)

1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
sean@hbsslaw.com

-and-

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com

*Counsel for Lead Plaintiff Ilya Trubnikov and Lead Counsel for the Settlement Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ John Rizio-Hamilton*
John Rizio-Hamilton (admitted *pro hac vice*)
Alexander M. Noble (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
johnr@blbglaw.com
alexander.noble@blbglaw.com

-and-

Jonathan D. Uslaner (Bar No. 256898)
2121 Avenue of the Stars, Suite 2575
Los Angeles, California 90067
Tel: (310) 819-3470
jonathanu@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension Fund and Lead Counsel for the Settlement Class*

**Appendix A**

**CHECKLIST FOR N.D. CAL. PROCEDURAL
<u>GUIDANCE FOR CLASS ACTION SETTLEMENTS</u>**

**FINAL APPROVAL PAPERS**

| N.D. Cal. Procedural Guidance Provision | Where Discussed in Papers |
|---|---|
| **1)  CLASS MEMBERS' RESPONSE**—The motion for final approval briefing should include information about | |
| the number of undeliverable class notices and claim packets, | Supp. Segura Decl. ¶ 5. |
| the number of class members who submitted valid claims, | Settlement Motion at 18:15-18; Supp. Segura Decl. ¶ 11. |
| the number of class members who opted out, and | Settlement Motion at 18:4-6; Supp. Segura Decl. ¶ 8; Joint Decl. ¶ 79. |
| the number of class members who objected to or commented on the settlement | Settlement Motion at 18:4-6; Joint Decl. ¶ 79 |
| In addition, the motion for final approval should respond to any objections. | There were no objections. |
| **2)  ATTORNEYS' FEES**—All requests for approval of attorneys' fees must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund. Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed. Counsel should be prepared to submit copies of detailed billing records if the court orders. | Fee Motion (ECF No. 242) at 15-19; Joint Fee Decl. (ECF No. 243), ¶¶ 79-80.<br><br>Rizio-Hamilton Decl. for BLB&G (ECF No. 243-6), ¶¶ 8-14, 20, and Exs. 1, 2, 4, 5 and 6.<br><br>Matt Decl. for Hagens Berman (ECF No. 243-7), ¶¶ 8-14, 20, and Exs. 1, 2, 4, 5 and 6. |
| Regardless of when they are filed, requests for attorneys' fees must be noticed for the same date as the final approval hearing. If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions. The motion for attorneys' fees should refer to the history and facts set out in the motion for final approval. | The Settlement Motion and Fee Motion are noticed for the same date, August 21, 2025. |
| **3)  SERVICE AWARDS**—All requests for service awards must be supported by evidence of the value provided by the proposed awardees, the risks they undertook in participating, the time they spent on the litigation, and any other justifications for the awards. | No service awards or PSLRA cost awards are sought. |

| N.D. Cal. Procedural Guidance Provision | Where Discussed in Papers |
|---|---|
| 4) **ELECTRONIC VERSIONS**—Electronic versions (Microsoft Word or Word Perfect) of all proposed orders and judgments should be submitted to the presiding judge's Proposed Order (PO) email address at the time they are filed. | The proposed Judgment Approving Class Action Settlement and the proposed Order Approving Plan of Allocation will be emailed in Word format to jstpo@cand.uscourts.gov<br><br>The proposed Order Awarding Attorneys' Fees and Litigation Expenses was emailed in Word format to jstpo@cand.uscourts.gov when it was filed on April 25, 2025. |