**HAGENS BERMAN SOBOL SHAPIRO LLP**
Sean R. Matt (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
sean@hbsslaw.com

*Counsel for Lead Plaintiff Ilya Trubnikov and*
*Lead Counsel for the Settlement Class*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
John Rizio-Hamilton (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile:(212) 554-1444
johnr@blbglaw.com

*Counsel for Lead Plaintiff Roofers' Pension Fund*
*and Lead Counsel for the Settlement Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE PLANTRONICS, INC. SECURITIES LITIGATION | No. 4:19-cv-07481-JST<br><br>**JOINT DECLARATION OF SEAN R. MATT AND JOHN RIZIO-HAMILTON IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>Judge:      Hon. Jon S. Tigar<br>Courtroom: 6<br>Date:       August 21, 2025<br>Time:       2:00 p.m. |

JOINT DECLARATION IN SUPPORT OF
FINAL APPROVAL MOTION

4:19-cv-07481-JST

# TABLE OF CONTENTS

PAGE

I. HISTORY OF THE ACTION ...................................................................................2

    A. The Court appointed Lead Plaintiffs and Lead Counsel. ...........................2

    B. Lead Counsel devoted substantial time to investigating, preparing, and filing the Amended Complaint. ...............................................................3

    C. There was lengthy motion to dismiss practice. ..........................................4

    D. The Parties conducted extensive fact discovery. .......................................5

        1. Document discovery. ......................................................................6

        2. There were many discovery disputes. ............................................8

        3. Deposition discovery. .....................................................................9

    E. Lead Plaintiffs filed the Third Amended Complaint based on discovery. ...................................................................................................10

    F. Lead Plaintiffs filed a Motion for Class Certification and worked with experts. ......................................................................................................11

    G. After extensive mediation efforts, the Parties agreed to the proposed Settlement. ................................................................................................11

    H. The Court preliminarily approved the Settlement. ....................................12

II. THE SIGNIFICANT RISKS OF THE LITIGATION.............................................13

    A. The Settlement Amount compares favorably to the likely damages that could be proved at trial, especially given the risks presented............14

    B. Additional risks confronting Lead Plaintiffs' claims, including the duration of continued litigation............................................................16

    III. NOTICE OF LEAD COUNSEL'S FEE AND EXPENSE REQUEST WAS MAILED TO ALL SETTLEMENT CLASS MEMBERS WHO COULD BE IDENTIFIED ........................................................................................................18

IV. PLAN FOR ALLOCATING THE PROCEEDS OF THE SETTLEMENT........................21

JOHN RIZIO-HAMILTON and SEAN R. MATT and declare as follows:

1.      I, SEAN R. MATT, am a partner in the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman"). Hagens Berman is counsel for Lead Plaintiff Ilya Trubnikov and is one of the Court-appointed Lead Counsel in the above-captioned action (the "Action").

2.      I, JOHN RIZIO-HAMILTON, am a partner in the law firm of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"). BLB&G is counsel for Lead Plaintiff Roofers' Pension Fund and is one of the Court-appointed Lead Counsel in the Action. Roofers' Pension Fund and Mr. Trubnikov are collectively referred to as "Lead Plaintiffs," and BLB&G and Hagens Berman are collectively referred to as "Lead Counsel."[1]

3.      We submit this declaration in support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement. We have personal knowledge of the matters set forth herein based on our active participation in all aspects of the prosecution and settlement of the Action.

4.      The proposed Settlement before the Court provides for the resolution of all claims in the Action in exchange for a cash payment of $29,500,000.00, plus interest, for the benefit of the Settlement Class. The Settlement Amount has been paid into an escrow account and is earning interest. We believe that the Settlement is a highly favorable outcome for the Settlement Class because it confers a substantial, certain, and near-term recovery for class members while avoiding the significant risks of continued litigation, including the risk that the Settlement Class could recover nothing or less than the Settlement Amount after years of additional litigation, appeals, and delay.

5.      The proposed Settlement is also the result of extensive efforts by Lead Plaintiffs and Lead Counsel, which included, among other things: (1) conducting an extensive investigation into the alleged fraud, including interviews with over 50 former Plantronics employees and a thorough review of public information such as filings with the U.S. Securities and Exchange Commission

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated July 18, 2024 (ECF No. 230-1) (the "Stipulation"), which was entered into by and among (i) Lead Plaintiffs, on behalf of itself and the Settlement Class, and (ii) defendant Plantronics Inc. ("Plantronics") and defendants Joseph Burton, Charles Boynton, and Pamela Strayer (collectively, the "Individual Defendants" and, together with Plantronics, "Defendants").

("SEC"), analyst reports, conference call transcripts, and news articles; (2) drafting a detailed Amended Complaint based on Lead Counsel's extensive investigation as well as a revised Second Amended Complaint to address certain issues identified by the Court; (3) drafting briefing in opposition to Defendants' motions to dismiss the Amended Complaint and Second Amended Complaint; (4) conducting substantial fact discovery, which included exchanging initial disclosures, propounding thorough document requests, and reviewing Defendants' extensive document productions; (5) preparing and serving document subpoenas to more than a dozen non-party witnesses; (6) obtaining over hundreds of thousands of pages of documents from Defendants and non-parties that were subject to extensive review; (7) taking or defending eight depositions, including of those of Lead Plaintiffs and several former Plantronics employees cited in the Complaint and extensively preparing for additional planned depositions; (8) preparing and filing a Third Amended Complaint based on additional information developed in the course of discovery; (9) preparing and filing Lead Plaintiffs' motion for class certification; (10) consulting extensively with experts, including on issues of damages and market efficiency; and (11) engaging in extended arm's-length settlement negotiations, including through two formal mediation sessions held roughly a year apart. Due to these extensive efforts, Lead Plaintiffs and Lead Counsel were well informed of the strengths and weaknesses of the claims and defenses in the Action at the time they achieved the proposed Settlement.

6.     Lead Plaintiffs, who actively participated in the Action and closely supervised the work of Lead Counsel, have approved the Settlement.

7.     As discussed further below and in the accompanying memorandum, Lead Plaintiffs respectfully submit that the proposed Settlement meets the standards for final approval under Rule 23 and is a fair, reasonable, and adequate result for the Settlement Class.

## I.     HISTORY OF THE ACTION

**A.     The Court appointed Lead Plaintiffs and Lead Counsel.**

8.     On November 13, 2019, the initial complaint in this action was filed in the United States District Court for the District of Northern District of California (the "Court"), alleging violations of the federal securities laws. (ECF No. 1.)

9.      On January 13, 2020, Roofers' Pension Fund and Ilya Trubnikov each filed motions for appointment to serve as Lead Plaintiff. (ECF Nos. 22, 31.) Multiple other movants also filed competing motions for appointment as Lead Plaintiff. (ECF Nos. 12, 16, 24.)

10.      On February 13, 2020, the Court entered a Stipulation and Order appointing Ilya Trubnikov and Roofers' Pension Fund as Lead Plaintiffs for the Action and approving their selection of Hagens Berman Sobol Shapiro LLP and Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel. (ECF No. 62.)

**B.      Lead Counsel devoted substantial time to investigating, preparing, and filing the Amended Complaint.**

11.      Lead Counsel undertook an extensive investigation into the alleged fraud and potential claims that could be asserted by Lead Plaintiffs in the Action. This investigation began prior to the Court's appointment of Lead Plaintiffs and continued through preparation of the Amended Complaint for Violations of the Federal Securities Laws filed on June 5, 2020 ("Amended Complaint"). (ECF No. 72.) The investigation included a careful review and analysis of: (i) Plantronics' public filings with the SEC; (ii) research reports from securities and financial analysts; (iii) Company press releases and reports; (iv) Company website and marketing materials; (v) news and media reports concerning the Company and other facts related to this action; (vi) price and volume data for Plantronics securities; and (vii) additional materials and data concerning the Company and industry.

12.      In connection with their investigation, Lead Counsel and their in-house investigators located former employees of Plantronics who might have relevant information pertaining to the claims asserted in the Action. This included contacting over 360 former Plantronics employees who were believed to have potentially relevant information. Lead Counsel and/or their in-house investigators interviewed 52 of these individuals. Lead Counsel ultimately included detailed information received from nine of these former Plantronics employees in the Amended Complaint.

13.      In connection with the preparation of the Amended Complaint, Lead Counsel also consulted with Chad Coffman, a financial economist who has substantial experience in providing expert analysis and testimony regarding loss causation and damages in securities class actions. Lead

Counsel consulted with Mr. Coffman about, among other things, the impact of Defendants' alleged misstatements and omissions on the market price of Plantronics' common stock and the damages suffered by Plantronics shareholders.

14. On June 5, 2020, Lead Plaintiffs filed the Amended Complaint. (ECF No. 72.) The Amended Complaint asserted claims on behalf of all persons and entities who purchased the common stock of Plantronics from August 7, 2018, through November 5, 2019, inclusive. The Amended Complaint asserted claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, against all Defendants; and claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the Individual Defendants. The Amended Complaint alleged that Defendants made materially false and misleading statements or omissions regarding Plantronics' sales practices during the Class Period; that the price of Plantronics common stock was artificially inflated during the Class Period as a result of the alleged false statements; and that the price of Plantronics stock declined when the truth concerning the alleged false statements was revealed to the market through a series of corrective disclosures from June 18, 2019, through November 5, 2019.

**C.     There was lengthy motion to dismiss practice.**

15. On August 7, 2020, Defendants moved to dismiss the Amended Complaint, asserting (among other things) that Lead Plaintiffs failed to sufficiently allege (i) actionable misstatements or omissions and (ii) that Defendants acted with scienter. (ECF No. 75.) Defendants also filed a request for judicial notice in connection with their motion to dismiss. (ECF No. 76.)

16. On October 2, 2020, Lead Plaintiffs filed and served memoranda of law in opposition to Defendants' motion to dismiss (ECF No. 79) and Defendants' request for judicial notice (ECF No. 80). Lead Plaintiffs explained that the Amended Complaint adequately identified the false and misleading statements and omissions, detailed the reasons why each challenged statement was materially false or omitted material facts, and raised a strong inference of scienter.

17. On November 16, 2020, Defendants filed their reply in further support of their motion to dismiss. (ECF No. 81.)

18.     On March 29, 2021, the Court issued an order granting Defendants' motion to dismiss and permitting Lead Plaintiffs to file an amended complaint to correct the deficiencies identified in the Court's order. (ECF No. 84.)

19.     Lead Plaintiffs filed a Second Amended Complaint for Violations of the Federal Securities Laws (the "SAC") on June 22, 2021, which contained new allegations meant to address the concerns identified by the Court in its March 29, 2021 order. (ECF No. 93.)

20.     On September 7, 2021, Defendants filed their motion to dismiss the SAC (ECF No. 97) and related request for judicial notice (ECF No. 98), arguing that the SAC did not adequately allege material misstatement or omissions, or a strong inference of scienter.

21.     On November 5, 2021, Lead Plaintiffs filed their opposition to Defendants' motion to dismiss the SAC, arguing that the SAC adequately alleged material misstatements and omissions and the requisite strong inference of scienter. (ECF No. 103.) The same day, Lead Plaintiffs also filed their opposition to Defendants' request for judicial notice. (ECF No. 104.) On December 13, 2021, Defendants filed their replies in further support of their motion to dismiss the SAC (ECF No. 105) and their request for judicial notice (ECF No. 106).

22.     On August 17, 2022, the Court issued an order granting in part and denying in part Defendants' motion to dismiss the SAC. The Court's ruling had the effect of limiting the Class Period to November 6, 2018, through November 5, 2019, inclusive. (ECF No. 109.) Defendants sought leave to file a motion for the Court to reconsider its order with respect to its denial in part of their motion to dismiss. (ECF No. 112.) The Court denied Defendants' motion for leave to file a reconsideration motion on November 7, 2022. (ECF No. 128.)

23.     On October 31, 2022, Defendants filed their answer to the SAC. (ECF No. 123.) Defendants' answer denied Lead Plaintiffs' allegations of wrongdoing and asserted various defenses to the claims.

**D.     The Parties conducted extensive fact discovery.**

24.     Discovery in the Action commenced in December 2022 and continued into June 2024.

25. Lead Plaintiffs served their first sets of interrogatories and requests for the production of documents to all Defendants on December 2, 2022. Five interrogatories were submitted asking Defendants to identify witnesses with knowledge, all of Plantronics' channel partners, the relevant document custodians, and the location of documents. Seventy-one requests for documents were submitted seeking, among other things, documents relating to Plantronics' leadership structure and key executives with knowledge of issues relevant to the case, the Enterprise Risk Management Project, Audit Committee investigations, and accounting and sales practices relating to Plaintiffs' allegations.

26. Lead Counsel prepared Lead Plaintiffs' Initial Disclosures and participated in the conference with Defendants under Federal Rule of Civil Procedure 26(f).

27. The Parties also drafted a Joint Case Management Statement submitted to the Court on February 14, 2023, which discussed the facts, issues, and history of the case and set forth the Parties' views on the scope of discovery to be conducted, e-discovery procedures, and proposed scheduling. (ECF No. 133.)

28. The Court held a case management conference on February 21, 2023 (ECF No. 134) and entered a Case Management Order on the same day. (ECF No. 135.)

29. The Parties exchanged their Initial Disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure on February 21, 2023.

30. The Parties also negotiated the terms of the protective order governing the treatment of documents and other information produced in discovery, which the Parties submitted to the Court on February 22, 2023 (ECF No. 136), and which the Court entered as an order on February 23, 2023 (ECF No. 137). The Parties also negotiated, and the Court so-ordered, the Stipulation and Order Establishing the Protocol for the Production of Documents and Electronically Stored Information (ECF No. 139, the "ESI Order") and the Stipulation and Order Establishing the Protocol for the Use of Technology Assisted Review (ECF No. 152, the "TAR Protocol").

**1. Document discovery.**

31. Defendants served their Responses and Objections to Lead Plaintiffs' First Request for Production of Documents on January 20, 2023. The Parties began exploring the possibility of a

settlement in the spring of 2023 and agreed to engage in private mediation to be held on June 22, 2023. The Parties agreed that Defendants would produce documents in a phased manner in response to Plaintiffs' discovery requests, and Defendants accordingly prioritized the production of certain categories of documents ahead of the June 22, 2023 mediation.

32.    After the Parties did not reach a resolution of the Action during the June 22, 2023, mediation, Lead Counsel then engaged in numerous meet and confers with Defendants' Counsel and conducted extensive negotiations over the scope and adequacy of Defendants' discovery responses, including relating to the TAR search process to be used and custodians whose documents should be searched. After extensive, hard-fought negotiations, Defendants produced documents from 33 custodians, including documents from Plantronics central files, hardcopy files, emails, Plantronics data, and certain custodians' text messages. In response to Lead Plaintiffs' requests, Defendants produced a total of over 114,000 documents, comprising over 616,000 pages.

33.    Lead Plaintiffs also prepared and issued extensive discovery requests to various non-parties who might possess relevant information. In total, Lead Plaintiffs issued subpoenas to more than a dozen third parties, including channel distributors for Plantronics products, consultants on the ERM project described in the Complaint, Plantronics Board Members, and Plantronics' former Chief Executive Officer. The subpoenaed parties included Crowe LLP, PK Analytics LLC, Model N, Inc., ZineMind USA, Inc., D&H Distributing Co., Ingram Micro Inc., Jenne Inc., ScanSource, Inc., TD Synnex Corp., Marv Tseu, Kathy Crusco, Marshall Mohr, Gregg Hammann, and Ken Kannappan. Lead Plaintiffs engaged in extensive meet and confers in pursuit of documents responsive to these subpoenas and obtained significant productions of additional documents. In total, the third parties produced more than 52,000 pages of documents in response to the subpoenas.

34.    In total, Defendants and third parties produced over 660,000 pages of documents from March 2023 through June 2024. Lead Counsel carefully reviewed, analyzed, and coded the documents produced by Defendants and third parties. In reviewing the documents, attorneys were tasked with making several analytical determinations as to the documents' importance and relevance. Specifically, they determined whether the documents were "hot," "relevant," or "not relevant." They also assessed which specific issues the documents concerned and determined the identities of the

Plantronics employees or other potential deponents to whom the documents related so that the documents could be retrieved when preparing for depositions. Lead Counsel's partners structured the document review to include quality control checks and regular team meetings to discuss the documents of highest interest and other issues that arose during the document review. Through these meetings, Lead Counsel ensured that all attorneys involved in the review understood the developing nature of the evidence and focused document review on the key issues in the Action. The documents discussed included those that were particularly relevant to Lead Plaintiffs' claims and that offered insight into other important aspects of the case, including Defendants' likeliest defenses.

35.     On May 5, 2023, Defendants served their First Set of Requests for Production of Documents to Lead Plaintiffs, propounding 29 document requests, and Defendants' First Set of Interrogatories to Lead Plaintiffs, which propounded 11 interrogatories. These discovery requests sought information concerning, among other things, Lead Plaintiffs' transactions in Plantronics securities, any related communications concerning Plantronics, their involvement in the Action, and engagement of Lead Counsel. On July 14, 2023, Lead Plaintiffs served objections and responses thereto, which the Parties discussed during meet and confers held August 9 and 14, 2023, and in subsequent written exchanges. Lead Plaintiffs engaged in significant meet and confers and negotiations with Defendants concerning the scope of discovery to be produced in response to Defendants' discovery requests. Lead Plaintiffs searched for and gathered documents responsive to Defendants' requests for production of documents, which documents were then reviewed by Lead Counsel. Lead Plaintiffs subsequently engaged in additional meet and confers with Defendants concerning the scope of Lead Plaintiffs' productions and produced additional documents in response to Defendants' requests.

36.     In addition, Defendants served a document subpoena on the outside investment manager for Lead Plaintiff Roofers' Pension Fund and that investment manager produced documents to Defendants.

**2.      There were many discovery disputes.**

37.     Discovery in the Action was highly contested. Lead Counsel and Defendants' Counsel exchanged numerous letters and participated in numerous meet-and-confer sessions

regarding, among other things, the scope of the documents produced, the collection and production of text messages from Defendants' document custodians, and Defendants' assertions of legal privilege over documents in discovery.

38.     Defendants' Counsel also represented several of the non-parties on whom Lead Plaintiffs served subpoenas, and Lead Counsel and Defendants' Counsel exchanged multiple letters and participated in multiple meet-and-confer sessions regarding the non-parties' responses to those subpoenas. These disputes were resolved through negotiation between the Parties and resulted in Defendants producing thousands of pages of additional documents.

**3.     Deposition discovery.**

39.     The Parties also conducted substantial deposition discovery. Lead Counsel took or defended eight depositions that occurred prior to the Parties' agreement to settle, which included the depositions of six key former Plantronics employees and both Lead Plaintiffs. These depositions required significant time devoted to preparation, including reviewing documents and drafting preparation materials to facilitate questioning. Details on these eight depositions are as follows:

| Deponent | Title | Date(s) taken |
|---|---|---|
| Ken Kannapan | Former Chief Executive Officer of Plantronics | 12/11/2023 12/12/2023 |
| FE-6 | Former Executive Vice President of Engineering at Plantronics (witness cited in Complaint) | 2/13/2024 |
| Gary Menzel | Trustee and Chairman of Co-Lead Plaintiff Roofers' Pension Fund (Rule 30(b)(6) witness for Roofers' Pension Fund) | 2/26/2024 |
| Ilya Trubnikov | Co-Lead Plaintiff | 3/4/2024 |
| FE-9 | Former Manager of Internal Audit at Plantronics (witness cited in Complaint) | 4/26/2024 |
| FE-2 | Former Senior Country Manager for the Philippines and Vietnam at Plantronics (witness cited in Complaint) | 5/14/2024 5/15/2024 |
| FE-4 | Former Operations Finance Manager at Polycom (witness cited in Complaint) | 5/17/2024 |
| Roland Rice | Former Vice President of Sales at Plantronics | 5/24/2024 |

40. In addition to the eight depositions taken, Lead Plaintiffs had noticed, and the Parties had scheduled, eight additional depositions at the time the Settlement was reached, including those of the three Individual Defendants, as well as additional fact witnesses who were current or former Plantronics employees. These depositions were scheduled to occur between June 12, 2024 and July 16, 2024. Lead Counsel incurred significant time preparing for these depositions before the agreement to settle was reached on June 7, 2024, including by reviewing voluminous document discovery relevant to the depositions and drafting preparation materials including proposed questions and document exhibits.

**E. Lead Plaintiffs filed the Third Amended Complaint based on discovery.**

41. On November 7, 2023, Lead Plaintiffs moved for leave to file a Third Amended Complaint for Violations of the Federal Securities Laws (the "TAC" or "Complaint"), which included allegations based on documents produced in discovery in support of the claims, including to restore claims based on Defendants' alleged August 7, 2018 misstatements that the Court had previously dismissed, as well as allegations concerning alleged misstatements by Defendants on September 11, 2018, and new facts regarding loss causation. (ECF No. 173.) Defendants filed their opposition to Lead Plaintiffs' motion for leave to file the TAC on December 1, 2023, arguing that Lead Plaintiffs did not pursue the proposed amendments with the diligence required for leave to be granted and the new allegations did not support any of the claims Lead Plaintiffs sought to add or restore to the Action. (ECF No. 177.) Lead Plaintiffs filed their reply in further support of permission to file the TAC on December 21, 2023. (ECF No. 180.)

42. On April 12, 2024, the Court granted in part and denied in part Lead Plaintiffs' motion for leave to file the TAC. (ECF No. 215.) The Court denied the motion to add claims based on the alleged September 11, 2018 misstatement and the additional allegations of loss causation, but permitted the amendment to reinstate claims based on the August 7, 2018 statements, restoring the Class Period to August 7, 2018, through November 5, 2019. On May 10, 2024, Defendants filed their Answer to the TAC. (ECF No. 220.)

**F.       Lead Plaintiffs filed a Motion for Class Certification and worked with experts.**

43.      On February 8, 2024, Lead Plaintiffs filed their motion for class certification and appointment of class representatives and class counsel, which was accompanied by a report from Lead Plaintiffs' expert Chad Coffman on market efficiency and common damages methodologies. (ECF No. 190.)

44.      On March 21, 2024, Defendants filed their opposition to that motion. (ECF No. 201.) On April 18, 2024, Lead Plaintiffs filed their reply papers in further support of the motion. (ECF No. 217.)

45.      On May 17, 2024, the Court informed the Parties that it would consider the motion on their papers and vacated the hearing on the motion. (ECF No. 224.) Lead Plaintiffs' motion for class certification was still pending when the Parties reached their agreement to settle.

46.      Lead Counsel further consulted with Mr. Coffman and his team in preparing Lead Plaintiffs' complaints, in reviewing documents produced in discovery, and in preparation for settlement negotiations.

**G.       After extensive mediation efforts, the Parties agreed to the proposed Settlement.**

47.      The Parties began exploring the possibility of a settlement in the spring of 2023. The Parties agreed to engage in private mediation and retained Michelle Yoshida of Phillips ADR Enterprises to act as mediator in the Action. On June 22, 2023, counsel for the Parties participated in a full-day mediation session before Ms. Yoshida. In advance of that session, the Parties exchanged and submitted detailed confidential mediation statements to Ms. Yoshida, accompanied by documents and exhibits. The session ended without any agreement being reached.

48.      On June 7, 2024, after conducting substantial fact discovery and after the Court had granted in part Lead Plaintiffs' motion for leave to file the TAC, the Parties participated in a second full-day mediation session. This session was held before the Honorable Layn R. Phillips of Phillips ADR Enterprises (the "Mediator"), a former United States District Judge. In advance of the mediation session, the Parties again prepared and submitted detailed confidential mediation statements to the Mediator addressing issues of liability and damages issues, accompanied by documents and exhibits.

49.     At the conclusion of this second mediation session, and following extensive arm's-length negotiations conducted with the assistance and facilitation of the Mediator, the Parties agreed to settle the Action in its entirety for $29,500,000. Throughout the mediation process, Lead Plaintiffs and Lead Counsel possessed a thorough understanding of the relative strengths and weaknesses of the claims and whether the Settlement obtained was fair, reasonable, and adequate. As made clear during the litigation and settlement discussions, both sides believed in the strength of their claims and defenses. Lead Counsel, moreover, consistently stated throughout the discussions that it was willing and able to take the case to trial rather than settle for less than fair value.

50.     In the ensuing weeks, the Parties negotiated the full terms of the Settlement and drafted the settlement agreement and related papers, including the notices to be provided to the Settlement Class.

51.     On July 18, 2024, the Parties executed the Stipulation and Agreement of Settlement (ECF No. 230-1), which set forth the complete terms of the Parties' agreement to settle all claims asserted in the Action for $29,5000,000, subject to the approval of the Court. On the same day, the Parties also executed a Supplemental Agreement which provides that Plantronics has the option to terminate the Settlement if persons who request exclusion from the Settlement Class exceed a certain threshold. (ECF No. 231-3.)

**H.     The Court preliminarily approved the Settlement.**

52.     On July 19, 2024, Lead Plaintiffs filed a motion for preliminary approval of the Settlement. (ECF No. 230.) On August 6, 2024, Lead Plaintiffs filed a notice informing the Court that there had been no opposition to the preliminary approval motion. (ECF No. 235.)

53.     On February 10, 2025, the Court entered the Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice As Modified (ECF No. 240) (the "Preliminary Approval Order") which, among other things: (1) preliminarily approved the Settlement; (2) approved the form of Notice, Summary Notice, and Claim Form, and authorized notice to be given to Settlement Class Members through mailing of the Notice and Claim Form, posting the Notice and Claim form on a Settlement website, and publication of the Summary Notice in *The Wall Street Journal* and over the *PR Newswire*; (3) established procedures and deadlines by which

JOINT DECLARATION IN SUPPORT OF          12                    4:19-cv-07481-JST
FINAL APPROVAL MOTION

Settlement Class Members could participate in the Settlement, request exclusion from the Settlement Class, or object to the Settlement, the proposed Plan of Allocation, and/or the fee and expense application; and (4) set a schedule for the filing of opening papers and reply papers in support of the proposed Settlement, Plan of Allocation, and the Fee and Expense Application. The Preliminary Approval Order also scheduled the Settlement Hearing to determine, among other things, whether the Settlement should be finally approved.[2]

## II.   THE SIGNIFICANT RISKS OF THE LITIGATION

54. The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a $29,500,000 cash payment. Lead Plaintiffs and Lead Counsel believe that the proposed Settlement is a very favorable result for the Settlement Class.

55. Lead Plaintiffs faced meaningful risks in this Action from the outset with respect to proving liability and recovering full damages in this case. To prevail in this case, Lead Plaintiffs had the burden to convince a unanimous jury by a preponderance of the evidence of each of the elements of their claims, including that (i) Defendants made misstatements; (ii) the misstatements were material; (iii) the misstatements were made with *scienter* (*i.e.*, knowingly or with deliberate recklessness); (iv) investors relied upon the misstatements; and (v) Defendants' fraud caused investors' losses.

56. While Lead Plaintiffs had largely sustained their claims following the pleading stage of the Action, absent a settlement, Lead Plaintiffs would still need to prevail at several additional stages of the litigation, including defeating Defendants' opposition to Lead Plaintiffs' motion for class certification, Defendants' anticipated motion for summary judgment, at trial, and on appeal. At each of these stages, Lead Plaintiffs would have faced significant risks related to establishing liability and full damages, including, among other things, overcoming Defendants' falsity, scienter, and loss causation challenges. Even after any trial, Lead Plaintiffs would have faced post-trial motions,

---

[2] The Settlement Hearing was initially scheduled for August 14, 2025 at 2:00 p.m. ECF No. 240, ¶ 5. On April 28, 2025, the Court adjourned the Settlement Hearing to August 21, 2025 at 2:00 p.m. (ECF No. 244.)

including a potential motion for judgment as a matter of law, as well as further appeals that might have prevented Lead Plaintiffs from successfully obtaining a recovery for the Settlement Class.

**A. The Settlement Amount compares favorably to the likely damages that could be proved at trial, especially given the risks presented.**

57. The Settlement Amount—$29.5 million in cash, plus interest—represents a significant recovery for the Settlement Class. The Settlement is nearly triple the size of the median securities class-action settlement in the Ninth Circuit from 2015 through 2024 ($10 million). *See* CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2024 REVIEW AND ANALYSIS (2025). (ECF No. 243-3.)

58. The $29.5 million Settlement is also a favorable result considered in relation to the maximum amount of damages that could be realistically established at trial, in the event that Lead Plaintiffs overcame all the risks discussed above and fully prevailed on class certification and liability issues, including falsity, scienter and loss causation, at summary judgment, and before a jury.

59. Lead Plaintiffs calculated the range of possible class damages in consultation with their damages expert, Chad Coffman of Peregrine Economics. Mr. Coffman estimated that the maximum theoretical damages that could be established at trial would be approximately $248 million. This figure assumed that Lead Plaintiffs would prevail *entirely*—which was far from certain (and, indeed, unlikely)—on all liability issues for the entire Class Period *and* all loss causation and damages issues by establishing the full amount of the abnormal declines in Plantronics stock on the three alleged corrective disclosure dates (as well as a follow-on reaction on June 19, 2019) was causally connected to Defendants' alleged misstatements.

60. Lead Plaintiffs' damages expert arrived at these estimated damages by first calculating the amount of "artificial inflation" that existed in Plantronics' stock price as a result of Defendants' misstatements (before the alleged corrective disclosures in this case occurred), and then applying a trading model to estimate the number of shares purchased during the Class Period when the price of Plantronics shares were inflated and sold after some or all of the artificial inflation had been removed (or held until the end of the period). To quantify the amount of artificial inflation in

JOINT DECLARATION IN SUPPORT OF                14                4:19-cv-07481-JST
FINAL APPROVAL MOTION

Plantronics' stock price prior to the alleged corrective disclosures in this case, Mr. Coffman used an "event study"—a standard regression analysis that compared the movements in the price of Plantronics common stock to the movements in the stock prices of the overall stock market and an index of industry peers—to determine that Plantronics' common stock suffered statistically significant abnormal declines (relative to the market and industry peers) following the alleged corrective disclosures and the amount of those declines. Mr. Coffman concluded that the artificial inflation in each share of Plantronics stock at the outset of the Class Period was $24.72 and declined by $2.11 on June 18, 2019, $3.10 on June 19, 2019, $5.16 on August 7, 2019, and $14.35 on November 6, 2019.

61. Mr. Coffman then used a trading model to calculate the number of damaged shares purchased by the entire class of investors. Shares are considered "damaged" if they were purchased during the Class Period when the Plantronics' share price was artificially inflated and held over the date of one or more of the corrective disclosures that dissipated the artificial inflation. To estimate how many shares of Plantronics stock were held over each of the alleged corrective disclosure dates, Mr. Coffman and his team looked at publicly available information about institutional investors' trades and used a standard, two-trader proportional trading model for all other investors. Based on these analyses, Mr. Coffman has estimated that the total number of damaged shares would be approximately 20.4 million and total resulting damages would be $248 million.

62. The $29.5 million Settlement Amount therefore represents approximately 12% of Lead Plaintiffs' *maximum* class-wide damages. This assumes that Lead Plaintiffs would prevail entirely on all liability issues for the entire Class Period and all loss causation and damages issues and could establish that the full amount of the abnormal declines in Plantronics stock on the three alleged corrective disclosure dates (as well as a follow-on reaction on June 19, 2019), was causally connected to Defendants' alleged misstatements. This is a favorable recovery for Settlement Class Members, especially when considered in light of the real risk of lesser recovery (or no recovery at all), and the typical level of recovery in securities class actions. Indeed, Defendants continue to vigorously dispute that Lead Plaintiffs or investors were damaged at all or that the alleged

misstatements caused any portion of the price declines, and further believe Lead Plaintiffs and the class are not entitled to recover anything through this Action.

63.     Moreover, the recovery is particularly strong in light of Defendants' potential arguments that might have substantially reduced the class's damages. For example, Defendants have argued that the price declines on June 18 and 19, 2019, following the initial alleged corrective disclosure, resulted from Plantronics' disclosure of tariffs impacting its sales in China—rather than from release of information about the alleged channel-stuffing scheme. Defendants have also challenged loss causation for the other two remaining alleged corrective disclosures on the grounds that the information disclosed was not sufficiently related to the alleged misstatements. In addition, as noted above, if Defendants succeeded in arguing that certain of the misstatements were not actionable, the Class Period could have been shortened and the maximum damages for the shortened Class Period would be greatly reduced, potentially to $112.9 million if the first actionable misstatement was found to occur on May 8, 2019, in which case the Settlement Amount would represent approximately 26% of these revised class-wide damages. Indeed, this risk was particularly acute here, given that the Court's motion to dismiss ruling had initially shortened the Class Period. Accordingly, if Lead Plaintiffs were unable to sustain the entire Class Period or were unable to establish loss causation for certain of the alleged disclosures, or for some portion of the price declines on those days, the maximum potential damages at trial would be substantially reduced from the $248 million maximum.

64.     Given the meaningful litigation risks, and the immediacy and amount of the $29,500,000 recovery for the Settlement Class, Lead Plaintiffs and Lead Counsel believe that the Settlement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class.

**B.     Additional risks confronting Lead Plaintiffs' claims, including the duration of continued litigation.**

65.     While Lead Plaintiffs believed in the merits of their claims, there were additional, significant risks that could have prevented Lead Plaintiffs from prevailing at trial. This was not a case in which Plantronics ever restated its financials, nor was there any parallel SEC or other government action brought against Plantronics or any of the other Defendants. Lead Plaintiffs would

be required to prove all elements of their claims to prevail, while the Defendants needed to succeed on only one defense to potentially defeat the entire Action. Over the course of the litigation, including the mediation sessions, Defendants disputed the falsity and materiality of their alleged misstatements and vigorously challenged scienter.

66. Defendants also challenged Lead Plaintiffs' theory of loss causation and damages in opposing class certification and would have been expected to continue doing so at summary judgment and trial.

67. Defendants had substantial arguments concerning each of these issues. To start, Lead Plaintiffs faced challenges in proving that Defendants made misleading statements or omissions by failing to disclose the Company's revenues were the result of an alleged channel-stuffing scheme that temporarily boosted the Company's short-term revenues at the expense of long-term revenue. Defendants argued that the Company's channel sales and inventory data from the Class Period was inconsistent with the allegations that the Company had engaged in a channel-stuffing scheme— because the sales data did not show any appreciable spike in channel inventory as to the total units of Company products in the overall channel. Second, Defendants would have argued that any increases in channel inventory were unrelated to any purported channel-stuffing scheme but resulted instead from the Company's switch to a "back-end loaded" sales model—a model that involved higher percentages of sales and inventory accumulation at the end of fiscal quarters.

68. For similar reasons, Lead Plaintiffs also expected that Defendants would argue the alleged misstatements were not made with "scienter" as required under the Exchange Act. Defendants would likely have argued that the Individual Defendants did not have an intent to mislead investors given that sales data on a unit basis did not meaningfully increase, and that, even if their statements were false or misleading, that they believed those statements to be true based on information available when the statements were made. Thus, there was a meaningful risk that the Court or jury could find against Lead Plaintiffs on these issues on a complete record at summary judgment or trial.

69.    Defendants were also expected to challenge loss causation for the other two remaining alleged corrective disclosures on August 6, 2019, and November 5, 2019, on the grounds that the information disclosed was not sufficiently related to the alleged misstatements.

70.    Further, in order to obtain recovery for the Settlement Class, Lead Plaintiffs would have to prevail at several stages—on the pending motion for class certification, at summary judgment, and at trial—and, even if they prevailed on those, on the appeals that were likely to follow. Thus, there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all. In light of these risks, the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiffs and Lead Counsel believe that the proposed $29,500,000 Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

71.    Given the significant risks of establishing liability and loss causation here, Lead Counsel believe that this level of recovery represents an excellent result for the Settlement Class and that this factor strongly warrants final approval.

72.    Further, in the absence of a settlement, the continued litigation of the Action would require the expenditure of substantial additional sums of time and money at trial and beyond, with no guarantee that any additional benefit would be provided to the Settlement Class. Even if Lead Plaintiffs prevailed at trial and met their burdens in establishing falsity, materiality, class-wide reliance under the "fraud of the market" presumption, loss causation, the measure of per-share damages (if any), and control person liability, the case would still be far from over. For example, Defendants would have had the opportunity to challenge an individual Settlement Class Member's membership in the Class, the presumption of reliance for any Settlement Class Member, and the amount of damages due each Settlement Class Member. Moreover, Defendants would have certainly filed an appeal, which would further delay (and risk entirely) any additional benefit received via trial.

III.    **NOTICE OF LEAD COUNSEL'S FEE AND EXPENSE REQUEST WAS MAILED TO ALL SETTLEMENT CLASS MEMBERS WHO COULD BE IDENTIFIED**

73.    The Court's Preliminary Approval Order directed that the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees

JOINT DECLARATION IN SUPPORT OF FINAL APPROVAL MOTION                18                4:19-cv-07481-JST

and Litigation Expenses (the "Notice") and Proof of Claim and Release Form ("Claim Form") be disseminated to potential members of the Settlement Class. The Preliminary Approval Order also set June 25, 2025, as the deadline for Settlement Class Members to submit objections to the Settlement, the Plan of Allocation, or the Fee and Expense Application; to request exclusion from the Settlement Class; or to submit a Claim Form. The notice program provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement, as required by the PSLRA. Specifically, the Notice and Summary Notice apprise Settlement Class Members of, *inter alia*: (i) the Settlement amount; (ii) the reasons why the Parties are proposing the Settlement; (iii) the estimated average recovery per affected share of Plantronics common stock; (iv) the maximum amount of attorneys' fees and expenses that will be sought; (v) the identity and contact information for representatives from Lead Counsel to answer questions concerning the Settlement; (vi) the right of Settlement Class Members to request exclusion from the Settlement Class or object to the Settlement; (vii) the binding effect of a judgment on Settlement Class Members; (viii) the dates and deadlines for certain Settlement-related events; and (ix) the opportunity to obtain additional information about the Action and the Settlement by contacting Lead Counsel, the Claims Administrator, or visiting the Settlement website. *See also* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Notice also detailed the Plan of Allocation and further explained that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid and timely Claim Forms under the Plan of Allocation.

74. In accordance with the Preliminary Approval Order, Lead Counsel instructed JND Legal Administration ("JND"), the Court-approved Claims Administrator, to begin disseminating copies of the Notice Packet and the Claim Form by mail and to publish the Summary Notice. The Notice informs Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 22% of the Settlement Fund, and for Litigation Expenses in an amount not to exceed $750,000.

75. To disseminate the Notice and Claim Form (together, the "Notice Packet"), JND obtained information from Plantronics and from banks, brokers, and other nominees regarding the names and addresses of potential Settlement Class Members. (ECF No. 230-5, ¶¶ 2-11.) JND began

mailing copies of the Notice Packet to potential Settlement Class Members and nominee owners on February 25, 2025. *Id*. ¶¶ 3-7.

76.     On March 11, 2025, in accordance with the Preliminary Approval Order, JND caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over the *PR Newswire*. *Id*. ¶ 12.

77.     As of July 8, 2025, JND has mailed a total of 22,299 Notice Packets to Settlement Class Members and nominees. *See* Supplemental Declaration of Luiggy Segura Regarding: (A) Update on Dissemination of Notice Packet; (B) Update on Call Center Services and Settlement Website; (C) Requests for Exclusion Received; and (D) Claims Received to Date (the "Supplemental Segura Decl."), filed herewith, ¶ 4.

78.     Lead Counsel also caused JND to establish a dedicated settlement website, www.PlantronicsSecuritiesLitigation.com, to provide potential Settlement Class Members with information concerning the Settlement and access to copies of the Notice and Claim Form, as well as copies of the Complaint, Stipulation, Preliminary Approval Order, and other relevant documents. (ECF No. 230-5, ¶ 13.) That website became operational on February 25, 2025. *Id*. Lead Counsel's papers in support of their motion for attorneys' fee and litigation expenses were posted to the website on April 25, 2025. *See* Supplemental Segura Decl. ¶ 7. Lead Counsel and JND will continue to monitor and to update the settlement website as the settlement process continues. For example Lead Counsel's papers in support of their motion for final approval of the Settlement will be made available on the website after they are filed, and any orders entered by the Court in connection with the motions will also be posted.

79.     As noted above, the deadline for Settlement Class Members to file objections to the Settlement, Plan of Allocation, or Fee and Expense Application, or to request exclusion from the Settlement Class was June 25, 2025. To date, no requests for exclusion were received, *see* Supplemental Segura Decl. ¶ 8, and no objections to the Settlement, Plan of Allocation, or Lead Counsel's Fee and Expense Application were received.

## IV.    PLAN FOR ALLOCATING THE PROCEEDS OF THE SETTLEMENT

80.    As detailed in the Notice, the Net Settlement Fund will be distributed among Settlement Class Members who submit eligible claims according to the proposed Plan of Allocation.

81.    In developing the Plan of Allocation, Lead Counsel consulted with Lead Plaintiffs' damages expert, Chad Coffman of Peregrine Economics. Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action.

82.    The Plan of Allocation is set forth in the Notice. As described therein, calculations under the Plan of Allocation are intended as a method to weigh the claims of Settlement Class Members against one another for the purposes of making a *pro rata* allocation of the Net Settlement Fund.

83.    Lead Plaintiffs' damages expert calculated the estimated amount of alleged artificial inflation in the per-share price of Plantronics common stock during the Class Period that was allegedly proximately caused by Defendants' alleged materially false and misleading statements and omissions. In calculating the alleged artificial inflation, Lead Plaintiffs' damages expert considered the price change in Plantronics common stock in reaction to the public disclosure that allegedly corrected the alleged misrepresentations, adjusting for factors that were attributable to market or industry forces. *See* Notice ¶ 77.

84.    The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Plantronics common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. *Id*. ¶¶ 79-80. Under the Plan, Claimants who purchased shares during the Class Period but did not hold those shares through the first alleged corrective disclosure on June 18, 2019, will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the alleged fraud. *Id*. ¶ 80A. For shares sold on or after 2:30 pm Eastern Time on June 18, 2019, through and including the close of trading on November 5, 2019, the Recognized Loss Amount will ***be the lesser of***: (i) the amount of artificial inflation per share on the date of purchase/acquisition *minus* the

amount of artificial inflation per share on the date of sale, or (ii) the purchase price *minus* the sale price. *Id*. ¶ 80B. For shares sold from November 6, 2019, through and including the close of trading on February 3, 2020, the Recognized Loss Amount will be **the least of**: (i) the amount of artificial inflation per share on the date of purchase or acquisition; (ii) the purchase price *minus* the sale price, or (iii) the purchase price *minus* the average closing price between November 6, 2019, and the date of sale as stated in Table B in the Notice. *Id*. ¶ 80C. For shares held as of the close of trading on February 3, 2020, the Recognized Loss Amount will be **the lesser of**: (i) the amount of artificial inflation per share on the date of purchase or acquisition; or (ii) the purchase price *minus* $27.19, the average closing price for Plantronics common stock from November 6, 2019, through February 3, 2020 (the 90-day lookback period following the Class Period). *Id*. ¶ 80D.

85.     The sum of a Claimant's Recognized Loss Amounts for all of his, her, their, or its Class Period purchases is the Claimant's "Recognized Claim." *Id*. ¶ 81. The Plan of Allocation also limits Claimants' Recognized Claim based on whether they had an overall market loss in their transactions in Plantronics common stock during the Class Period. *Id*. ¶¶ 88-89. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id*. ¶¶ 90-91.

86.     One hundred percent of the Net Settlement Fund will be distributed to eligible Claimants. Moreover, if any funds remain after an initial distribution to eligible Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective. *Id*. ¶ 93. The Plan of Allocation identifies the Howard University School of Law Investor Justice and Education Clinic ("IJEC") as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to all eligible Claimants have been completed. *Id*. The IJEC is a law school clinic that provides law students with the opportunity to represent clients in securities cases against securities broker-dealers in FINRA arbitrations. The IJEC also provides investor education and outreach programs for underserved investing communities. *See* https://law.howard.edu/academics/clinical-law-center/investor-justice-and-education-clinic-ijec. The Parties have no connection to the IJEC.

We declare, under penalty of perjury, that the foregoing is true and correct. Executed on July 10, 2025.


 */s/ John Rizio-Hamilton*                                    */s/ Sean R. Matt*
JOHN RIZIO-HAMILTON                          SEAN R. MATT

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)(3)**

I am the ECF User whose identification and password are being used to file the foregoing Joint Declaration of Sean R. Matt and John Rizio-Hamilton in Support of Lead Plaintiffs' Motion for Final Approval of Class Settlement. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other signatories have concurred in this filing.:

By:   /s Sean R. Matt
       Sean R. Matt